No. 02-131C
(Judge George W. Miller)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PRECISION PINE & TIMBER, INC.

Plaintiff,

v.

THE UNITED STATES

Defendant.

---

# DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

KATHRYN A. BLEECKER
Assistant Director

DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 307-0277

Attorneys for Defendant

OF COUNSEL:

Lori Polin Jones
Patricia L. Disert
Office of General Counsel
U.S. Department of Agriculture
1400 Independence Ave., S.W.
Washington, D.C. 20250

Dated: March 25, 2004

# TABLE OF CONTENTS


INTRODUCTION . . . . . . . . . . 1

STATEMENT OF THE ISSUES . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . 2

I. Nature Of The Case . . . . . . . . . . 2

II. Statement Of Facts . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . 5

I. Standard Of Review . . . . . . . . . . 5

II. Precision Pine Breached Its Forest Service Contracts By Failing To Maintain Bonding With An Approved Surety . . . . . . . . . . 6

III. Precision Pine's Complaint Asserts No Valid Defense To The Termination Of Its Timber Sale Contracts For Default . . . . . . . . . . 7

A. The Defense Of Prior Material Breach Is Unavailable Because Precision Pine Elected To Perform The Contracts . . . . . . . . . . 8

B. Precision Pine's Contention That The Forest Service Did Not Administer All Of Its Timber Sale Contracts In The Same Manner Lacks Any Legal Significance . . . . . . . . . . 10

III. The Court Should Grant Summary Judgment Upon The United States' Counterclaim For Breach Of Contract Damages . . . . . . . . . . 12

A. The Forest Service Contracting Officer's Issued A Final Decision Assessing Damages For Precision Pine's Breach In Accordance With Clause CT 9.4 . . . . . . . . . . 12

B. The Forest Service's Resale Of The O.D. Ridge And Jersey Horse Contracts Does Not Prevent The Recovery Of Damages For Precision Pine's Breach . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . 17

## TABLE OF AUTHORITIES

**Cases**


Anderson v. Liberty Lobby,
477 U.S. 242, 248 (1986) . . . . . 5-6

Barron Bancshares, Inc. v. United States,
53 Fed. Cl. 310 (Fed. Cl. 2002) . . . . . 8

Buesing v. United States,
47 Fed. Cl. 621 (2000) . . . . . 12

Capital Development Co. v. United States,
49 Fed. Cl. 178 (2001), aff'd, 308 F.3d 1283 (Fed. Cir. 2002) . . . . . 16

Celotex Corp. v. Catrett,
477 U.S. 317, 327 (1986) . . . . . 5

Cherokee Nation v. United States,
174 Ct. C 355 F.2d 945 (1966) . . . . . 11

Cities Service Helex, Inc. v. United States,
211 Ct. Cl. 222, 543 F.2d 1306, 1313 (1976) . . . . . 8-10

Curtis v. United States,
144 Ct. C 168 F. Supp. 213 (1958), cert. denied, 361 U.S. 843 (1959) . . . . . 6

E.C. McAfee A/C Bristol Metal Industrial v. United States,
832 F.2d 152 (Fed. Cir. 1987) . . . . . 6

Emeco Industrial v. United States,
202 Cl. Ct. 1006, 485 F.2d 652 (1973) . . . . . 12

Forman v. United States,
329 F.3d 837 (Fed. Cir. 2003) . . . . . 5

Grady-Gould Watershed Improvement District v. Transamerica
Insurance Co.,
570 F.2d 720 (8th Cir. 1978) . . . . . 9-10

Henderson v. Carbondale Coal & Coke Co.,
140 U.S. 25 (1891) . . . . . 16

Holley v. United States,
124 F.3d 1462 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

LaMirage, Inc. v. United States,
44 Fed. Cl. 192, 201 (Fed. Cl. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Norfolk Dredging Co. v. United States,
58 Fed. Cl. 741 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Precision Pine & Timber, Inc. v. United States,
50 Fed. Cl. 35 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Richmond v. Office of Personnel Management,
496 U.S. 419, 422 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

Seaboard Lumber Co. v. United States,
308 F.3d 1283 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16

Seaboard Lumber Co. v. United States,
48 Fed. Cl. 814 (2001), aff'd, 308 F.3d 1283 (Fed. Cir. 2002) . . . . . . . . . . . . 3, 15-16

South Corporation v. United States,
690 F.2d 1368 (Fed. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Spirit Leveling Contractors v. United States,
19 Cl. Ct. 84, 89 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Sweats Fashions, Inc. v. Pannill Knitting, Inc.,
833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

United States v. Utex International Inc.,
857 F.2d 1408 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**Statutes and Regulations**

41 U.S.C. § 605(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

65 Fed. Reg. 35998-02 (June 6, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 11

**Other Authority**

17A Am. Jur. 2d Contracts § 715 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

14 Richard A. Lord, Williston on Contracts § 43.15 (4th ed. 2000) . . . . . . . . . . . . . . . . 9

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-131C |
| v. | ) | (Judge George W. Miller) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Pursuant to Rule 56(b) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court grant this motion for summary judgment because there are no genuine issues of material fact and defendant is entitled to judgment as a matter of law. In support of this motion, the United States relies upon the complaint ("Compl."), the proposed findings of uncontroverted fact accompanying this motion ("PFUF"), the following brief, and the separately filed appendix.

**STATEMENT OF THE ISSUES**

1. Whether Precision Pine & Timber, Inc. ("Precision Pine") breached the contracts at issue by failing to maintain a performance bond with an approved surety as required by contract clause BT 9.1.

2. Whether the Forest Service's prior material breach of the O.D. Ridge, Brookbank, Jersey Horse, Saginaw-Kennedy, Brann, U-Bar, Monument, Manaco and Hutch-Boondock

contracts excuses Precision Pine's breach where Precision Pine chose to continue performance of the respective contracts.[1]

3. Whether the United States is entitled to summary judgment with respect to its counterclaim for damages resulting from Precision Pine's breach of its timber sale contracts.

## STATEMENT OF THE CASE

### I. Nature Of The Case

This action concerns 12 timber sale contracts that were awarded to Precision Pine by the United States Forest Service between August 1992 and December 1998. In 2000, Precision Pine failed to maintain performance bonds with a Government-approved surety as required by the terms of the respective contracts. As a result, in January 2001, the Forest Service terminated Precision Pine's contracts for default and, in March 2001, assessed damages based upon Precision Pine's default.

In its complaint, Precision Pine contends that its failure to maintain bonding was excusable and that the termination of its contracts was therefore unjustified. See Compl. ¶¶ 5-24. Additionally, Precision Pine contests the Forest Service's assessment of default damages. See Compl. ¶¶ 10-16, 21-22.

---

[1] The United States accepts solely for purposes of this motion the Court's July 31, 2001 ruling in Precision Pine & Timber, Inc. v. United States, Case No. 98-720C (Fed. Cl.). In so doing, the United States does not waive and expressly reserves the right to appeal, or contest in any other appropriate manner, the Court's July 31, 2001 decision.

## II. Statement Of Facts [2]

The United States Forest Service manages approximately 198 million acres of Federal lands in National Forests throughout the United States for multiple purposes. As part of its management of these lands, the Forest Service plans and conducts timber sales. 16 U.S.C. § 472a(a).

From the standpoint of potential bidders, a timber sale commences when the Forest Service issues an advertisement and prospectus describing the timber to be harvested, the estimated volume of timber being sold, and the dates bids must be submitted. Included in the advertisement is a minimum bid price. A prospectus and sample contract are made available to interested bidders. The prospectus identifies the length of time the contractor will be allowed to perform the contract, establishes the contract's operating season, and specifies the timing of contractor payments for the timber. Interested parties are invited to examine the site and available timber prior to bidding. See generally Seaboard Lumber Co. v. United States, 48 Fed. Cl. 814, 816 (2001), aff'd, 308 F.3d 1283 (Fed. Cir. 2002).

This action concerns 12 contracts that Precision Pine bid upon and was awarded between August 1992 and December 1998: (1) the O.D. Ridge timber sale; (2) the Brookbank multi-product sale; (3) Jersey Horse timber sale; (4) the Saginaw-Kennedy multi-product sale; (5) the Brann multi-product sale; (6) the U-Bar timber sale; (7) the Monument multi-product sale; (8) the Manaco multi-product sale; (9) the Hutch-Boondock multi-product sale; (10) the Gentry

[2] Pursuant to RCFC 56.1(h)(1), the United States is filing with this motion proposed findings of uncontroverted fact. This section provides a summary of the facts relevant to this motion.

multi-product sale; (11) Wiggins multi-product sale; and the (12) Lily multi-product sale. PFUF ¶ 2; Compl. ¶ 3.

Each of the contracts at issue contain similar terms. For example, the contracts each establish an operating season, require the purchaser to submit an annual operating schedule, and prescribe harvesting methods to be employed. PFUF ¶ 3. The contracts also require the purchaser to meet with the Forest Service prior to commencing harvesting operations to finalize an operating plan. PFUF ¶ 3. The purchaser is required to harvest all timber and, for multi-product sales, roundwood by the contract's termination date.[3] PFUF ¶ 6; Compl. ¶¶ 27, 35, 42, 50, 57, 64, 71, 78, 85 (giving the contract's "termination date"). In certain circumstances, the purchaser may request an extension of the contract's termination date. PFUF ¶ 7. Significantly, each contract also requires the purchaser to maintain a bond or provide other security as a guarantee of performance. PFUF ¶¶ 8-9.

In 1999, Precision Pine began using Frontier Insurance Company as the surety for performance bonds. PFUF ¶ 20. On June 6, 2000, as a result of Frontier's insolvency, the Department of the Treasury removed Frontier from its list of approved sureties. PFUF ¶ 21; 65 Fed. Reg. 35998-02 (June 6, 2000). Accordingly, "bond approving officers" were directed to "secure new bonds with acceptable sureties." Id.

The Forest Service promptly notified Precision Pine that Frontier was no longer an acceptable surety and, pursuant to clause BT 9.1, directed Precision Pine to obtain bonding from

[3] Timber generally is defined as trees larger than 9 inches in diameter at breast height ("dbh"). PFUF ¶ 4. Such trees are commonly referred to as "saw timber." "Roundwood" refers to smaller trees that are between 5.0 and 8.9 inches dbh. Id. Roundwood is sometimes referred to as pulpwood.

an acceptable surety within 30 days. PFUF ¶ 22; Compl. ¶ 14. Precision Pine did not obtain a replacement bond from an acceptable surety as required. PFUF ¶ 23. Consequently, in July 2000, and again in September 2000, Forest Service contracting officers advised Precision Pine that its failure to provide replacement performance bonding constituted a breach of contract. See PFUF ¶¶ 24-25. Precision Pine was told how to cure its breach of contract, was offered the opportunity to cure its breach, and was informed that a failure to cure its breach would result in the termination of its timber sale contracts. Id. Precision Pine still did not obtain replacement bonds from an approved surety. PFUF ¶ 26. Accordingly, on January 9, 2001, the Forest Service terminated the contracts at issue for default. PFUF ¶ 27. In February and March 2001, the respective contracting officers issued final decisions assessing damages as a result of the breach of Precision Pine's contracts. PFUF ¶ 29.

Precision Pine subsequently filed this action challenging the termination of its contracts for default and the contracting officer final decisions assessing damages resulting from the breach of its contracts.

## ARGUMENT

### I. Standard of Review

The familiar standard for summary judgment warrants only a brief restatement. Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); Forman v. United States, 329 F.3d 837, 841 (Fed. Cir. 2003) (citing Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986)). The procedure of summary judgment is properly regarded not as a disfavored shortcut, but rather as an integral part of the Court rules as a whole, designed to secure a just, speedy and inexpensive

determination of every action. Spirit Leveling Contractors v. United States, 19 Cl. Ct. 84, 89 (1989) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)); accord Sweats Fashions, Inc. v. Pannill Knitting, Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987).

"The focus in determining whether summary judgment is appropriate is the lack of disputed material facts. A material fact has been defined as a fact that will make a difference in the outcome of a case." Curtis v. United States, 144 Ct. Cl. 194, 199, 168 F. Supp. 213, 216 (1958), cert. denied 361 U.S. 843 (1959). Put differently, only disputes over facts that would affect the outcome of a claim or defense will properly prevent summary judgment. See Anderson, 477 U.S. at 248.

## II. Precision Pine Breached Its Forest Service Contracts By Failing To Maintain Bonding With An Approved Surety

All of the contracts at issue in this action contain standard clause BT 9.1. Clause BT 9.1 provides, in pertinent part:

> Performance Bond. As a further guarantee of the faithful performance of the provisions of this contract, Purchaser delivers herewith and agrees to maintain a surety bond in the dollar amount stated in AT18. . . . Should the surety on the bond delivered herewith, or any bond delivered hereafter in connection with this contract, become unsatisfactory to Forest Service, Purchase shall, within 30 calendar days of receipt of demand, furnish a new bond with surety satisfactory to Forest Service.

PFUF ¶ 8 (emphasis added).

In 1999 and 2000, Precision Pine used Frontier to comply with the bonding requirement in clause BT 9.1 of its contracts. See PFUF ¶ 20; Compl. ¶¶ 11, 13.[4] On June 6, 2000, the

[4] "Pleadings are judicial admissions and an opponent may invoke the language of the opponent's pleading to render the facts contained therein indisputable." E.C. McAfee A/C Bristol (continued...)

Department of the Treasury removed Frontier from its list of approved sureties. 65 Fed. Reg. 35998-02 (June 6, 2000) ("With respect to any bonds . . . currently in force with [Frontier], bond approving officers should secure new bonds with acceptable sureties."). The Forest Service promptly notified Precision Pine that Frontier was no longer an acceptable surety and, pursuant to clause BT 9.1, directed Precision Pine to obtain bonding from an acceptable surety within 30 days. PFUF ¶ 22; Compl. ¶ 14.

Precision Pine failed to obtain a replacement bond from an acceptable surety. PFUF ¶ 23; see also Compl. ¶ 15 (admitting that "Precision Pine was . . . not . . . able to secure a surety acceptable to the Forest Service"). Consequently, in July 2000, and again in September 2000, Forest Service contracting officers advised Precision Pine that its failure to provide replacement surety bonds constituted a breach of contract. PFUF ¶¶ 24-25. Precision Pine was offered the opportunity to cure its default and was warned that the failure to do so would result in the termination of its timber sale contracts. Id. Precision Pine still did not obtain an acceptable surety. PFUF ¶ 26. Accordingly, the Forest Service terminated Precision Pine's contracts for default. PFUF ¶ 27; see also Compl. ¶ 16 ("the Forest Service . . . terminated the contracts for default for failure to provide a surety").

In sum, Precision Pine breached its timber sale contracts by failing to maintain performance bonds from an approved surety. The Forest Service's termination of the contracts for default was therefore proper and appropriate.

---

[4](...continued)
Metal Indus. v. United States, 832 F.2d 152, 154 n.* (Fed. Cir. 1987).

## III. Precision Pine's Complaint Asserts No Valid Defense To The Termination Of Its Timber Sale Contracts For Default

In its complaint, Precision Pine asserts that its breach of the timber sale contracts should be excused. As explained below, each of Precision Pine's defenses is without merit.

### A. The Defense Of Prior Material Breach Is Unavailable Because Precision Pine Elected To Perform The Contracts

Precision Pine asserts that the defense of prior material breach precludes the Forest Service from terminating for default the O.D. Ridge, Brookbank, Jersey Horse, Saginaw-Kennedy, Brann, U-Bar, Monument, and Manaco contracts. See Compl. ¶¶ 5-7, 29, 37, 44, 52, 59, 66, 73, 80 (asserting that the suspension of its contracts during 1995 and 1996 constituted a material breach).[5] A material breach of contract can constitute a defense to the non-breaching party's subsequent failure to perform. However, as United States Court of Claims[6] explained in Cities Service Helex, Inc. v. United States:

> A material breach does not automatically and *ipso facto* end a contract. It merely gives the injured party the right to end the agreement; the injured party can choose between canceling the contract and continuing it. If he decides to close the contract and so conducts himself, both parties are relieved of their further obligations and the injured party is entitled to damages to the end of the contract term (to put him in the position he would have occupied if the contract had been completed). If he elects instead

---

[5] The suspension of the Brann and Hutch-Boondock contracts was lifted in October 1995. See Precision Pine & Timber, Inc. v. United States, 50 Fed. Cl. 35, 47 (2001). The suspension of the O.D. Ridge, Brookbank, Jersey Hourse, Saginaw-Kennedy, U-Bar, Monument, and Manaco was lifted in December 1996. See id. at 70-71.

[6] Decisions of the United States Court of Claims – the predecessor to the Federal Circuit Court of Appeals – are binding upon this Court. See, e.g., South Corporation v. United States, 690 F.2d 1368, 1370 (Fed. Cir. 1982) (en banc); Norfolk Dredging Co. v. United States, 58 Fed. Cl. 741, 749 (2003) ("the Court of Federal Claims . . . is bound by the precedent of the United States Court of Claims and the Court of Appeals for the Federal Circuit").

> to continue the contract, the obligations of both parties remain in force and the injured party may retain only a claim for damages for partial breach.

211 Ct. Cl. 222, 543 F.2d 1306, 1313 (1976) (emphasis added); accord Barron Bancshares, Inc. v. United States, 53 Fed. Cl. 310, 322-23 (Fed. Cl. 2002). Thus, a material breach gives the non-breaching party the choice of canceling or affirming the contract. Significantly, where the contract is affirmed, the prior breach cannot be invoked as a defense to non-performance. Cities Service Helex, 543 F.2d at 1313; see also Grady-Gould Watershed Improvement Dist. v. Transamerica Ins. Co., 570 F.2d 720, 723 (8th Cir. 1978) (a party to a contract may waive a breach of contract by the other party, even a material breach, and then be liable for his own subsequent breach); 17A Am. Jur. 2d Contracts § 715 (2004) ("An election by a party to perform notwithstanding a breach, and thus waiving the breach, is conclusive, in the sense of depriving that party of any excuse for ceasing performance."); 14 Richard A. Lord, Williston on Contracts § 43.15 (4th ed. 2000) ("conduct indicating an intention to continue the contract in effect will constitute a conclusive election, in effect waiving the right to assert that the breach discharged any obligation to perform").

Precision Pine, by its post-suspension actions, ratified the contracts at issue. Notably, based upon the Mexican Spotted Owl suspension, Precision Pine requested that the Forest Service extend the term of its contracts to provide additional time to perform. PFUF ¶ 14; App. 4, 10, 197, 199-200, 273, 366-69. When the Forest Service agreed, Precision Pine executed bilateral contract modifications that extended the period to perform.[7] PFUF ¶ 15. This conduct,

[7] Each of the timber sale contracts contains a termination date before which all timber and roundwood must be harvested. PFUF ¶ 6..

by itself, establishes that Precision Pine elected to continue the respective contracts. See 14 Richard A. Lord, Williston on Contracts § 43.15 ("conduct indicating an intention to continue the contract in effect will constitute a conclusive election").

Precision Pine demonstrated its election to continue the contracts in various additional ways. For instance, Precision Pine paid for performance bonds from December 1996 through June 2000, and, indeed, secured a new bonding company in 1999, so that it could harvest timber pursuant to the contracts. PFUF ¶¶ 16-17; Compl. ¶¶ 9, 11, 13. Precision Pine also presented to the Forest Service annual operating schedules that showed plans for harvesting timber upon the contracts. PFUF ¶ 18; App. 4, 6, 8-9, 196-99, 365-68, 378-380, 391-95. And, upon all but the Saginaw-Kennedy and Monument contracts, Precision Pine actually harvested timber after December 1996. PFUF ¶ 19; App. 5-6, 38-40, 196-99, 210-212, 216-22, 232-33, 276-77, 366-69, 381-88, 396-97, 405-411.

Because Precision Pine chose to continue the timber sale contracts after the suspension was lifted in December 1996, Precision Pine cannot now invoke the prior breach as a defense to its own failure to perform. E.g., Cities Service Helex, 543 F.2d at 1313; Grady-Gould Watershed Improvement, 570 F.2d at 723. Accordingly, the Court should grant summary judgment in favor of the United States with respect to Precision Pine's prior breach defense.

### B. Precision Pine's Contention That The Forest Service Did Not Administer All Of Its Timber Sale Contracts In The Same Manner Lacks Any Legal Significance

Precision Pine's complaint asserts that the Forest Service's "selective and unequal" enforcement of the bonding requirement precludes termination of the contracts at issue. E.g., Compl. ¶¶ 30-31. Yet Precision Pine's vague allegations fail to discuss even a single instance in

which the Forest Service waived the bonding requirements for one of Precision Pine's competitors. This is because no such "selective enforcement" occurred. The only other company operating timber sales in Region 3 that was bonded by Frontier was Stone Container Corporation ("Stone Container"). Stone Container was in fact required to secure new bonding when Frontier's insolvency caused Frontier to be removed from the Government's list of acceptable sureties. PFUF ¶ 28.

Moreover, the Forest Service's administration of other contracts has no legal significance. Decisions concerning the waiver of bonding requirements, and other contractual duties such as the requirement to harvest roundwood, are appropriately made on a case-by-case basis. E.g., 65 Fed. Reg. 35998-02 (explaining that bonding officers need only secure new bonds "in those instances where a significant amount of liability remains outstanding"); Cherokee Nation v. United States, 174 Ct. Cl. 131, 140, 355 F.2d 945, 950 (1966) (defining waiver as the voluntary and intentional relinquishment of a known right). Consequently, even if the Forest Service had chosen to waive the contractual bonding requirement with respect to some competitor of Precision Pine (and there is no evidence that it did), it would not be obligated to waive bonding with respect to Precision Pine's contracts.

Nor does Precision Pine offer any legal basis for its assertion that the Forest Service is precluded from enforcing the bonding requirements in its contracts. See Compl. ¶¶ 18-21. To the extent that Precision Pine bases its argument upon the principal of equitable estoppel, Precision Pine's argument can be quickly rejected. Equitable estoppel does not lie against the Government. See Richmond v. Office of Personnel Management, 496 U.S. 419, 422 (1990) (noting that the Court has "reversed every finding of estoppel that we have reviewed").

Furthermore, it is axiomatic that to state a valid claim, a plaintiff must allege all required elements of the claim. See Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir. 1997). Precision Pine's complaint does not aver the elements of equitable estoppel[8] and, therefore, is insufficient as a matter of law.[9]

In sum, Precision Pine's contention that its failure to supply an acceptable surety bond is excused by the Forest Service's "selective and unequal enforcement" of the bonding requirement is unsupportable factually and without merit legally. Accordingly, the Court should grant summary judgment in favor of the United States with respect to this purported defense.

## IV. The Court Should Grant Summary Judgment Upon The United States' Counterclaim For Breach Of Contract Damages

### A. The Forest Service Contracting Officer's Issued A Final Decision Assessing Damages For Precision Pine's Breach In Accordance With Clause CT 9.4

As explained above, Precision Pine breached the contracts at issue in this action. As a result of these breaches of contract, the United States terminated Precision Pine's contracts for default. PFUF ¶¶ 20-27.

---

[8] Assuming for the sake of argument that estoppel could be invoked against the Government, a plaintiff would have to demonstrate (1) that the Government knew the facts, (2) that the Government intended its conduct be acted upon, or acted such that the plaintiff had a right to believe it so intended, (3) that the plaintiff was ignorant of the true facts, (4) that plaintiff relied upon the Government's conduct to his detriment, and (5) that the Government engaged in affirmative misconduct. See LaMirage, Inc. v. United States, 44 Fed. Cl. 192, 201 (1999); Emeco Indus. v. United States, 202 Cl. Ct. 1006, 1015, 485 F.2d 652, 657 (1973) (quoting United States v. Georgia Pacific Co., 421 F.2d 92, 96 (9th Cir. 1970)); Buesing v. United States, 47 Fed. Cl. 621, 640 n.17 (2000) ("without affirmative misconduct on the part of the government, there can be no equitable estoppel against the government"); Richmond, 496 U.S. at 423 .

[9] Furthermore, Precision Pine fails to assert such an affirmative defense in its answer to the United States' counterclaim. See RCFC 8(c) (requiring that a party set forth the defense of estoppel "and any other matter constituting and avoidance or affirmative defense.").

In accordance with contract clause CT 9.4, during February and March 2001, the respective Forest Service contracting officers issued final decisions assessing damages for Precision Pine's breach of the O.D. Ridge, Jersey Horse, Saginaw-Kennedy, Brann, U-Bar, Monument, Hutch-Boondock, Gentry, Wiggins and Lily timber sale contracts as follows: (a) O.D. Ridge – $148,845.38; (b) Jersey Horse – $9,035.47; (c) Saginaw-Kennedy – $101,642.20; (d) Brann – $36,888.97; (e) U-Bar – $215,691.04; (f) Monument – $81,477.88; (g) Hutch-Boondock – $2,278.72; (h) Gentry – $92,236.78; (i) Wiggins – $13,016.93; (j) Lily – $66,512.35. PFUF ¶¶ 29-30; see also 41 U.S.C. § 605(a) ("All claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer.").[10] These amounts were determined in accordance with contract clause CT 9.4 and, except with respect to the O.D. Ridge and Jersey Horse contracts, neither Precision Pine's complaint, nor its answer to the United States' counterclaim, contests the manner in which the Forest Service contracting officers calculated breach damages. See Compl. ¶¶ 33-40, 48-104; Pl.'s Reply to Def.'s Counterclaim at 2 (denying only that defendant had made "a valid demand for payment"). Accordingly, the Court should grant the United States' motion for summary judgment upon its counterclaim with respect to the Saginaw-Kennedy, Brann, U-Bar, Monument, Hutch-Boondock, Gentry, Wiggins and Lily contracts.

### B. The Forest Service's Resale Of The O.D. Ridge And Jersey Horse Contracts Does Not Prevent The Recovery Of Damages For Precision Pine's Breach

Contract clause CT 9.4 establishes the method by which breach of contract damages are calculated. It provides as follows:

---

[10] Final decisions were also issued with respect to the Brookbank and Manaco contracts, but no damages for breach were assessed. Compl. ¶¶ 36, 79.

> In the event of termination for breach . . . [the] Forest Service shall appraise the remaining Included Timber. . . . Damages due the United States for Purchaser's failure to cut and remove Included Timber . . . shall be the amount by which Current Contract Value plus the cost of resale, less any Effective Purchaser Credit remaining at time of termination, exceeds the resale value at new Bid Rate. If there is no resale, damages due shall be determined by subtracting the value established by said appraisal from the difference between Current Contract Value and Effective Purchaser Credit.

App. 536, 555, 576, 595, 615, 634, 652, 673, 697, 718, 737, 756. The Forest Service assessed damages with respect to Precision Pine's breach of the O.D. Ridge and Jersey Horse contracts in accordance with clause CT 9.4. See PFUF ¶ 29-30; App. 15, 23, 120-144, 181-92, 205-06, 262-71, 375-76, 468-526.[11]

According to Precision Pine, the Forest Service should nevertheless be precluded from recovering damages resulting from breach of the O.D. Ridge and Jersey Horse contracts because the "original contract[s] did not provide the Forest Service with authority to make any changes in [a resale] contract." Compl. ¶¶ 32, 47. Precision Pine also objects that the resale contracts include "price reductions" for roundwood and make the "removal of roundwood" optional. Compl. ¶ 22. The legal basis for Precision Pine's position is unstated.

If Precision Pine is asserting that the Forest Service breached the original contracts by offering uncut timber for resale on different terms, Precision Pine's assertion is without merit. The original O.D. Ridge and Jersey Horse contracts expressly contemplate a resale of uncut timber in the event of a breach by Precision Pine. App. 536, 555, 576, 595, 615, 634, 652, 673,

---

[11] With respect to the O.D. Ridge contract, damages were based upon Precision Pine's failure to pay for timber that it had cut and removed from the sale. See App. 468-83. No additional damages were assessed because it was concluded that the resale price for uncut timber would exceed current contract value plus costs of resale. Id.

697, 718, 737, 756 (clause CT 9.4). Moreover, no provision in either contract requires that the terms of a resale be identical to the terms of the original sales. Consequently, a resale of uncut timber from the O.D. Ridge and Jersey Horse sales – even if on terms different than the original sales – would not constitute a breach of contract.

If Precision Pine is seeking to assert the so-called Axman defense,[12] Precision Pine's argument should likewise fail. As an initial matter, Precision Pine failed to assert the Axman defense in its May 1, 2002 answer to the United States' counterclaim. Pl.'s Reply to Def.'s Counterclaim at 2 (filed May 1, 2002). It cannot, therefore, properly raise that affirmative defense now. See RCFC 8(c) (providing that "a party shall set forth affirmatively . . . any . . . matter constituting an avoidance or affirmative defense" in its answer); Seaboard Lumber Co. v. United States, 48 Fed. Cl. 814, 822 (2001) (holding that an asserted deviation between original and resale contracts is an "affirmative defense"), aff'd 308 F.3d 1283 (Fed. Cir. 2002).

Furthermore, the Axman defense is "unavailable" because the changes identified by Precision Pine involve "financial terms or minor changes to performance, rather than substantial changes to the nature of the work performed." Seaboard, 308 F.3d at 1298. As explained by this Court in Seaboard:

> [t]he beginning point . . . is to enquire whether, as in Axman itself, the changes substantially altered the character of the work. We find that they did not. The fundamental character of the work was the same – harvesting trees. There were no material changes in the way the work was to be performed.

---

[12] "The Axman defense provides a complete bar to damages where the non-breaching party, in attempting to mitigate damages, resells a contract on materially different terms than those of the original contract." Seaboard Lumber Co. v. United States, 308 F.3d 1283, 1298 (Fed. Cir. 2002) (citing Schwartz v. United States, 106 Ct. Cl. 225, 65 F. Supp. 391, 393 (1946), and United States v. Axman, 234 U.S. 36 (1914)).

Seaboard, 48 Fed. Cl. at 822 (emphasis in original), aff'd, 308 F.3d at 1297 ("[T]here was little alteration in the nature of the work to be performed. The substantive, physical work to be performed by the contractor in both the original and resale contracts . . . was the [same].").[13]

Similarly, here, neither "change" identified by Precision Pine in the complaint alters the fundamental character of the work upon the O.D. Ridge and Jersey Horse timber sales – harvesting trees. First, Precision Pine points to the administrative charge for roundwood. Compl. ¶ 22. However, a change in this administrative charge involves a "financial term" – not a "substantial change" in the "nature of work performed." See Seaboard, 308 F.3d at 1298. Second, Precision Pine objects that the Forest Service resale contracts make the removal of roundwood optional. See Compl. ¶ 22. As noted above, "roundwood" is one component of a multi-product sale and is generally defined by contract as trees having a diameter at breast height between 5.0 and 8.9 inches. See discussion at 4, supra. However, neither the original O.D. Ridge contract, nor the original Jersey Horse contract, were multi-product sales. PFUF ¶ 33. As a result, neither contract sold any roundwood to Precision Pine – much less required its removal. Id. Precision Pine's objection regarding the supposed option to remove roundwood – where no roundwood was ever being sold – is a red herring.

---

[13] It is not surprising, given the analysis employed, that no court has required the Forest Service to forfeit breach damages as the result of a timber contract resale pursuant to Axman. See, e.g., Seaboard, 48 Fed. Cl. at 835 (rejecting the Axman defense), aff'd 308 F.3d 1283 (Fed. Cir. 2002); Capital Development Co. v. United States, 49 Fed. Cl. 178 (2001) (same), aff'd 308 F.3d 1283 (Fed. Cir. 2002); see also Henderson v. Carbondale Coal & Coke Co., 140 U.S. 25, 33 (1891) ("[F]orfeitures are never favored. Equity always leans against them, and only decrees in their favor when there is full, clear and strict proof of a legal right thereto."); United States v. Utex International Inc., 857 F.2d 1408, 1414 (Fed. Cir. 1988) (citing the "basic principle" that "forfeitures are not favored").

Accordingly, summary judgment should be granted upon the United States' counterclaim with respect to the O.D. Ridge and Jersey Horse contracts.

## CONCLUSION

For these reasons, the United States respectfully requests that the Court grant its motion for summary judgment, dismiss the complaint in this action, and enter judgment upon behalf of the United States upon its counterclaim.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Kathryn A. Bleecker

KATHRYN A. BLEECKER
Assistant Director

s/ David A. Harrington

DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
(202) 307-0277
(202) 307-0972 (fax)

Attorneys for Defendant

March 25, 2004