**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-131C |
| v. | ) | (Judge George W. Miller) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Pursuant to Rule 56(d)(1) of the Rules of the Court of Federal Claims (“RCFC”), defendant, the United States, respectfully submits the following proposed findings of uncontroverted fact in support of its motion for summary judgment.

1. The United States Forest Service manages approximately 198 million acres of Federal lands in National Forests throughout the United States for multiple purposes. As part of its management of these lands, the Forest Service plans and conducts timber sales. 16 U.S.C. § 472a(a).

2. This action concerns 12 contracts that Precision Pine bid upon and was awarded between August 1992 and December 1998: (1) the O.D. Ridge timber sale; (2) the Brookbank multi-product sale; (3) the Jersey Horse timber sale; (4) the Saginaw-Kennedy multi-product sale; (5) the Brann multi-product sale; (6) the U-Bar timber sale; (7) the Monument multi-product sale; (8) the Manaco multi-product sale; (9) the Hutch-Boondock multi-product sale; (10) the Gentry multi-product sale; (11) Wiggins multi-product sale; and the (12) Lily multi-product sale (the "contracts at issue"). Compl. ¶ 3.

3. Each of the contracts at issue establishes an operating season, requires the purchaser to submit an annual operating schedule, requires the purchaser to meet with the Forest Service prior to commencing harvesting operations to finalize an operating plan, and prescribes harvesting methods to be employed. See generally App. 527-767 (clause BT 6.3 and 6.31).

4. Timber is defined by contract as trees larger than 9.0 inches in diameter at breast height ("dbh"). See App. 527-767 (clause AT 1.2 and BT 2.2). Such trees are commonly referred to as "sawtimber." "Roundwood" refers to smaller trees that are between 5.0 and 8.9 inches dbh. See id. Roundwood is sometimes referred to as pulpwood.

5. Contracts where only sawtimber is required to be harvested are designated "timber sale" contracts. See App. 529, 548, 569, 588, 608, 627, 645, 666, 690, 711, 730, 749 (name of contracts). Contracts where both sawtimber and roundwood are required to be harvested are designated "multi-product sale" contracts. See id.

6. Each of the contracts at issue requires the purchaser to harvest all timber and, where applicable, roundwood, by the contract's termination date. App. 533, 536, 552, 555, 573, 576, 592, 595, 612, 615, 631, 634, 649, 652, 670, 673, 694, 697, 715, 718, 734, 737, 753, 756 (clause BT 8.2 and 9.4).

7. In certain circumstances, the purchaser may request an extension of the contract's termination date. App. 533, 552, 573, 592, 612, 631, 649, 670, 694, 715, 734, 753 (clause BT 6.21).

8. Each of the contracts at issue contain clause BT 9.1, which concerns performance bonds and provides as follows:

> Performance Bond. As a further guarantee of the faithful performance of the provisions of this contract, Purchaser delivers

> herewith and agrees to maintain a surety bond in the dollar amount stated in AT18. . . . Should the surety on the bond delivered herewith, or any bond delivered hereafter in connection with this contract, become unsatisfactory to Forest Service, Purchaser shall, within 30 calendar days of receipt of demand, furnish a new bond with surety satisfactory to Forest Service.

App. 535, 554, 575, 594, 614, 633, 651, 672, 696, 717, 736, 755.

9. Pursuant to clause BT 9.1 of the respective contracts, Precision Pine was required to maintain a performance bond or provide other security as a guarantee of performance. Id.

10. On August 25, 1995, the Forest Service suspended the O.D. Ridge timber sale, the Brookbank multi-products sale, the Jersey Horse timber sale, the Saginaw-Kennedy multi-products sale, the Brann multi-product sale, the U-Bar timber sale, the Monument multi-product sale, the Manaco multi-product sale, and the Hutch-Boondock multi-product sale in order to comply with an injunction entered by the United States District Court for the District of Arizona. The Gentry, Wiggins, and Lily multi-product sales were not suspended. App. 3, 193, 272, 363.

11. The suspension of the Brann and Hutch-Boondock contracts was lifted on October 25, 1995; the suspension of the other suspended contracts was lifted on December 4, 1996. App. 3-4, 7-8, 195-96, 275, 365.

12. This Court has ruled that the suspension of the O.D. Ridge, Brookbank, Jersey Horse, Saginaw-Kennedy, Brann, U-Bar, Monument, and Manaco sales constituted a breach of contract. See Precision Pine & Timber, Inc. v. United States, 50 Fed. Cl. 35 (2001).

13. After the suspension was lifted, Precision Pine chose to continue performance of the respective contracts. See App. 4-10, 196-200, 275-77, 365-72 (and referenced exhibits).

14. Precision Pine requested that the Forest Service extend the term of the contracts affected by the suspension to provide additional time to perform. App. 4, 10, 197, 199-200, 273, 366-69.

15. Pursuant to Precision Pine's requests, the Forest Service and Precision Pine executed bilateral contract modifications that changed the respective contract termination dates in order to provide additional time for performance. App. 4, 10, 27-31, 67-84, 197, 214, 199-200, 273, 366-69, 390, 399, 412.

16. Precision Pine maintained performance bonds for the respective contracts from December 1996 through June 2000. App. 2-3, 10, 194-95, 200, 273, 278, 370-72, 433-52. In order to maintain this bonding, Precision Pine secured a new bonding company, Frontier Insurance Company, in 1999. Compl. ¶¶ 9, 11; App. 10, 251-53, 200, 278, 371, 444-52.

17. Precision Pine obtained and paid for payment bonds on various contracts at various times after December 1996, so that it could conduct timber harvesting operations. App. 5, 7, 9, 198, 223-25, 274, 369-70, 413-32.

18. Precision Pine presented to the Forest Service annual operating schedules stating that it planned to operate the O.D. Ridge, Brookbank, Jersey Horse, Saginaw-Kennedy, Brann, U-Bar, Monument, Manaco and Hutch-Boondock contracts during 1997. App. 4, 6, 8-9, 196-99, 365-68, 378-380, 391-95. In subsequent operating schedules, Precision Pine informed the Forest Service that it would be operating sale in 1998 and/or 1999. Id.

19. Precision Pine harvested timber from O.D. Ridge, Brookbank, Jersey Horse, Brann, U-Bar and Manaco and Hutch-Boondock sales after the suspension was lifted in

December 1996. App. 5-6, 38-40, 196-99, 210-212, 216-22, 232-33, 276-77, 366-69, 381-88, 396-97, 405-411.

20. In 1999, Precision Pine began using Frontier Insurance Company as the surety for performance bonds. Compl. ¶¶ 9, 11, 13; App. 10, 200, 278, 371-72.

21. On June 6, 2000, the Department of the Treasury removed Frontier from its list of approved sureties. Compl. ¶ 13; 65 Fed. Reg. 35998-02 (June 6, 2000). The Department of the Treasury directed "bond approving officers" to "secure new bonds with acceptable sureties." 65 Fed. Reg. 35998-02 (June 6, 2000).

22. The Forest Service contracting officers notified Precision Pine that Frontier was no longer an acceptable surety and, pursuant to clause BT 9.1, directed Precision Pine to obtain bonding from an acceptable surety within 30 days. Compl. ¶ 14; App. 10-11, 18-19, 90-94, 162-64, 200-01, 235-36, 278, 329-30, 372, 453-54.

23. Precision Pine did not obtain a replacement bond from an acceptable surety as required. See Compl. ¶ 15; App. 11, 19, 201, 278-79, 373.

24. In July 2000, Forest Service contracting officers advised Precision Pine that its failure to provide replacement performance bonding constituted a breach of contract. App. 11-12, 19-20, 96-98, 168-70, 201-02, 238-43, 279, 333-34, 373, 455-56. Precision Pine was told how to cure its breach of contract, was offered the opportunity to cure its breach, and was informed that a failure to cure its breach would result in the termination of its timber sale contracts. Id.

25. In September 2000, Forest Service contracting officers again advised Precision Pine that its failure to provide replacement performance bonding constituted a breach of contract.

App.13-14, 20-21, 107-08, 172-73, 203-04, 251-52, 280-81, 341-42, 373, 457-59. Once again, Precision Pine was told how to cure its breach of contract, was offered the opportunity to cure its breach, and was warned that a failure to cure its breach would result in the termination of its timber sale contracts. Id.

26. Despite these warnings, Precision Pine did not obtain replacement bonds from an approved surety or provide any other security to guarantee the performance of the contracts at issue. Compl. ¶ 15; App. 14, 22, 204-05, 281-82, 374-75.

27. By letter dated January 9, 2001, the Forest Service Regional Forester terminated the contracts at issue for default. App. 15, 22-23, 117-19, 205, 282, 375. The effective date of the contract terminations was January 9, 2001. Id.

28. Other than Precision Pine, the only contractor operating timber sales in Region 3 as of June 6, 2000 that was bonded by Frontier Insurance Company was Stone Container Corporation, and Stone Container was required to secure new bonding when Frontier's insolvency caused Frontier to be removed from the Government's list of acceptable sureties. App. 527-28.

29. During February and March 2001, Forest Service contracting officers issued final decisions assessing damages for Precision Pine's breaches of the contracts at issue as follows: (a) O.D. Ridge – $148,845.38; (b) Brookbank – $0.00; (c) Jersey Horse – $9,035.47; (d) Saginaw-Kennedy – $101,642.20; (e) Brann – $36,888.97; (f) U-Bar – $215,691.04; (g) Monument – $81,477.88; (h) Manaco – $0.00; (i) Hutch-Boondock – $2,278.72; (j) Gentry – $92,236.78; (k) Wiggins – $13,016.93; (l) Lily – $66,512.35. App. 15, 23, 120-144, 181-92, 205-06, 262-71, 375-76, 468-526.

30. These amounts were assessed in accordance with clause CT 9.4 in the respective contracts. App. 15, 23, 120-144, 181-92, 205-06, 262-71, 375-76, 468-526.

31. The price charged for the harvesting of roundwood is established administratively and is included in the prospectus for multi-product sales where the harvesting of roundwood is being required.

32. No provision in any of the contracts at issue requires that the terms of a resale following a breach by the purchaser be identical to the terms of the original sale. See App. 529-767.

33. Neither the O.D. Ridge contract nor the Jersey Horse contract were multi-product sales and, consequently, neither contract provided for the sale of roundwood to Precision Pine or the harvest of roundwood by Precision Pine. See App. 529-47, 569-87.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Kathryn A. Bleecker

KATHRYN A. BLEECKER
Assistant Director

s/ David A. Harrington

DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
(202) 307-0277
(202) 307-0972 (fax)

Attorneys for Defendant

March 25, 2004