**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02-131C |
| | ) | (Judge George W. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Alan I. Saltman
SALTMAN & STEVENS, P.C.
1801 K Street, NW
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiff

Of Counsel:

Richard W. Goeken
David J. Craig
SALTMAN & STEVENS, P.C.
1801 K Street, NW
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Dated: March 25, 2004

# TABLE OF CONTENTS

**PAGE**

Index to Appendix ............ ii

Table of Authorities ............ iv

I. Issues Presented ............ 1

II. Introduction ............ 1

III. Summary Of The Facts. ............ 2

IV. Argument. ............ 4

A. The Defendant's Assessments Of Damages In This Case Were Not In Dispute And Therefore Did Not Constitute Claims Upon Which Valid Final Decisions Could Be Based. ............ 4

B. The Defendant Did Not Have A Legal Right To The Estimated Amounts Claimed. ............ 10

V. Conclusion ............ 14

# INDEX TO APPENDIX

**DESCRIPTION** **PL. APP. PAGE**

Letter, dated 6/12/2000 from Richard Stephens to Precision Pine, informing Precision Pine that Frontier Insurance Company had been removed from the List of Approved Sureties....1

Letter, dated 6/12/2000 from Richard Stephens to Precision Pine, informing Precision Pine that Frontier Insurance Company had been removed from the List of Approved Sureties....2

Forest Service Contract Clause CT9.2 – Disputes (7/80)....3

Forest Service Contract Clause CT9.2 – Disputes (7/80)....5

Forest Service Contract Clause CT9.3 – Breach (6/90)....6

Forest Service Contract Clause CT9.4 – Failure to Cut (4/82)....7

Forest Service Contract Clause CT9.4 – Failure to Cut (4/82)....8

Letter, dated January 9, 2001, from Eleanor Towns, Regional Forester, to Precision Pine terminating 12 contracts for failure to provide bonding or other acceptable surety....9

Cover letter, dated February 21, 2001, from Richard Stephens to Precision Pine, accompanying the Decision Document, Default Damage Calculations, and Bill for Collections for Hutch-Boondock, Monument and U-Bar....12

U-Bar Sale Decision Document with attached Default Damage Calculations and Bill for Collection....13

Monument Multi-Product Sale Decision Document with attached Default Damage Calculations and Bill for Collection....23

Hutch-Boondock Multi-Product Sale Decision Document with attached Default Damage Calculations and Bill for Collection....32

Cover letter, dated March 1, 2001, from Susan Lee to Precision Pine, accompanying the Decision Document, Default Damage Calculations, and Bill for Collections for Brookbank, Gentry, Jersey Horse, O.D. Ridge, and Wiggin....41

O.D. Ridge Sale Decision Document with attached Default Damage Calculations and Bill for Collection ........................................................................................................42

Jersey Horse Sale Decision Document with attached Default Damage Calculations and Bill for Collection ........................................................................................................51

Gentry Multi-Product Sale Decision Document with attached Default Damage Calculations and Bill for Collection ........................................................................................60

Wiggins Multi-Product Sale Decision Document with attached Default Damage Calculations and Bill for Collection ........................................................................................69

Brookbank Multi-Product Sale Decision Document with attached Default Damage Calculations ........................................................................................................................78

Cover letter, dated March 1, 2001 from David Harris to Precision Pine, accompanying the Final Decision of the Contracting Officer regarding Brann .......................................................87

Brann Decision Document with attached Default Damage Calculations and Bill for Collection..........................................................................................................................88

Saginaw-Kennedy Decision Document with attached Default Damage Calculations and Bill for Collection ......................................................................................................100

Cover letter, dated March 14, 2001, from Marion Yost to Precision Pine, accompanying the Decision Document, Default Damage Calculations, and Bill for Collections for Lily .................111

Lily Decision Document with attached Default Damage Calculations and Bill for Collection........................................................................................................................112

Cover letter, dated April 5, 2001, from David Cummings to Precision Pine, accompanying the Decision Document for Manaco ..........................................................................................124

Manaco Decision Document.................................................................................................125

Forest Service Manual § 2454.1, Contract Disputes ...........................................................128

Forest Service Administration Handbook, § 72 – Disputes Under Contract Disputes Act Authority .........................................................................................................................129

Forest Service Administration Handbook, § 72.1 – Claims by the Government Against Purchaser.........................................................................................................................130

Excerpts from Defendant's Answer, Affirmative Defenses, and Counterclaim............................131

## TABLE OF AUTHORITIES


**CASES** **PAGE**

A.E. Finley & Associates, Inc. v. United States,
898 F.2d 1165 (6th Cir. 1990) ........................................................................9

Applied Cos. v. United States,
144 F.3d 1470 (Fed. Cir. 1998) ........................................................................4

Cupey Bajo Nursing Home, Inc. v. United States,
23 Cl. Ct. 406 (1991) ........................................................................5, 8

Dawco Constr., Inc. v. United States,
930 F.2d 872 (Fed. Cir. 1991) ........................................................................7, 8

Engle Investors v. United States,
21 Cl. Ct. 543 (1989) ........................................................................11

Forest Env't. Serv. Co., Inc. v. United States,
5 Cl. Ct. 774 (1984) ........................................................................12, 13

Forest Guardians v. Thomas,
967 F.Supp.1536 (D. Ariz. 1997), *aff'd sub nom.*,
Forest Guardians v. Dombeck, 131 F.3d 1309 (9th Cir. 1997) ..........................................3

Keystone Coat & Apron Mfg. Corp., v. United States,
150 Ct. Cl. 277 (1960) ........................................................................8, 9

Little River Lumber Co. v. United States,
21 Cl. Ct. 527 (1990) ........................................................................5, 8

Madigan v. Hobin Lumber Co.,
986 F.2d 1401 (Fed. Cir. 1993) ........................................................................11

Mingus Constructors, Inc. v. United States,
812 F.2d 1387 (Fed. Cir. 1987) ........................................................................5

Precision Pine & Timber, Inc. v. United States,
50 Fed. Cl. 35 (2001) ........................................................................2, 3

Reflectone, Inc. v. United States,
60 F.3d 1572 (Fed. Cir. 1995) ........................................................................5, 7, 8

Sharman Co. v. United States,
2 F.3d 1564 ( )....................................................................................................5

Volmar Constr., Inc. v. United States,
32 Fed. Cl. 746 (1995)..........................................................................................5

**STATUTES**

RCFC
12(b)(1)..........................................................................................................2, 10
56....................................................................................................................2

41 U.S.C.
§ 601-613 .......................................................................................................2
§ 605 (a) (1994 and Supp. V 2001) ..............................................................2, 4

48 C.F.R.
§ 33.201..........................................................................................................7

**MISCELLANEOUS**

138 Cong. Rec. S17799 (daily ed. Oct. 8, 1992) (statement of Sen. Heflin)..................................5

Forest Service Timber Sale Administration Handbook, FSH 2409.15, § 72.1...............................6

Forest Service Manual, § 2454.1 (eff. 07/12/2000).........................................................6

## I. Issues Presented

1. Whether this Court has jurisdiction over the defendant's damage claims.

2. Whether the contracts authorize the defendant to base its damage claims on estimates.

## II. Introduction

In its Answer to Precision Pine & Timber, Inc.'s ("Precision Pine") Complaint challenging the default termination of twelve of Precision Pine's timber sale contracts, the government asserted a counterclaim for breach of contract and damages allegedly resulting therefrom in the amount of $767,625.72.[1] The government alleges that Precision Pine "breached each of these contracts by failing to maintain bonding issued by a company identified on the Government's list of acceptable sureties." Defendant's Answer, Affirmative Defenses, and Counterclaim at 16, ¶ 113 (excerpt attached, Appendix at 135). However, as demonstrated below, the government's counterclaim is based on invalid Contracting Officers' final decisions and therefore this Court lacks jurisdiction over the government's counterclaim under the

[1]The twelve contracts are: the O.D. Ridge Timber Sale ("O.D. Ridge"), awarded August 14, 1992; the Brookbank Multi-Product Sale ("Brookbank"), awarded April 13, 1995; the Jersey Horse Timber Sale ("Jersey Horse"), awarded December 13, 1993; the Saginaw-Kennedy Timber Sale ("Saginaw-Kennedy"), awarded September 29, 1994; the Brann Timber Sale ("Brann"), awarded September 29, 1994; the U-Bar Timber Sale ("U-Bar"), awarded October 5, 1992; the Monument Multi-Product Sale ("Monument"), awarded September 28, 1994; the Manaco Timber Sale ("Manaco"), awarded January 17, 1995; the Hutch-Boondock Multi-Product Sale ("Hutch-Boondock"), awarded June 29, 1994; the Gentry Multi-Product Sale ("Gentry"), awarded January 15, 1998; the Wiggins Multi-Product Sale ("Wiggins"), awarded December 2, 1998; and the Lily Timber Sale ("Lily"), awarded December 23, 1997. Appendix at 134-135.

Contract Disputes Act (CDA), 41 U.S.C. §§ 601-613. See 41 U.S.C. § 605(a). Accordingly, pursuant to RCFC 12(b)(1), defendant's counterclaim should be dismissed.

Moreover, rather than using the procedures for determining damages that the parties had agreed to in each of the contracts, the Forest Service instead based its claims on "estimated" calculations of damages. This method of determining damages is not authorized by the timber sale contracts, which specify the exclusive means by which the government may determine its damages. Accordingly, even if this Court does have jurisdiction over the government's putative claims, Precision Pine is entitled to summary judgment in its favor on the government's counterclaim as a mater of law pursuant to RCFC 56.

## III. Summary Of The Facts

For the 2000 timber harvesting season, Precision Pine had secured and the Forest Service had accepted bonding for all of the Forest Service timber sale contracts at issue in this case from Frontier Insurance Company ("Frontier"), however, during the summer of 2000, the government removed Frontier from its approved list of sureties. See, e.g., Appendix at 1.[2] As a result, when,

[2]In Precision Pine and Timber, Inc. v. United States, 50 Fed. Cl. 35 (2001), the court ruled that the Forest Service had breached 12 of Precision Pine's contracts, including eight of the 12 contracts at issue in the instant case. Precision Pine also contends that the Forest Service's prior material breach of these contracts relieves Precision Pine of liability for the subsequent default alleged in this matter. However, Precision Pine also anticipates that the ultimate resolution of this issue and the government's putative defenses to it will require a factual investigation by the Court. Accordingly, Precision Pine has not moved for summary judgment on this issue as part of the instant briefing of dispositive motions.

thereafter, Precision Pine was unable to secure a new surety acceptable to the government, the Forest Service placed Precision Pine in breach of contract.[3] Appendix at 9-11.

By letter dated January 9, 2001, the Forest Service notified Precision Pine that each of the contracts at issue in this case was being terminated for breach pursuant to contract clause CT9.3 (6/90) and that the Forest Service would determine the amount of damages owed, if any, in accordance with contract clause CT9.4 (4/82). Appendix at 9-11. From late February to early April 2001, the Forest Service sent packets regarding its damage claims to Precision Pine. A copy of each of these packets is included in the Appendix at 12-127. Each packet generally contained a "Bill for Collection" for estimated damages, an estimated "Default Damage Calculations" and a "Decision Document" which the Forest Service characterized as "a final decision of the contracting officer."[4] Id. The estimated damages demanded by the Forest Service totaled $767,625.72, broken down by sale as follows:

---

[3]Through no fault of its own, operations on a significant number of Precision Pine's timber sale contracts were suspended by the Forest Service during the peak of three consecutive timber harvest seasons in 1995, 1996 and 1997. The facts and circumstances surrounding the suspension lasting from August 25, 1995 to December 4, 1996 are discussed in Precision Pine and Timber, Inc. v. United States, 50 Fed. Cl. 35 (2001) and the facts and circumstances surrounding the suspension lasting from late-May, 1997 to December 15, 1997 are contained in Forest Guardians v. Thomas, 967 F.Supp.1536 (D. Ariz. 1997), *aff'd sub nom.*, Forest Guardians v. Dombeck, 131 F.3d 1309 (9th Cir. 1997).

[4]However, with regard to two of the sales (Brookbank and Manaco), the Forest Service's estimated damages were $0 and these packets did not include a Bill for Collection.

| Sale | Forest Service's estimated damages |
|---|---|
| O.D. Ridge Timber Sale | $148,845.38 |
| Jersey Horse Timber Sale | $ 9,035.47 |
| Saginaw-Kennedy Timber Sale | $101,642.20 |
| Brann Timber Sale | $ 36,888.97 |
| U-Bar Timber Sale | $215,691.04 |
| Monument Multi-Product Sale | $ 81,477.88 |
| Hutch-Boondock Multi-Product Sale | $ 2,278.72 |
| Gentry Multi-Product Sale | $ 92,236.78 |
| Wiggins Multi-Product Sale | $ 13,016.93 |
| Lily Timber Sale | $ 66,512.35 |
| Brookbank Multi-Product Sale | $0 |
| Manaco Timber Sale | $0 |

Appendix at 135-136.

As discussed below, in no instance, however, was the amount demanded by the Forest Service on any sale ever in dispute as is required under the CDA before a valid final decision of the contracting officer can be issued. Moreover, in each instance, the Forest Service did not have a legal right under the contracts to the estimated amount that it demanded from Precision Pine.

## IV. Argument

### A. The Defendant's Assessments Of Damages In This Case Were Not "In Dispute" And Therefore Did Not Constitute "Claims" Upon Which Valid Final Decisions Could Be Based.

As this Court is aware, the CDA mandates that "[a]ll claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer." 41 U.S.C. § 605(a) (1994 and Supp. V 2001) (emphasis added); see also Applied Cos. v. United States, 144 F.3d 1470, 1477 (Fed. Cir. 1998). Indeed, the Federal Circuit has held that a final

decision by the Contracting Officer on a claim is "a 'jurisdictional prerequisite' to further legal action thereon." Sharman Co. v. United States, 2 F.3d 1564, 1568 (quoting 138 Cong. Rec. S17799 (daily ed. Oct. 8, 1992) (statement of Sen. Heflin)). The CDA does not define the term "claim." See Volmar Constr., Inc. v. United States, 32 Fed. Cl. 746, 751 (1995) ("The Contract Disputes Act (CDA) provides little guidance as to what constitutes a valid government claim"); Cupey Bajo Nursing Home, Inc. v. United States, 23 Cl. Ct. 406, 412 (1991) ("The word 'claim' is a term of art that is *not* defined by the CDA") (emphasis is in original). While the Federal Acquisition Regulations ("FAR") do spell out the requirements for a "claim," see Reflectone, Inc. v. United States, 60 F.3d 1572, 1575 (Fed. Cir. 1995), the FAR does not apply to timber sale contracts. See, e.g., Little River Lumber Co. v. United States, 21 Cl. Ct. 527, 534 (1990). Therefore, in timber sale contracts, it is the interpretation of the operative language of the contract in conjunction with the facts of the case that must control whether a particular demand for payment constitutes a valid claim. See generally Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1395 (Fed. Cir. 1987); see also Reflectone, 60 F.3d at 1575 n.3.

Each of the contracts here in issue contains Contract Clause CT9.2 ("Disputes")[5] which states that a claim is "a written demand (or assertion) by one of the contracting parties seeking, as a legal right, the payment of money, adjustment or interpretations of contract terms, or other

---

[5]The Lily, Gentry and Wiggins contracts contain version (10/96) of clause CT 9.2 (see Appendix at 5); the other nine contracts contain version (7/80) of the clause. See Appendix at 3-4. The two versions of Clause CT 9.2 are identical in all material respects that are relevant to the issues in this case.

relief, arising under or related to the contract."[6] Appendix at 3-5. CT9.2 further indicates that "[a] voucher, invoice, or request for payment that is not in dispute when submitted is not a claim for purposes of the [CDA]." Id.[7]

In this regard, the procedure contemplated by the Forest Service for asserting a claim against a purchaser is set forth in the Forest Service Timber Sale Administration Handbook, FSH 2409.15, § 72.1, Claims by the Government Against the Purchaser (effective 4/1/99), which provides:

> Bills for Collection (form FS-6500-89) relating to timber sales and retention of purchaser deposits by the Government which are not in dispute are not claims. However, if the purchaser does not pay within in the time specified in the contract or the Bill for Collection or the purchaser disputes either liability or amount, a Government claim against the purchaser exists. Assert the Government claim by means of a Contracting Officer's decision. Document such claims in writing.

Appendix at 130.

Plainly, the contract and the Forest Service's own policy contemplate a two-step process whereby (1) the purchaser is presented with a specific dollar claim against it, given an opportunity to dispute it and (2) only thereafter may the Forest Service assert its claim against the contractor in a final decision.

---

[6]This definition of a claim is also reflected in Forest Service's own internal manual provisions. See Forest Service Manual, § 2454.1 (eff. 07/12/2000). Appendix at 128.

[7]This is entirely consistent with another statement in the Timber Sale Administration Handbook which advised Contracting Officers to issue final decisions only where "the parties cannot agree to satisfy or settle a claim." Appendix at 129, Handbook at § 72.

Despite the unambiguous contractual language of clause CT9.2 and the Forest Service manual and handbook provisions, for each of the contracts here in issue, the Forest Service provided a Bill for Collection to Precision Pine for the first time simultaneously with a putative Contracting Officer's final decision. See, e.g., Appendix at 12-22 ("Decision Document," "Default Damage Calculations," "Bill for Collection," and cover letter for U-Bar). Consequently, Precision Pine did not have an opportunity to dispute the damage amount demanded prior to the issuance of any of the putative final decision.[8] Such being the case, the government's assessment of damages on each of these contracts was not "in dispute" and could not constitute a "claim" upon which a valid final decision could be based as required by the CDA.

The CDA's requirement that a claim be put in dispute before a valid Contracting Officer's final decision may be issued is amply supported by the case law. In Dawco Constr., Inc. v. United States, 930 F.2d 872, 877-79 (Fed. Cir. 1991), the court found that all demands/requests for payment needed to be in dispute in order to constitute a "claim" under the CDA upon which a final decision could be rendered. Dawco was subsequently overruled in part by the Federal Circuit in Reflectone v. Dalton, 60 F.3d 1572 (Fed. Cir. 1995), on the grounds that the FAR definition of "claim" on which Dawco was based merely required that a "voucher, invoice, or other routine request for payment" be in dispute. 48 C.F.R. § 33.201 (emphasis added). However, in doing so, the Federal Circuit made it clear that it was overruling Dawco

[8]Of course, with respect to final decisions where "damages" were determined to be $0.00, Precision Pine had no reason to dispute the amounts requested in the final decisions.

only to the extent that Dawco had relied on the FAR to find an all-encompassing "in dispute" requirement:

> Although Dawco first held that the requirement that a "claim" be in dispute was explicit in that particular contract's disputes clause, the opinion also grounded that requirement in the language of the FAR. . . . To the extent that Dawco and its progeny have been read to also hold that based on FAR 33.201, a claim (other than a routine request for payment) must already be in dispute when submitted to the CO, they are hereby overruled.

Reflectone, 60 F.3d at 1579. As noted, the FAR does not apply to timber sale contracts, Little River Lumber Co., supra. Therefore, the reasoning of the Federal Circuit in Dawco continues to apply to timber sale contracts and pre-Reflectone cases remain instructive in determining whether the government's demands for payment here were "in dispute" at the time each Contracting Officer issued a final decision in the instant cases.

In this regard, cases interpreting contracts with language virtually identical to CT9.2 have held that a pre-existing dispute is a prerequisite for any valid CDA claim. For example, in Cupey Bajo Nursing Home, Inc., 23 Cl.Ct. 406 (1991), the contract there in question also stated that: "A voucher, invoice, or request for payment that is not in dispute when submitted is not a claim for the purposes of the [CDA]." Id. at 412-13 (brackets in original). The Claims Court construed this language as requiring that a dispute exist at the time of the Contracting Officer's final decision. The court concluded that "even a request for the payment of a specified monetary sum is not a claim under the CDA unless it is disputed." Id. at 413 (emphasis added). The court further stated the obvious, that "A dispute does not arise, of course, until both parties express their disagreement. Id. citing Keystone Coat & Apron Mfg. Corp., v. United States, 150 Ct. Cl.

277 (1960). As stated in Keystone, a "dispute" requires a difference of opinion, and there can be no dispute unless each party's position is known. Id. ("We have always thought it takes two to make a dispute. But this was unilateral . . . . Plaintiff was not asked to explain. It was told to pay. A unilateral declaration that money is owed is insufficient; the other party must be given an opportunity to evaluate the assertion and respond before there can be a dispute").

Furthermore, as stated in A.E. Finley & Associates, Inc. v. United States, 898 F.2d 1165 (6th Cir. 1990), even the fact that a dispute was "reasonably likely to exist" is not sufficient to put a matter into dispute. The dispute must be palpable. Id. at 1169 (citations omitted). In the instant case, no request for payment was converted into a claim pursuant to contract clause CT9.2 prior to the issuance of a final decision. That clause provides that where an undisputed voucher, invoice, or request for payment "is subsequently not acted upon in a reasonable time, or disputed either as to liability or amount, it may be converted to a claim pursuant to the Act." Appendix at 3 (CT9.2 (7/80) (c)(ii)). However, in the instant case, the Forest Service simultaneously made its initial demand for payment of default damages and issued a putative contracting officer's final decision in which it "decided" that the amount which it sought was in fact due from Precision Pine. There was no time provided in which the matter could be put "in dispute" by Precision Pine such as by letter disagreeing with the amount that the government had demanded.

In sum, because Precision Pine was not afforded an opportunity to dispute the amount sought from it by the Forest Service, no valid claims existed upon which final decisions could have been released and this Court lacks CDA jurisdiction over any appeals from those putative

final decisions. Accordingly, the government's counterclaim should be dismissed for lack of jurisdiction pursuant to RCFC 12(b)(1).

**B. The Government Did Not Have A Legal Right To The Estimated Amounts Claimed.**

To the extent that the Court concludes that it somehow does have CDA jurisdiction over defendant's counterclaim notwithstanding the lack of valid final decisions, the Forest Service failed to comply with the terms of its contracts in assessing damages.

Contract clause CT9.3 (6/90) found in each of the contracts requires that "damages due the United States for termination under this provision shall be determined pursuant to CT9.4." Appendix at 6. CT9.4, in turn, provides that

> In the event of (a) termination for breach . . ., Forest Service shall appraise remaining Included Timber . . . . Such appraisal shall be made with the standard Forest Service method in use at time of termination.
>
> Damages due the United States for Purchaser's failure to cut and remove Included Timber meeting Utilization Standards shall be the amount by which Current Contract Value, plus costs described below, less any Effective Purchaser Credit remaining at time of termination, exceeds the resale value at new Bid Rates. If there is no resale, damages due shall be determined by subcontracting the value established by said appraisal from the difference between Current Contract Value and unused Effective Purchaser Credit, plus . . . applicable costs . . . .

Appendix at 7. Thus, the contract provides the Forest Service with two means, and only two means, by which to determine its damages, if any: (1) resell the Included Timber and calculate its damages based on the difference between the contract price at termination and the resale

value or (2) "if there is no resale," calculate its damages based on the difference between the contract price and the appraised value of the timber as of the date of termination.

The government has no legal right to deviate from these two alternatives specified by the contract for determining termination damages. Madigan v. Hobin Lumber Co., 986 F.2d 1401, 1405 (Fed. Cir. 1993) (agreed upon contract terms, specifically including Forest Service clause B9.4, must be enforced according to their terms);[9] Engle Investors v. United States, 21 Cl. Ct. 543, 549 (1989) (The government is required to calculate damages in accord with provisions of defaulted contracts, including clauses such as C9.4; "[t]his was what the parties agreed to in the event of contract termination and this is what the parties had a right to expect when the termination occurred.").[10] However, deviate from the two prescribed methods is precisely what the government did in the instant case. In each of its Bills for Collection and putative final decisions, the government has sought what it has identified as "estimated" damages based on the fact that it anticipated reselling the timber. Indeed, in each case, the amount demanded and for which Precision Pine was billed was based on an estimate of the damages that the Forest Service might sustain at some future date when the timber remaining on the sale is resold.[11] See Appendix at 14, 20, 24, 29, 33, 38, 43, 47, 52, 57, 60-61, 66, 70, 76, 79, 85, 89, 97, 101, 108,

---

[9]B9.4 - Failure to Cut is for all practical purposes identical to CT9.4 (4/82). See Madigan, 986 F.2d at 1402.

[10]C9.4 is identical to CT9.4 (4/82). See Appendix at 8, C9.4.

[11]With respect to Hutch-Boondock contract, the Forest Service apparently decided not to resell the remaining timber but, nevertheless, still only estimated the damages allegedly due the Forest Service. Appendix at 32-34.

113, 118, 126, 127. That is, the Forest Service estimated what it might obtain from the resale of the remaining timber on the sale,[12] calculated interest to the mid-point of the contemplated resale contract, estimated the cost of actually conducting a resale and billed the plaintiff accordingly. See id.

As noted above, under CT 9.4, the Forest Service is not required to resell the timber from a defaulted sale. The other option it has is to calculate its damages based on the standard Forest Service appraisal method in use at the time of termination. Nevertheless, where, as here, a resale was expressly contemplated, nothing in the contracts allowed the Forest Service to "estimate" its damages based on the difference between contract value and the anticipated, i.e., estimated, resale value of the timber knowing that upon a resale those "damages" would need to be adjusted or may even entirely disappear.[13] See Forest Env't. Serv. Co., Inc. v. United States, 5 Cl. Ct. 774, 779 (1984) ("FESCO") (clause B9.4, which is, in all pertinent respects, the same as CT9.4 here in issue, does not provide for both an interlocutory and a final determination of the Forest Service's damages).[14]

---

[12]It generally estimated the amount it would receive at resale simply by calculating the appraised value of the remaining timber at the date of termination. See id.

[13]In each of the putative final decisions where estimated damages were assessed, the Contracting Officer stated that: "This estimate may be adjusted once final damages are determined following the resale of the remaining timber. At that time, any surplus damages collected by this estimate will be refunded to the purchaser, or any additional damages due will be collected, as appropriate." Appendix at 14, 24, 43, 52, 60-61, 70, 89, 101, 113.

[14]As set forth in FESCO, B9.4 provides that:

> Damages due to the United States for purchasers' failure to cut and remove such timber meeting utilization standards shall be the amount by which current

In FESCO, the plaintiff argued that even if clause B9.4 established the proper means of calculating damages in the event of resale, any award of damages thereunder should be adjusted at the end of the resale contract based on the actual volume of timber cut and paid for by the resale contractor. Id. at 780. The government contended that FESCO's approach did not allow for an immediate determination of damages but rather postponed that date until actual damages could be calculated at the end of the resale contract. The court analyzed the issue this way:

> Plaintiff, in essence, by making this argument, would require that the parties wait until the resale contract is completed before ascertaining whether actual damages have been incurred. Plaintiff's formula would preclude the Forest Service from assessing and recovering damages from a breaching party in a timely fashion. This argument is simply untenable in light of the clear language of the contract.
>
> . . .
>
> We refuse to reduce Clause B9.4 to the status of an *interlocutory measure of damages*, by providing for a final determination of damages based on the amount of timber actually cut rather than on the amount estimated at the beginning of the [resale] contract as provided by Clause B9.4.

FESCO, 5 Cl. Ct. at 779 (emphasis added). The Claims Court concluded in FESCO that B9.4 did not permit an interim assessment of damages until "actual" damages could be determined. That rationale applies here as well. That is, the clause does not provide the government with any right to be paid an interim assessment of potential damages until it actually determines the amount, if any, of damages that are in fact owing.

---

> contract value plus the cost of resale, less any effective purchaser credit remaining at the time of termination exceeds the resale value at new bid rates.

5 Cl. Ct. at 777.

As CT9.4 states, the appraisal method to calculate damages is not to be used to estimate damages prior to a resale but rather only "if there is no resale." Nevertheless, in each of the putative final decisions where estimated damages were assessed, the Contracting Officer stated that: "I have estimated the damages due the United States to be $[X]. . . . This estimate may be adjusted once final damages are determined following the resale of the remaining timber. At that time, any surplus damages collected by this estimate will be refunded to the purchaser, or any additional damages due will be collected, as appropriate." Appendix at 14, 24, 43, 52, 60-61, 70, 89, 101, 113.[15]

Here, the Forest Service put the proverbial cart before the horse. It demanded that Precision Pine pay "estimated" damages before it had resold the remaining timber and determined if in fact there are any "actual" damages.

Based on the above, Precision Pine is entitled to summary judgment as a matter of law and defendant's counterclaim should be dismissed.

## V. Conclusion

For the reasons set forth above, plaintiff Precision Pine & Timber, Inc., respectfully requests that the Court grant its motion to dismiss the defendant's counterclaim, or, in the alternative, grant its motion for summary judgment on the defendant's counterclaim.

[15] For the Hutch-Boondock Sale, the Contracting Officer stated nearly the same thing, except he added that "[t]he decision is NOT to re-offer this sale" and adjusted the rest of the operative language in the putative final decision accordingly. Appendix at 33 (emphasis in original).

Respectfully submitted,

s/ Alan I. Saltman

SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiff

Of Counsel:

Richard W. Goeken
David J. Craig
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Dated: March 25, 2004

# APPENDIX

United States Department of Agriculture | Forest Service | Coconino National Forest | 2323 E. Greenlaw Lane
Flagstaff, AZ 86004
Phone: (520) 527-3600
Fax: (520) 527-3620

File Code: 2450

Date: June 12, 2000

Mr. Lorin D. Porter
Precision Pine & Timber Inc.
P. O. Box 70
Heber, AZ 85928

CERTIFIED - RETURN RECEIPT
REQUESTED
Z 472 174 630

Dear Mr. Porter,

It has recently been brought to my attention that Frontier Insurance Company has been removed from the Department of the Treasury's List of Approved Sureties (Department Circular 570 dated June 1, 2000). Frontier Insurance Company is the surety that Precision Pine & Timber is using to cover the Performance and Payment Bond requirements for Timber Sale Contracts on the Coconino National Forest.

Therefore, as per contract Standard Provision BT9.1 Performance Bond, I am requesting that you furnish a new bond with surety satisfactory to the Forest Service. Other acceptable coverage for performance and payment bonds is cash, negotiable securities deposited in a Federal Depository per BT4.22, or a letter of credit. Please furnish us with performance and payment bond coverage within 30 days of receipt of this letter. Failure to provide bond coverage with 30 days of receipt of this letter will result in Breach of Contract.

The following timber sale contracts will require new Performance and Payment bond coverage: Hutch-Boondock M/P, Contract No. 005465; Monument M/P, Contract No. 005564; and U-Bar Timber Sale, Contract No. 005051.

Thank you in advance for your prompt attention to this matter. If you have any questions, feel free to contact me at 520-527-3443.

Sincerely,

RICHARD STEPHENS
Contracting Officer

CC: John Smith, Precision Pine, Winslow
: D. Derrick, FSR
: Contract files

United States Department of Agriculture | Forest Service | Apache-Sitgreaves National Forests | P.O. Box 640 Springerville, AZ 85938 (520) 333-4301 V/TTY (520) 333-6292

File Code: 2450
Date: June 9, 2000

Precision Pine and Timber Inc.
ATTN: Lorin Porter
P.O. Box 70
Heber, AZ 85928

CERTIFIED MAIL - RRR

Dear Lorin:

It has come to our attention that your surety for performance bonds and blanket payment bonds, Frontier Insurance Company, is no longer listed in the Department of Treasury Circular 570 as an acceptable surety for Federal bonding, as required by BT4.3 - Payment Guaranteed by Bond or Deposited Securities, and BT9.1 - Performance Bond.

The following sales are affected:

1. Wiggins Multiproduct (#020012) – Performance Bond #136483 of $24,000.
   Blanket Payment Bonding - $20,000.
2. Jersey Horse (#001756) – Performance Bond # 136486 of $60,000.
   Blanket Payment Bonding – $0.
3. Brookbank (#001822) – Performance Bond #136485 of $26,000.
   Blanket Payment Bonding - $34,000.
4. O.D. Ridge (#001574) – Performance Bond #136487 of $89,000.
   Blanket Payment Bonding - $216,000.
5. Gentry Multiproduct (#001939) – Performance Bond #136484 of $24,000.

Notice of Breach is hereby given, and under the terms of BT9.3 - Breach, you have 30 calendar days from the date of receiving this notice to provide acceptable surety or other security for the aforementioned timber sales.

Sincerely,

KERRY NEDROW
Acting Contracting Officer

cc:
Susan Lee, Springerville RD
Don Holmstrom, Heber RD
Alan Lucas, RO

CT9.2 - DISPUTES. (7/80)

(a) This contract is subject to the Contract Disputes Act of 1978 (Pub. L. 95-563).

(b) Except as provided in the Act, all disputes arising under or relating to this contract shall be resolved in accordance with the provision.

(c)(i) As used herein, "claim" means a written demand or assertion by one of the parties seeking, as a legal right, the payment of money, adjustment or interpretation of contract terms, or other relief, arising under or relating to this contract.

(ii) A voucher, invoice, or request for payment that is not in dispute when submitted is not a claim for the purposes of the Act. However, where such submission is subsequently not acted upon in a reasonable time, or disputed either as to liability or amount, it may be converted to a claim pursuant to the Act.

(iii) A claim by the contractor shall be made in writing and submitted to the Contracting Officer for decision. A claim by the Government against the contractor shall be subject to a decision by the Contracting Officer.

(d) For contractor claims of more than $50,000, the contractor shall submit with the claim a certification that the claim is made in good faith; the supporting data are accurate and complete to the best of the contractor's knowledge and belief; and the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable. The certification shall be executed by the contractor if an individual. When the contractor is not an individual, the certification shall be executed by a senior company official in charge at the contractor's plant or location involved, or by an officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs.

(e) For contractor claims of $50,000 or less, the Contracting Officer must render a decision within 60 days. For contractor claims in excess of $50,000, the Contracting Officer must decide the claim within 60 days or notify the contractor of the date when the decision will be made.

(f) The Contracting Officer's decision shall be final unless the contractor appeals or files a suit as provided in the Act.

(g) The authority of the Contracting Officer under the Act does not extend to claims or disputes which by statute or regulation other agencies are expressly authorized to decide.

(h) Interest on the amount found due on a contractor claim shall be paid from the date the claim is received by the Contracting Officer until the date of the payment.

(i) Except as the parties may otherwise agree, pending final resolution of a claim of the contractor arising under the contract the contractor shall proceed diligently with the performance of the contract in accordance with the Contracting Officer's decision.

CT9.2 - DISPUTES. (10/96)

(a) This contract is subject to the Contract Disputes Act of 1978 (Pub. L. 95-563).

(b) Except as provided in the Act, all disputes arising under or relating to this contract shall be resolved in accordance with this clause.

(c) (i) As used herein, "claim" means a written demand or assertion by one of the parties seeking, as a legal right, the payment of money, adjustment or interpretation of contract terms, or other relief, arising under or relating to this contract.

(ii) A voucher, invoice, or request for payment that is not in dispute when submitted is not a claim for the purposes of the Act. However, where such submission is subsequently not acted upon in a reasonable time, or disputed either as to liability or amount, it may be converted to a claim pursuant to the Act.

(iii) A claim by the contractor shall be made in writing and submitted to the Contracting Officer for decision. A claim by the Government against the contractor shall be subject to a decision by the Contracting Officer.

(d) For contractor claims of more than $100,000, the contractor shall submit with the claim a certification that the claim is made in good faith; the supporting data are accurate and complete to the best of the contractor's knowledge and belief; and the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable. The certification shall be executed by the contractor if an individual. When the contractor is not an individual, the certification shall be executed by a senior company official in charge at the contractor's plant or location involved, or by an officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs.

(e) For contractor claims of $100,000 or less, the Contracting Officer must render a decision within 60 days. For contractor claims in excess of $100,000, the Contracting Officer must decide the claim within 60 days or notify the contractor of the date when the decision will be made.

(f) The Contracting Officer's decision shall be final unless the contractor appeals or files a suit as provided in the Act.

(g) The authority of the Contracting Officer under the Act does not extend to claims or disputes which by statute or regulation other agencies are expressly authorized to decide.

(h) Interest on the amount found due on a contractor claim shall be paid from the date the claim is received by the Contracting Officer until the date of the payment.

(i) Except as the parties may otherwise agree, pending final resolution of a claim of the contractor arising under the contract the contractor shall proceed diligently with the performance of the contract in accordance with the Contracting Officer's decision.

CT9.3 - BREACH. (6/90) The Contracting Officer, with the concurrence of the Regional Forester, may terminate this contract for breach in the event Purchaser:

A. Is convicted for violation of criminal statutes, civil standards, or any other offense indicating a lack of business integrity or honesty that seriously and directly affects the responsibility of Purchaser pursuant to CT6.0,

B. Is convicted for a violation of criminal statutes or civil standards, orders, permits, or other regulations for the protection of environmental quality issued by a Federal agency, State agency, or political subdivision thereof in the conduct of operations thereunder on National Forest System lands, pursuant to CT6.0,

C. Files false information or makes false statements on bid forms or other documents to gain award of this contract,

D. Has engaged in a pattern of activity that demonstrates flagrant disregard for the terms of this contract, such as, but not limited to, repeated suspensions for breach pursuant to BT9.3; causing undesignated timber meeting Utilization Standards to be unnecessarily damaged, negligently, or willfully cut; or, causing other serious environmental degradation or resource damage,

E. Fails to remedy a breach of contract within time limits stated in BT9.3.

Damages due the United States for termination under this provision shall be determined pursuant to CT9.4.

WO-CT9.4

<u>CT9.4</u> - <u>FAILURE TO CUT</u>. (4/82) In event of (a) termination for breach or (b) Purchaser's failure to cut designated timber on portions of Sale Area by Termination Date, Forest Service shall appraise remaining Included Timber, unless termination is under CT8.2 or BT8.22. Such appraisal shall be made with the standard Forest Service method in use at time of termination.

Damages due the United States for Purchaser's failure to cut and remove Included Timber meeting Utilization Standards shall be the amount by which Current Contract Value, plus costs described below, less any Effective Purchaser Credit remaining at time of termination, exceeds the resale value at new Bid Rates. If there is no resale, damages due shall be determined by subtracting the value established by said appraisal from the difference between Current Contract Value and unused Effective Purchaser Credit, plus any of the following applicable costs:

(a) The cost of resale or reoffering;

(b) Any increase in Purchaser Credit Limit allowance for unconstructed Specified Road facilities which are needed to harvest the remaining uncut volume. Such increases are limited to costs for constructing the road to the same standard and specifications required by this contract;

(c) If Purchaser has failed to cut individual trees in the portions of Sale Area cutover and there is no resale of such individual trees, Purchaser shall pay Forest Service for cost of felling and removal or otherwise eliminating such uncut trees in addition to payment of damages described above, except for occasional trees not cut for reasons stated in BT6.4;

(d) The Government's loss caused by the delay in receipt of stumpage payments. Such loss will be measured by interest at the current rate being paid for borrowing by the United States (as calcuLated and published by the Treasury Department in TFRM 6-8025.2) on the unpaid contract value at Termination Date. Interest will be charged for the total number of months, or portions thereof from Termination Date until midpoint of the contract resale period, less any time in excess of 1 year needed to make the resale;

(e) Any increase in reforestation costs, including site preparation, seeding, and planting caused by Purchaser's failure to harvest Included Timber by Termination Date.

C9.4 - FAILURE TO CUT. (4/82) In event of (a) termination for breach or (b) Purchaser's failure to cut designated timber on portions of Sale Area by Termination Date, Forest Service shall appraise remaining Included Timber, unless termination is under C8.2 or B8.22. Such appraisal shall be made with the standard Forest Service method in use at time of termination.

Damages due the United States for Purchaser's failure to cut and remove Included Timber meeting Utilization Standards shall be the amount by which Current Contract Value, plus costs described below, less any Effective Purchaser Credit remaining at time of termination, exceeds the resale value at new Bid Rates. If there is no resale, damages due shall be determined by subtracting the value established by said appraisal from the difference between Current Contract Value and unused Effective Purchaser Credit, plus any of the following applicable costs:

(a) The cost of resale or reoffering;

(b) Any increase in Purchaser Credit Limit allowance for unconstructed Specified Road facilities which are needed to harvest the remaining uncut volume. Such increases are limited to costs for constructing the road to the same standard and specifications required by this contract;

(c) If Purchaser has failed to cut individual trees in the portions of Sale Area cutover and there is no resale of such individual trees, Purchaser shall pay Forest Service for cost of felling and removal or otherwise eliminating such uncut trees in addition to payment of damages described above, except for occasional trees not cut for reasons stated in B6.4;

(d) The Government's loss caused by the delay in receipt of stumpage payments. Such loss will be measured by interest at the current rate being paid for borrowing by the United States (as calculated and published by the Treasury Department in TFRM 6-8025.2) on the unpaid contract value at Termination Date. Interest will be charged for the total number of months, or portions thereof from Termination Date until midpoint of the contract resale period, less any time in excess of 1 year needed to make the resale;

(e) Any increase in reforestation costs, including site preparation, seeding, and planting caused by Purchaser's failure to harvest Included Timber by Termination Date.

United States Department of Agriculture | Forest Service | Unit Name | 517 Gold Avenue, SW
Albuquerque, NM 87102-0084
FAX (505) 842-3800
V/TTY (505) 842-3292

File Code: 2450

Date: JAN - 9 2001

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Mr. Lorin D. Porter, President
Precision Pine & Timber, Inc.
P.O. Box 70
Heber, AZ 85928

Dear Mr. Porter:

By letters from the Contracting Officers on the timber sale contracts noted below, sent between the dates of September 26 and October 2, 2000, you were given final notice that unless you provided adequate bonding for the timber sale contracts indicated, the contracts would terminate on October 25, 2000. You did not provide the requested bonding.

On Thursday, October 26, 2000, I received requests from the Timber Sale Contracting Officers to terminate the referenced contracts for failure to remedy breach pursuant to contract provisions BT9.3 - Breach and CT9.3 - Breach. The breach stems from your failure to provide new bonding satisfactory to the Forest Service when Frontier Insurance Company was removed from the list of acceptable sureties on Government contracts in June of this year. Along with their requests, the Contracting Officers provided information pertinent to the situation, sufficient to form a basis for making a decision.

I have reviewed the information provided to me regarding the failure of Precision Pine & Timber, Inc. to provide payment guaranties or other bonding or surety acceptable to the Forest Service as required by timber sale contract provision BT9.1 - Performance Bond on the following Region 3 timber sales:

| National Forest | Sale Name | Contract Number |
|---|---|---|
| Apache-Sitgreaves: | Gentry Multiproduct | 030104001939 |
| | Wiggins Multiproduct | 030104020012 |
| | Jersey Horse | 030105001756 |
| | Brookbank Multiproduct | 030105001822 |
| | O.D. Ridge | 030106001574 |
| Coconino: | Hutch-Boondock Multiproduct | 030404005465 |
| | Monument Multiproduct | 030404005564 |
| | U-Bar | 030407005051 |
| Gila: | Lily | 030603020140 |

| | | |
|---|---|---|
| Kaibab: | Saginaw-Kennedy<br>Brann | 030701006585<br>030702006577 |
| Tonto: | Manaco | 031204004625 |

Upon review of the material provided, it is apparent that the Contracting Officers have given you ample opportunity to remedy this situation. Not only have you had the time granted under the terms of the contract to rectify the situation, but you were also given more than 50 additional calendar days to comply with the terms of your contracts. In addition, you were presented with the opportunity to unburden yourself of these contracts, without the assessment of damages, through mutual cancellation at our recent settlement discussions. Unfortunately, you chose not to take advantage of this offer, leaving our Contracting Officers no choice but to take action pursuant to the terms of these contracts when you failed to provide adequate bonding or otherwise remedy the breaches by October 25, 2000.

Based upon the failure of Precision Pine & Timber, Inc. to provide surety acceptable to the Forest Service despite having over 3 months to remedy the situation, I conclude that it is appropriate to cancel the above-listed contracts by termination for breach pursuant to special contract provision CT9.3 - Breach and for the Contracting Officers to seek recovery for any damages due the government arising out of the termination of these contracts in accordance with special contract provision CT9.4 - Failure to Cut.

I understand that the Contracting Officers have referred to a cancellation of the contracts as of December 4, 2000. Due to a clerical error, which we have only now discovered, I realize that the appropriate letter canceling all of the contracts may not have been sent.

Therefore, pursuant to 36 CFR § 223.116(b), I hereby cancel the above-listed timber contracts pursuant to contract provisions and regulations regarding cancellation for breach effective Tuesday, January 9, 2000. This decision is final. The Contracting Officers will determine damages due pursuant to CT9.4 - Failure to Cut.

Eleanor S. Towns

ELEANOR S. TOWNS
Regional Forester

Cc:
Frontier Insurance Company
2636 Elm Hill Pike, Suite 500
Nashville, TN 37214

FFH

Patricia Disert, OGC

Jim Caine, DOJ

Forest Supervisors:
Gila NF
Apache-Sitgreaves NFs
Coconino NF
Kaibab NF
Tonto NF

Contracting Officers:
Bob Yost, Gila NF
Susan Lee, A/S NF
Kerry Nedrow, A/S NF
Dave Cummings, Tonto NF
Richard Stephens, Coconino NF
Dave Harris, Kaibab NF

United States Department of Agriculture | Forest Service | Coconino National Forest, Supervisor's Office | 2323 E. Greenlaw Lane
Flagstaff, AZ 86004-1810
Phone: (520) 527-3600
Fax: (520) 527-3620

File Code: 2450-3
Date: February 21, 2001

Certified – Return Receipt Requested
7099 3400 0017 8456 7420

Mr. Lorin Porter
Precision Pine & Timber, Inc.
P.O. Box 70
Heber, AZ 85928

RE: Hutch-Boondock Multiproduct Sale, Contract # 030404005465; Monument Multiproduct Sale, Contract # 030404005564; U-Bar Timber Sale, Contract # 030407005051

Dear Mr. Porter,

The above-referenced contracts were terminated on January 9, 2001, (for failure to remedy CT9.3-Breach), by Regional Forester, Eleanor S. Towns. This breach stems from your failure to provide new bonding satisfactory to the Forest Service when Frontier Insurance Company was removed from the list of acceptable sureties on Government contracts in June of 2000.

Enclosed are the estimated Default Damage Calculations, Decision Documents, and Bill for Collections for estimated damages on these sales. Payment is due on March 23, 2001.

Because you have had the above-referenced contracts cancelled for breach, your company will be referred to the Debarring or Suspending Official for possible administrative action.

Your bonding company, Frontier Insurance Company, will be notified of this pending claim.

Sincerely,

RICHARD STEPHENS
Contracting Officer

Enclosures

CC: Alan Lucas, RO Forestry
Patricia Disert, OGC
Dan Derrick, FSR
Frontier Insurance Co.

DECISION DOCUMENT

PURCHASER AND ADDRESS:

Precision Pine & Timber, Inc
P.O. Box 70
Heber, AZ 85928

1) **Preface & Digest:**

Decision Number: 3-01-09

Location of Sale:

| | |
|---|---|
| Region | 3 |
| National Forest | COCONINO |
| Ranger District | BLUE RIDGE RD |

Sale Information:

| | |
|---|---|
| Purchaser Name: | Precision Pine & Timber, Inc. |
| Contract Date: | 10/05/92 |
| Contract Number: | 07-005051 |
| Sale Name: | U-BAR |
| Contract Form: | FS 2400-6T |
| Termination Date: | January 9, 2001 |

2) **Claim Summary:**

This documents the Contracting Officer's Decision regarding a claim under the Contract Disputes Act by the United States Government against Precision Pine & Timber, Inc. for the sum of $ 215,691.04 for its default of the U-Bar Timber Sale, contract number 07-005051.

3) **<u>Government's Claim:</u>**

The U-Bar timber sale was cancelled by Regional Forester, Eleanor S. Towns, on January 9, 2001, for failure to remedy breach pursuant to special contract provision <u>CT 9.3 - Breach</u>. When a timber sale contract is terminated before completion, the Contracting Officer must determine if the United States has been damaged (FSM 2453.5). Damages due to the United States for Purchaser's failure to cut and remove included timber are outlined in contract provision <u>CT9.4</u> - <u>Failure to Cut</u>.

Based on procedures and applicable costs described in provision CT9.4, I have estimated the damages due the United States to be $ 215,691.04 for the U-Bar timber sale. This estimate may be adjusted once final damages are determined following the resale of the remaining timber. At that time any surplus damages collected by this estimate will be refunded to the purchaser, or any additional damages due will be collected, as appropriate.

4) **<u>Findings:</u>**

A. Contract Requirements:

The following CT contract provisions are pertinent to the claim.

CT9.3 - BREACH (6/90)
CT9.4 - FAILURE TO CUT (4/82)

B. Facts:

Precision Pine designated Frontier Insurance Company as its surety for the U-Bar timber sale. In June, the Department of the Treasury removed Frontier Insurance Company from their list of acceptable sureties for federal contracts. The Contracting Officer sent Purchaser a letter advising it of the removal, and reminding the Purchaser of the contract requirement in BT9.1 -- Performance Bond to provide alternative surety satisfactory to the Forest Service.

Precision Pine failed to provide a surety satisfactory to the Forest Service within the appropriate time period. On July 17, 2000, the Contracting Officer notified Purchaser that it was in material breach of the contract. Purchaser thereafter failed to remedy the material breach. Based on this failure, the Regional Forester terminated the U-Bar timber sale contract for failure to remedy breach pursuant to CT9.3-- BREACH, on January 9, 2001.

Pursuant to CT9.4– FAILURE TO CUT, the Contracting Officer has estimated the damages suffered by the Government as a result of the default. A summary of the Contracting Officer's calculations of the estimated damages for the U-Bar timber sale is attached.

5) **Contracting Officer's Disposition of the Claim:**

The Contracting Officer estimates the damages due the government for the default of the U-Bar timber sale to be $ 215,691.04.

A Bill for Collection in that amount is attached to this decision.

6) **Concluding Information:**

This is the final decision of the Contracting Officer. This decision may be appealed to the Agriculture Board of Contract Appeals.

If you decide to make such an appeal, you must mail or otherwise furnish written notice thereof to the Agriculture Board of Contract Appeals within 90 days from the date you receive this decision. A copy thereof shall be furnished to the Contracting Officer from whose decision appeal is intended, shall reference this decision, and identify this contract by number. In lieu of appealing to the Agriculture Board of Contract Appeals, you may bring an action directly in the Court of Federal Claims within 12 months of the date you receive this decision.

Signature: Richard Stephens

Date: February 21, 2001

Contracting Officer
Richard Stephens
2323 E. Greenlaw Lane
Flagstaff, AZ 86004
Telephone: 520-527-3443

# DEFAULT DAMAGE CALCULATIONS

## U-BAR TIMBER SALE
## CONTRACT NO. 07-005051

## USDA FOREST SERVICE
## COCONINO NATIONAL FOREST

The U-Bar timber sale was cancelled by the Regional Forester, Eleanor S. Towns, on January 9, 2001, for failure to remedy breach pursuant to special contract provision CT 9.3 - Breach. As directed by the Regional Forester and in accordance with Forest Service policy when a timber sale contract is terminated before completion, the Contracting Officer must determine if the United States has been damaged (FSM 2453.5). Damages due the United States for Purchaser's failure to cut and remove included timber are outlined in contract provision CT9.4 - Failure to Cut.

The U-Bar timber sale consisted of nine (9) separate payment units when originally sold. The U-Bar sale had two (2) contract modifications, which increased the final number of separate payment units to nineteen (19). Ten (10) payment units have been cut and accepted. Eight (8) payment units have not been entered, and one payment unit had been released and a portion of the timber removed. At the time of termination, the remaining volume of included timber on the U-Bar timber sale was 1,634 **MBF** of Ponderosa Pine sawtimber, 903 **MBF** of Douglas Fir & Other Sawtimber, and 48 **cords** of pulpwood. The current contract value of the sale at termination was **$677,204.60.** The sale was sold as an Escalated sale, so there will be adjustments to the current contract rates at the end of this quarter. The final revised purchaser credit limit on the sale was $208,843.59. The majority of the purchaser credits were transferred to other sales, however some was used to cover stumpage on this sale. An appraisal of the remaining timber at the time of termination, using the standard Forest Service method in use at that time and conditions of the original contract, resulted in an appraised value of **$552,837.46.**

Based on procedures and applicable costs described in provision CT9.4 the following pages outline the calculation of estimated damages due the United States for default of the U-Bar timber sale contract. This estimate may be adjusted once final damages are determined following the resale of the remaining timber. At that time any surplus damages collected by this estimate will be refunded to the purchaser, or any additional damages due will be collected, as appropriate.

**REMAINING TIMBER**

At the time of default the contract value of the timber at termination was:

Unreleased Payment Units (# 1 & #3)

| Species | Volume | Rates @ Termination | Value |
|---|---|---|---|
| PP-Sawtimber | 1,600 MBF | $ 353.88/MBF | $ 566,208.00 |
| DF&O-Sawtimber | 826 MBF | $ 99.30/MBF | $ 82,021.80 |
| PP-Roundwood | 48 cords | $ 3.00/cord | $ 144.00 |

Released (Cut Over) Payment Units (#2)

| Species | Volume | Rates @ Termination | Value |
|---|---|---|---|
| PP-Sawtimber | 34 MBF | $ 453.00/MBF | $ 15,402.00 |
| DF&O-Sawtimber | 77 MBF | $ 174.40/MBF | $ 13,428.80 |

**REMAINING CONTRACT VALUE @ TERMINATION:** **$ 677,204.60**

**COST OF RESALE**

Because this sale is an older sale, marked and cruised in 1991 and 1992, it will require remarking of cut and/or leave trees and cutting unit boundaries prior to reselling. Additional costs associated with the resale include the cost of preparing a revised appraisal and contract package as well as an additional advertisement. Costs here are based on best estimates of what will be required and will be adjusted, upwards or downwards depending upon actual costs incurred, once final damages are determined.

**Estimated time and costs to remark cutting unit boundaries and touch up mark within units:**
1 Marking crew foreman for 20 days:
3 Crew members for a total of 50 person days:

| | |
|---|---|
| Crew Foreman @ $170/day X 20 days = | $ 3,400.00 |
| Crew Members @ $140/day X 50 days = | $ 7,000.00 |
| Paint: 40 cases @ $ 72/case = | $ 2,880.00 |

| | | |
|---|---|---|
| Vehicle Cost (2): 3,600 miles @ .24/mile (2 vehicles 18 days @ 100 miles/day) | | $ 864.00 |
| FOR (2 vehicles 1 month ea) 2 Month ($319/mo) | | $ 638.00 |
| **Total Field Preparation Costs:** | | **$ 14,782.00** |

**Cruise Design, Cruising & Check Cruise Sale**

| | | |
|---|---|---|
| Presale Forester GS-9 | 4 days @ $205/day | $ 820.00 |
| Cruiser's GS-7 (2 @ 10days) | 20 days @ $170/day | $ 3,400.00 |
| Check Cruiser GS-9 | 8 days @ $187/day | $ 1,496.00 |
| **Total Cruise Costs:** | | **$ 5,716.00** |

**Preparation of Appraisal Report, Prospectus and Advertisement:**

| | | | |
|---|---|---|---|
| Forester | GS 11 | 2 days @ $260/day | $ 520.00 |
| Timber Resource Clerk | | 2 days @ $180.00/day | $ 360.00 |
| | | TOTAL | $ 880.00 |

**Sale Package Preparation:**

| | | | |
|---|---|---|---|
| Forester | GS 9 | 2 days @ $200/day | $ 400.00 |
| Contracting Officer | | 2 days @ $270/day | $ 540.00 |
| Bid Day Attendance (CO) | | 1 day @ $270/day | $ 270.00 |
| District Timber Staff GS-11 | | 3 days @ $260/day | $ 780.00 |
| Miscellaneous Costs: | | | |
| Mailings/ Printing/Legal Ads | | | $ 100.00 |
| | | TOTAL | $2,090.00 |

**Total Cost For Appraisal And Package Preparation:** **$ 2,970.00**

**TOTAL COST OF RESALE:** **<u>$ 23,468.00</u>**

## INTEREST ON REMAINING CONTRACT VALUE

As per CT9.4-Failure to Cut (4/82) "interest will be charged for the total number of months, or portions thereof from Termination Date until mid-point of the contract resale period, less any time in excess of one year needed to make the resale." Interest is charged at the current rate being paid for borrowing by the United States (as calculated and published by the Treasury Department in TFRM 6-8020-20). The current interest rate for January, 2001 is 6%; the resale offering will have a contract term of 2 years and the sale will be reoffered within 7 months. Therefore:

**INTEREST ($ 677,204.60 X .06 X 1.67 years):** **$ 67,855.90**

## CALCULATION OF RESALE VALUE

According to FSH 2409.22, Section 62.3, an appraisal is done at the time of termination of the sale and is based upon the remaining contract volume and the original appraisal conditions. The only value in the original appraisal that has been updated is the Quality Adjustment figure for the included timber because of significant changes in the formulas since the original sale was sold. Appraisal Bulletin Number 01, CY 01,1st Quarter (January) was used to determine the reappraised value of the sale. The results are as follows:

| Species | Volume | Predicted Bid Rate (Line 28) | Total Value |
|---|---|---|---|
| PP-Sawtimber | 1,634 MBF | $ 270.10/ MBF | $ 441,343.40 |
| DF&O-Sawtimber | 903 MBF | $ 123.44/ MBF | $ 111,466.32 |
| PP-Roundwood | 38 CCF | $ 0.73/ CCF | $ 27.74 |

**TOTAL REAPPRAISED VALUE @ TERMINATION:** **$ 552,837.46**

# CALCULATION OF DAMAGES

## A) Calculation of Potential Damages

| | | VOLUME | VALUE |
|---|---|---|---|
| **1. Current Contract Value at Termination:** | | | |
| Volume and Contract Value, remaining timber: | | | |
| a. On area not cut over | Sawtimber(All) | 2,426 | $ 648,229.80 |
| | Roundwood | 48 | $ 144.00 |
| b. On area cut over | Sawtimber(All) | 111 | $ 28,830.80 |
| TOTAL REMAINING TIMBER | Sawtimber | 2,537 | $ 677,060.60 |
| | Roundwood | 48 | $ 144.00 |
| | **Sub-Total:** | | **$ 677,204.60** |
| **2. Additional Damages:** | | | |
| Liquidated Damages | | | $ 0.00 |
| Cost of Resale (Field Preparation Only-Est) | | | $ 23,468.00 |
| Cost of Completing Contractual Requirements | | | $ 0.00 |
| Interest on remaining contract value *** | | | $ 67,855.90 |
| Other Damages— (List) | | | $ |
| | **Sub-Total:** | | **$ 91,323.90** |
| **3. Adjustment for Purchaser Credit:** | | | |
| Less Purchaser Credit that HAS NOT been earned: | | | ($ 0.00 ) |
| **4. Maximum Potential Damages (A1 + A2 – A3):** | | | **$ 768,528.50** |

---

## B) Calculation of Resale Value: (Use the Predicted Bid Value, Line 28, of the appraisal)

| | | |
|---|---|---|
| **1. Predicted High Bid Appraisal value at termination:** | | |
| (PP Sawtimber 1,634 MBF @ $270.10/MBF) = $441,343.40 | | **$ 552,837.46** |
| (DF&O Sawtimber 903 MBF @ $123.44/MBF) = $111,466.32 | | |
| (Roundwood 38 ccf @ $0.73/ccf) =$ 27.74 | | |
| Add Remaining Effective Purchaser Credit | | $ 0.00 |
| | **Sub-Total:** | **$ 552,837.46** |
| **2. Actual Bid Value of Resale:** | | **$( )** |
| **3. Resale Value:** | | **$ 552,837.46** |

(RESALE VALUE IS THE LARGER OF THE APPRAISAL SUB-TOTAL OR THE ACTUAL BID VALUE OF THE RESALE)

---

## C) Damages:

| | |
|---|---|
| 1. Maximum Potential Damages (A4) | $ 768,528.50 |
| 2. Resale Value (B3) | $ 552,837.46 |
| **3. Damages (C1-C2):** | **$ 215,691.04** |
| 4. Unobligated Cash on Account | $ 0.00 |
| **5. Estimated Damages Due Government:** | **$ 215,691.04** |
| **6. Refund Due Purchaser:** | **$ 0.00** |

2400-17 SUMMARY - TRANSACTION EVIDENCE (MBF) RUN DATE: 01/29/2001

REGION: 03
FOREST: Coconino
SALE NAME: U-Bar Reappraise

SUMMARY CHECKED BY: R Stephens
STAKE ID: 7014 SALE ID: 04010101432000

| | | | | | |
|---|---|---|---|---|---|
| SPEC RD CONST (MI): | .0 | SPEC RD RECONST (MI): | .0 | ROAD COST: | 0 |
| (1) APPRAISED TO: Winslow, AZ | | HAUL MI: 65 RTM: 209 | | ESSENTIAL KV: | 0 |
| GROUND BASE VOL: | 2537 | SKY/GROUND LEAD VOL: | 0 | AERIAL VOL: | 0 |
| GRND BASE SKID COST: | 48.98 | SKY/GRND LEAD YARD COST: | .00 | AERIAL YARD COST: | .00 |
| MBF/ACRE (GRND/BASE): | 4.8 | ROADS IN PLACE: N | | SALE WT.AVG. SKID-YARD COST | 48.98 |
| BF/TREE (GRND/BASE): | 145 | | | | |
| SKID DIST (GRND/BASE): | 400 | | | | |

| | | | | TOTAL OR AVG | | |
|---|---|---|---|---|---|---|
| 1 PRODUCT/UNIT | 1-1 | 1-1 | | | | |
| 2 SPECIES GROUP | PP | DF | | | | |
| 3 SPECIES CODE | 122 | 204 | | | | |
| 4 % BY SPECIES | 64.40 | 35.60 | A | 100.00 | | |
| 5 spvol( MBF | 1634 | 903 | T | 2537 | | |
| 6 DBH (Inches) | 15.7 | 13.8 | A | 15.2 | | |
| 7 BASE PERIOD PRICE (BPP) | 14.50 | 91.34 | A | 41.84 | | |
| 8 MARKET ADJ | -1.14 | -22.72 | A | -8.82 | | |
| 9 ADJ BPP (7+8) | 13.36 | 68.62 | A | 33.02 | | |
| 10 BASE SKID-YARD COST | 52.64 | 52.64 | A | 52.64 | | |
| 11 SALE SKID-YARD COST | 48.98 | 48.98 | A | 48.98 | | |
| 12 SKID/YARD COST ADJ (10-11) | 3.66 | 3.66 | A | 3.66 | | |
| 13 BASE HAUL COST | 81.02 | 81.02 | A | 81.02 | | |
| 14 SALE HAUL COST | 44.16 | 44.16 | A | 44.16 | | |
| 15 HAUL COST ADJ (13-14) | 36.86 | 36.86 | A | 36.86 | | |
| 16 BASE RD MNT COST | 5.38 | 5.38 | A | 5.38 | | |
| 17 SALE RD MNT COST | 5.32 | 5.32 | A | 5.32 | | |
| 18 RD MNT COST ADJ (16-17) | .06 | .06 | A | .06 | | |
| 19 BASE SLASH COST | 21.54 | 21.54 | A | 21.54 | | |
| 20 SALE SLASH COST | 7.86 | 7.86 | A | 7.86 | | |
| 21 SALE SLASH ADJ (19-20) | 13.68 | 13.68 | A | 13.68 | | |
| 22 BASE TEMP RD COST | .56 | .56 | A | .56 | | |
| 23 SALE TEMP RD COST | .00 | .00 | A | .00 | | |
| 24 TEMP RD COST ADJ (22-23) | .56 | .56 | A | .56 | | |
| 25 QUAL ADJ | .00 | .00 | A | .00 | | |
| 26 UNUSUAL ADJ | 201.92 | .00 | A | 130.06 | | |
| 27 TOTAL ADJ (Sum: 12,15,18,21,24,25,26) | 256.74 | 54.82 | A | 184.88 | | |
| 28 PREDICTED BID (9+27) | 270.10 | 123.44 | A | 217.90 | | |
| 29 COMPETITION AMOUNT | 1.34 | 6.86 | A | 3.30 | | |
| 30 IND ADV RATES (28-29-34+36) | 268.76 | 116.58 | A | 214.60 | TV | 544440.20 |
| 31 BASE RATES + TPV (31+36) | 14.50 | 8.70 | A | 12.44 | | |
| 32 ADJ TO BASE RATES | .00 | .00 | A | .00 | | |
| 33 ADVERTISED RATES (30+32) | 268.76 | 116.58 | A | 214.60 | TV | 544440.20 |
| 34 SALE SPECIFIED RD COST | .00 | .00 | A | .00 | | |
| 35 BASE INDICES (DEC 00) | 304.09 | 262.75 | | | | |
| 36 TIMBER PROPERTY VALUE | .00 | .00 | A | .00 | | |
| MBF/CCF ratio: | .50000 | .50000 | | .50000 | | |
| TSA TABLE: | WWPAC | WWPAC | | | | |

*** Deficit Sale Increased: .00 Ineffective Roads: .00

MBF = Thousands of Board Feet CCF = Hundreds of Cubic Feet
Bulletin: BULLETIN # 01 CY 01 REV. 23-DEC-1999

USDA FOREST SERVICE
BILL FOR COLLECTION

1. BILL DATE: 02/17/01 PAGE: 1

ENCLOSE A COPY OF THIS BILL WITH YOUR CHECK OR MONEY ORDER. DO NOT SEND CASH. PLEASE INCLUDE BILL NO. AND PAYER CODE NO. ON YOUR CHECK.
MAKE CHECK PAYABLE TO:
USDA FOREST SERVICE

MAIL PAYMENT TO:
USDA FOREST SERVICE
FILE 71652
P.O. BOX 60000
SAN FRANCISCO, CA 94160-1652

TO:

PRECISION PINE & TIMBER
P.O. BOX 70

HEBER AZ 85928

PAYER INDICATE
AMOUNT ENCLOSED: $__________

2. NET AMOUNT DUE: $ 215,691.04

3. DUE DATE: 03/23/01

4. BILL NUMBER: TM 03042210003

5. PAYER CODE: 860481719 A

6. AGREEMENT NO: CONTRACT NO: 030407005051

7. DESCRIPTION: U-BAR DEFAULT DAMAGE

8. REMARKS:
RE: PAYER CODE: 860481719 A BILL NO: TM 03042210003

| | | |
|---|---|---|
| 9. PRINCIPAL: | $ | 215,691.04 |
| 10. INTEREST: | | |
| 11. ADMINISTRATIVE COSTS: | | |
| 12. PENALTY: | | |
| 13. AMOUNT DUE: | $ | 215,691.04 |
| 14. AMOUNT CREDITED: | | |
| 15. NET AMOUNT DUE: | $ | 215,691.04 |

NOTE:
PLEASE SEND ALL CORRESPONDENCE, INQUIRIES, AND CHANGE OF ADDRESS TO:

COCONINO N F
2323 E GREENLAW LANE

FLAGSTAFF AZ 86004

FAILURE TO MAKE PAYMENT BY THE DUE DATE WILL RESULT IN THE ASSESSMENT OF LATE PAYMENT CHARGES (INTEREST, ADMINISTRATIVE COST, AND/OR PENALTY CHARGES) IN ACCORDANCE WITH YOUR CONTRACT, PERMIT, OR THE DEBT COLLECTION ACT OF 1982, AS AMENDED. POSTMARKS ARE NOT HONORED.

& B.A.
U- BAR DEFAULT DAMAGE

| 16. ORG | 17. JOB | 18. AMOUNT | 16. ORG | 17. JOB | 18. AMOUNT | 16. ORG | 17. JOB | 18. AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 0304 | 87002201 | $ 215,691.04 | | | | | | |

# DECISION DOCUMENT

PURCHASER AND ADDRESS:

Precision Pine & Timber, Inc
P.O. Box 70
Heber, AZ 85928

1) **Preface & Digest:**

Decision Number: 3-01-08

Location of Sale:

| | |
|---|---|
| Region | 3 |
| National Forest | COCONINO |
| Ranger District | LONG VALLEY RD |

Sale Information:

| | |
|---|---|
| Purchaser Name: | Precision Pine & Timber, Inc. |
| Contract Date: | 09/28/94 |
| Contract Number: | 04-005564 |
| Sale Name: | Monument Multiproduct Sale |
| Contract Form: | FS 2400-6T |
| Termination Date: | January 9, 2001 |

2) **Claim Summary:**

This documents the Contracting Officer's Decision regarding a claim under the Contract Disputes Act by the United States Government against Precision Pine & Timber, Inc. for the sum of $ 81,477.88 for its default of the Monument Multiproduct Sale, contract number 04-005564.

3) **<u>Government's Claim:</u>**

The Monument Multiproduct sale was cancelled by Regional Forester, Eleanor S. Towns, on January 9, 2001, for failure to remedy breach pursuant to special contract provision <u>CT 9.3</u> - <u>Breach</u>. When a timber sale contract is terminated before completion, the Contracting Officer must determine if the United States has been damaged (FSM 2453.5). Damages due to the United States for Purchaser's failure to cut and remove included timber are outlined in contract provision <u>CT9.4</u> - <u>Failure to Cut</u>.

Based on procedures and applicable costs described in provision CT9.4, I have estimated the damages due the United States to be $ 81,477.88 for the Monument Multiproduct sale. This estimate may be adjusted once final damages are determined following the resale of the remaining timber. At that time any surplus damages collected by this estimate will be refunded to the purchaser, or any additional damages due will be collected, as appropriate.

4) **<u>Findings:</u>**

A. Contract Requirements:

The following CT contract provisions are pertinent to the claim.

CT9.3 - BREACH (6/90)
CT9.4 - FAILURE TO CUT (4/82)

B. Facts:

Precision Pine designated Frontier Insurance Company as its surety for the Monument Multiproduct sale. In June, the Department of the Treasury removed Frontier Insurance Company from their list of acceptable sureties for federal contracts. The Contracting Officer sent Purchaser a letter advising it of the removal, and reminding the Purchaser of the contract requirement in BT9.1 -- Performance Bond to provide alternative surety satisfactory to the Forest Service.

Precision Pine failed to provide a surety satisfactory to the Forest Service within the appropriate time period. On July 17, 2000, the Contracting Officer notified Purchaser that it was in material breach of the contract. Purchaser thereafter failed to remedy the material breach. Based on this failure, the Regional Forester terminated the Monument Multiproduct sale contract for failure to remedy breach pursuant to CT9.3-- BREACH, on January 9, 2001.

Pursuant to CT9.4-- FAILURE TO CUT, the Contracting Officer has estimated the damages suffered by the Government as a result of the default. A summary of the Contracting Officer's calculations of the estimated damages for the Monument Multiproduct sale is attached.

5) **Contracting Officer's Disposition of the Claim:**

The Contracting Officer estimates the damages due the government for the default of the Monument Multiproduct sale to be $ 81,477.88.

A Bill for Collection in that amount is attached to this decision.

6) **Concluding Information:**

This is the final decision of the Contracting Officer. This decision may be appealed to the Agriculture Board of Contract Appeals.

If you decide to make such an appeal, you must mail or otherwise furnish written notice thereof to the Agriculture Board of Contract Appeals within 90 days from the date you receive this decision. A copy thereof shall be furnished to the Contracting Officer from whose decision appeal is intended, shall reference this decision, and identify this contract by number. In lieu of appealing to the Agriculture Board of Contract Appeals, you may bring an action directly in the Court of Federal Claims within 12 months of the date you receive this decision.

In the event you appeal this decision to the Agriculture Board of Contract Appeals, you may request that the Board process this appeal under the accelerated procedures (41 U.S.C. 601, et seq., section 8f).

Signature:

Richard Stephens

Date: February 21 2001

Contracting Officer
Richard Stephens
2323 E. Greenlaw Lane
Flagstaff, AZ 86004
Telephone: 520-527-3443

# DEFAULT DAMAGE CALCULATIONS

## MONUMENT MULTIPRODUCT SALE
## CONTRACT NO. 04-005564

## USDA FOREST SERVICE
## COCONINO NATIONAL FOREST

The Monument Multiproduct sale was cancelled by the Regional Forester, Eleanor S. Towns, on January 9, 2001, for failure to remedy breach pursuant to special contract provision CT 9.3 - Breach. As directed by the Regional Forester and in accordance with Forest Service policy when a timber sale contract is terminated before completion, the Contracting Officer must determine if the United States has been damaged (FSM 2453.5). Damages due the United States for Purchaser's failure to cut and remove included timber are outlined in contract provision CT9.4 - Failure to Cut.

The Monument Multiproduct timber sale consisted of two (2) separate payment units when originally sold. No harvest operations were ever conducted on this sale, therefore, all of the original sale volume remains to be harvested. At the time of termination the volume of included timber on the Monument Multiproduct sale was 1,461 CCF of sawtimber and 1,100 CCF of pulpwood. The current contract value of the sale at termination was $ **100,922.00.** The sale was sold as a Flat Rate sale so there will be no adjustments to the current contract rates necessary at the end of this quarter. This sale contained a purchaser credit limit of $ 22,649.28. All of the roadwork was accepted, purchaser credits were earned, and then transferred out of the sale to pay for timber on other sales. An appraisal of the remaining timber at the time of termination, using the standard Forest Service method in use at that time and conditions of the original contract, resulted in an appraised value of **$ 20,526.50.**

Based on procedures and applicable costs described in provision CT9.4 the following pages outline the calculation of estimated damages due the United States for default of the Monument Multiproduct sale contract. This estimate may be adjusted once final damages are determined following the resale of the remaining timber. At that time any surplus damages collected by this estimate will be refunded to the purchaser, or any additional damages due will be collected, as appropriate.

## REMAINING TIMBER

At the time of default the contract value of the timber at termination was:

Unreleased Payment Units (All)

| Species | Volume | Rates @ Termination | Value |
|---|---|---|---|
| PP-Sawtimber | 1,461 ccf | $ 62.00/ccf | $ 90,582.00 |
| PP-Roundwood | 1,100 ccf | $ 9.40/ccf | $ 10,340.00 |

**REMAINING CONTRACT VALUE @ TERMINATION:** **$ 100,922.00**

## COST OF RESALE

A review of the mark on the sale revealed that the Cut Tree Mark (Blue) was still in fairly good condition. That is, all marks were identifiable and it was felt that the mark would hold up for another two to three years. The District has concluded that remarking (recruising) of the sale is not necessary. The sale will be offered using the volume of the original sale offering.

**Preparation of Appraisal Report, Prospectus, and Advertisement:**

| | | | |
|---|---|---|---|
| Forester | GS-11 | 2 days @ $ 260/day | $ 520.00 |
| Timber Resource Clerk | GS-7 | 2 days @ $ 180/day | $ 360.00 |
| | | TOTAL | $ 880.00 |

**Sale Package Preparation:**

| | | | |
|---|---|---|---|
| Presale Forester | GS-9 | 2 days @ $ 200/day | $ 400.00 |
| Contracting Officer | GS-12 | 3 days @ $ 270/day | $ 810.00 |
| District Timber Staff | GS-11 | 3 days @ $ 260/day | $ 780.00 |
| Miscellaneous Costs: | | | |
| Mailings/Printing/Legal Ads | | | $ 100.00 |
| | | TOTAL | $ 2,090.00 |

**Total Cost For Appraisal and Package Preparation:** **$ 2,970.00**

**TOTAL COST OF RESALE:** **$ 2,970.00**

**INTEREST ON REMAINING CONTRACT VALUE**

As per CT9.4-Failure to Cut (4/82) "interest will be charged for the total number of months, or portions thereof from Termination Date until mid-point of the contract resale period, less any time in excess of one year needed to make the resale." Interest is charged at the current rate being paid for borrowing by the United States (as calculated and published by the Treasury Department in TFRM 6-8020-20). The current interest rate for January, 2001 is 6%; the resale offering will have a contract term of 2 years and 3 months and the sale will be reoffered within 7 months. Therefore:

**INTEREST ($ 100,922.00 X .06 X 1.67 years):** **$ 10,112.38**

**CALCULATION OF RESALE VALUE**

According to FSH 2409.22, Section 62.3, an appraisal is done at the time of termination of the sale and is based upon the remaining contract volume and the original appraisal conditions. The only value in the original appraisal that has been updated is the Quality Adjustment figure for the included timber because of significant changes in the formulas since the original sale was sold. Appraisal Bulletin Number 01, CY 01,1st Quarter (January) was used to determine the reappraised value of the sale. The results are as follows:

| Species | Volume | Predicted Bid Rate (Line 28) | Total Value |
|---|---|---|---|
| PP-Sawtimber | 1,461 CCF | $ 13.50/ CCF | $ 19,723.50 |
| PP-Roundwood | 1,100 CCF | $ 0.73/ CCF | $ 803.00 |

**TOTAL REAPPRAISED VALUE @ TERMINATION:** **$ 20,526.50**

# CALCULATION OF DAMAGES

## A) Calculation of Potential Damages

| | | VOLUME | VALUE |
|---|---|---|---|
| **1. Current Contract Value at Termination:** | | | |
| Volume and Contract Value, remaining timber: | | | |
| a. On area not cut over | Sawtimber | 1,461 | $ 90,582.00 |
| | Pulpwood | 1,100 | $ 10,340.00 |
| b. On area cut over | Sawtimber | 0 | $ 0.00 |
| | Pulpwood | 0 | $ 0.00 |
| TOTAL REMAINING TIMBER | Sawtimber | 1,461 | $ 90,582.00 |
| | Pulpwood | 1,100 | $ 10,340.00 |
| | **Sub-Total:** | | **$100,922.00** |
| **2. Additional Damages:** | | | |
| Liquidated Damages | | | $ 0.00 |
| Cost of Resale | | | $ 2,970.00 |
| Cost of Completing Contractual Requirements | | | $ 0.00 |
| Interest on remaining contract value | | | $ 10,112.38 |
| Other Damages— (List) | | | $ |
| | **Sub-Total:** | | $ 13,082.38 |
| **3. Adjustment for Purchaser Credit:** | | | |
| Less Purchaser Credit that HAS NOT been earned: | | | ($ 0.00 ) |
| **4. Maximum Potential Damages (A1 + A2 – A3):** | | | **$ 114,004.38** |

## B) Calculation of Resale Value: (Use the Predicted Bid Value, Line 28, of the appraisal)

| | | |
|---|---|---|
| **1. Predicted High Bid Appraisal value at termination:** | | **$ 20,526.50** |
| | (1,461ccf @ $ 13.50/ccf) = $ 19,723.50 | |
| | (1,100 ccf @ $ 0.73/ccf) = $ 803.00 | |
| Add Remaining Effective Purchaser Credit | | $ 0.00 |
| | **Sub-Total:** | **$ 20,526.50** |
| **2. Actual Bid Value of Resale:** | | **$( )** |
| **3. Resale Value:** | | **$ 20,526.50** |

(RESALE VALUE IS THE LARGER OF THE APPRAISAL SUB-TOTAL OR THE ACTUAL BID VALUE OF THE RESALE)

## C) Damages:

| | |
|---|---|
| 1. Maximum Potential Damages (A4) | $ 114,004.38 |
| 2. Resale Value (B3) | $ 20,526.50 |
| **3. Damages (C1-C2):** | **$ 93,477.88** |
| 4. Unobligated Cash on Account | $ 12,000.00 |
| **5. Estimated Damages Due Government:** | **$ 81,477.88** |
| **6. Refund Due Purchaser:** | **$ 0.00** |

2400-17 SUMMARY - TRANSACTION EVIDENCE (CCF)

RUN DATE: 01/29/2001

SUMMARY CHECKED BY: R Stephens

REGION: 03
FOREST: Coconino
SALE NAME: Monument M/P Reappraise

STARS ID: 4201 SALE ID: 03040420142000

| | | | | | |
|---|---|---|---|---|---|
| SPEC RD CONST (MI): | .0 | SPEC RD RECONST (MI): | .0 | ROAD COST: | 0 |
| ( 1) APPRAISED TO: Williams, AZ | | HAUL MI: 61 RTM: 188 | | ESSENTIAL KV: | 0 |
| GROUND BASE VOL: | 1461 | SKY/GROUND LEAD VOL: | 0 | AERIAL VOL: | 0 |
| GRND BASE SKID COST: | 32.46 | SKY/GRND LEAD YARD COST: | .00 | AERIAL YARD COST: | .00 |
| CCF/ACRE (GRND/BASE): | 3.9 | ROADS IN PLACE: N | | SALE WT.AVG. SKID-YARD COST | 32.46 |
| CF/TREE(GRND/BASE): | 11 | | | RMPP & GRADE (R-3): | .0 |
| SKID DIST (GRND/BASE): | 500 | | | LRF (R-3): | 6.1136 |

| | | 1-3 | 2-3 | | TOTAL OR AVG | | |
|---|---|---|---|---|---|---|---|
| 1 | PRODUCT/UNIT | | | | | | |
| 2 | SPECIES GROUP | PP | PP | | | | |
| 3 | SPECIES CODE | 122 | 122 | | | | |
| 4 | % BY SPECIES | 24.70 | 75.30 | A | 100.00 | | |
| 5 | spvol( CCF | 1461 | 1100 | T | 2561 | | |
| 6 | DBH (Inches) | 11.5 | 7.5 | A | 11.5 | | |
| 7 | BASE PERIOD PRICE (BPP) | 7.25 | .73 | A | 7.80 | | |
| 8 | MARKET ADJ | -.57 | .00 | A | -.57 | | |
| 9 | ADJ BPP (7+8) | 6.68 | .73 | A | 7.23 | | |
| 10 | BASE SKID-YARD COST | 26.32 | .00 | A | 26.32 | | |
| 11 | SALE SKID-YARD COST | 32.46 | .00 | A | 32.46 | | |
| 12 | SKID/YARD COST ADJ (10-11) | -6.14 | .00 | A | -6.14 | | |
| 13 | BASE HAUL COST | 40.51 | .00 | A | 40.51 | | |
| 14 | SALE HAUL COST | 14.24 | .00 | A | 14.24 | | |
| 15 | HAUL COST ADJ (13-14) | 26.27 | .00 | A | 26.27 | | |
| 16 | BASE RD MNT COST | 2.69 | .00 | A | 2.69 | | |
| 17 | SALE RD MNT COST | 3.21 | .00 | A | 3.21 | | |
| 18 | RD MNT COST ADJ (16-17) | -.52 | .00 | A | -.52 | | |
| 19 | BASE SLASH COST | 10.77 | .00 | A | 10.77 | | |
| 20 | SALE SLASH COST | 4.14 | .00 | A | 4.14 | | |
| 21 | SALE SLASH ADJ (19-20) | 6.63 | .00 | A | 6.63 | | |
| 22 | BASE TEMP RD COST | .28 | .00 | A | .28 | | |
| 23 | SALE TEMP RD COST | .00 | .00 | A | .00 | | |
| 24 | TEMP RD COST ADJ (22-23) | .28 | .00 | A | .28 | | |
| 25 | QUAL ADJ (RMPP) | -19.70 | .00 | A | -19.70 | | |
| 26 | UNUSUAL ADJ | .00 | .00 | A | .00 | | |
| 27 | TOTAL ADJ (Sum:12,15,18,21,24,25,26) | 6.82 | .00 | A | 6.82 | | |
| 28 | PREDICTED BID (9+27) | 13.50 | .73 | A | 14.05 | | |
| 29 | COMPETITION AMOUNT | .67 | .00 | A | .67 | | |
| 30 | IND ADV RATES (28-29-34+36) | 12.83 | .73 | A | 13.38 | TV | 19548.18 |
| 31 | BASE RATES + TPV (31+36) | 7.25 | .73 | A | 7.80 | | |
| 32 | ADJ TO BASE RATES | .00 | .00 | A | .00 | | |
| 33 | ADVERTISED RATES (30+32) | 12.83 | .73 | A | 13.38 | TV | 19548.18 |
| 34 | SALE SPECIFIED RD COST | .00 | .00 | A | .00 | | |
| 35 | BASE INDICES (DEC 00) | 129.24 | .00 | | | | |
| 36 | TIMBER PROPERTY VALUE | .00 | .00 | A | .00 | | |
| | MBF/CCF ratio: | .44560 | .63500 | | .44559 | | |
| | TSA TABLE: | WWPAA | WWPAE | | | | |

*** Deficit Sale Increased: .00 Ineffective Roads: .00

MBF = Thousands of Board Feet CCF = Hundreds of Cubic Feet
Bulletin: BULLETIN # 01 CY 01

REV. 23-DEC-1999

USDA FOREST SERVICE
BILL FOR COLLECTION

1. BILL DATE: 02/17/01 PAGE: 1

ENCLOSE A COPY OF THIS BILL WITH YOUR CHECK OR MONEY ORDER. DO NOT SEND CASH. PLEASE INCLUDE BILL NO. AND PAYER CODE NO. ON YOUR CHECK.
MAKE CHECK PAYABLE TO:
USDA FOREST SERVICE

MAIL PAYMENT TO:
USDA FOREST SERVICE
FILE 71652
P.O. BOX 60000
SAN FRANCISCO, CA 94160-1652

TO:

PRECISION PINE & TIMBER
P.O. BOX 70

HEBER AZ 85928

PAYER INDICATE AMOUNT ENCLOSED: $______

| | |
|---|---|
| 2. NET AMOUNT DUE: | $ 81,477.88 |
| 3. DUE DATE: | 03/23/01 |
| 4. BILL NUMBER: | TM 03042210004 |
| 5. PAYER CODE: | 860481719 A |

6. AGREEMENT NO: CONTRACT NO: 030404005564

7. DESCRIPTION: MONUMENT DEFAULT DAMAGE

8. REMARKS:
RE: PAYER CODE: 860481719 A BILL NO: TM 03042210004

| | |
|---|---|
| 9. PRINCIPAL: | $ 81,477.88 |
| 10. INTEREST: | |
| 11. ADMINISTRATIVE COSTS: | |
| 12. PENALTY: | |
| 13. AMOUNT DUE: | $ 81,477.88 |
| 14. AMOUNT CREDITED: | |
| 15. NET AMOUNT DUE: | $ 81,477.88 |

NOTE:
PLEASE SEND ALL CORRESPONDENCE, INQUIRIES, AND CHANGE OF ADDRESS TO:

COCONINO N F
2323 E GREENLAW LANE

FLAGSTAFF AZ 86004

FAILURE TO MAKE PAYMENT BY THE DUE DATE WILL RESULT IN THE ASSESSMENT OF LATE PAYMENT CHARGES (INTEREST, ADMINISTRATIVE COST, AND/OR PENALTY CHARGES) IN ACCORDANCE WITH YOUR CONTRACT, PERMIT, OR THE DEBT COLLECTION ACT OF 1982, AS AMENDED. POSTMARKS ARE NOT HONORED.

& B.A.
MONUMENT DEFAULT DAMAGES

| 16. ORG | 17. JOB | 18. AMOUNT | 16. ORG | 17. JOB | 18. AMOUNT | 16. ORG | 17. JOB | 18. AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 0304 | 87002201 | $ 81,477.88 | | | | | | |

# DECISION DOCUMENT

PURCHASER AND ADDRESS:

Precision Pine & Timber, Inc
P.O. Box 70
Heber, AZ 85928

## 1) Preface & Digest:

Decision Number: 3-01-07

Location of Sale:

| | |
|---|---|
| Region | 3 |
| National Forest | COCONINO |
| Ranger District | LONG VALLEY RD |

Sale Information:

| | |
|---|---|
| Purchaser Name: | Precision Pine & Timber, Inc. |
| Contract Date: | 06/29/94 |
| Contract Number: | 04-005465 |
| Sale Name: | Hutch-Boondock Multiproduct Sale |
| Contract Form: | FS 2400-6T |
| Termination Date: | January 9, 2001 |

## 2) Claim Summary:

This documents the Contracting Officer's Decision regarding a claim under the Contract Disputes Act by the United States Government against Precision Pine & Timber, Inc. for the sum of $ 2,278.72 for its default of the Hutch-Boondock Multiproduct Sale, contract number 04-005465.

**3) Government's Claim:**

The Hutch-Boondock Multiproduct sale was cancelled by the Regional Forester, Eleanor S. Towns, on January 9, 2001, for failure to remedy breach pursuant to special contract provision CT 9.3 - Breach. When a timber sale contract is terminated before completion, the Contracting Officer must determine if the United States has been damaged (FSM 2453.5). Damages due to the United States for Purchaser's failure to cut and remove included timber are outlined in contract provision CT9.4 - Failure to Cut.

Based on procedures and applicable costs described in provision CT9.4 I have estimated the damages due the United States to be $ 2,278.72 for the Hutch-Boondock Multiproduct sale. This estimate may be adjusted once final damages are determined. The decision is NOT to re-offer this sale. Any surplus damages collected by this estimate will be refunded to the purchaser, or any additional damages due will be collected, as appropriate.

**4) Findings:**

A. Contract Requirements:

The following CT contract provisions are pertinent to the claim.

CT9.3 - BREACH (6/90)
CT9.4 - FAILURE TO CUT (4/82)

B. Facts:

Precision Pine designated Frontier Insurance Company as its surety for the Hutch-Boondock Multiproduct sale. In June, the Department of the Treasury removed Frontier Insurance Company from their list of acceptable sureties for federal contracts. The Contracting Officer sent Purchaser a letter advising it of the removal, and reminding the Purchaser of the contract requirement in BT9.1 -- Performance Bond to provide alternative surety satisfactory to the Forest Service.

Precision Pine failed to provide a surety satisfactory to the Forest Service within the appropriate time period. On July 17, 2000, the Contracting Officer notified Purchaser that it was in material breach of the contract. Purchaser thereafter failed to remedy the material breach. Based on this failure, the Regional Forester terminated the Hutch-Boondock Multiproduct sale contract for failure to remedy breach pursuant to CT9.3-- BREACH, on January 9, 2001.

Pursuant to CT9.4-- FAILURE TO CUT, the Contracting Officer has estimated the damages suffered by the Government as a result of the default. A summary of the Contracting Officer's calculations of the estimated damages for the Hutch-Boondock Multiproduct sale is attached.

5) **Contracting Officer's Disposition of the Claim:**

The Contracting Officer estimates the damages due the government for the default of the Hutch-Boondock Multiproduct sale to be $ 2,278.72.

A Bill for Collection in that amount is attached to this decision.

6) **Concluding Information:**

This is the final decision of the Contracting Officer. This decision may be appealed to the Agriculture Board of Contract Appeals.

If you decide to make such an appeal, you must mail or otherwise furnish written notice thereof to the Agriculture Board of Contract Appeals within 90 days from the date you receive this decision. A copy thereof shall be furnished to the Contracting Officer from whose decision appeal is intended, shall reference this decision, and identify this contract by number. In lieu of appealing to the Agriculture Board of Contract Appeals, you may bring an action directly in the Court of Federal Claims within 12 months of the date you receive this decision.

In the event you appeal this decision to the Agriculture Board of Contract Appeals, you may request that the Board process this appeal under the accelerated procedures (41 U.S.C. 601, et seq., section 8f), or under the small claims procedures (41 U.S.C. 601,et seq., section 9).

Signature:

[signature] Date: February 21, 2001

Contracting Officer
Richard Stephens
2323 E. Greenlaw Lane
Flagstaff, AZ 86004
Telephone: 520-527-3443

## DEFAULT DAMAGE CALCULATIONS

## HUTCH-BOONDOCK MULTIPRODUCT SALE
## CONTRACT NO. 04-005465

## USDA FOREST SERVICE
## COCONINO NATIONAL FOREST

The Hutch-Boondock Multiproduct sale was cancelled by the Regional Forester, Eleanor S. Towns, on January 9, 2001, for failure to remedy breach pursuant to special contract provision CT 9.3 - Breach. As directed by the Regional Forester and in accordance with Forest Service policy when a timber sale contract is terminated before completion, the Contracting Officer must determine if the United States has been damaged (FSM 2453.5). Damages due the United States for Purchaser's failure to cut and remove included timber are outlined in contract provision CT9.4 - Failure to Cut.

The Hutch-Boondock Multiproduct sale consisted of two (2) separate payment units when originally sold. Operations occurred in both payment units with nearly all of the sawtimber removed and a portion of the pulpwood. At the time of termination the remaining volume of included timber on the Hutch-Boondock Multiproduct sale was 23 CCF of sawtimber and 905 CCF of pulpwood. The current contract value of the sale at termination was **$ 9,366.28.** The sale was sold as an Escalated sale, however all payment units have been released and the rates are fixed for the quarter in which released. Therefore, there will be no adjustments to the current contract rates at the end of this quarter. This sale contained a revised Purchaser Credit limit of $4,786.44. All of the Purchaser Credits were transferred out of the sale and used to pay timber stumpage on other sales. An appraisal of the remaining timber at the time of termination, using the standard Forest Service method in use at that time and conditions of the original contract, resulted in an appraised value of $ **1,455.99.**

Based on procedures and applicable costs described in provision CT9.4 the following pages outline the calculation of estimated damages due the United States for default of the Hutch-Boondock Multiproduct sale contract. This estimate may be adjusted once final damages are determined. Since essentially all of the sawtimber volume has been removed, all that remains is the less valuable pulpwood material. Past sale offering experience indicates that if the remaining volume were offered, it would not sell. The decision is NOT to re-offer this sale. Any surplus damages collected by this estimate will be refunded to the purchaser, or any additional damages due will be collected, as appropriate.

**REMAINING TIMBER**

At the time of default the contract value of the timber at termination was:

| Species | Volume | Rates @ Termination | Value |
|---|---|---|---|
| PP-Sawtimber | 23 ccf | $ 37.36/ccf | $ 859.28 |
| PP-Roundwood | 905 ccf | $ 9.40/ccf | $ 8,507.00 |

**REMAINING CONTRACT VALUE @ TERMINATION:** **$ 9,366.28**

**COST OF RESALE**

The decision is not to re-offer this sale. Therefore, there are no resale costs.

**TOTAL COST OF RESALE:** **$ 0.00**

**INTEREST ON REMAINING CONTRACT VALUE**

There will be no interest on remaining contract value, since the sale will not be re-offered.

**INTEREST:** **$ 0.00**

**COST OF COMPLETING CONTRACT REQUIREMENTS**

At the end of the last active operations, the operator moved off the sale area with anticipation that operations would continue the next field season. However, operations have never resumed. A total of 23 roads have been left open in anticipation of removal of the remaining timber. These roads total 7.5 miles. These roads therefore need to be closed.
Road closure work is estimated at $ 500.00/mile.
Total cost is 7.5 miles X $ 500.00/mile = $ 3,750.00.

**TOTAL COST OF COMPLETING CONTRACT REQUIREMENTS** **$ 3,750.00**

**CALCULATION OF RESALE VALUE**

According to FSH 2409.22, Section 62.3, an appraisal is done at the time of termination of the sale and is based upon the remaining contract volume and the original appraisal conditions. The only value in the original appraisal that has been updated is the Quality Adjustment figure for the included timber because of significant changes in the formulas since the original sale was sold. Appraisal Bulletin Number 01, CY 01,1st Quarter (January) was used to determine the reappraised value of the sale. The results are as follows:

| Species | Volume | Predicted Bid Rate (Line 28) | Total Value |
|---|---|---|---|
| PP-Sawtimber | 23 CCF | $ 34.58/ CCF | $ 795.34 |
| PP-Roundwood | 905 CCF | $ 0.73/ CCF | $ 660.65 |

**TOTAL REAPPRAISED VALUE @ TERMINATION:** **$ 1,455.99**

# CALCULATION OF DAMAGES

| | | | |
|---|---|---|---|
| **A) Calculation of Potential Damages** | | VOLUME | VALUE |
| **1. Current Contract Value at Termination:** | | | |
| Volume and Contract Value, remaining timber: | | | |
| a. On area not cut over | Sawtimber | 0 | $ 0 |
| | Pulpwood | 0 | $ 0 |
| b. On area cut over | Sawtimber | 23 ccf | $ 859.28 |
| | Pulpwood | 905 ccf | $ 8,507.00 |
| TOTAL REMAINING TIMBER | Sawtimber | 23 ccf | $ 859.28 |
| | Pulpwood | 905 ccf | $ 8,507.00 |
| | | **Sub-Total:** | **$ 9,366.28** |
| **2. Additional Damages:** | | | |
| Liquidated Damages | | | $ 0.00 |
| Cost of Resale (Field Preparation Only-Est) | | | $ 0.00 |
| Cost of Completing Contractual Requirements | | | $ 3,750.00 |
| Interest on remaining contract value | | | $ 0.00 |
| Other Damages— (List) | | | $ |
| | | **Sub-Total:** | **$ 3,750.00** |
| **3. Adjustment for Purchaser Credit:** | | | |
| Less Purchaser Credit that HAS NOT been earned: | | | ($ 0.00 ) |
| **4. Maximum Potential Damages (A1 + A2 – A3):** | | | **$ 13,116.28** |

**B) Calculation of Resale Value:** (Use the Predicted Bid Value, Line 28, of the appraisal)

| | | |
|---|---|---|
| **1. Predicted High Bid Appraisal value at termination:** | | |
| | (23 ccf @ $ 34.58/ccf) = $ 795.34 | $ 1,455.99 |
| | (905 ccf @ $ 0.73/ccf) = $ 660.65 | |
| Add Remaining Effective Purchaser Credit | | $ 0.00 |
| | **Sub-Total:** | **$ 1,455.99** |
| **2. Actual Bid Value of Resale:** | | **$( )** |
| **3. Resale Value:** | | **$ 1,455.99** |

(RESALE VALUE IS THE LARGER OF THE APPRAISAL SUB-TOTAL OR THE ACTUAL BID VALUE OF THE RESALE)

**C) Damages:**

| | |
|---|---|
| 1. Maximum Potential Damages (A4) | $ 13,116.28 |
| 2. Resale Value (B3) | $ 1,455.99 |
| **3. Damages (C1-C2):** | **$ 11,660.29** |
| 4. Unobligated Cash on Account | $ 9,381.57 |
| **5. Estimated Damages Due Government:** | **$ 2,278.72** |
| **6. Refund Due Purchaser:** | **$ 0.00** |

2400-17 SUMMARY - TRANSACTION EVIDENCE (CCF)

RUN DATE: 01/29/2001

SUMMARY CHECKED BY: R Stephens

REGION: 03
FOREST: Coconino
SALE NAME: Hutch-Boondock Reappraise

STARS ID: 4202 SALE ID: 03040420242000

| | | | | | |
|---|---|---|---|---|---|
| SPEC RD CONST (MI): | .0 | SPEC RD RECONST (MI): | .0 | ROAD COST: | 0 |
| ( 1) APPRAISED TO: Winslow, AZ | | HAUL MI: 79 RTM: 244 | | ESSENTIAL KV: | 0 |
| GROUND BASE VOL: | 23 | SKY/GROUND LEAD VOL: | 0 | AERIAL VOL: | 0 |
| GRND BASE SKID COST: | 30.31 | SKY/GRND LEAD YARD COST: | .00 | AERIAL YARD COST: | .00 |
| CCF/ACRE (GRND/BASE): | 2.3 | ROADS IN PLACE: N | | SALE WT.AVG. SKID-YARD COST | 30.32 |
| CF/TREE(GRND/BASE): | 15 | | | RMPP & GRADE (R-3): | .8 |
| SKID DIST (GRND/BASE): | 400 | | | LRF (R-3): | 6.4881 |

| | | 1-3 | 2-3 | | TOTAL OR AVG | | |
|---|---|---|---|---|---|---|---|
| 1 | PRODUCT/UNIT | 1-3 | 2-3 | | | | |
| 2 | SPECIES GROUP | PP | PP | | | | |
| 3 | SPECIES CODE | 122 | 122 | | | | |
| 4 | % BY SPECIES | -3834.79 | 3934.79 | A | 100.00 | | |
| 5 | spvol( CCF | 23 | 905 | T | 928 | | |
| 6 | DBH (Inches) | 12.6 | .0 | A | 12.6 | | |
| 7 | BASE PERIOD PRICE (BPP) | 7.25 | .73 | A | 35.97 | | |
| 8 | MARKET ADJ | -.57 | .00 | A | -.57 | | |
| 9 | ADJ BPP (7+8) | 6.68 | .73 | A | 35.40 | | |
| 10 | BASE SKID-YARD COST | 26.32 | .00 | A | 26.32 | | |
| 11 | SALE SKID-YARD COST | 30.31 | .00 | A | 30.31 | | |
| 12 | SKID/YARD COST ADJ (10-11) | -3.99 | .00 | A | -3.99 | | |
| 13 | BASE HAUL COST | 40.51 | .00 | A | 40.51 | | |
| 14 | SALE HAUL COST | 20.76 | .00 | A | 20.76 | | |
| 15 | HAUL COST ADJ (13-14) | 19.75 | .00 | A | 19.75 | | |
| 16 | BASE RD MNT COST | 2.69 | .00 | A | 2.69 | | |
| 17 | SALE RD MNT COST | 1.38 | .00 | A | 1.38 | | |
| 18 | RD MNT COST ADJ (16-17) | 1.31 | .00 | A | 1.31 | | |
| 19 | BASE SLASH COST | 10.77 | .00 | A | 10.77 | | |
| 20 | SALE SLASH COST | 3.90 | .00 | A | 3.90 | | |
| 21 | SALE SLASH ADJ (19-20) | 6.87 | .00 | A | 6.87 | | |
| 22 | BASE TEMP RD COST | .28 | .00 | A | .28 | | |
| 23 | SALE TEMP RD COST | .00 | .00 | A | .00 | | |
| 24 | TEMP RD COST ADJ (22-23) | .28 | .00 | A | .28 | | |
| 25 | QUAL ADJ (RMPP) | 3.68 | .00 | A | 3.68 | | |
| 26 | UNUSUAL ADJ | .00 | .00 | A | .00 | | |
| 27 | TOTAL ADJ (Sum:12,15,18,21,24,25,26) | 27.90 | .00 | A | 27.90 | | |
| 28 | PREDICTED BID (9+27) | 34.58 | .73 | A | 63.30 | | |
| 29 | COMPETITION AMOUNT | .67 | .00 | A | .67 | | |
| 30 | IND ADV RATES (28-29-34+36) | 33.91 | .73 | A | 62.63 | TV | 1440.49 |
| 31 | BASE RATES + TPV (31+36) | 7.25 | .73 | A | 35.97 | | |
| 32 | ADJ TO BASE RATES | .00 | .00 | A | .00 | | |
| 33 | ADVERTISED RATES (30+32) | 33.91 | .73 | A | 62.63 | TV | 1440.49 |
| 34 | SALE SPECIFIED RD COST | .00 | .00 | A | .00 | | |
| 35 | BASE INDICES (DEC 00) | 144.44 | .00 | | | | |
| 36 | TIMBER PROPERTY VALUE | .00 | .00 | A | .00 | | |
| | MBF/CCF ratio: | .46560 | .63500 | | .47826 | | |
| | TSA TABLE: | WWDAB | WWPAE | | | | |

*** Deficit Sale Increased: .00 Ineffective Roads: .00

MBF = Thousands of Board Feet CCF = Hundreds of Cubic Feet
Bulletin: BULLETIN # 01 CY 01

REV. 23-DEC-1999

USDA FOREST SERVICE
BILL FOR COLLECTION

1. BILL DATE: 02/21/01 PAGE: 1

ENCLOSE A COPY OF THIS BILL WITH YOUR CHECK OR MONEY ORDER. DO NOT SEND CASH. PLEASE INCLUDE BILL NO. AND PAYER CODE NO. ON YOUR CHECK.
MAKE CHECK PAYABLE TO:
USDA FOREST SERVICE

MAIL PAYMENT TO:
USDA FOREST SERVICE
FILE 71652
P.O. BOX 60000
SAN FRANCISCO, CA 94160-1652

TO:

PRECISION PINE & TIMBER
P.O. BOX 70

HEBER AZ 85928

PAYER INDICATE AMOUNT ENCLOSED: $________

2. NET AMOUNT DUE: $ 2,278.72

3. DUE DATE: 03/23/01

4. BILL NUMBER: TM 03042210005

5. PAYER CODE: 860481719 A

6. AGREEMENT NO: CONTRACT NO: 030404005465

7. DESCRIPTION: HUTCH-BOONDOCK DEFAULT DAMAGES

8. REMARKS:
RE: PAYER CODE: 860481719 A BILL NO: TM 03042210005

| | |
|---|---|
| 9. PRINCIPAL: | $ 2,278.72 |
| 10. INTEREST: | |
| 11. ADMINISTRATIVE COSTS: | |
| 12. PENALTY: | |
| 13. AMOUNT DUE: | $ 2,278.72 |
| 14. AMOUNT CREDITED: | |
| 15. NET AMOUNT DUE: | $ 2,278.72 |

NOTE:
PLEASE SEND ALL CORRESPONDENCE, INQUIRIES, AND CHANGE OF ADDRESS TO:

COCONINO N F
2323 E GREENLAW LANE

FLAGSTAFF AZ 86004

FAILURE TO MAKE PAYMENT BY THE DUE DATE WILL RESULT IN THE ASSESSMENT OF LATE PAYMENT CHARGES (INTEREST, ADMINISTRATIVE COST, AND/OR PENALTY CHARGES) IN ACCORDANCE WITH YOUR CONTRACT, PERMIT, OR THE DEBT COLLECTION ACT OF 1982, AS AMENDED. POSTMARKS ARE NOT HONORED.

$ B.A.
HUTCH-BOONDOCK DEFAULT DAMAGES

| 16. ORG | 17. JOB | 18. AMOUNT | 16. ORG | 17. JOB | 18. AMOUNT | 16. ORG | 17. JOB | 18. AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 0304 | 87002201 | $ 2,278.72 | | | | | | |

United States Department of Agriculture

Forest Service

Apache-Sitgreaves National Forests

P.O. Box 640
Springerville, AZ 85938-0640
(520) 333-4301 Fax: 333-6357
TTY/TDD: (520) 333-6292

**File Code:** 2450
**Date:** March 1, 2001

CERTIFIED MAIL - RRR

Lorin Porter
Precision Pine and Timber, Inc.
P.O. Box 70
Heber, AZ 85928

RE: Brookbank Multi-Product Sale, #001822, Gentry Multi-Product, #001939, Jersey Horse Timber Sale, #001756, O.D. Ridge Timber Sale #001574,Wiggins Multi-Product Sale, #020012.

Dear Lorin:

The above-mentioned timber sales were terminated on January 9, 2001, (for failure to remedy CT 9.3 Breach), by Regional Forester, Eleanor S. Towns. This breach stems from your failure to provide new bonding satisfactory to the Forest Service when Frontier Insurance Company was removed from the list of acceptable sureties on Government contracts in June of 2000.

Enclosed are the estimated Default Damage Calculations, Decision Documents, and Bill for Collection for estimated damages for these sales. Payment is due on March 30, 2001. The O.D. Ridge Timber Sale Bill for Collection includes a bill for volume cut and removed which you have not paid. The Bill for Collection for the Jersey Horse Timber Sale Periodic Payment has been cancelled.

Because you have had the above-mentioned contracts cancelled for breach, your company will be referred to the Debarring or Suspending Official for possible administrative action.

Your bonding company, Frontier Insurance Company will be notified of this pending claim.

Sincerely,

Susan N. Lee

SUSAN N. LEE
Contracting Officer

Enclosures

cc:
Alan Lucas, R.O. - Forestry
Patricia Disert, OGC
Springerville R.D.
Black Mesa R.D.
Frontier Insurance Co
Resources

# DECISION DOCUMENT

PURCHASER AND ADDRESS:

Precision Pine & Timber, Inc
P.O. Box 70
Heber, AZ 85928

1) Preface & Digest:

Decision Number: 3-01-05
Location of Sale:

| | |
|---|---|
| Region | 3 |
| National Forest | Apache-Sitgreaves N.F.'s |
| Ranger District | Springerville |

Sale Information:

| | |
|---|---|
| Purchaser Name: | Precision Pine & Timber, Inc. |
| Contract Date: | August 14, 1992 |
| Contract Number: | 001574 |
| Sale Name: | O.D. Ridge Timber Sale |
| Contract Form: | FS 2400-6T |
| Termination Date: | January 9, 2001 |

2) Claim Summary:

This documents the Contracting Officer's Decision regarding a claim under the Contract Disputes Act by the United States Government against Precision Pine & Timber, Inc. for the sum of **$148,845.38** for its default of the O.D. Ridge Timber Sale, contract number 001574.

3) Government's Claim:

The O.D. Ridge Timber Sale was cancelled by the Regional Forester, Eleanor S. Towns, on January 9, 2001, for failure to remedy breach pursuant to special contract provision

CT 9.3 - Breach. When a timber sale contract is terminated before completion, the Contracting Officer must determine if the United States has been damaged (FSM 2453.5). Damages due to the United States for Purchaser's failure to cut and remove included timber are outlined in contract provision CT9.4 -- Failure to Cut.

Based on procedures and applicable costs described in provision CT9.4 I have estimated the damages due the United States to be **$148,845.38** for the O.D. Ridge Timber Sale. This estimate may be adjusted once final damages are determined following the resale of the remaining timber. At that time any surplus damages collected by this estimate will be refunded to the purchaser, or any additional damages due will be collected, as appropriate.

4) Findings:

A. Contract Requirements:

The following CT contract provisions are pertinent to the claim.

CT9.3 B BREACH (6/90)
CT9.4 B FAILURE TO CUT (4/82)

B. Facts:

Precision Pine designated Frontier Insurance Company as its surety for the O.D. Ridge Timber Sale. In June, the Department of the Treasury removed Frontier Insurance Company from their list of acceptable sureties for federal contracts. The Contracting Officer sent Purchaser a letter advising it of the removal, and reminding the Purchaser of the contract requirement in BT9.1 -- Performance Bond to provide alternative surety satisfactory to the Forest Service.

Precision Pine failed to provide a surety satisfactory to the Forest Service within the appropriate time period. On July 20, 2000, the Contracting Officer notified Purchaser that it was in material breach of the contract. Purchaser thereafter failed to remedy the material breach. Based on this failure, the Regional Forester terminated the O.D. Ridge Timber Sale contract for failure to remedy breach pursuant to CT9.3-- BREACH, on January 9, 2001.

Pursuant to CT9.4-- FAILURE TO CUT, the Contracting Officer has estimated the damages suffered by the Government as a result of the default. A summary of the Contracting Officer's calculations of the estimated damages for the O.D. Ridge Timber Sale is attached.

**5) Contracting Officer's Disposition of the Claim:**

The Contracting Officer estimates the damages due the government for the default of the O.D. Ridge Timber Sale to be **$148,845.38.**

A Bill for Collection in that amount is attached to this decision.

**6) Concluding Information:**

This is the final decision of the Contracting Officer. This decision may be appealed to the Agriculture Board of Contract Appeals.

If you decide to make such an appeal, you must mail or otherwise furnish written notice thereof to the Agriculture Board of Contract Appeals within 90 days from the date you receive this decision. A copy thereof shall be furnished to the Contracting Officer from whose decision appeal is intended, shall reference this decision, and identify this contract by number. In lieu of appealing to the Agriculture Board of Contract Appeals, you may bring an action directly in the Court of Federal Claims within 12 months of the date you receive this decision.

Susan N. Lee 3/1/01

Susan N. Lee
Contracting Officer
P.O. Box 469
Alpine, AZ 85920
520-339-4384

Date:

**COST OF RESALE**

Because this sale was an older sale it had been remarked in 1999, but will need to be recruised to determine the volume remaining. Additional costs associated with the resale include the cost of preparing a revised appraisal and contract package as well as an additional advertisement. Costs here are based on best estimates of what will be required and will be adjusted, upwards or downwards depending upon actual costs incurred, once final damages are determined.

**Estimated time and costs to recruise Payment Unit 2A, and 3A:**

3 Crew members:

| | |
|---|---|
| Crew Member @ $165.40/day X 12 days = | $ 1,984.80 |
| Crew Member @ $153.17/day X 13 days = | $ 1,991.21 |
| Crew Member @ $144.93/day X 11 days = | $ 1,594.23 |
| Paint: 3 cases @ $ 96/case = | $ 288.00 |
| Vehicle Cost: | |
| Crew Truck – Miles $15.75, FOR $133.50 | $ 149.25 |
| Crew Truck – Miles $97.44, FOR $175.00 | $ 272.44 |
| Crew Truck – Miles $119.19 FOR $175.00 | $ 294.19 |
| Snowmobile Costs - | $ 150.00 |
| Cruise Design and Check Cruise – | |
| Pre-Sale Forester – GS 9 @ $222.64/day X 3 days = | $ 667.92 |
| Check Cruiser – GS 11 @ $232.71/day X 2 days = | $ 465.42 |
| **Total Field Preparation Costs:** | **$ 7,857.46** |

**Preparation of Appraisal Report, Prospectus and Advertisement:**

| | | | |
|---|---|---|---|
| Forester | GS 9 | 2 days @ $222.64/day | $ 445.28 |
| Timber Resource Clerk | GS 5 | 2 days @ $131.21/day | $ 262.42 |
| | | TOTAL | $ 707.70 |

**Sale Package Preparation:**

| | | |
|---|---|---|
| Pre-Sale Forester GS 9 | 5 days @$222.64/day | $1,113.20 |
| Contracting Officer GS 11 | 3 days @$232.71/day | $ 698.13 |
| Timber Resource Clerk GS 6 | 3 day @$160.28/day | $ 480.84 |
| Sale Administrator GS 9 | 2 day @$200.68/day | $ 401.36 |
| Miscellaneous Costs: | | |
| Mailings/ Printing/Legal Ads | | $ 100.00 |
| | TOTAL | $2,793.53 |

**Total Cost For Appraisal And Package Preparation:** **$3,501.23**

**TOTAL COST OF RESALE:** **$11,358.69**

**INTEREST ON REMAINING CONTRACT VALUE**

As per CT9.4-Failure to Cut (4/82) "interest will be charged for the total number of months, or portions thereof from Termination Date until mid-point of the contract resale period, less any time in excess of one year needed to make the resale." Interest is charged at the current rate being paid for borrowing by the United States (as calculated and published by the Treasury Department in TFRM 6-8020-20). The current interest rate for January 2001 is 6%; the resale offering will have a contract term of 3 years and the sale will be reoffered within 4 months. Therefore:

**INTEREST ($292,663.18 X .06 X 2.0 years):** **$35,119.58**

**CALCULATION OF RESALE VALUE**

According to FSH 2409.22, Section 62.3, an appraisal is done at the time of termination of the sale and is based upon the remaining contract volume and the original appraisal conditions. The only value in the original appraisal that has been updated is the Quality Adjustment figure for the included timber because of significant changes in the formulas since the original sale was sold. Appraisal Bulletin Number 01, CY 01,1st Quarter (January) was used to determine the reappraised value of the sale: The results are as follows:

| Species | Volume | Predicted Bid Rate (Line 28) | Total Value |
|---|---|---|---|
| DF-Sawtimber | 40 MBF | $ 132.44/MBF | $ 5,297.60 |
| ES- Sawtimber | 24 MBF | $ 132.44MBF | $ 3,178.56 |
| PP-Sawtimber | 1154 MBF | $ 387.26/MBF | $446,898.04 |

**TOTAL REAPPRAISED VALUE @ TERMINATION:** **$455,374.20**

# CALCULATION OF DAMAGES

**A) Calculation of Potential Damages** VOLUME VALUE

**1. Current Contract Value at Termination:**

Volume and Contract Value, remaining timber:

| | | | VOLUME | VALUE |
|---|---|---|---|---|
| a. On area not cut over | | Sawtimber | 1218 | $ 292,663.18 |
| | | Pulpwood | 0 | $ 0.00 |
| b. On area cut over | | Sawtimber | 0 | $ 0.00 |
| | | Pulpwood | 0 | $ 0.00 |
| TOTAL REMAINING TIMBER | | Sawtimber | 991 | $ 292,663.18 |
| | | Pulpwood | 0 | $ 0.00 |
| | | **Sub-Total:** | | **$ 292,663.18** |

**2. Additional Damages:**

| | |
|---|---|
| Liquidated Damages | $ 0.00 |
| Cost of Resale | $ 11,358.69 |
| Cost of Completing Contractual Requirements | $ 0.00 |
| Interest on remaining contract value *** | $ 34,119.58 |
| Other Damages— (List) | $ |
| **Sub-Total:** | $ 45,478.27 |

**3. Adjustment for Purchaser Credit:**

Less Purchaser Credit that HAS NOT been earned: ($ 0.00 )

**4. Maximum Potential Damages (A1 + A2 – A3):** **$ 338,141.45**

**B) Calculation of Resale Value:** (Use the Predicted Bid Value, Line 28, of the appraisal)

**1. Predicted High Bid Appraisal value at termination:** (1218 MBF) **$ 455,374.20**

Add Remaining Effective Purchaser Credit $ 0.00

**Sub-Total:** **$ 455,374.20**

**2. Actual Bid Value of Resale:** **$( )**

**3. Resale Value:** **$ 455,374.20**

(RESALE VALUE IS THE LARGER OF THE APPRAISAL SUB-TOTAL OR THE ACTUAL BID VALUE OF THE RESALE)

**C) Damages:**

| | |
|---|---|
| 1. Maximum Potential Damages (A4) | $ 338,141.45 |
| 2. Resale Value (B3) | $ 455,374.20 |
| **3. Damages (C1-C2):** | **$ 0.00** |
| 4. Unobligated Cash on Account | $ 0.00 |
| **5. Estimated Damages Due Government: Volume Cut, Removed Not paid for** | **$ 148,845.38** |
| **6. Refund Due Purchaser:** | **$ 0.00** |

2400-17 ..MMARY - TRANSACTION EVIDENCE (MBF) RUN DATE: 02/21/2001

SUMMARY CHECKED BY: SNL

REGION: 04
FOREST: Ashley
SALE NAME: OD RIDGE DEFAULT

STARS ID: 1 SALE ID: 04010161112001

| | | | | | |
|---|---|---|---|---|---|
| SPEC RD CONST (MI): | .0 | SPEC RD RECONST (MI): | .0 | ROAD COST: | 0 |
| ( 1) APPRAISED TO: EAGAR | | HAUL MI: 23 RTM: 131 | | ESSENTIAL KV: | 0 |
| GROUND BASE VOL: | 1218 | SKY/GROUND LEAD VOL: | 0 | AERIAL VOL: | 0 |
| GRND BASE SKID COST: | 47.90 | SKY/GRND LEAD YARD COST: | .00 | AERIAL YARD COST: | .00 |
| MBF/ACRE (GRND/BASE): | 2.1 | ROADS IN PLACE: N | | SALE WT.AVG. SKID-YARD COST | 47.90 |
| BF/TREE(GRND/BASE): | 165 | | | | |
| SKID DIST (GRND/BASE): | 300 | | | | |

| | | | | | | TOTAL OR AVG | |
|---|---|---|---|---|---|---|---|
| 1 | PRODUCT/UNIT | 1-1 | 1-1 | 1-1 | | | |
| 2 | SPECIES GROUP | ES | PP | DF | | | |
| 3 | SPECIES CODE | 093 | 122 | 204 | | | |
| 4 | % BY SPECIES | 1.96 | 94.75 | 3.29 | A | 100.00 | |
| 5 | spvol( MBF | 24 | 1154 | 40 | T | 1218 | |
| 6 | DBH (Inches) | 13.7 | 17.6 | 16.5 | A | 17.6 | |
| 7 | BASE PERIOD PRICE (BPP) | 91.34 | 14.50 | 91.34 | A | 18.54 | |
| 8 | MARKET ADJ | -22.72 | -1.14 | -22.72 | A | -2.28 | |
| 9 | ADJ BPP (7+8) | 68.62 | 13.36 | 68.62 | A | 16.26 | |
| 10 | BASE SKID-YARD COST | 52.64 | 52.64 | 52.64 | A | 52.64 | |
| 11 | SALE SKID-YARD COST | 47.90 | 47.90 | 47.90 | A | 47.90 | |
| 12 | SKID/YARD COST ADJ (10-11) | 4.74 | 4.74 | 4.74 | A | 4.74 | |
| 13 | BASE HAUL COST | 81.02 | 81.02 | 81.02 | A | 81.02 | |
| 14 | SALE HAUL COST | 22.34 | 22.34 | 22.34 | A | 22.34 | |
| 15 | HAUL COST ADJ (13-14) | 58.68 | 58.68 | 58.68 | A | 58.68 | |
| 16 | BASE RD MNT COST | 5.38 | 5.38 | 5.38 | A | 5.38 | |
| 17 | SALE RD MNT COST | 6.36 | 6.36 | 6.36 | A | 6.36 | |
| 18 | RD MNT COST ADJ (16-17) | -.98 | -.98 | -.98 | A | -.98 | |
| 19 | BASE SLASH COST | 21.54 | 21.54 | 21.54 | A | 21.54 | |
| 20 | SALE SLASH COST | 20.72 | 20.72 | 20.72 | A | 20.72 | |
| 21 | SALE SLASH ADJ (19-20) | .82 | .82 | .82 | A | .82 | |
| 22 | BASE TEMP RD COST | .56 | .56 | .56 | A | .56 | |
| 23 | SALE TEMP RD COST | .00 | .00 | .00 | A | .00 | |
| 24 | TEMP RD COST ADJ (22-23) | .56 | .56 | .56 | A | .56 | |
| 25 | QUAL ADJ | .00 | .00 | .00 | A | .00 | |
| 26 | UNUSUAL ADJ | .00 | 310.08 | .00 | A | 293.78 | |
| 27 | TOTAL ADJ (Sum:12,15,18,21,24,25,26) | 63.82 | 373.90 | 63.82 | A | 357.60 | |
| 28 | PREDICTED BID (9+27) | 132.44 | 387.26 | 132.44 | A | 373.88 | |
| 29 | COMPETITION AMOUNT | 6.86 | 1.34 | 6.86 | A | 1.64 | |
| 30 | IND ADV RATES (28-29-34+36) | 125.58 | 385.92 | 125.58 | A | 372.24 | TV 453388.32 |
| 31 | BASE RATES + TPV (31+36) | 8.70 | 14.50 | 8.70 | A | 14.20 | |
| 32 | ADJ TO BASE RATES | .00 | .00 | .00 | A | .00 | |
| 33 | ADVERTISED RATES (30+32) | 125.58 | 385.92 | 125.58 | A | 372.24 | TV 453388.32 |
| 34 | SALE SPECIFIED RD COST | .00 | .00 | .00 | A | .00 | |
| 35 | BASE INDICES (DEC 00) | 262.75 | 304.09 | 262.75 | | | |
| 36 | TIMBER PROPERTY VALUE | .00 | .00 | .00 | A | .00 | |
| | MBF/CCF ratio: | .50000 | .50000 | .50000 | | .50000 | |
| | TSA TABLE: | WWPAC | WWPAC | WWPAC | | | |

*** Deficit Sale Increased: .00 Ineffective Roads: .00

MBF = Thousands of Board Feet CCF = Hundreds of Cubic Feet REV. 23-DEC-1999
Bulletin: BULLETIN # 01 CY 01

2400-17 SU...ARY - TRANSACTION EVIDENCE (CCF)

UN DATE: 02/21/2001

SUMMARY CHECKED BY: SNL

REGION: 04
FOREST: Ashley
SALE NAME: OD RIDGE DEFAULT

STARS ID: 1 SALE ID: 04010161112001

| | | | | | |
|---|---|---|---|---|---|
| SPEC RD CONST (MI): | .0 | SPEC RD RECONST (MI): | .0 | ROAD COST: | 0 |
| ( 1) APPRAISED TO: EAGAR | | HAUL MI: 23 RTM: 131 | | ESSENTIAL KV: | 0 |
| GROUND BASE VOL: | 2436 | SKY/GROUND LEAD VOL: | 0 | AERIAL VOL: | 0 |
| GRND BASE SKID COST: | 23.95 | SKY/GRND LEAD YARD COST: | .00 | AERIAL YARD COST: | .00 |
| CCF/ACRE (GRND/BASE): | 4.3 | ROADS IN PLACE: N | | SALE WT.AVG. SKID-YARD COST | 23.95 |
| CF/TREE(GRND/BASE): | 33 | | | | |
| SKID DIST (GRND/BASE): | 300 | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1 | PRODUCT/UNIT | 1-3 | 1-3 | 1-3 | | TOTAL OR AVG | |
| 2 | SPECIES GROUP | BS | PP | DF | | | |
| 3 | SPECIES CODE | 093 | 122 | 204 | | | |
| 4 | % BY SPECIES | 1.96 | 94.75 | 3.29 | A | 100.00 | |
| 5 | spvol( CCF | 48 | 2308 | 80 | T | 2436 | |
| 6 | DBH (Inches) | 13.7 | 17.6 | 16.5 | A | 17.6 | |
| 7 | BASE PERIOD PRICE (BPP) | 45.67 | 7.25 | 45.67 | A | 9.27 | |
| 8 | MARKET ADJ | -11.36 | -.57 | -11.36 | A | -1.14 | |
| 9 | ADJ BPP (7+8) | 34.31 | 6.68 | 34.31 | A | 8.13 | |
| 10 | BASE SKID-YARD COST | 26.32 | 26.32 | 26.32 | A | 26.32 | |
| 11 | SALE SKID-YARD COST | 23.95 | 23.95 | 23.95 | A | 23.95 | |
| 12 | SKID/YARD COST ADJ (10-11) | 2.37 | 2.37 | 2.37 | A | 2.37 | |
| 13 | BASE HAUL COST | 40.51 | 40.51 | 40.51 | A | 40.51 | |
| 14 | SALE HAUL COST | 11.17 | 11.17 | 11.17 | A | 11.17 | |
| 15 | HAUL COST ADJ (13-14) | 29.34 | 29.34 | 29.34 | A | 29.34 | |
| 16 | BASE RD MNT COST | 2.69 | 2.69 | 2.69 | A | 2.69 | |
| 17 | SALE RD MNT COST | 3.18 | 3.18 | 3.18 | A | 3.18 | |
| 18 | RD MNT COST ADJ (16-17) | -.49 | -.49 | -.49 | A | -.49 | |
| 19 | BASE SLASH COST | 10.77 | 10.77 | 10.77 | A | 10.77 | |
| 20 | SALE SLASH COST | 10.36 | 10.36 | 10.36 | A | 10.36 | |
| 21 | SALE SLASH ADJ (19-20) | .41 | .41 | .41 | A | .41 | |
| 22 | BASE TEMP RD COST | .28 | .28 | .28 | A | .28 | |
| 23 | SALE TEMP RD COST | .00 | .00 | .00 | A | .00 | |
| 24 | TEMP RD COST ADJ (22-23) | .28 | .28 | .28 | A | .28 | |
| 25 | QUAL ADJ | .00 | .00 | .00 | A | .00 | |
| 26 | UNUSUAL ADJ | .00 | 155.04 | .00 | A | 146.89 | |
| 27 | TOTAL ADJ (Sum:12,15,18,21,24,25,26) | 31.91 | 186.95 | 31.91 | A | 178.80 | |
| 28 | PREDICTED BID (9+27) | 66.22 | 193.63 | 66.22 | A | 186.94 | |
| 29 | COMPETITION AMOUNT | 3.43 | .67 | 3.43 | A | .82 | |
| 30 | IND ADV RATES (28-29-34+36) | 62.79 | 192.96 | 62.79 | A | 186.12 | TV 453388.32 |
| 31 | BASE RATES + TPV (31+36) | 4.35 | 7.25 | 4.35 | A | 7.10 | |
| 32 | ADJ TO BASE RATES | .00 | .00 | .00 | A | .00 | |
| 33 | ADVERTISED RATES (30+32) | 62.79 | 192.96 | 62.79 | A | 186.12 | TV 453388.32 |
| 34 | SALE SPECIFIED RD COST | .00 | .00 | .00 | A | .00 | |
| 35 | BASE INDICES (DEC 00) | 137.94 | 159.65 | 137.94 | | | |
| 36 | TIMBER PROPERTY VALUE | .00 | .00 | .00 | A | .00 | |
| | MBF/CCF ratio: | .50000 | .50000 | .50000 | | .50000 | |
| | TSA TABLE: | WWPAC | WWPAC | WWPAC | | | |

*** Deficit Sale Increased: .00 Ineffective Roads: .00

MBF = Thousands of Board Feet CCF = Hundreds of Cubic Feet REV. 23-DEC-1999
Bulletin: BULLETIN # 01 CY 01

USDA FOREST SERVICE
BILL FOR COLLECTION

1. BILL DATE: 3/1/01 PAGE: 1

ENCLOSE A COPY OF THIS BILL WITH YOUR CHECK OR MONEY ORDER. DO NOT SEND CASH. PLEASE INCLUDE BILL NO. AND PAYER CODE NO. ON YOUR CHECK.
MAKE CHECK PAYABLE TO: USDA FOREST SERVICE

MAIL PAYMENT TO:
USDA FOREST SERVICE
FILE 71652
P.O. BOX 60000
SAN FRANCISCO, CA 94160-1652

TO:

PRECISION PINE & TIMBER
P.O. BOX 70

HEBER AZ 85928

PAYER INDICATE AMOUNT ENCLOSED: $________

2. NET AMOUNT DUE: $ 148,845.38
3. DUE DATE: 3/30/01
4. BILL NUMBER: TM 03012110156
5. PAYER CODE: 860481719 A

6. AGREEMENT NO: CONTRACT NO: 03010600015?4
7. DESCRIPTION: 06 OD DEFAULT

8. REMARKS:
RE: PAYER CODE: 860481719 A BILL NO: TM 03012110156

9. PRINCIPAL: $148,845.38
10. INTEREST:
11. ADMINISTRATIVE COSTS:
12. PENALTY:
13. AMOUNT DUE: $148,845.38
14. AMOUNT CREDITED:
15. NET AMOUNT DUE: $ 148,845.38

NOTE:
PLEASE SEND ALL CORRESPONDENCE, INQUIRIES, AND CHANGE OF ADDRESS TO:

APACHE SITGREAVES N F
PO BOX 640

SPRINGERVILLE AZ 85938

FAILURE TO MAKE PAYMENT BY THE DUE DATE WILL RESULT IN THE ASSESSMENT OF LATE PAYMENT CHARGES (INTEREST, ADMINISTRATIVE COST, AND/OR PENALTY CHARGES) IN ACCORDANCE WITH YOUR CONTRACT, PERMIT, OR THE DEBT COLLECTION ACT OF 1982, AS AMENDED. POSTMARKS ARE NOT HONORED.

SPRINGERVILLE RANGER DISTRICT
OD RIDGE TS ESTIMATED DEFAULTED SALE DAMAGE CONTRACT NO. 06-001574

| 16. ORG | 17. JOB | 18. AMOUNT | 16. ORG | 17. JOB | 18. AMOUNT | 16. ORG | 17. JOB | 18. AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 0301 | 87002101 | $148,845.38 | | | | | | |

# DECISION DOCUMENT

PURCHASER AND ADDRESS:

Precision Pine & Timber, Inc
P.O. Box 70
Heber, AZ 85928

1) Preface & Digest:

Decision Number: 3-01-03
Location of Sale:

| | |
|---|---|
| Region | 3 |
| National Forest | Apache-Sitgreaves N.F.'s |
| Ranger District | Black Mesa (formerly HeberR.D.) |

Sale Information:

| | |
|---|---|
| Purchaser Name: | Precision Pine & Timber, Inc. |
| Contract Date: | December 13, 1993 |
| Contract Number: | 001756 |
| Sale Name: | Jersey Horse Timber Sale |
| Contract Form: | FS 2400-6T |
| Termination Date: | January 9, 2001 |

2) Claim Summary:

This documents the Contracting Officer's Decision regarding a claim under the Contract Disputes Act by the United States Government against Precision Pine & Timber, Inc. for the sum of **$9,035.47** for its default of the Jersey Horse Timber Sale, contract number 001756.

3) Government's Claim:

The Jersey Horse Timber Sale timber sale was cancelled by the Regional Forester, Eleanor S. Towns, on January 9, 2001, for failure to remedy breach pursuant to special contract provision CT 9.3 - Breach. When a timber sale contract is terminated before completion, the Contracting Officer must determine if the United States has been damaged (FSM 2453.5). Damages due to the United States for Purchaser's failure to cut and remove included timber are outlined in contract provision CT9.4 -- Failure to Cut.

Based on procedures and applicable costs described in provision CT9.4 I have estimated the damages due the United States to be **$9,035.47** for the Jersey Horse Timber Sale. This estimate may be adjusted once final damages are determined following the resale of the remaining timber. At that time any surplus damages collected by this estimate will be refunded to the purchaser, or any additional damages due will be collected, as appropriate.

4) Findings:

A. Contract Requirements:

The following CT contract provisions are pertinent to the claim.

CT9.3 B BREACH (6/90)
CT9.4 B FAILURE TO CUT (4/82)

B. Facts:

Precision Pine designated Frontier Insurance Company as its surety for the Jersey Horse Timber Sale. In June, the Department of the Treasury removed Frontier Insurance Company from their list of acceptable sureties for federal contracts. The Contracting Officer sent Purchaser a letter advising it of the removal, and reminding the Purchaser of the contract requirement in BT9.1 -- Performance Bond to provide alternative surety satisfactory to the Forest Service.

Precision Pine failed to provide a surety satisfactory to the Forest Service within the appropriate time period. On July 20, 2000, the Contracting Officer notified Purchaser that it was in material breach of the contract. Purchaser thereafter failed to remedy the material breach. Based on this failure, the Regional Forester terminated the Jersey Horse Timber Sale contract for failure to remedy breach pursuant to CT9.3-- BREACH, on January 9, 2001.

Pursuant to CT9.4-- FAILURE TO CUT, the Contracting Officer has estimated the damages suffered by the Government as a result of the default. A summary of the Contracting Officer's calculations of the estimated damages for the Jersey Horse Timber Sale timber sale is attached.

**5) Contracting Officer's Disposition of the Claim:**

The Contracting Officer estimates the damages due the government for the default of the Jersey Horse Timber Sale to be **$9,035.47.**

A Bill for Collection in that amount is attached to this decision.

**6) Concluding Information:**

This is the final decision of the Contracting Officer. This decision may be appealed to the Agriculture Board of Contract Appeals.

If you decide to make such an appeal, you must mail or otherwise furnish written notice thereof to the Agriculture Board of Contract Appeals within 90 days from the date you receive this decision. A copy thereof shall be furnished to the Contracting Officer from whose decision appeal is intended, shall reference this decision, and identify this contract by number. In lieu of appealing to the Agriculture Board of Contract Appeals, you may bring an action directly in the Court of Federal Claims within 12 months of the date you receive this decision.

In the event you appeal this decision to the Agriculture Board of Contract Appeals, you may request that the Board process this appeal under the accelerated procedures (41 U.S.C. 601, et seq., section 8f), or under the small claims procedures (41 U.S.C. 601,et seq., section 9).

Susan N. Lee
Contracting Officer
P.O. Box 469
Alpine, AZ 85920
520-339-4384

Date: 3/1/01

# DEFAULT DAMAGE CALCULATIONS

## JERSEY HORSE TIMBER SALE
## CONTRACT NO. 001756
## USDA FOREST SERVICE
## APACHE-SITGREAVES NATIONAL FOREST'S

The Jersey Horse timber sale was cancelled by the Regional Forester, Eleanor S. Towns, on January 9, 2001, for failure to remedy breach pursuant to special contract provision CT 9.3 - Breach. As directed by the Regional Forester and in accordance with Forest Service policy when a timber sale contract is terminated before completion, the Contracting Officer must determine if the United States has been damaged (FSM 2453.5). Damages due the United States for Purchaser's failure to cut and remove included timber are outlined in contract provision CT9.4 -- Failure to Cut.

The Jersey Horse Timber sale consisted of seven (7) separate payment units when originally sold. Payment units 1, 5, 6, and 7 were operated in and harvested. Payment Units 2, 3, and 4 were never released. At the time of termination the remaining volume of included timber on the Jersey Horse Timber sale was 1354 CCF of sawtimber. The current contract value of the sale at termination was **$203,831.16.** The sale was sold as an escalated sale, so there will be adjustments to the current contract rates necessary at the end of this quarter. All purchaser credit was earned, and used. An appraisal of the remaining timber at the time of termination, using the standard Forest Service method in use at that time and conditions of the original contract, resulted in an appraised value of **$227,783.42.**

Based on procedures and applicable costs described in provision CT9.4 the following outlines the calculation of estimated damages due the United States for default of the Jersey Horse timber sale contract. This estimate may be adjusted once final damages are determined following the resale of the remaining timber. At that time any surplus damages collected by this estimate will be refunded to the purchaser, or any additional damages due will be collected, as appropriate.

**REMAINING TIMBER**

At the time of default the contract value of the timber at termination was:

Unreleased Payment Units (# 2,3 & 4)

| Species | Volume | Rates @ Termination | Value |
|---|---|---|---|
| PP-Sawtimber | 1354 ccf | $ 150.54/ccf | $ 203,831.16 |

**REMAINING CONTRACT VALUE @ TERMINATION:** **$ 203,831.16**

**COST OF RESALE**

Because this sale is an older sale, marked and cruised in 1991 and 1992, it will need touch up marking of cut and/or leave trees and the cutting unit boundaries will need to be remarked prior to reselling. In addition, the remaining payment units will need to be recruised. Additional costs associated with the resale include the cost of preparing a revised appraisal and contract package as well as an additional advertisement. Costs here are based on best estimates of what will be required and will be adjusted, upwards or downwards depending upon actual costs incurred, once final damages are determined.

**Estimated time and costs to remark cutting unit boundaries, touch up mark and recruise payment units 2,3,4:**

4 Crew members at 15 days each:

| | |
|---|---|
| Crew Member @ $145.00/day X 1 5 days = | $ 2,175.00 |
| Crew Member @ $145.00/day X 1 5 days = | $ 2,175.00 |
| Crew Member @ $145.00/day X 1 5 days = | $ 2,175.00 |
| Crew Member @ $145.00/day X 1 5 days = | $ 2,175.00 |
| Paint: 20 cases @ $ 96/case = | $ 1920.00 |
| Vehicle Cost: | |
| Crew Truck – Miles $450 miles, FOR $420 | $ 870.00 |
| Sale Admin Truck – Miles $30, FOR $30 | $ 90.00 |
| Cruise Design and Check Cruise – | |
| Pre-Sale Forester – GS 9 @ $202.00/day X 5 days = | $1,010.00 |
| Check Cruiser – GS 11 @ $233.00/day X 2 days = | $ 466.00 |
| **Total Field Preparation Costs:** | **$13,056.00** |

**Preparation of Appraisal Report, Prospectus and Advertisement:**

| | | | |
|---|---|---|---|
| Forester | GS 9 | 2 days @ $202.00/day | $ 404.00 |
| Timber Resource Clerk | GS 5 | 2 days @ $143.00/day | $ 286.00 |
| | | TOTAL | $ 690.00 |

**Sale Package Preparation:**

| | | |
|---|---|---|
| Pre-Sale Forester GS 9 | 5 days @ $202.00/day | $1,010.00 |
| Contracting Officer GS 11 | 3 days @ $233.00/day | $ 699.00 |
| Engineering GS 11 | 1 day @ $272.00/day | $ 272.00 |
| Timber Resource Clerk GS 6 | 3 day @ $161.00/day | $ 483.00 |
| Sale Admininstrator GS 9 | 2 day @ $206.00/day | $ 412.00 |
| Miscellaneous Costs: | | |
| Mailings/ Printing/Legal Ads | | $ 100.00 |
| | TOTAL | $2,976.00 |

**Total Cost For Appraisal And Package Preparation: $3,666.00**

TOTAL COST OF RESALE: $16,722.00

**INTEREST ON REMAINING CONTRACT VALUE**

As per CT9.4-Failure to Cut (4/82) "interest will be charged for the total number of months, or portions thereof from Termination Date until mid-point of the contract resale period, less any time in excess of one year needed to make the resale." Interest is charged at the current rate being paid for borrowing by the United States (as calculated and published by the Treasury Department in TFRM 6-8020-20). The current interest rate for January 2001 is 6%; the resale offering will have a contract term of 2 years and the sale will be reoffered within 4 months. Therefore:

**INTEREST ($203,831.16 X .06 X 1.33 years): $16,265.73**

**CALCULATION OF RESALE VALUE**

According to FSH 2409.22, Section 62.3, an appraisal is done at the time of termination of the sale and is based upon the remaining contract volume and the original appraisal conditions. The only value in the original appraisal that has been updated is the Quality Adjustment figure for the included timber because of significant changes in the formulas since the original sale was sold. Appraisal Bulletin Number 01, CY 01,1st Quarter (January) was used to determine the reappraised value of the sale: The results are as follows:

| Species | Volume | Predicted Bid Rate (Line 28) | Total Value |
|---|---|---|---|
| PP-Sawtimber | 1354 CCF | $ 168.23/ CCF | $227,783.42 |

**TOTAL REAPPRAISED VALUE @ TERMINATION: $227,783.42**

# CALCULATION OF DAMAGES

## A) Calculation of Potential Damages

| | | VOLUME | VALUE |
|---|---|---|---|
| **1. Current Contract Value at Termination:** | | | |
| Volume and Contract Value, remaining timber: | | | |
| a. On area not cut over | Sawtimber | 1354 | $ 203,831.16 |
| | Pulpwood | 0 | $ 0 .00 |
| b. On area cut over | Sawtimber | 0 | $ 0.00 |
| | Pulpwood | 0 | $ 0.00 |
| TOTAL REMAINING TIMBER | Sawtimber | 1354 | $ 203,831.16 |
| | Pulpwood | 0 | $ 0.00 |
| | **Sub-Total:** | | **$ 203,831.16** |

**2. Additional Damages:**

| | |
|---|---|
| Liquidated Damages | $ 0.00 |
| Cost of Resale | $ 16,722.00 |
| Cost of Completing Contractual Requirements | $ 0.00 |
| Interest on remaining contract value *** | $ 16,265.73 |
| Other Damages— (List) | $ |
| **Sub-Total:** | $ 32,987.73 |

**3. Adjustment for Purchaser Credit:**

Less Purchaser Credit that HAS NOT been earned: ($ 0.00 )

**4. Maximum Potential Damages (A1 + A2 – A3):** **$ 236,818.89**

---

## B) Calculation of Resale Value: (Use the Predicted Bid Value, Line 28, of the appraisal)

**1. Predicted High Bid Appraisal value at termination:**
(1354ccf @ $168.23ccf) = $227,783.42 — **$ 227,783.42**

Add Remaining Effective Purchaser Credit — $ 0.00

**Sub-Total:** **$ 227,783.42**

**2. Actual Bid Value of Resale:** **$( )**

**3. Resale Value:** **$ 227,783.42**
(RESALE VALUE IS THE LARGER OF THE APPRAISAL SUB-TOTAL OR THE ACTUAL BID VALUE OF THE RESALE)

---

## C) Damages:

| | |
|---|---|
| 1. Maximum Potential Damages (A4) | $ 236,818.89 |
| 2. Resale Value (B3) | $ 227,783.42 |
| **3. Damages (C1-C2):** | **$ 9,035.47** |
| 4. Unobligated Cash on Account | $ 0.00 |
| **5. Estimated Damages Due Government:** | **$ 9,035.47** |
| **6. Refund Due Purchaser:** | **$ 0.00** |

2400-17 SUMMARY - TRANSACTION EVIDENCE (CCF) RUN DATE: 02/21/2001

REGION: SUMMARY CKED BY: snl
FOREST: ..che/Sitgreaves
SALE NAME: Jersey Horse Default STARS ID: 0 SALE ID: 03010151112001

| | | | | | |
|---|---|---|---|---|---|
| SPEC RD CONST (MI): | .0 | SPEC RD RECONST (MI): | .0 | ROAD COST: | 0 |
| ( 1) APPRAISED TO: HEBER | | HAUL MI: 39 RTM: 144 | | ESSENTIAL KV: | 0 |
| GROUND BASE VOL: | 1354 | SKY/GROUND LEAD VOL: | 0 | AERIAL VOL: | 0 |
| GRND BASE SKID COST: | 23.64 | SKY/GRND LEAD YARD COST: | .00 | AERIAL YARD COST: | .00 |
| CCF/ACRE (GRND/BASE): | 2.5 | ROADS IN PLACE: N | | SALE WT.AVG. SKID-YARD COST | 23.64 |
| CF/TREE(GRND/BASE): | 37 | | | RMPP % GRADE (R-3): | 37.9 |
| SKID DIST (GRND/BASE): | 300 | | | LRF (R-3): | 7.1054 |

| | | | | TOTAL OR AVG | | |
|---|---|---|---|---|---|---|
| 1 | PRODUCT/UNIT | 1-3 | | | | |
| 2 | SPECIES GROUP | PP | | | | |
| 3 | SPECIES CODE | 122 | | | | |
| 4 | % BY SPECIES | 100.00 | A | 100.00 | | |
| 5 | spvol( CCF | 1354 | T | 1354 | | |
| 6 | DBH (Inches) | 17.9 | A | 17.9 | | |
| 7 | BASE PERIOD PRICE (BPP) | 7.25 | A | 7.25 | | |
| 8 | MARKET ADJ | -.57 | A | -.57 | | |
| 9 | ADJ BPP (7+8) | 6.68 | A | 6.68 | | |
| 10 | BASE SKID-YARD COST | 26.32 | A | 26.32 | | |
| 11 | SALE SKID-YARD COST | 23.64 | A | 23.64 | | |
| 12 | SKID/YARD COST ADJ (10-11) | 2.68 | A | 2.68 | | |
| 13 | BASE HAUL COST | 40.51 | A | 40.51 | | |
| 14 | SALE HAUL COST | 13.05 | A | 13.05 | | |
| 15 | HAUL COST ADJ (13-14) | 27.46 | A | 27.46 | | |
| 16 | BASE RD MNT COST | 2.69 | A | 2.69 | | |
| 17 | SALE RD MNT COST | 4.58 | A | 4.58 | | |
| 18 | RD MNT COST ADJ (16-17) | -1.89 | A | -1.89 | | |
| 19 | BASE SLASH COST | 10.77 | A | 10.77 | | |
| 20 | SALE SLASH COST | 18.90 | A | 18.90 | | |
| 21 | SALE SLASH ADJ (19-20) | -8.13 | A | -8.13 | | |
| 22 | BASE TEMP RD COST | .28 | A | .28 | | |
| 23 | SALE TEMP RD COST | .00 | A | .00 | | |
| 24 | TEMP RD COST ADJ (22-23) | .28 | A | .28 | | |
| 25 | QUAL ADJ (RMPP) | 141.15 | A | 141.15 | | |
| 26 | UNUSUAL ADJ | .00 | A | .00 | | |
| 27 | TOTAL ADJ (Sum:12,15,18,21,24,25,26) | 161.55 | A | 161.55 | | |
| 28 | PREDICTED BID (9+27) | 168.23 | A | 168.23 | | |
| 29 | COMPETITION AMOUNT | .67 | A | .67 | | |
| 30 | IND ADV RATES (28-29-34+36) | 167.56 | A | 167.56 | TV | 226876.24 |
| 31 | BASE RATES + TPV (31+36) | 7.25 | A | 7.25 | | |
| 32 | ADJ TO BASE RATES | .00 | A | .00 | | |
| 33 | ADVERTISED RATES (30+32) | 167.56 | A | 167.56 | TV | 226876.24 |
| 34 | SALE SPECIFIED RD COST | .00 | A | .00 | | |
| 35 | BASE INDICES (DEC 00) | 159.65 | | | | |
| 36 | TIMBER PROPERTY VALUE | .00 | A | .00 | | |
| | MBF/CCF ratio: | .50000 | | .50000 | | |
| | TSA TABLE: | WWPAC | | | | |

*** Deficit Sale Increased: .00 Ineffective Roads: .00

MBF = Thousands of Board Feet CCF = Hundreds of Cubic Feet
Bulletin: BULLETIN # 01 CY 01 REV. 23-DEC-1999

USDA FOREST SERVICE
BILL FOR COLLECTION

1. BILL DATE: 3/1/01

PAGE: 1

ENCLOSE A COPY OF THIS BILL WITH YOUR CHECK OR MONEY ORDER.
DO NOT SEND CASH. PLEASE INCLUDE BILL NO. AND PAYER CODE NO.
ON YOUR CHECK.
MAKE CHECK PAYABLE TO:
USDA FOREST SERVICE

MAIL PAYMENT TO:
USDA FOREST SERVICE
FILE 71652
P.O. BOX 60000
SAN FRANCISCO, CA 94160-1652

TO:

PRECISION PINE & TIMBER
P.O. BOX 70

HEBER AZ 85928

PAYER INDICATE
AMOUNT ENCLOSED: $________

2. NET AMOUNT DUE: $ 9,035.47

3. DUE DATE: 3/30/01

4. BILL NUMBER: TM 03012110157

5. PAYER CODE: 860481719 A

6. AGREEMENT NO: CONTRACT NO: 030105001756

7. DESCRIPTION: 05 JERSEY HORSE DEFAULT

8. REMARKS:
RE: PAYER CODE: 860481719 A BILL NO: TM 03012110157

| | |
|---|---|
| 9. PRINCIPAL: | $ 9,035.47 |
| 10. INTEREST: | |
| 11. ADMINISTRATIVE COSTS: | |
| 12. PENALTY: | |
| 13. AMOUNT DUE: | $ 9,035.47 |
| 14. AMOUNT CREDITED: | |
| 15. NET AMOUNT DUE: | $ 9,035.47 |

NOTE:
PLEASE SEND ALL CORRESPONDENCE, INQUIRIES, AND CHANGE OF ADDRESS TO:

APACHE SITGREAVES N F
PO BOX 640

SPRINGERVILLE AZ 85938

FAILURE TO MAKE PAYMENT BY THE DUE DATE WILL RESULT IN THE ASSESSMENT OF LATE PAYMENT CHARGES (INTEREST, ADMINISTRATIVE COST, AND/OR PENALTY CHARGES) IN ACCORDANCE WITH YOUR CONTRACT, PERMIT, OR THE DEBT COLLECTION ACT OF 1982, AS AMENDED. POSTMARKS ARE NOT HONORED.

BLACK MESA RANGER DISTRICT
JERSEY HORSE MP ESTIMATED DEFAULTED SALE DAMAGE CONTRACT NO. 05-001756

| 16. ORG | 17. JOB | 18. AMOUNT | 16. ORG | 17. JOB | 18. AMOUNT | 16. ORG | 17. JOB | 18. AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 0301 | 87002801 | $ 9,035.47 | | | | | | |

# DECISION DOCUMENT

PURCHASER AND ADDRESS:

Precision Pine & Timber, Inc
P.O. Box 70
Heber, AZ 85928

1) Preface & Digest:

Decision Number: 3-01-01

Location of Sale:

| | |
|---|---|
| Region | 3 |
| National Forest | Apache-Sitgreaves N.F's |
| Ranger District | Black Mesa R.D (formerly Chevelon R.D.) |

Sale Information:

| | |
|---|---|
| Purchaser Name: | Precision Pine & Timber, Inc. |
| Contract Date: | January 15, 1998 |
| Contract Number: | 001939 |
| Sale Name: | Gentry Multi-Product Sale |
| Contract Form: | FS 2400-6T |
| Termination Date: | January 9, 2001 |

2) Claim Summary:

This documents the Contracting Officer's Decision regarding a claim under the Contract Disputes Act by the United States Government against Precision Pine & Timber, Inc. for the sum of **$92,236.78** for its default of the Gentry Multi-Product Sale, contract number 001939.

3) Government's Claim:

The Gentry Multi-Product Sale was cancelled by the Regional Forester, Eleanor S. Towns, on January 9, 2001, for failure to remedy breach pursuant to special contract provision CT 9.3 - Breach. When a timber sale contract is terminated before completion, the Contracting Officer must determine if the United States has been damaged (FSM 2453.5). Damages due to the United States for Purchaser's failure to cut and remove included timber are outlined in contract provision CT9.4 -- Failure to Cut.

Based on procedures and applicable costs described in provision CT9.4 I have estimated the damages due the United States to be **$92,236.78** for the Gentry Multi-Product sale. This estimate may be adjusted once final damages are determined following the resale of the remaining timber. At that time any surplus damages collected by this estimate will be

refunded to the purchaser, or any additional damages due will be collected, as appropriate.

4) Findings:

A. Contract Requirements:

The following CT contract provisions are pertinent to the claim.

CT9.3 B BREACH (6/90)
CT9.4 B FAILURE TO CUT (4/82)

B. Facts:

Precision Pine designated Frontier Insurance Company as its surety for the Gentry Multi-Product Sale. In June, the Department of the Treasury removed Frontier Insurance Company from their list of acceptable sureties for federal contracts. The Contracting Officer sent Purchaser a letter advising it of the removal, and reminding the Purchaser of the contract requirement in BT9.1 – Performance Bond to provide alternative surety satisfactory to the Forest Service.

Precision Pine failed to provide a surety satisfactory to the Forest Service within the appropriate time period. On July 20, 2000, the Contracting Officer notified Purchaser that it was in material breach of the contract. Purchaser thereafter failed to remedy the material breach. Based on this failure, the Regional Forester terminated the Gentry Multi-Product Sale contract for failure to remedy breach pursuant to CT9.3– BREACH, on January 9, 2001.

Pursuant to CT9.4-- FAILURE TO CUT, the Contracting Officer has estimated the damages suffered by the Government as a result of the default. A summary of the Contracting Officer's calculations of the estimated damages for the Gentry Multi-Product Sale is attached.

5) **Contracting Officer's Disposition of the Claim:**

The Contracting Officer estimates the damages due the government for the default of the Gentry Multi-Product Sale to be **$92,236.78.**

A Bill for Collection in that amount is attached to this decision.

6) **Concluding Information:**

This is the final decision of the Contracting Officer. This decision may be appealed to the Agriculture Board of Contract Appeals.

If you decide to make such an appeal, you must mail or otherwise furnish written notice thereof to the Agriculture Board of Contract Appeals within 90 days from the date you receive this decision. A copy thereof shall be furnished to the Contracting Officer from whose decision appeal is intended, shall reference this decision, and identify this contract by number. In lieu of appealing to the Agriculture Board of Contract Appeals, you may bring an action directly in the Court of Federal Claims within 12 months of the date you receive this decision.

In the event you appeal this decision to the Agriculture Board of Contract Appeals, you may request that the Board process this appeal under the accelerated procedures (41 U.S.C. 601, et seq., section 8f).

Susan N. Lee (signature)

3/1/01
Date

Susan N. Lee
Contracting Officer
P.O. Box 469
Alpine, AZ 85920
520-339-4384

# DEFAULT DAMAGE CALCULATIONS

## GENTRY MULTI-PRODUCT SALE
## CONTRACT NO. 001939
## APACHE-SITGREAVES NATIONAL FOREST'S
## USDA FOREST SERVICE

The Gentry Multi-Product Sale was cancelled by the Regional Forester, Eleanor S. Towns, on January 9, 2001, for failure to remedy breach pursuant to special contract provision CT 9.3 - Breach. As directed by the Regional Forester and in accordance with Forest Service policy when a timber sale contract is terminated before completion, the Contracting Officer must determine if the United States has been damaged (FSM 2453.5). Damages due the United States for Purchaser's failure to cut and remove included timber are outlined in contract provision CT9.4 -- Failure to Cut.

The Gentry Multi-Product Sale consisted of four (4) separate payment units when originally sold. No harvesting was done on any payment units. No roads were built. At the time of termination the remaining volume of included timber on the Gentry Multi-Product Sale was 3800 CCF of sawtimber and 893 CCF of pulpwood. The current contract value of the sale at termination was **$230,743.46.** This is a flat rates sale, so no escalation adjustments need to be made at the end of the quarter. There is **$24,734.01** unearned Purchaser Credit. An appraisal of the remaining timber at the time of termination, using the standard Forest Service method in use at that time and conditions of the original contract, resulted in an appraised value of **$145,127.89.**

Based on procedures and applicable costs described in provision CT9.4 the following outlines the calculation of estimated damages due the United States for default of the Gentry Multi-Product Sale contract. This estimate may be adjusted once final damages are determined following the resale of the remaining timber. At that time any surplus damages collected by this estimate will be refunded to the purchaser, or any additional damages due will be collected, as appropriate.

**REMAINING TIMBER**

At the time of default the contract value of the remaining timber at termination was:

Unreleased Payment Units (#1- 4)

| Species | Volume | Rates @ Termination | Value |
|---|---|---|---|
| PP-Sawtimber (9-12") | 1076ccf | $ 21.89/ccf | $ 23,553.64 |
| PP- Sawtimber (12"+) | 2724ccf | $ 73.93/ccf | $201,385.32 |
| PP-Roundwood | 893 ccf | $ 6.50/ccf | $ 5,804.50 |

**REMAINING CONTRACT VALUE @ TERMINATION:** **$230,743.46**

**COST OF RESALE**

Because this sale was marked and cruised in 1996- 1997, it will need no marking or recruising prior to reselling. Additional costs associated with the resale include the cost of preparing a revised appraisal and contract package as well as an additional advertisement. Costs here are based on best estimates of what will be required and will be adjusted, upwards or downwards depending upon actual costs incurred, once final damages are determined.

**Preparation of Appraisal Report, Prospectus and Advertisement:**

| | | |
|---|---|---|
| Forester GS 9 | 2 days @ $202.00/day | $ 404.00 |
| Timber Resource Clerk GS 5 | 2 days @ $143.00/day | $ 286.00 |
| | TOTAL | $ 690.00 |

**Sale Package Preparation:**

| | | |
|---|---|---|
| Pre-Sale Forester GS 9 | 5 days @ $202.00/day | $1,010.00 |
| Contracting Officer GS 11 | 3 days @ $233.00/day | $ 699.00 |
| Engineering GS 11 | 1 day @ $272.00/day | $ 272.00 |
| Timber Resource Clerk GS 6 | 3 day @ $161.00/day | $ 483.00 |
| Sale Admininstrator GS 9 | 2 day @ $206.00/day | $ 412.00 |
| Miscellaneous Costs: Mailings/ Printing/Legal Ads | | $ 100.00 |
| | TOTAL | $2,976.00 |

**Total Cost For Appraisal And Package Preparation:** **$3,666.00**

**TOTAL COST OF RESALE:** **$ 3,666.00**

**INTEREST ON REMAINING CONTRACT VALUE**

As per CT9.4-Failure to Cut (4/82) "interest will be charged for the total number of months, or portions thereof from Termination Date until mid-point of the contract resale period, less any time in excess of one year needed to make the resale." Interest is charged at the current rate being paid for borrowing by the United States (as calculated and published by the Treasury Department in TFRM 6-8020-20). The current interest rate for January, 2001 is 6%; the resale offering will have a contract term of 3 years and the sale will be reoffered within 6 months. Therefore:

**INTEREST ($ 230,743.46 X .06 X 2.00 years):** **$ 27,689.22**

**CALCULATION OF RESALE VALUE**

According to FSH 2409.22, Section 62.3, an appraisal is done at the time of termination of the sale and is based upon the remaining contract volume and the original appraisal conditions. According to FSH 2409.18 Section 47.1, we should appraise the remaining timber using standard Forest Service methods in effect at termination. The current method of appraising sawtimber is to combined all sawtimber 9" diameter and above. At the time the Gentry Multi-Product Sale was sold, the appraisal method split the 9 – 12" diameter and the 12" diameter and greater material, and appraised them separately. In the reappraisal, the sawtimber is combined. The only value in the original appraisal that has been updated is the Quality Adjustment figure for the included timber because of significant changes in the formulas since the original sale was sold. Appraisal Bulletin Number 01, CY 01,1st Quarter (January) was used to determine the reappraised value of the sale: The results are as follows:

| Species | Volume | Predicted Bid Rate (Line 28) | Total Value |
|---|---|---|---|
| PP-Sawtimber | 3800 CCF | $ 38.02/ CCF | $ 144,476.00 |
| PP-Roundwood | 893 CCF | $ 0.73/ CCF | $ 651.89 |
| **TOTAL REAPPRAISED VALUE @ TERMINATION:** | | | **$145,127.89** |

# CALCULATION OF DAMAGES

## A) Calculation of Potential Damages

### 1. Current Contract Value at Termination:

| | | VOLUME | VALUE |
|---|---|---|---|
| Volume and Contract Value, remaining timber: | | | |
| a. On area not cut over | Sawtimber | 3800 | $ 224,938.96 |
| | Pulpwood | 893 | $ 5,804.50 |
| b. On area cut over | Sawtimber | 0 | $ 0.00 |
| | Pulpwood | 0 | $ 0.00 |
| TOTAL REMAINING TIMBER | Sawtimber | 3800 | $ 224,938.96 |
| | Pulpwood | 893 | $ 5,804.50 |
| | | **Sub-Total:** | **$ 230,743.46** |

### 2. Additional Damages:

| | |
|---|---|
| Liquidated Damages | $ 0.00 |
| Cost of Resale | $ 3,666.00 |
| Cost of Completing Contractual Requirements | $ 0.00 |
| Interest on remaining contract value *** | $ 27,689.22 |
| Other Damages— (List) | $ |
| **Sub-Total:** | $ 31,355.22 |

### 3. Adjustment for Purchaser Credit:

Less Purchaser Credit that HAS NOT been earned: ($ 24,734.01 )

### 4. Maximum Potential Damages (A1 + A2 – A3): **$ 237,364.67**

## B) Calculation of Resale Value: (Use the Predicted Bid Value, Line 28, of the appraisal)

### 1. Predicted High Bid Appraisal value at termination: **$ 145,127.89**

(3800 ccf @ $38.02/ccf) = $144,476.00
( 893 ccf @ $0.73/ccf) = $ 651.89

Add Remaining Effective Purchaser Credit $ 0.00

**Sub-Total:** **$ 145,127.89**

### 2. Actual Bid Value of Resale: $(          )

### 3. Resale Value: **$ 145,127.89**

(RESALE VALUE IS THE LARGER OF THE APPRAISAL SUB-TOTAL OR THE ACTUAL BID VALUE OF THE RESALE)

## C) Damages:

| | |
|---|---|
| 1. Maximum Potential Damages (A4) | $ 237,364.67 |
| 2. Resale Value (B3) | $ 145,127.89 |
| **3. Damages (C1-C2):** | **$ 92,236.78** |
| 4. Unobligated Cash on Account | $ 0.00 |
| **5. Estimated Damages Due Government:** | **$ 92,236.78** |
| **6. Refund Due Purchaser:** | **$ 0.00** |

ON DATE: 02/02/2001

Flat Rate

2400-17 SUMMARY - TRANSACTION EVIDENCE (CCF)

SUMMARY CHECKED BY: SNL

REGION: 03
FOREST: Apache/Sitgreaves
SALE NAME: Gentry MP Default

STARS ID: 98561  SALE ID: 03010450112001

| | | | | | |
|---|---|---|---|---|---|
| SPEC RD CONST (MI): | .0 | SPEC RD RECONST (MI): | 7.2 | ROAD COST: | 24734 |
| (1) APPRAISED TO: HEBER | | HAUL MI: 59 RTM: | 225 | ESSENTIAL KV: | 82454 |
| GROUND BASE VOL: | 3800 | SKY/GROUND LEAD VOL: | 0 | AERIAL VOL: | 0 |
| GRND BASE SKID COST: | 21.81 | SKY/GRND LEAD YARD COST: | .00 | AERIAL YARD COST: | .00 |
| CCF/ACRE (GRND/BASE): | 4.9 | ROADS IN PLACE: N | | SALE WT.AVG. SKID-YARD COST | 21.81 |
| CF/TREE (GRND/BASE): | 17 | | | RMPP @ GRADE (R-3): | 5.0 |
| SKID DIST (GRND/BASE): | 100 | | | LRF (R-3): | 6.4859 |

| | | 1-3 | 2-3 | | TOTAL OR AVG | | |
|---|---|---|---|---|---|---|---|
| 1 | PRODUCT/UNIT | PP | PF | | | | |
| 2 | SPECIES GROUP | 122 | 122 | | | | |
| 3 | SPECIES CODE | 76.49 | 23.51 | A | 100.00 | | |
| 4 | % BY SPECIES | 3800 | 893 | T | 4693 | | |
| 5 | spvol( CCF | 12.8 | .0 | A | 10.9 | | |
| 6 | DBH (Inches) | 7.25 | .73 | A | 7.42 | | |
| 7 | BASE PERIOD PRICE (BPP) | -.57 | .00 | A | -.57 | | |
| 8 | MARKET ADJ | 6.68 | .73 | A | 6.85 | | |
| 9 | ADJ BPP (7+8) | 26.32 | .00 | A | 26.32 | | |
| 10 | BASE SKID-YARD COST | 21.81 | .00 | A | 21.81 | | |
| 11 | SALE SKID-YARD COST | 4.51 | .00 | A | 4.51 | | |
| 12 | SKID/YARD COST ADJ (10-11) | 40.51 | .00 | A | 40.51 | | |
| 13 | BASE HAUL COST | 19.16 | .00 | A | 19.16 | | |
| 14 | SALE HAUL COST | 21.35 | .00 | A | 21.35 | | |
| 15 | HAUL COST ADJ (13-14) | 2.69 | .00 | A | 2.69 | | |
| 16 | BASE RD MNT COST | 4.79 | .00 | A | 4.79 | | |
| 17 | SALE RD MNT COST | -2.10 | .00 | A | -2.10 | | |
| 18 | RD MNT COST ADJ (16-17) | 10.77 | .00 | A | 10.77 | | |
| 19 | BASE SLASH COST | 13.96 | .00 | A | 13.96 | | |
| 20 | SALE SLASH COST | -3.19 | .00 | A | -3.19 | | |
| 21 | SALE SLASH ADJ (19-20) | .28 | .00 | A | .28 | | |
| 22 | BASE TEMP RD COST | .00 | .00 | A | .00 | | |
| 23 | SALE TEMP RD COST | .28 | .00 | A | .28 | | |
| 24 | TEMP RD COST ADJ (22-23) | 10.49 | .00 | A | 10.49 | | |
| 25 | QUAL ADJ (RMPP) | .00 | .00 | A | .00 | | |
| 26 | UNUSUAL ADJ | 31.34 | .00 | A | 31.34 | | |
| 27 | TOTAL ADJ (Sum:12,15,18,21,24,25,26) | 38.02 | .73 | A | 38.19 | | |
| 28 | PREDICTED BID (9+27) | .67 | .00 | A | .67 | | |
| 29 | COMPETITION AMOUNT | 30.84 | -5.78 | A | 29.48 | TV | 112024.00 |
| 30 | IND ADV RATES (28-29-34+36) | 21.78 | .73 | A | 21.95 | | |
| 31 | BASE RATES + TPV (31+36) | -1.53 | 6.51 | A | .00 | | |
| 32 | ADJ TO BASE RATES | 29.31 | .73 | A | 29.48 | TV | 112024.00 |
| 33 | ADVERTISED RATES (30+32) | 6.51 | .00 | A | 6.51 | | |
| 34 | SALE SPECIFIED RD COST | 144.44 | .00 | | | | |
| 35 | BASE INDICES (DEC 00) | .00 | .00 | A | .00 | | |
| 36 | TIMBER PROPERTY VALUE | .47220 | .63500 | | .47211 | | |
| | MBF/CCF ratio: | WWPAB | WWPAE | | | | |
| | TSA TABLE: | | | | | | |

*** Deficit Sale Increased: .00  Ineffective Roads: .00

MBF = Thousands of Board Feet  CCF = Hundreds of Cubic Feet  REV. 23-DEC-1999
Bulletin: BULLETIN # 01 CY 01

PAGE: 1

USDA FOREST SERVICE
BILL FOR COLLECTION

1. BILL DATE: 3/1/01

ENCLOSE A COPY OF THIS BILL WITH YOUR CHECK OR MONEY ORDER. DO NOT SEND CASH. PLEASE INCLUDE BILL NO. AND PAYER CODE NO. ON YOUR CHECK.
MAKE CHECK PAYABLE TO:
USDA FOREST SERVICE

MAIL PAYMENT TO:
USDA FOREST SERVICE
FILE 71652
P.O. BOX 60000
SAN FRANCISCO, CA 94160-1652

TO:

PRECISION PINE & TIMBER
P.O. BOX 70

HEBER AZ 85928

PAYER INDICATE AMOUNT ENCLOSED: $

2. NET AMOUNT DUE: $ 92236.78

3. DUE DATE: 3/30/01

4. BILL NUMBER: TM 03012110160

5. PAYER CODE: 860481719 A

6. AGREEMENT NO: CONTRACT NO: 030104001939

7. DESCRIPTION: 04 GENTRY DEFAULT

8. REMARKS:
RE: PAYER CODE: 860481719 A BILL NO: TM 03012110160

| | |
|---|---|
| 9. PRINCIPAL: | $ 92,236.78 |
| 10. INTEREST: | |
| 11. ADMINISTRATIVE COSTS: | |
| 12. PENALTY: | |
| 13. AMOUNT DUE: | $ 92,236.78 |
| 14. AMOUNT CREDITED: | |
| 15. NET AMOUNT DUE: | $ 92,236.78 |

NOTE:
PLEASE SEND ALL CORRESPONDENCE, INQUIRIES, AND CHANGE OF ADDRESS TO:

APACHE SITGREAVES N F
PO BOX 640

SPRINGERVILLE AZ 85938

FAILURE TO MAKE PAYMENT BY THE DUE DATE WILL RESULT IN THE ASSESSMENT OF LATE PAYMENT CHARGES (INTEREST, ADMINISTRATIVE COST, AND/OR PENALTY CHARGES) IN ACCORDANCE WITH YOUR CONTRACT, PERMIT, OR THE DEBT COLLECTION ACT OF 1982, AS AMENDED. POSTMARKS ARE NOT HONORED.

BLACK MESA RANGER DISTRICT
GENTRY MP ESTIMATED DEFAULTED SALE DAMAGE CONTRACT NO. 04-001939

| 16. ORG | 17. JOB | 18. AMOUNT | 16. ORG | 17. JOB | 18. AMOUNT | 16. ORG | 17. JOB | 18. AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 0301 | 87002801 | $ 92,236.78 | | | | | | |

# DECISION DOCUMENT

PURCHASER AND ADDRESS:

Precision Pine & Timber, Inc
P.O. Box 70
Heber, AZ 85928

1) Preface & Digest:

Decision Number: 3-01-02
Location of Sale:

| | |
|---|---|
| Region | 3 |
| National Forest | Apache-Sitgreaves N.F.'s |
| Ranger District | Black Mesa (formerly Chevelon R.D.) |

Sale Information:

| | |
|---|---|
| Purchaser Name: | Precision Pine & Timber, Inc. |
| Contract Date: | December 2, 1998 |
| Contract Number: | 020012 |
| Sale Name: | Wiggins Multi-Product Sale |
| Contract Form: | FS 2400-6T |
| Termination Date: | January 9, 2001 |

2) Claim Summary:

This documents the Contracting Officer's Decision regarding a claim under the Contract Disputes Act by the United States Government against Precision Pine & Timber, Inc. for the sum of **$13,016.93** for its default of the Wiggins Multi-Product Sale, contract number 020012.

3) Government's Claim:

The Wiggins Multi-Product Sale was cancelled by the Regional Forester, Eleanor S. Towns, on January 9, 2001, for failure to remedy breach pursuant to special contract provision CT 9.3 - Breach. When a timber sale contract is terminated before completion, the Contracting Officer must determine if the United States has been damaged (FSM 2453.5). Damages due to the United States for Purchaser's failure to cut and remove included timber are outlined in contract provision CT9.4 -- Failure to Cut.

Based on procedures and applicable costs described in provision CT9.4 I have estimated the damages due the United States to be **$13,016.93** for the Wiggins Multi-Product Sale. This estimate may be adjusted once final damages are determined following the resale of the remaining timber. At that time any surplus damages collected by this estimate will be refunded to the purchaser, or any additional damages due will be collected, as appropriate.

4) Findings:

A. Contract Requirements:

The following CT contract provisions are pertinent to the claim.

CT9.3 B BREACH (6/90)
CT9.4 B FAILURE TO CUT (4/82)

B. Facts:

Precision Pine designated Frontier Insurance Company as its surety for the Wiggins Multi-Product Sale. In June, the Department of the Treasury removed Frontier Insurance Company from their list of acceptable sureties for federal contracts. The Contracting Officer sent Purchaser a letter advising it of the removal, and reminding the Purchaser of the contract requirement in BT9.1 – Performance Bond to provide alternative surety satisfactory to the Forest Service.

Precision Pine failed to provide a surety satisfactory to the Forest Service within the appropriate time period. On July 20, 2000, the Contracting Officer notified Purchaser that it was in material breach of the contract. Purchaser thereafter failed to remedy the material breach. Based on this failure, the Regional Forester terminated the Wiggins Multi-Product Sale contract for failure to remedy breach pursuant to CT9.3-- BREACH, on January 9, 2001.

Pursuant to CT9.4– FAILURE TO CUT, the Contracting Officer has estimated the damages suffered by the Government as a result of the default. A summary of the Contracting Officer's calculations of the estimated damages for the Wiggins Multi-Product Sale is attached.

5) **Contracting Officer's Disposition of the Claim:**

The Contracting Officer estimates the damages due the government for the default of the Wiggins Multi-Product Sale to be **$13,016.93.**

A Bill for Collection in that amount is attached to this decision.

6) **Concluding Information:**

This is the final decision of the Contracting Officer. This decision may be appealed to the Agriculture Board of Contract Appeals.

If you decide to make such an appeal, you must mail or otherwise furnish written notice thereof to the Agriculture Board of Contract Appeals within 90 days from the date you receive this decision. A copy thereof shall be furnished to the Contracting Officer from whose decision appeal is intended, shall reference this decision, and identify this contract by number. In lieu of appealing to the Agriculture Board of Contract Appeals, you may bring an action directly in the Court of Federal Claims within 12 months of the date you receive this decision.

In the event you appeal this decision to the Agriculture Board of Contract Appeals, you may request that the Board process this appeal under the accelerated procedures (41 U.S.C. 601, et seq., section 8f), or under the small claims procedures (41 U.S.C. 601,et seq., section 9).

Susan N. Lee | 3/1/01

Susan N. Lee
Contracting Officer
P.O. Box 469
Alpine, AZ 85920
520-339-4384

Date:

## DEFAULT DAMAGE CALCULATIONS

### WIGGINS MULTI-PRODUCT SALE
### CONTRACT NO. 020012
### USDA FOREST SERVICE
### APACHE-SITGREAVES NATIONAL FOREST'S

The Wiggins Multi-Product Sale was cancelled by the Regional Forester, Eleanor S. Towns, on January 9, 2001, for failure to remedy breach pursuant to special contract provision CT 9.3 - Breach. As directed by the Regional Forester and in accordance with Forest Service policy when a timber sale contract is terminated before completion, the Contracting Officer must determine if the United States has been damaged (FSM 2453.5). Damages due the United States for Purchaser's failure to cut and remove included timber are outlined in contract provision CT9.4 -- Failure to Cut.

The Wiggins Multi-Product Sale consisted of four (4) separate payment units when originally sold. Payment units 2, 3 and 4 were operated in and harvested. Scattered decked material remains in Payment units 2 and 4. Payment Unit 1was released and partially cut, and has scattered decks remaining, and volume standing. At the time of termination the remaining volume of included timber (per ATSA statements) on the Wiggins Multi-Product Sale was 991 CCF of pulpwood. The current contract value of the sale at termination was **$723.43**. The sale was sold as an escalated sale, however, since the only volume remaining is pulpwood, which is not escalated, there will be no adjustments to the current contract rates at the end of this quarter. There was no purchaser credit on this sale. An appraisal of the remaining timber at the time of termination, using the standard Forest Service method in use at that time and conditions of the original contract, resulted in an appraised value of **$723.43.**

Based on procedures and applicable costs described in provision CT9.4 the following outlines the calculation of estimated damages due the United States for default of the Wiggins Multi-Product Sale contract. This estimate may be adjusted once final damages are determined following the resale of the remaining timber. At that time any surplus damages collected by this estimate will be refunded to the purchaser, or any additional damages due will be collected, as appropriate.

**REMAINING TIMBER**

At the time of default the contract value of the timber at termination was:

Cut over Payment Unit (# 1)

| Species | Volume | Rates @ Termination | Value |
|---|---|---|---|
| PP-Sawtimber | 991 ccf | $ .73/ccf | $ 723.43 |

**REMAINING CONTRACT VALUE @ TERMINATION:** **$ 723.43**

**COST OF RESALE**

Because this sale was mostly cut out, it will need no remarking, but will need recruising to determine the volume remaining. Additional costs associated with the resale include the cost of preparing a revised appraisal and contract package as well as an additional advertisement. Costs here are based on best estimates of what will be required and will be adjusted, upwards or downwards depending upon actual costs incurred, once final damages are determined.

**Estimated time and costs to recruise payment unit 1, and calculate the remaining decked volume in Payment Units 2, & 4:**

| | |
|---|---|
| 4 Crewmembers at 8 days each: | |
| Crew Member @ $145.00/day X 8 days = | $ 1,160.00 |
| Crew Member @ $145.00/day X 8 days = | $ 1,160.00 |
| Crew Member @ $145.00/day X 8 days = | $ 1,160.00 |
| Crew Member @ $145.00/day X 8 days = | $ 1,160.00 |
| Paint: 1 cases @ $ 96/case = | $ 96.00 |
| Vehicle Cost: | |
| Crew Truck – Miles $450 miles, FOR $420 | $ 870.00 |
| Sale Admin Truck – Miles $60, FOR $60 | $ 120.00 |
| Cruise Design and Check Cruise – | |
| Pre-Sale Forester – GS 9 @ $202.00/day X 2 days = | $ 404.00 |
| Check Cruiser – GS 11 @ $233.00/day X 1 days = | $ 233.00 |
| **Total Field Preparation Costs:** | **$ 6,363.00** |

**Preparation of Appraisal Report, Prospectus and Advertisement:**

| | | | |
|---|---|---|---|
| Forester | GS 9 | 2 days @ $202.00/day | $ 404.00 |
| Timber Resource Clerk | GS 5 | 2 days @ $143.00/day | $ 286.00 |
| | | TOTAL | $ 690.00 |

**Sale Package Preparation:**

| | | |
|---|---|---|
| Pre-Sale Forester GS 9 | 3 days @ $202.00/day | $ 606.00 |
| Contracting Officer GS 11 | 2 days @ $233.00/day | $ 466.00 |
| Timber Resource Clerk GS 6 | 2 day @ $161.00/day | $ 322.00 |
| Sale Admininstrator GS 9 | 2 day @ $206.00/day | $ 412.00 |
| Miscellaneous Costs: | | |
| Mailings/ Printing/Legal Ads | | $ 100.00 |
| | TOTAL | $1,906.00 |

**Total Cost For Appraisal And Package Preparation: $2,596.00**

**TOTAL COST OF RESALE:** **$ 8,959.00**

**COST OF COMPLETING CONTRACTUAL REQUIUREMENTS:**
The roads in Payment Units 1, 2, and 4 did not receive final road maintenance blading, including road closures, and erosion control, nor did the main haul route (Forest Road 34 - 34 miles) receive the final blading. The estimated cost in **$4,000.00**

**INTEREST ON REMAINING CONTRACT VALUE**

As per CT9.4-Failure to Cut (4/82) "interest will be charged for the total number of months, or portions thereof from Termination Date until mid-point of the contract resale period, less any time in excess of one year needed to make the resale." Interest is charged at the current rate being paid for borrowing by the United States (as calculated and published by the Treasury Department in TFRM 6-8020-20). The current interest rate for January 2001 is 6%; the resale offering will have a contract term of 2 years and the sale will be reoffered within 4 months. Therefore:

**INTEREST ($723.43 X .06 X 1.33 years):** **$57.73**

## CALCULATION OF RESALE VALUE

According to FSH 2409.22, Section 62.3, an appraisal is done at the time of termination of the sale and is based upon the remaining contract volume and the original appraisal conditions. The only value in the original appraisal that has been updated is the Quality Adjustment figure for the included timber because of significant changes in the formulas since the original sale was sold. Appraisal Bulletin Number 01, CY 01,1st Quarter (January) was used to determine the reappraised value of the sale: The results are as follows:

| Species | Volume | Predicted Bid Rate (Line 28) | Total Value |
|---|---|---|---|
| PP-Sawtimber | 991 CCF | $ .73/ CCF | $723.43 |

**TOTAL REAPPRAISED VALUE @ TERMINATION:** **$723.43**

# CALCULATION OF DAMAGES

| A) Calculation of Potential Damages | | VOLUME | VALUE |
|---|---|---|---|
| **1. Current Contract Value at Termination:** | | | |
| Volume and Contract Value, remaining timber: | | | |
| a. On area not cut over | Sawtimber | 0 | $ 0.00 |
| | Pulpwood | 991 | $ 723.43 |
| b. On area cut over | Sawtimber | 0 | $ 0.00 |
| | Pulpwood | 0 | $ 0.00 |
| TOTAL REMAINING TIMBER | Sawtimber | 991 | $ 723.43 |
| | Pulpwood | 0 | $ 0.00 |
| | **Sub-Total:** | | **$ 723.43** |
| **2. Additional Damages:** | | | |
| Liquidated Damages | | | $ 0.00 |
| Cost of Resale | | | $ 8,959.00 |
| Cost of Completing Contractual Requirements | | | $ 4,000.00 |
| Interest on remaining contract value *** | | | $ 57.73 |
| Other Damages— (List) | | | $ |
| | **Sub-Total:** | | $ 13,016.73 |
| **3. Adjustment for Purchaser Credit:** | | | |
| Less Purchaser Credit that HAS NOT been earned: | | | ($ 0.00 ) |
| **4. Maximum Potential Damages (A1 + A2 – A3):** | | | **$ 13,740.16** |

---

**B) Calculation of Resale Value:** (Use the Predicted Bid Value, Line 28, of the appraisal)

| | | |
|---|---|---|
| **1. Predicted High Bid Appraisal value at termination:** (991ccf @ $.73ccf) = $723.43 | | $ 723.43 |
| Add Remaining Effective Purchaser Credit | | $ 0.00 |
| | **Sub-Total:** | $ 723.43 |
| **2. Actual Bid Value of Resale:** | | $( ) |
| **3. Resale Value:** | | $ 723.43 |

(RESALE VALUE IS THE LARGER OF THE APPRAISAL SUB-TOTAL OR THE ACTUAL BID VALUE OF THE RESALE)

---

**C) Damages:**

| | |
|---|---|
| 1. Maximum Potential Damages (A4) | $ 13,740.16 |
| 2. Resale Value (B3) | $ 723.23 |
| **3. Damages (C1-C2):** | **$ 13,016.93** |
| 4. Unobligated Cash on Account | $ 0.00 |
| **5. Estimated Damages Due Government:** | **$ 13,016.93** |
| **6. Refund Due Purchaser:** | **$ 0.00** |

USDA FOREST SERVICE
BILL FOR COLLECTION

BILL DATE: 3/1/01 PAGE: 1

ENCLOSE A COPY OF THIS BILL WITH YOUR CHECK OR MONEY ORDER.
DO NOT SEND CASH. PLEASE INCLUDE BILL NO. AND PAYER CODE NO.
ON YOUR CHECK.
MAKE CHECK PAYABLE TO:
USDA FOREST SERVICE

MAIL PAYMENT TO:
USDA FOREST SERVICE
FILE 71652
P.O. BOX 60000
SAN FRANCISCO, CA 94160-1652

TO:

PRECISION PINE & TIMBER
P.O. BOX 70

HEBER AZ 85928

PAYER INDICATE
AMOUNT ENCLOSED: $________

2. NET AMOUNT DUE: $ 13,016.93
3. DUE DATE: 3/30/01
4. BILL NUMBER: TM 03012110159
5. PAYER CODE: 860481719 A

6. AGREEMENT NO: CONTRACT NO: 030104020012

7. DESCRIPTION: 04 WIGGINS DEFAULT

8. REMARKS:
RE: PAYER CODE: 860481719 A BILL NO: TM 03012110159

| | |
|---|---|
| 9. PRINCIPAL: | $13,016.93 |
| 10. INTEREST: | |
| 11. ADMINISTRATIVE COSTS: | |
| 12. PENALTY: | |
| 13. AMOUNT DUE: | $13,016.93 |
| 14. AMOUNT CREDITED: | |
| 15. NET AMOUNT DUE: | $13,016.93 |

NOTE:
PLEASE SEND ALL CORRESPONDENCE, INQUIRIES, AND CHANGE OF ADDRESS TO:

APACHE SITGREAVES N F
PO BOX 640

SPRINGERVILLE AZ 85938

FAILURE TO MAKE PAYMENT BY THE DUE DATE WILL RESULT IN THE ASSESSMENT OF LATE PAYMENT CHARGES (INTEREST, ADMINISTRATIVE COST, AND/OR PENALTY CHARGES) IN ACCORDANCE WITH YOUR CONTRACT, PERMIT, OR THE DEBT COLLECTION ACT OF 1982, AS AMENDED. POSTMARKS ARE NOT HONORED.

BLACK MESA RANGER DISTRICT
WIGGINS MP ESTIMATED DEFAULTED SALE DAMAGE CONTRACT NO. 04-020012

| 16. ORG | 17. JOB | 18. AMOUNT | 16. ORG | 17. JOB | 18. AMOUNT | 16. ORG | 17. JOB | 18. AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 0301 | 87002801 | $ 13,016.93 | | | | | | |

# DECISION DOCUMENT

PURCHASER AND ADDRESS:

Precision Pine & Timber, Inc
P.O. Box 70
Heber, AZ 85928

1) Preface & Digest:

Decision Number: 3-01-04
Location of Sale:

| | |
|---|---|
| Region | 3 |
| National Forest | Apache-Sitgreaves N.F.'s |
| Ranger District | Black Mesa (formerly Heber R.D.) |

Sale Information:

| | |
|---|---|
| Purchaser Name: | Precision Pine & Timber, Inc. |
| Contract Date: | April 13, 1995 |
| Contract Number: | 001822 |
| Sale Name: | Brookbank Multi-Product |
| Contract Form: | FS 2400-6T |
| Termination Date: | January 9, 2001 |

2) Claim Summary:

This documents the Contracting Officer's Decision regarding a claim under the Contract Disputes Act by the United States Government against Precision Pine & Timber, Inc. for the sum of **$0.00** for its default of the Brookbank Multi-Product Sale, contract number 001822.

3) Government's Claim:

The Brookbank Multi-Product Sale timber sale was cancelled by the Regional Forester, Eleanor S. Towns, on January 9, 2001, for failure to remedy breach pursuant to special contract provision CT 9.3 - Breach. When a timber sale contract is terminated before completion, the Contracting Officer must determine if the United States has been damaged (FSM 2453.5). Damages due to the United States for Purchaser's failure to cut and remove included timber are outlined in contract provision CT9.4 -- Failure to Cut.

Based on procedures and applicable costs described in provision CT9.4 I have estimated the damages due the United States to be **$0.00** for the Brookbank Multi-Product Sale. This estimate may be adjusted once final damages are determined following the resale of the remaining timber. At that time any surplus damages collected by this estimate will be refunded to the purchaser, or any additional damages due will be collected, as appropriate.

4) Findings:

A. Contract Requirements:

The following CT contract provisions are pertinent to the claim.

CT9.3 B BREACH (6/90)
CT9.4 B FAILURE TO CUT (4/82)

B. Facts:

Precision Pine designated Frontier Insurance Company as its surety for the Brookbank Multi-Product Sale. In June, the Department of the Treasury removed Frontier Insurance Company from their list of acceptable sureties for federal contracts. The Contracting Officer sent Purchaser a letter advising it of the removal, and reminding the Purchaser of the contract requirement in BT9.1 -- Performance Bond to provide alternative surety satisfactory to the Forest Service.

Precision Pine failed to provide a surety satisfactory to the Forest Service within the appropriate time period. On July 20, 2000, the Contracting Officer notified Purchaser that it was in material breach of the contract. Purchaser thereafter failed to remedy the material breach. Based on this failure, the Regional Forester terminated the Brookbank Multi-Product Sale contract for failure to remedy breach pursuant to CT9.3-- BREACH, on January 9, 2001.

Pursuant to CT9.4-- FAILURE TO CUT, the Contracting Officer has estimated the damages suffered by the Government as a result of the default. A summary of the Contracting Officer's calculations of the estimated damages for the Brookbank Multi-Product Sale timber sale is attached.

**5) Contracting Officer's Disposition of the Claim:**

The Contracting Officer estimates the damages due the government for the default of the Brookbank Multi-Product Sale to be **$0.00.**

6) **Concluding Information:**

This is the final decision of the Contracting Officer. This decision may be appealed to the Agriculture Board of Contract Appeals.

If you decide to make such an appeal, you must mail or otherwise furnish written notice thereof to the Agriculture Board of Contract Appeals within 90 days from the date you receive this decision. A copy thereof shall be furnished to the Contracting Officer from whose decision appeal is intended, shall reference this decision, and identify this contract by number. In lieu of appealing to the Agriculture Board of Contract Appeals, you may bring an action directly in the Court of Federal Claims within 12 months of the date you receive this decision.

In the event you appeal this decision to the Agriculture Board of Contract Appeals, you may request that the Board process this appeal under the accelerated procedures (41 U.S.C. 601, et seq., section 8f), or under the small claims procedures (41 U.S.C. 601, et seq., section 9.)

Susan N. Lee 3/1/01

Date:

Susan N. Lee
Contracting Officer
P.O. Box 469
Alpine, AZ 85920
520-339-4384

# DEFAULT DAMAGE CALCULATIONS

## BROOKBANK MULTI-PRODUCT SALE
## CONTRACT NO. 001822
## APACHE-SITGREAVES NATIONAL FOREST'S
## USDA FOREST SERVICE

The Brookbank Multi-Product Sale was cancelled by the Regional Forester, Eleanor S. Towns, on January 9, 2001, for failure to remedy breach pursuant to special contract provision CT 9.3 - Breach. As directed by the Regional Forester and in accordance with Forest Service policy when a timber sale contract is terminated before completion, the Contracting Officer must determine if the United States has been damaged (FSM 2453.5). Damages due the United States for Purchaser's failure to cut and remove included timber are outlined in contract provision CT9.4 -- Failure to Cut.

The Brookbank Multi-Product Sale consisted of six (6) separate payment units when originally sold. Payment units #2, 3, 5, 6 were operated in with all of the sawtimber and pulpwood removed. Payment Units 1 and 4 were partially cut. At the time of termination the remaining volume of included timber on the Brookbank Multi-Product Sale was 1292 CCF of sawtimber and 1903 CCF of pulpwood. The current contract value of the sale at termination was **$24,348.20.** There may be adjustments to the current contract rates at the end of this quarter, in March of 2001. All roadwork was completed. There is **$2,752.54** Remaining Effective Purchaser Credit. An appraisal of the remaining timber at the time of termination, using the standard Forest Service method in use at that time and conditions of the original contract, resulted in an appraised value of **$57,914.19.**

Based on procedures and applicable costs described in provision CT9.4 the following outlines the calculation of estimated damages due the United States for default of the Brookbank Multi-Product Sale contract. This estimate may be adjusted once final damages are determined following the resale of the remaining timber. At that time any surplus damages collected by this estimate will be refunded to the purchaser, or any additional damages due will be collected, as appropriate.

**REMAINING TIMBER**

At the time of default the contract value of the remaining timber at termination was:

Released and partially cut, Payment Units (#1, 4)

| Species | Volume | Rates @ Termination | Value |
|---|---|---|---|
| PP-Sawtimber | 1292 ccf | $ 5.00/ccf | $ 6,460.00 |
| PP-Roundwood | 1903 ccf | $ 9.40/ccf | $17,888.20 |

**REMAINING CONTRACT VALUE @ TERMINATION:** **$24,348.20**

**COST OF RESALE**

Because this sale is an older sale, marked and cruised in 1993 and 1994, it will need touch up marking of cut and/or leave trees, it will need to have the cutting unit boundaries remarked, and the sale will need to be recruised prior to reselling. Additional costs associated with the resale include the cost of preparing a revised appraisal and contract package as well as an additional advertisement. Costs here are based on best estimates of what will be required and will be adjusted, upwards or downwards depending upon actual costs incurred, once final damages are determined.

**Estimated time and costs to remark cutting unit boundaries, touch up mark within units, and recruised payment units 1 and 4:**

4 Crew members at 15 days each:

| | |
|---|---|
| Crew Member @ $145.00/day X 15 days = | $ 2,175.00 |
| Crew Member @ $145.00/day X 15 days = | $ 2,175.00 |
| Crew Member @ $145.00/day X 15 days = | $ 2,175.00 |
| Crew Member @ $145.00/day X 15 days = | $ 2,175.00 |
| Paint: 6 cases @ $ 96/case = | $ 576.00 |
| Vehicle Cost: | |
| Crew Truck – Miles $420, FOR $450 = | $ 870.00 |
| Sale Admin Truck – Miles $60, FOR $60 = | $ 120.00 |

Cruise Design and Check Cruise –

| | |
|---|---|
| Pre-Sale Forester – GS 9 @ $202.00/day X 5 days = | $1,010.00 |
| Check Cruiser – GS 11 @ $233.00/day X 2 days = | $ 466.00 |

**Total Field Preparation Costs:** **$11,742.00**

**Preparation of Appraisal Report, Prospectus and Advertisement:**

| | | | |
|---|---|---|---|
| Forester | GS 9 | 2 days @ $202.00/day | $ 404.00 |
| Timber Resource Clerk | GS 5 | 2 days @ $143.00/day | $ 286.00 |
| | | TOTAL | $ 690.00 |

**Sale Package Preparation:**

| | | | |
|---|---|---|---|
| Pre-Sale Forester | GS 9 | 5 days @ $202.00/day | $1,010.00 |
| Contracting Officer | GS 11 | 3 days @ $233.00/day | $ 699.00 |
| Engineering | GS 11 | 1 day @ $272.00/day | $ 272.00 |
| Timber Resource Clerk | GS 6 | 3 day @ $161.00/day | $ 483.00 |
| Sale Admininstrator | GS 9 | 2 day @ $206.00/day | $ 412.00 |
| Miscellaneous Costs: Mailings/ Printing/Legal Ads | | | $ 100.00 |
| | | TOTAL | $2,976.00 |

**Total Cost For Appraisal And Package Preparation:** **$3,666.00**

**TOTAL COST OF RESALE:** **<u>$ 15,408.00</u>**

**COST OF COMPLETING CONTRACTUAL REQUIREMENTS:**

Final road maintenance blading of Payment Unit 2 roads = **$ 400.00**
This includes erosion control and waterbarring

## INTEREST ON REMAINING CONTRACT VALUE

As per CT9.4-Failure to Cut (4/82) "interest will be charged for the total number of months, or portions thereof from Termination Date until mid-point of the contract resale period, less any time in excess of one year needed to make the resale." Interest is charged at the current rate being paid for borrowing by the United States (as calculated and published by the Treasury Department in TFRM 6-8020-20). The current interest rate for January, 2001 is 6%; the resale offering will have a contract term of 3 years and the sale will be reoffered within 6 months. Therefore:

**INTEREST ($ 24,348.20 X .06 X 2.00 years):** **$ 2,921.78**

## CALCULATION OF RESALE VALUE

According to FSH 2409.22, Section 62.3, an appraisal is done at the time of termination of the sale and is based upon the remaining contract volume and the original appraisal conditions. The only value in the original appraisal that has been updated is the Quality Adjustment figure for the included timber because of significant changes in the formulas since the original sale was sold. Appraisal Bulletin Number 01, CY 01,1st Quarter (January) was used to determine the reappraised value of the sale: The results are as follows:

| Species | Volume | Predicted Bid Rate (Line 28) | Total Value |
|---|---|---|---|
| PP-Sawtimber | 1292 CCF | $ 43.75/ CCF | $ 56,525.00 |
| PP-Roundwood | 1903 CCF | $ 0.73/ CCF | $ 1,389.19 |

**TOTAL REAPPRAISED VALUE @ TERMINATION:** **$ 57,914.19**

# CALCULATION OF DAMAGES

## A) Calculation of Potential Damages

| | | VOLUME | VALUE |
|---|---|---|---|
| **1. Current Contract Value at Termination:** | | | |
| Volume and Contract Value, remaining timber: | | | |
| a. On area not cut over | Sawtimber | 0 | $ 0.00 |
| | Pulpwood | 0 | $ 0.00 |
| b. On area cut over | Sawtimber | 1292 | $ 6,460.00 |
| | Pulpwood | 1903 | $ 17,888.20 |
| TOTAL REMAINING TIMBER | Sawtimber | 1292 | $ 6,460.00 |
| | Pulpwood | 1903 | $ 17,888.20 |
| | **Sub-Total:** | | **$ 24,348.20** |

**2. Additional Damages:**

| | |
|---|---|
| Liquidated Damages | $ 0.00 |
| Cost of Resale | $ 15,408.00 |
| Cost of Completing Contractual Requirements | $ 400.00 |
| Interest on remaining contract value *** | $ 2,921.78 |
| Other Damages— (List) | $ |
| **Sub-Total:** | **$ 18,729.78** |

**3. Adjustment for Purchaser Credit:**

Less Purchaser Credit that HAS NOT been earned: ($ 0.00 )

**4. Maximum Potential Damages (A1 + A2 – A3):** **$ 43,077.98**

---

## B) Calculation of Resale Value: (Use the Predicted Bid Value, Line 28, of the appraisal)

| | |
|---|---|
| **1. Predicted High Bid Appraisal value at termination:** (1292ccf @ $43.75/ccf) = $56,525.00 (1903 ccf @ $0.73/ccf) =$ 1,38919 | **$ 57,914.19** |
| Add Remaining Effective Purchaser Credit | $ 2,752.54 |
| **Sub-Total:** | **$ 60,666.73** |
| **2. Actual Bid Value of Resale:** | **$( )** |
| **3. Resale Value:** (RESALE VALUE IS THE LARGER OF THE APPRAISAL SUB-TOTAL OR THE ACTUAL BID VALUE OF THE RESALE) | **$ 60,666.73** |

---

## C) Damages:

| | |
|---|---|
| 1. Maximum Potential Damages (A4) | $ 43,077.98 |
| 2. Resale Value (B3) | $ 60,666.73 |
| **3. Damages (C1-C2):** | **$ 0.00** |
| 4. Unobligated Cash on Account | $ 0.00 |
| **5. Estimated Damages Due Government:** | **$ 0.00** |
| **6. Refund Due Purchaser:** | **$ 0.00** |

2400-17 SUM - TRANSACTION EVIDENCE (CCF) CCF

RUN DATE: 02/02/2001

SUMMARY CHECKED BY: SNL

REGION: 03
FOREST: Apache/Sitgreaves
SALE NAME: Brookbank MP Default

STARS ID: 94501 SALE ID: 03010550212001

| | | | | | |
|---|---|---|---|---|---|
| SPEC RD CONST (MI): | .0 | SPEC RD RECONST (MI): | 10.0 | ROAD COST: | 0 |
| 1) APPRAISED TO: HEBER | | HAUL MI: 37 RTM: | 228 | ESSENTIAL KV: | 0 |
| GROUND BASE VOL: | 1292 | SKY/GROUND LEAD VOL: | 0 | AERIAL VOL: | 0 |
| GRND BASE SKID COST: | 32.00 | SKY/GRND LEAD YARD COST: | .00 | AERIAL YARD COST: | .00 |
| CCF/ACRE (GRND/BASE): | .8 | ROADS IN PLACE: N | | SALE WT.AVG. SKID-YARD COST | 32.00 |
| CF/TREE(GRND/BASE): | 14 | | | RMPP % GRADE (R-3): | 22.9 |
| SKID DIST (GRND/BASE): | 330 | | | LRF (R-3): | 6.5587 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1 | PRODUCT/UNIT | 1-3 | 2-3 | | TOTAL OR AVG | | |
| 2 | SPECIES GROUP | PP | PP | | | | |
| 3 | SPECIES CODE | 122 | 122 | | | | |
| 4 | % BY SPECIES | -47.30 | 147.30 | A | 100.00 | | |
| 5 | spvol( CCF | 1292 | 1903 | T | 3195 | | |
| 6 | DBH (Inches) | 12.6 | .0 | A | 10.5 | | |
| 7 | BASE PERIOD PRICE (BPP) | 7.25 | .73 | A | 8.33 | | |
| 8 | MARKET ADJ | -.57 | .00 | A | -.57 | | |
| 9 | ADJ BPP (7+8) | 6.68 | .73 | A | 7.76 | | |
| 10 | BASE SKID-YARD COST | 26.32 | .00 | A | 26.32 | | |
| 11 | SALE SKID-YARD COST | 32.00 | .00 | A | 32.00 | | |
| 12 | SKID/YARD COST ADJ (10-11) | -5.68 | .00 | A | -5.68 | | |
| 13 | BASE HAUL COST | 40.51 | .00 | A | 40.51 | | |
| 14 | SALE HAUL COST | 17.68 | .00 | A | 17.68 | | |
| 15 | HAUL COST ADJ (13-14) | 22.83 | .00 | A | 22.83 | | |
| 16 | BASE RD MNT COST | 2.69 | .00 | A | 2.69 | | |
| 17 | SALE RD MNT COST | 4.12 | .00 | A | 4.12 | | |
| 18 | RD MNT COST ADJ (16-17) | -1.43 | .00 | A | -1.43 | | |
| 19 | BASE SLASH COST | 10.77 | .00 | A | 10.77 | | |
| 20 | SALE SLASH COST | 7.31 | .00 | A | 7.31 | | |
| 21 | SALE SLASH ADJ (19-20) | 3.46 | .00 | A | 3.46 | | |
| 22 | BASE TEMP RD COST | .28 | .00 | A | .28 | | |
| 23 | SALE TEMP RD COST | .00 | .00 | A | .00 | | |
| 24 | TEMP RD COST ADJ (22-23) | .28 | .00 | A | .28 | | |
| 25 | QUAL ADJ (RMPP) | 17.61 | .00 | A | 17.61 | | |
| 26 | UNUSUAL ADJ | .00 | .00 | A | .00 | | |
| 27 | TOTAL ADJ | 37.07 | .00 | A | 37.07 | | |
| | (Sum:12,15,18,21,24,25,26) | | | | | | |
| 28 | PREDICTED BID (9+27) | 43.75 | .73 | A | 44.83 | | |
| 29 | COMPETITION AMOUNT | .33 | .00 | A | .33 | | |
| 30 | IND ADV RATES (28-29-34+36) | 43.42 | .73 | A | 44.50 | TV | 57494.00 |
| 31 | BASE RATES + TPV (31+36) | 7.25 | .73 | A | 8.33 | | |
| 32 | ADJ TO BASE RATES | .00 | .00 | A | .00 | | |
| 33 | ADVERTISED RATES (30+32) | 43.42 | .73 | A | 44.50 | TV | 57494.00 |
| 34 | SALE SPECIFIED RD COST | .00 | .00 | A | .00 | | |
| 35 | BASE INDICES (DEC 00) | 144.44 | .00 | | | | |
| 36 | TIMBER PROPERTY VALUE | .00 | .00 | A | .00 | | |
| | MBF/CCF ratio: | .47803 | .63500 | | .47833 | | |
| | TSA TABLE: | WWPAB | WWPAE | | | | |

*** Deficit Sale Increased: .00 Ineffective Roads: .00

MBF = Thousands of Board Feet CCF = Hundreds of Cubic Feet REV. 23-DEC-1999
Bulletin: BULLETIN # 01 CY 01

United States Department of Agriculture
Forest Service
Kaibab National Forest
800 South Sixth Street
Williams, AZ 86046-2899
(520) 635-8200

File Code: 2450-3
Date: MAR 1 2001

MR LORIN D PORTER
PRESIDENT
PRECISION PINE & TIMBER INC
PO BOX 70
HEBER, AZ 85928

CERTIFIED MAIL – RRR
7000 1670 0005 6420 2109

Dear Mr. Porter:

Attached is the Final Decision of the Contracting Officer in the Contract Disputes Act claim, number 03-01-12, for the Brann timber sale.

As always, I can be reached at 520-635-8240 if you have any questions.

Sincerely,

David P Harris
DAVID P. HARRIS
Contracting Officer

Enclosure

cc:
Williams RD
RO Forestry
Frontier Insurance Company
2636 Elm Hill Pike #500
Nashville, TN 37214-3102

# DECISION DOCUMENT

PURCHASER AND ADDRESS:

Precision Pine & Timber, Inc
P.O. Box 70
Heber, AZ 85928

1) Preface & Digest:

Decision Number: 3-01-12

Location of Sale:

Region
National Forest
Ranger District — Chalander RD)

Sale Information:

| | |
|---|---|
| Purchaser Name: | Timber, Inc. |
| Contract Date: | 09/29/94 |
| Contract Number: | 02-006577 |
| Sale Name: | BRANN |
| Contract Form: | FS 2400-6T |
| Termination Date: | January 9, 2001 |

2) Claim Summary:

This documents the Contracting Officer's Decision regarding a claim under the Contract Disputes Act by the United States Government against Precision Pine & Timber, Inc. for the sum of $36,888.97 for its default of the Brann Timber Sale, contract number 02-006577.

3) Government's Claim:

The Brann timber sale was cancelled by the Regional Forester, Eleanor S. Towns, on January 9, 2001, for failure to remedy breach pursuant to special contract provision CT 9.3 - Breach. When a timber sale contract is terminated before completion, the Contracting Officer must determine if the United States has been damaged (FSM 2453.5). Damages due to the United States for Purchaser's failure to cut and remove included timber are outlined in contract provision CT9.4 – Failure to Cut.

Based on procedures and applicable costs described in provision CT9.4 I have estimated the damages due the United States to be $36,888.97 for the Brann timber sale. This estimate may be adjusted once final damages are determined following the resale of the remaining timber. At that time any surplus damages collected by this estimate will be refunded to the purchaser, or any additional damages due will be collected, as appropriate.

4) Findings:

A. Contract Requirements:

The following CT contract provisions are pertinent to the claim.

CT9.3 B BREACH (6/90)
CT9.4 B FAILURE TO CUT (4/82)

B. Facts:

Precision Pine designated Frontier Insurance Company as its surety for the Brann timber sale. In June, the Department of the Treasury removed Frontier Insurance Company from their list of acceptable sureties for federal contracts. The Contracting Officer sent Purchaser a letter advising it of the removal, and reminding the Purchaser of the contract requirement in BT9.1 -- Performance Bond to provide alternative surety satisfactory to the Forest Service.

Precision Pine failed to provide a surety satisfactory to the Forest Service within the appropriate time period. On July 17, 2000, the Contracting Officer notified Purchaser that it was in material breach of the contract. Purchaser thereafter failed to remedy the material breach. Based on this failure, the Regional Forester terminated the BRANN timber sale contract for failure to remedy breach pursuant to CT9.3-- BREACH, on January 9, 2001.

Pursuant to CT9.4-- FAILURE TO CUT, the Contracting Officer has estimated the damages suffered by the Government as a result of the default. A summary of the Contracting Officer's calculations of the estimated damages for the Brann timber sale

is attached.

5) **Contracting Officer's Disposition of the Claim:**

The Contracting Officer estimates the damages due the government for the default of the Brann timber sale to be $36,888.97.

A Bill for Collection in that amount is attached to this decision.

6) **Concluding Information:**

This is the final decision of the Contracting Officer. This decision may be appealed to the Agriculture Board of Contract Appeals.

If you decide to make such an appeal, you must mail or otherwise furnish written notice thereof to the Agriculture Board of Contract Appeals within 90 days from the date you receive this decision. A copy thereof shall be furnished to the Contracting Officer from whose decision appeal is intended, shall reference this decision, and identify this contract by number. In lieu of appealing to the Agriculture Board of Contract Appeals, you may bring an action directly in the Court of Federal Claims within 12 months of the date you receive this decision.

In the event you appeal this decision to the Agriculture Board of Contract Appeals, you may request that the Board process this appeal under the accelerated procedures (41 U.S.C. 601, et seq., section 8f), or under the small claims procedures (41 U.S.C. 601,et seq., section 9).

David P Harris

Date: 1 March 2001

Contracting Officer
David P. Harris
800 South 6th Street
Williams, AZ 86046
520-635-8240

# APPENDIX

Contract Clauses:

CT9.3 – BREACH (6/90)
CT9.4 – FAILURE TO CUT (4/82)

Calculation of Damages:

5205356442 PORTER PAGE 05

WO-CT9.3

CT9.3 - Breach. (6/90) The Contracting Officer, with the concurrence of the Regional Forester, may terminate this contract for breach in the event Purchaser:

(a) is convicted for violation of criminal statutes, civil standards, or any other offense indicating a lack of business integrity or honesty that seriously and directly affects the responsibility of Purchaser pursuant to CT6.0;

(b) is convicted for a violation of criminal statutes or civil standards, orders, permits, or other regulations for the protection of environmental quality issued by a Federal agency, State agency, or political subdivision thereof in the conduct of operations thereunder on National Forest System lands, pursuant to CT6.0;

(c) files false information or makes false statements on bid forms or other documents to gain award of this contract;

(d) has engaged in a pattern of activity that demonstrates flagrant disregard for the terms of this contract, such as, but not limited to; repeated suspensions for breach pursuant to BT9.3; causing undesignated timber meeting Utilization Standards to be unnecessarily damaged, negligently, or willfully cut; or, causing other serious environmental degradation or resource damage.

(e) fails to remedy a breach of contract within time limits stated in BT9.3.

Damages due the United States for termination under this provision shall be determined pursuant to CT9.4.

WO-CT9.4

CT9.4 - Failure to Cut. (4/82) In event of (a) termination for breach or (b) Purchaser's failure to cut designated timber on portions of Sale Area by Termination Date, Forest Service shall appraise remaining Included Timber, unless termination is under CT8.2 or BT8.22. Such appraisal shall be made with the standard Forest Service method in use at time of termination.

Damages due the United States for Purchaser's failure to cut and remove Included Timber meeting Utilization Standards shall be the amount by which Current Contract Value, plus costs described below, less any Effective Purchaser Credit remaining at time of termination, exceeds the resale value at new Bid Rates. If there is no resale, damages due shall be determined by subtracting the value established by said appraisal from the difference between Current Contract Value and unused Effective Purchaser Credit, plus any of the following applicable costs:

(1) The cost of resale or reoffering;

(2) Any increase in Purchaser Credit Limit allowance for unconstructed Specified Road facilities which are needed to harvest the remaining uncut volume. Such increases are limited to costs for constructing the road to the same standard and specifications required by this contract;

(3) If Purchaser has failed to cut individual trees in the portions of Sale Area cutover and there is no resale of such individual trees, Purchaser shall pay Forest Service for cost of felling and removal or otherwise eliminating such uncut trees in addition to payment of damages described above, except for occasional trees not cut for reasons stated in BT6.4;

(4) The Government's loss caused by the delay in receipt of stumpage payments. Such loss will be measured by interest at the current rate being paid for borrowing by the United States (as calculated and published by the Treasury Department in TFRM 6-8020-20) on the unpaid contract value at Termination Date. Interest will be charged for the total number of months, or portions thereof from Termination Date until midpoint of the contract resale period, less any time in excess of 1 year needed to make the resale;

(5) Any increase in reforestation costs, including site preparation, seeding, and planting caused by Purchaser's failure to harvest Included Timber by Termination Date.



3 5205356442 PORTER PAGE 07

# DEFAULT DAMAGE CALCULATIONS

## BRANN TIMBER SALE
## CONTRACT NO. 02-006577

## USDA FOREST SERVICE
## KAIBAB NATIONAL FOREST

The Brann timber sale was cancelled by the Regional Forester, Eleanor S. Towns, on January 9, 2001, for failure to remedy breach pursuant to special contract provision CT9.3 – Breach. As directed by the Regional Forester and in accordance with Forest Service policy when a timber sale contract is terminated before completion, The Contracting Officer must determine if the United States has been damaged (FSM2453.5). Damages due the United States for Purchaser's failure to cut and remove included timber are outlined in contract provision CT9.4 - Failure to Cut.

The Brann timber sale consisted of three (3) separate payment units when originally sold. Only payment unit #2 was ever operated in with essentially all of the sawtimber removed and a portion of the pulpwood. At the time of termination the remaining volume of included timber on the Brann timber sale was 783.81 CCF of Sawtimber and 1395.87 CCF of pulpwood. The current contract value of the sale at termination was **$68,223.02.** The sale was sold as a Flat Rate sale so there will be no adjustments to the current contract rates necessary at the end of this quarter. There was no purchaser credit on the sale. An appraisal of the remaining timber at the time of termination, using the standard Forest Service method in use at that time and conditions of the original contract, resulted in an appraised value of **$23,914.08.**

Based on procedures and applicable costs described in provision CT9.4 the following outlines the calculation of estimated damages due the United States for default on the Brann timber sale contract. This estimate may be adjusted once final damages are determined following the resale of the remaining timber. At that time any surplus damages collected by this estimate will be refunded to the purchaser, or any additional damages due will be collected, as appropriate.

**REMAINING TIMBER:**

At the time of default the contract value of the timber at termination was:

Unreleased Payment Units (# 1 & #3)

| Species | Volume | Rates @ Termination | Value |
|---|---|---|---|
| PP-Sawtimber | 776 ccf | $ 70.30/ccf | $ 54,552.80 |
| PP-Roundwood | 823 ccf | $ 9.40/ccf | $ 7,736.20 |

Released (Cut Over) Payment Units (#2)

| Species | Volume | Rates @ Termination | Value |
|---|---|---|---|
| PP-Sawtimber | 7.81 ccf | $ 70.30/ccf | $ 549.04 |
| PP-Roundwood | 572.87 ccf | $ 9.40/ccf | $ 5,384.98 |

**REMAINING CONTRACT VALUE @ TERMINATION:** **$ 68,223.02**

**COST OF RESALE:**

Because this sale is an older sale, marked and cruised in 1992 and 1993, it may need touch up marking of cut and/or leave trees but will definitely need to have cutting unit boundaries remarked prior to reselling. Additional costs associated with the resale include the cost of preparing a revised appraisal and contract package as well as an additional advertiscment. Costs here are based on best estimates of what will be required and will be adjusted, upwards or downwards depending upon actual costs incurred, once final damages are determined.

**Estimated time and costs to remark cutting unit boundaries and touch up mark within units:**

3 Crew members at 5 days each:

| | |
|---|---|
| Crew Foreman @ $161.48/day X 5 days = | $ 807.00 |
| Crew Member @ $147.10/day X 5 days = | $ 736.00 |
| Crew Member @ $142.74/day X 5 days = | $ 714.00 |
| Paint: 5 cases @ $ 72/case = | $ 360.00 |
| Vehicle Cost: 225 miles @ .35/mile | $ 79.00 |
| FOR for ½ Month ($432/mo) | $ 216.00 |
| **Total Field Prep Costs:** | **$2,912.00** |

**Preparation of Appraisal Report, Prospectus and Advertisement:**

| | | | |
|---|---|---|---|
| Forester | GS 11/10 | 2 days @ $255.50/day | $ 511.00 |
| Timber Resource Clerk | | 2 days @ $149.00/day | $ 298.00 |
| | | TOTAL | $ 809.00 |

**Sale Package Preparation:**

| | | | |
|---|---|---|---|
| Forester | GS 12/6 | 2 days @ $278/day | $ 556.00 |
| Engineering | GS 9/10 | 1 day @ $218/day | $ 218.00 |
| Timber Resource Clerk | | 1 day @ $149/day | $ 149.00 |
| Review By C.O. | | 1 day @ $278/day | $ 278.00 |
| Bid Day Attendance | | 1 day @ $278/day | $ 278.00 |
| Miscellaneous Costs: Mailings/ Printing/Legal Ads | | | $ 250.00 |
| | | TOTAL | $1,729.00 |

**Total Cost For Appraisal And Package Preparation:** **$2,538.00**

**TOTAL COST OF RESALE:** **<u>$5450.00</u>**

**INTEREST ON REMAINING CONTRACT VALUE:**

As per CT9.4-Failure to Cut (4/82) "interest will be charged for the total number of months, or portions thereof from Termination Date until mid-point of the contract resale period, less any time in excess of one year needed to make the resale." Interest is charged at the current rate being paid for borrowing by the United States (as calculated and published by the Treasury Department in TFRM 6-8020-20). The current interest rate for January, 2001 is 6%; the resale offering will have a contract term of 2 years and the sale will be reoffered within 4 months. Therefore:

**INTEREST = ($ 68,223.02 X .06 X 1.33 years):** **$ 5,444.20**

**CALCULATION OF RESALE VALUE:**

According to FSH 2409.22, Section 62.3, an appraisal is done at the time of termination of the sale and is based upon the remaining contract volume and the original appraisal conditions. The only value in the original appraisal that has been updated is the Quality Adjustment figure for the included timber because of significant changes in the formulas since the original sale was sold. Appraisal Bulletin Number 01, CY 01,1st Quarter (January) was used to determine the reappraised value of the sale: The results are as follows:

| Species | Volume | Predicted Bid Rate (Line 28) | Total Value |
|---|---|---|---|
| PP-Sawtimber | 783.81 CCF | $ 29.21/ CCF | $ 22,895.09 |
| PP-Roundwood | 1395.87 CCF | $ 0.73/ CCF | $ 1,018.99 |
| | TOTAL REAPPRAISED VALUE @ TERM | | **$ 23,914.08** |

# CALCULATION OF DAMAGES

## A) Calculation of Potential Damages:

| | | VOLUME | | VALUE |
|---|---|---|---|---|
| 1. Volume and Contract Value, remaining timber: | | | | |
| a. On area not cut over | Sawtimber | 776 | | $ 54,552.80 |
| | Pulpwood | 823 | | $ 7,736.20 |
| b. On area cut over | Sawtimber | 7.81 | | $ 549.04 |
| | Pulpwood | 572.87 | | $ 5,384.98 |
| TOTAL REMAINING TIMBER | Sawtimber | 783.81 | | $ 55,101.84 |
| | Pulpwood | 1395.87 | | $ 13,121.18 |
| | | **Sub-Total** | | **$ 68,223.02** |

**2. Additional Damages:**

| | |
|---|---|
| Liquidated Damages | $ 0.00 |
| Cost of Resale (Field Preparation Only-Est) | $ 2,912.00 |
| Cost of Completing Contractual Requirements | $ 0.00 |
| Interest on remaining contract value *** | $ 5,444.20 |
| Other Damages— (Office Prep of Resale Package –Est) | $ 2,538.00 |
| **Sub-Total** | **$ 10,894.20** |

**3. Adjustment for Purchaser Credit:**

| | |
|---|---|
| Less Purchaser Credit that HAS NOT been earned: | $ 0.00 |
| **4. Maximum Potential Damages (A1 + A2 – A3)** | **$ 79,117.22** |

---

## B) Calculation of Resale Value: (Use the Predicted Bid Value, Line 28, of the appraisal)

| | |
|---|---|
| **1. Predicted High Bid Appraisal value at termination:** (783.81ccf @ $29.21/ccf) = $22,895.09 (1395.87 ccf @ $0.73/ccf) =$ 1,018.99 | **$ 23,914.08** |
| Add Remaining Effective Purchaser Credit | $ 0.00 |
| **Sub-Total** | **$ 23,914.08** |
| **2. Actual Bid Value of Resale** | **$( )** |
| **3. Resale Value** | **$ 23,914.08** |

(RESALE VALUE IS THE LARGER OF THE APPRAISAL SUB-TOTAL OR THE ACTUAL BID VALUE OF THE RESALE)

---

## C) Calculation of Damages:

| | |
|---|---|
| 1. Maximum Potential Damages (A8) | $ 79,177.22 |
| 2. Resale Value (B3) | $ 23,914.08 |
| 3. **Damages (C1-C2):** | **$ 55,203.14** |
| 4. Unobligated Cash on Account | $ 18,314.17 |
| **5. Estimated Damages Due Government:** | **$ 36,888.97** |
| **6. Refund Due Purchaser** | **$ 0.00** |

RUN DATE: 01/25/2001

2400-17 SUMMARY - TRANSACTION EVIDENCE (CCF)

SUMMARY CHECKED BY: DAVE HARRIS

REGION: 03
FOREST: Kaibab
SALE NAME: Brann Damage Est. 1/25/01

STARS ID: 2039 SALE ID: 03070120122001

SPEC RD CONST (MI): .0
( 1) APPRAISED TO: WILLIAMS, AZ
GROUND BASE VOL: 784
GRND BASE SKID COST: 36.13
CCF/ACRE (GRND/BASE): 4.0
CF/TREE (GRND/BASE): 6
SKID DIST (GRND/BASE): 450

SPEC RD RECONST (MI): .0
HAUL MI: 22 RTM: 114
SKY/GROUND LEAD VOL: 0
SKY/GRND LEAD YARD COST: .00
ROADS IN PLACE: N

ROAD COST: 0
ESSENTIAL KV: 0
AERIAL VOL: 0
AERIAL YARD COST: .00
SALE WT.AVG. SKID-YARD COST 36.13
RMPP % GRADE (R-3): 9.0
LRF (R-3): 6.4776

| | | 1-3 | 2-3 | | TOTAL OR AVG | | |
|---|---|---|---|---|---|---|---|
| 1 | PRODUCT/UNIT | 1-3 | 2-3 | | | | |
| 2 | SPECIES GROUP | PP | PP | | | | |
| 3 | SPECIES CODE | 122 | 122 | A | 100.00 | | |
| 4 | % BY SPECIES | -78.07 | 178.07 | T | 2180 | | |
| 5 | spvol( CCF | 784 | 1396 | A | 9.5 | | |
| 6 | DBH (Inches) | 12.2 | 6.8 | A | 8.55 | | |
| 7 | BASE PERIOD PRICE (BPP) | 7.25 | .73 | A | -.57 | | |
| 8 | MARKET ADJ | -.57 | .00 | A | 7.98 | | |
| 9 | ADJ BPP (7+8) | 6.68 | .73 | A | 26.32 | | |
| 10 | BASE SKID-YARD COST | 26.32 | .00 | A | 36.13 | | |
| 11 | SALE SKID-YARD COST | 36.13 | .00 | A | -9.81 | | |
| 12 | SKID/YARD COST ADJ (10-11) | -9.81 | .00 | A | 40.51 | | |
| 13 | BASE HAUL COST | 40.51 | .00 | A | 10.84 | | |
| 14 | SALE HAUL COST | 10.84 | .00 | A | 29.67 | | |
| 15 | HAUL COST ADJ (13-14) | 29.67 | .00 | A | 2.69 | | |
| 16 | BASE RD MNT COST | 2.69 | .00 | A | 1.07 | | |
| 17 | SALE RD MNT COST | 1.07 | .00 | A | 1.62 | | |
| 18 | RD MNT COST ADJ (16-17) | 1.62 | .00 | A | 10.77 | | |
| 19 | BASE SLASH COST | 10.77 | .00 | A | 10.15 | | |
| 20 | SALE SLASH COST | 10.15 | .00 | A | .62 | | |
| 21 | SALE SLASH ADJ (19-20) | .62 | .00 | A | .28 | | |
| 22 | BASE TEMP RD COST | .28 | .00 | A | .00 | | |
| 23 | SALE TEMP RD COST | .00 | .00 | A | .28 | | |
| 24 | TEMP RD COST ADJ (22-23) | .28 | .00 | A | .15 | | |
| 25 | QUAL ADJ (RMPP) | .15 | .00 | A | .00 | | |
| 26 | UNUSUAL ADJ | .00 | .00 | A | 22.53 | | |
| 27 | TOTAL ADJ (Sum:12,15,18,21,24,25,26) | 22.53 | .00 | | | | |
| 28 | PREDICTED BID (9+27) | 29.21 | .73 | A | 30.51 | | |
| 29 | COMPETITION AMOUNT | .67 | .00 | A | .67 | | |
| 30 | IND ADV RATES (28-29-34+36) | 28.54 | .73 | A | 29.84 | TV | 23394.56 |
| 31 | BASE RATES + TPV (31+36) | 7.25 | .73 | A | 8.55 | | |
| 32 | ADJ TO BASE RATES | .00 | .00 | A | .00 | | |
| 33 | ADVERTISED RATES (30+32) | 28.54 | .73 | A | 29.84 | TV | 23394.56 |
| 34 | SALE SPECIFIED RD COST | .00 | .00 | A | .00 | | |
| 35 | BASE INDICES (DEC 00) | 159.65 | .00 | | | | |
| 36 | TIMBER PROPERTY VALUE | .00 | .00 | A | .00 | | |
| | MBF/CCF ratio: | .50030 | .63500 | | .50000 | | |
| | TSA TABLE: | WWPAC | WWPAE | | | | |

*** Deficit Sale Increased: .00 Ineffective Roads: .00

MBF = Thousands of Board Feet CCF = Hundreds of Cubic Feet REV. 23-DEC-1999

Bulletin: BULLETIN # 01 CY 01

APP. 98

USDA FOREST SERVICE
BILL FOR COLLECTION

1. BILL DATE: 03/01/01 PAGE: 1

ENCLOSE A COPY OF THIS BILL WITH YOUR CHECK OR MONEY ORDER.
DO NOT SEND CASH. PLEASE INCLUDE BILL NO. AND PAYER CODE NO.
ON YOUR CHECK.
MAKE CHECK PAYABLE TO:
USDA FOREST SERVICE

MAIL PAYMENT TO:
USDA FOREST SERVICE
FILE 71652
P.O. BOX 60000
SAN FRANCISCO, CA 94160-1652

TO:

PRECISION PINE & TIMBER
P.O. BOX 70

HEBER AZ 85928

PAYER INDICATE
AMOUNT ENCLOSED: $__________

2. NET AMOUNT DUE: $ 36,888.97

3. DUE DATE: 03/31/01

4. BILL NUMBER: TM 03070210006

5. PAYER CODE: 860481719 A

6. AGREEMENT NO: CONTRACT NO: 030702006577

7. DESCRIPTION: DEFAULT DAMAGES

8. REMARKS:
RE: PAYER CODE: 860481719 A BILL NO: TM 03070210006

| | | |
|---|---|---|
| 9. PRINCIPAL: | $ | 36,888.97 |
| 10. INTEREST: | | |
| 11. ADMINISTRATIVE COSTS: | | |
| 12. PENALTY: | | |
| 13. AMOUNT DUE: | $ | 36,888.97 |
| 14. AMOUNT CREDITED: | | |
| 15. NET AMOUNT DUE: | $ | 36,888.97 |

NOTE:
PLEASE SEND ALL CORRESPONDENCE, INQUIRIES, AND CHANGE OF ADDRESS TO:

CHALENDER RGR DIST
USDA FS WILLIAMS RD
742 SOUTH CLOVER RD
WILLIAMS AZ 86046

FAILURE TO MAKE PAYMENT BY THE DUE DATE WILL RESULT IN THE ASSESSMENT OF LATE PAYMENT CHARGES (INTEREST, ADMINISTRATIVE COST, AND/OR PENALTY CHARGES) IN ACCORDANCE WITH YOUR CONTRACT, PERMIT, OR THE DEBT COLLECTION ACT OF 1982, AS AMENDED. POSTMARKS ARE NOT HONORED.

| 16. ORG | 17. JOB | 18. AMOUNT | 16. ORG | 17. JOB | 18. AMOUNT | 16. ORG | 17. JOB | 18. AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 0307 | 87002601 | $ 36,888.97 | | | | | | |

# DECISION DOCUMENT

PURCHASER AND ADDRESS:

Precision Pine & Timber, Inc
P.O. Box 70
Heber, AZ 85928

1) Preface & Digest:

Decision Number: 3-01-11

Location of Sale:

| | |
|---|---|
| Region | 3 |
| National Forest | KAIBAB |
| Ranger District | WILLIAMS RD |

Sale Information:

| | |
|---|---|
| Purchaser Name: | Precision Pine & Timber, Inc. |
| Contract Date: | 09/29/94 |
| Contract Number: | 01-006585 |
| Sale Name: | SAGINAW-KENNEDY |
| Contract Form: | FS 2400-6T |
| Termination Date: | January 9, 2001 |

2) Claim Summary:

This documents the Contracting Officer's Decision regarding a claim under the Contract Disputes Act by the United States Government against Precision Pine & Timber, Inc. for the sum of $101,642.20 for its default of the Saginaw-Kennedy Timber Sale, contract number 01-006585.

3) Government's Claim:

The Saginaw-Kennedy timber sale was cancelled by the Regional Forester, Eleanor S. Towns, on January 9, 2001, for failure to remedy breach pursuant to special contract provision CT 9.3 - Breach. When a timber sale contract is terminated before completion, the Contracting Officer must determine if the United States has been damaged (FSM 2453.5). Damages due to the United States for Purchaser's failure to cut and remove included timber are outlined in contract provision CT9.4 – Failure to Cut.

Based on procedures and applicable costs described in provision CT9.4 I have estimated the damages due the United States to be $101,642.20 for the Saginaw-Kennedy timber sale. This estimate may be adjusted once final damages are determined following the resale of the remaining timber. At that time any surplus damages collected by this estimate will be refunded to the purchaser, or any additional damages due will be collected, as appropriate.

4) Findings:

A. Contract Requirements:

The following CT contract provisions are pertinent to the claim.

CT9.3 B BREACH (6/90)
CT9.4 B FAILURE TO CUT (4/82)

B. Facts:

Precision Pine designated Frontier Insurance Company as its surety for the Saginaw-Kennedy timber sale. In June, the Department of the Treasury removed Frontier Insurance Company from their list of acceptable sureties for federal contracts. The Contracting Officer sent Purchaser a letter advising it of the removal, and reminding the Purchaser of the contract requirement in BT9.1 – Performance Bond to provide alternative surety satisfactory to the Forest Service.

Precision Pine failed to provide a surety satisfactory to the Forest Service within the appropriate time period. On July 17, 2000, the Contracting Officer notified Purchaser that it was in material breach of the contract. Purchaser thereafter failed to remedy the material breach. Based on this failure, the Regional Forester terminated the SAGINAW-KENNEDY timber sale contract for failure to remedy breach pursuant to CT9.3-- BREACH, on January 9, 2001.

Pursuant to CT9.4-- FAILURE TO CUT, the Contracting Officer has estimated the damages suffered by the Government as a result of the default. A summary of the Contracting Officer's calculations of the estimated damages for the Saginaw-

Kennedy timber sale is attached.

5) **Contracting Officer's Disposition of the Claim:**

The Contracting Officer estimates the damages due the government for the default of the Saginaw-Kennedy timber sale to be $101,642.20.

A Bill for Collection in that amount is attached to this decision.

6) **Concluding Information:**

This is the final decision of the Contracting Officer. This decision may be appealed to the Agriculture Board of Contract Appeals.

If you decide to make such an appeal, you must mail or otherwise furnish written notice thereof to the Agriculture Board of Contract Appeals within 90 days from the date you receive this decision. A copy thereof shall be furnished to the Contracting Officer from whose decision appeal is intended, shall reference this decision, and identify this contract by number. In lieu of appealing to the Agriculture Board of Contract Appeals, you may bring an action directly in the Court of Federal Claims within 12 months of the date you receive this decision.

In the event you appeal this decision to the Agriculture Board of Contract Appeals, you may request that the Board process this appeal under the accelerated procedures (41 U.S.C. 601, et seq., section 8f), or under the small claims procedures (41 U.S.C. 601,et seq., section 9).

David P Harris

Date: 1 MARCH 2001

Contracting Officer
David P. Harris
800 South 6th Street
Williams, AZ 86046
520-635-8240

WO-CT9.3

CT9.3 - Breach. (6/90) The Contracting Officer, with the concurrence of the Regional Forester, may terminate this contract for breach in the event Purchaser:

(a) is convicted for violation of criminal statutes, civil standards, or any other offense indicating a lack of business integrity or honesty that seriously and directly affects the responsibility of Purchaser pursuant to CT6.0;

(b) is convicted for a violation of criminal statutes or civil standards, orders, permits, or other regulations for the protection of environmental quality issued by a Federal agency, State agency, or political subdivision thereof in the conduct of operations thereunder on National Forest System lands, pursuant to CT6.0;

(c) files false information or makes false statements on bid forms or other documents to gain award of this contract;

(d) has engaged in a pattern of activity that demonstrates flagrant disregard for the terms of this contract, such as, but not limited to; repeated suspensions for breach pursuant to BT9.3; causing undesignated timber meeting Utilization Standards to be unnecessarily damaged, negligently, or willfully cut; or, causing other serious environmental degradation or resource damage.

(e) fails to remedy a breach of contract within time limits stated in BT9.3.

Damages due the United States for termination under this provision shall be determined pursuant to CT9.4.

WO-CT9.4

CT9.4 - Failure to Cut. (4/82) In event of (a) termination for breach or (b) Purchaser's failure to cut designated timber on portions of Sale Area by Termination Date, Forest Service shall appraise remaining Included Timber, unless termination is under CT8.2 or BT8.22. Such appraisal shall be made with the standard Forest Service method in use at time of termination.

Damages due the United States for Purchaser's failure to cut and remove Included Timber meeting Utilization Standards shall be the amount by which Current Contract Value, plus costs described below, less any Effective Purchaser Credit remaining at time of termination, exceeds the resale value at new Bid Rates. If there is no resale, damages due shall be determined by subtracting the value established by said appraisal from the difference between Current Contract Value and unused Effective Purchaser Credit, plus any of the following applicable costs:

(1) The cost of resale or reoffering;

(2) Any increase in Purchaser Credit Limit allowance for unconstructed Specified Road facilities which are needed to harvest the remaining uncut volume. Such increases are limited to costs for constructing the road to the same standard and specifications required by this contract;

(3) If Purchaser has failed to cut individual trees in the portions of Sale Area cutover and there is no resale of such individual trees, Purchaser shall pay Forest Service for cost of felling and removal or otherwise eliminating such uncut trees in addition to payment of damages described above, except for occasional trees not cut for reasons stated in BT6.4;

(4) The Government's loss caused by the delay in receipt of stumpage payments. Such loss will be measured by interest at the current rate being paid for borrowing by the United States (as calculated and published by the Treasury Department in TFRM 6-8020-20) on the unpaid contract value at Termination Date. Interest will be charged for the total number of months, or portions thereof from Termination Date until midpoint of the contract resale period, less any time in excess of 1 year needed to make the resale;

(5) Any increase in reforestation costs, including site preparation, seeding, and planting caused by Purchaser's failure to harvest Included Timber by Termination Date.

# DEFAULT DAMAGE CALCULATIONS

## SAGINAW-KENNEDY
## TIMBER SALE
## CONTRACT NO. 01-006585

## USDA FOREST SERVICE
## KAIBAB NATIONAL FOREST

The Saginaw-Kennedy timber sale was cancelled by the Regional Forester, Eleanor S. Towns, on January 9, 2001, for failure to remedy breach pursuant to special contract provision CT9.3 – Breach. As directed by the Regional Forester and in accordance with Forest Service policy when a timber sale contract is terminated before completion, the Contracting Officer must determine if the United States has been damaged (FSM2453.5). Damages due the United States for Purchaser's failure to cut and remove included timber are outlined in contract provision CT9.4 – Failure to Cut.

The Saginaw-Kennedy timber sale was never operated on during the life of the contract with the exception of the completion of all specified road construction/reconstruction. All purchaser credit was earned and posted to the timber sale statement of account ($14,480) and a total of $5,075.53 was subsequently transferred to another timber sale. At the time of termination the remaining volume of included timber on the Saginaw-Kennedy timber sale was 2268 CCF of Sawtimber and 1658 CCF of pulpwood. The current contract value of the sale at termination was **$142,593.20.** The sale was sold as a Flat Rate sale so there will be no adjustments to the current contract rates necessary at the end of this quarter. There was a total of $9,764.47 of effective purchaser credit on the sale. An appraisal of the remaining timber at the time of termination, using the standard Forest Service method in use at that time and conditions of the original contract, resulted in an appraised value of **$35,071.58.**

Based on procedures and applicable costs described in provision CT9.4 the following outlines the calculation of estimated damages due the United States for default on the Saginaw-Kennedy timber sale contract. This estimate may be adjusted once final damages are determined following the resale of the remaining timber. At that time any surplus damages collected by this estimate will be refunded to the purchaser, or any additional damages due will be collected, as appropriate.

**REMAINING TIMBER:**

At the time of default the contract value of the timber at termination was:

| Species | Volume | Rates @ Termination | Value |
|---|---|---|---|
| PP-Sawtimber | 2268 ccf | $ 56.00/ccf | $127,008.00 |
| PP-Roundwood | 1658 ccf | $ 9.40/ccf | $ 15,585.20 |
| **Total Sale Value @ Termination:** | | | **$142,593.20** |

**COST OF RESALE:**

Because this sale is an older sale, marked and cruised in 1992 and 1993, it may need touch up marking of cut and/or leave trees but will definitely need to have cutting unit boundaries remarked prior to reselling. Additional costs associated with the resale include the cost of preparing a revised appraisal and contract package as well as an additional advertisement. Costs here are based on best estimates of what will be required and will be adjusted, upwards or downwards depending upon actual costs incurred, once final damages are determined.

**Estimated time and costs to remark cutting unit boundaries and touch up mark within units:**

3 Crew members at 8 days each:

| | |
|---|---|
| Crew Foreman @ $161.48/day X 8 days = | $1,292.00 |
| Crew Member @ $147.10/day X 8 days = | $1,177.00 |
| Crew Member @ $142.74/day X 8 days = | $1,142.00 |
| Paint: 8 cases @ $ 72/case = | $ 576.00 |
| Vehicle Cost: 475 miles @ .35/mile | $ 166.00 |
| FOR for ½ Month ($432/mo) | $ 216.00 |
| **Total Field Preparation Costs:** | **$4,569.00** |

**Preparation of Appraisal Report, Prospectus and Advertisement:**

| | | | |
|---|---|---|---|
| Forester | GS 11/10 | 2 days @ $255.50/day | $ 511.00 |
| Timber Resource Clerk | | 2 days @ $149.00/day | $ 298.00 |
| | | TOTAL | $ 809.00 |

**Sale Package Preparation:**

| | | | |
|---|---|---|---|
| Forester | GS 12/6 | 2 days @ $278/day | $ 556.00 |
| Engineering | GS 9/10 | 1 day @ $218/day | $ 218.00 |
| Timber Resource Clerk | | 1 day @ $149/day | $ 149.00 |
| Review By C.O. | | 1 day @ $278/day | $ 278.00 |
| Bid Day Attendance | | 1 day @ $278/day | $ 278.00 |
| Miscellaneous Costs: Mailings/ Printing/Legal Ads | | | $ 250.00 |
| | | TOTAL | $1,729.00 |

**Total Cost for Appraisal And Package Preparation:** **$2,538.00**

**TOTAL COST OF RESALE:** **<u>$7,107.00</u>**

**INTEREST ON REMAINING CONTRACT VALUE:**

As per CT9.4-Failure to Cut (4/82) "interest will be charged for the total number of months, or portions thereof from Termination Date until mid-point of the contract resale period, less any time in excess of one year needed to make the resale." Interest is charges at the current rate being paid for borrowing by the United States (as calculated and published by the Treasury Department in TFRM 6-8020-20). The current interest rate for January, 2001 is 6%; the resale offering will have a contract term of 2 years and the sale will be reoffered within 4 months. Therefore:

**INTEREST ($142,593.20 X .06 X 1.33 years)** **$11,378.94**

**CALCULATION OF RESALE VALUE:**

According to FSH 2409.22, Section 62.3, an appraisal is done at the time of termination of the sale and is based upon the remaining contract volume and the original appraisal conditions. The only value in the original appraisal that has been updated is the Quality Adjustment figure for the included timber because of significant changes in the formulas since the original sale was sold. Appraisal Bulletin Number 01, CY 01,1st Quarter (January) was used to determine the reappraised value of the sale: The results are as follows:

| Species | Volume | Predicted Bid Rate (Line 28) | Total Value |
|---|---|---|---|
| PP-Sawtimber | 2268 CCF | $ 14.93/ CCF | $33,861.24 |
| PP-Roundwood | 1658 CCF | $ 0.73/ CCF | $ 1,210.34 |

**TOTAL REAPPRAISED VALUE @ TERMINATION** **$35,071.58**

# CALCULATION OF DAMAGES

| | | VOLUME | VALUE |
|---|---|---|---|
| **A) Calculation of Potential Damages:** | | | |
| 1. **Current Contract Value @ Termination:** | | | |
| Volume and Contract Value, remaining timber: | | | |
| a. On area not cut over | Sawtimber | 2268 | $127,008.00 |
| | Pulpwood | 1658 | $ 15,585.20 |
| b. On area cut over | Sawtimber | 0 | $ 0 |
| | Pulpwood | 0 | $ 0 |
| TOTAL REMAINING TIMBER | Sawtimber | 2268 | $127,008.00 |
| | Pulpwood | 1658 | $ 15,585.20 |
| | **Sub-Total** | | **$142,593.20** |
| 2. **Additional Damages:** | | | |
| Liquidated Damages | | | $ 0.0 |
| Cost of Resale (Field Preparation Only-Est) | | | $ 4,569.00 |
| Cost of Completing Contractual Requirements | | | $ 0.00 |
| Interest on remaining contract value *** | | | $ 11,378.05 |
| Other Damages— (Office Prep of Resale Package –Est) | | | $ 2,538.00 |
| | **Sub-Total** | | **$ 18,485.05** |
| 3. **Adjustment for Purchaser Credit:** | | | |
| Less Purchaser Credit that HAS NOT been earned: | | | $ 0.00 |
| 4. **Maximum Potential Damages (A1 + A2 – A3)** | | | **$ 161,078.25** |
| **B) Calculation of Resale Value:** (Use the Predicted Bid Value, Line 28, of the appraisal) | | | |
| 1. **Predicted High Bid Appraisal value at termination:** (2268 ccf @ $14.93/ccf)= $33,861.24 (1658 ccf @ $0.73/ccf) =$ 1,210.34 | | | **$ 35,071.58** |
| Add Remaining Effective Purchaser Credit | | | $ 9,764.47 |
| | **Sub-Total:** | | **$ 44,836.05** |
| 2. **Actual Bid Value of Resale:** | | | $( ) |
| 3. **Resale Value** (RESALE VALUE IS THE LARGER OF THE APPRAISAL SUB-TOTAL OR THE ACTUAL BID VALUE OF THE RESALE) | | | **$ 44,836.05** |
| **C) Damages:** | | | |
| 1. Maximum Potential Damages (A4) | | | $ 161,078.25 |
| 2. Resale Value (B3) | | | $ 44,836.05 |
| 3 **Damages (C1-C2)** | | | **$ 116,242.20** |
| 4. Unobligated Cash on Account (Down-Payment Dep.) | | | $ 14,600.00 |
| 5. **Estimated Damages Due Government:** | | | **$ 101,642.20** |
| 6. **Refund Due Purchaser** | | | $ 0.00 |

SUMMARY CHECKED BY: Dave Harris

REGION: 03
FOREST: Kaibab
SALE NAME: SAG-KEN Damage Est 012501 STARS ID: 1015 SALE ID: 03070120022001

SPEC RD CONST (MI): .0 SPEC RD RECONST (MI): .0 ROAD COST: 0
( 1) APPRAISED TO: Williams, AZ HAUL MI: 27 RTM: 167 2400-17 SUMMARY - TRANSACTION EVIDENCE (CCF)
RUN DATE: 01/25/2001

| | | | | | |
|---|---|---|---|---|---|
| ESSENTIAL KV: | | | 0 | | |
| GROUND BASE VOL: | 2268 | SKY/GROUND LEAD VOL: | 0 | AERIAL VOL: | 0 |
| GRND BASE SKID COST: | 34.87 | SKY/GRND LEAD YARD COST: | .00 | AERIAL YARD COST: | .00 |
| CCF/ACRE (GRND/BASE): | 4.9 | ROADS IN PLACE: N | | SALE WT.AVG. SKID-YARD COST | 34.87 |
| CF/TREE (GRND/BASE): | 6 | | | RMPP % GRADE (R-3): | .6 |
| SKID DIST (GRND/BASE): | 400 | | | LRF (R-3): | 6.2248 |

| | 1-3 | 2-3 | | TOTAL OR AVG | | |
|---|---|---|---|---|---|---|
| 1 PRODUCT/UNIT | 1-3 | 2-3 | | | | |
| 2 SPECIES GROUP | PP | PP | | | | |
| 3 SPECIES CODE | 122 | 122 | | | | |
| 4 % BY SPECIES | 26.89 | 73.11 | A | 100.00 | | |
| 5 spvol( CCF | 2268 | 1658 | T | 3926 | | |
| 6 DBH (Inches) | 11.6 | 7.3 | A | 9.8 | | |
| 7 BASE PERIOD PRICE (BPP) | 7.25 | .73 | A | 7.78 | | |
| 8 MARKET ADJ | -.57 | .00 | A | -.57 | | |
| 9 ADJ BPP (7+8) | 6.68 | .73 | A | 7.21 | | |
| 10 BASE SKID-YARD COST | 26.32 | .00 | A | 26.32 | | |
| 11 SALE SKID-YARD COST | 34.87 | .00 | A | 34.87 | | |
| 12 SKID/YARD COST ADJ (10-11) | -8.55 | .00 | A | -8.55 | | |
| 13 BASE HAUL COST | 40.51 | .00 | A | 40.51 | | |
| 14 SALE HAUL COST | 12.75 | .00 | A | 12.75 | | |
| 15 HAUL COST ADJ (13-14) | 27.76 | .00 | A | 27.76 | | |
| 16 BASE RD MNT COST | 2.69 | .00 | A | 2.69 | | |
| 17 SALE RD MNT COST | 3.17 | .00 | A | 3.17 | | |
| 18 RD MNT COST ADJ (16-17) | -.48 | .00 | A | -.48 | | |
| 19 BASE SLASH COST | 10.77 | .00 | A | 10.77 | | |
| 20 SALE SLASH COST | 4.24 | .00 | A | 4.24 | | |
| 21 SALE SLASH ADJ (19-20) | 6.53 | .00 | A | 6.53 | | |
| 22 BASE TEMP RD COST | .28 | .00 | A | .28 | | |
| 23 SALE TEMP RD COST | .00 | .00 | A | .00 | | |
| 24 TEMP RD COST ADJ (22-23) | .28 | .00 | A | .28 | | |
| 25 QUAL ADJ (RMPP) | -17.29 | .00 | A | -17.29 | | |
| 26 UNUSUAL ADJ | .00 | .00 | A | .00 | | |
| 27 TOTAL ADJ (Sum:12,15,18,21,24,25,26) | 8.25 | .00 | A | 8.25 | | |
| 28 PREDICTED BID (9+27) | 14.93 | .73 | A | 15.46 | | |
| 29 COMPETITION AMOUNT | .67 | .00 | A | .67 | | |
| 30 IND ADV RATES (28-29-34+36) | 14.26 | .73 | A | 14.79 | TV | 33543.72 |
| 31 BASE RATES + TPV (31+36) | 7.25 | .73 | A | 7.78 | | |
| 32 ADJ TO BASE RATES | .00 | .00 | A | .00 | | |
| 33 ADVERTISED RATES (30+32) | 14.26 | .73 | A | 14.79 | TV | 33543.72 |
| 34 SALE SPECIFIED RD COST | .00 | .00 | A | .00 | | |
| 35 BASE INDICES (DEC 00) | 159.65 | .00 | | | | |
| 36 TIMBER PROPERTY VALUE | .00 | .00 | A | .00 | | |
| MBF/CCF ratio: | .50000 | .63500 | | .50000 | | |
| TSA TABLE: | WWPAC | WWPAE | | | | |

*** Deficit Sale Increased: .00 Ineffective Roads: .00

MBF = Thousands of Board Feet CCF = Hundreds of Cubic Feet
Bulletin: BULLETIN # 01 CY 01 REV. 23-DEC-1999

USDA FOREST SERVICE
BILL FOR COLLECTION

1. BILL DATE: 03/01/01 PAGE: 1

ENCLOSE A COPY OF THIS BILL WITH YOUR CHECK OR MONEY ORDER. DO NOT SEND CASH. PLEASE INCLUDE BILL NO. AND PAYER CODE NO. ON YOUR CHECK.
MAKE CHECK PAYABLE TO:
USDA FOREST SERVICE

MAIL PAYMENT TO:
USDA FOREST SERVICE
FILE 71652
P.O. BOX 60000
SAN FRANCISCO, CA 94160-1652

TO:

PRECISION PINE & TIMBER
P.O. BOX 70

HEBER AZ 85928

PAYER INDICATE AMOUNT ENCLOSED: $__________

2. NET AMOUNT DUE: $ 101,642.20

3. DUE DATE: 03/31/01

4. BILL NUMBER: TM 03070110031

5. PAYER CODE: 860481719 A

6. AGREEMENT NO: CONTRACT NO: 030701006585

7. DESCRIPTION: DEFAULT DAMAGE

8. REMARKS:
RE: PAYER CODE: 860481719 A BILL NO: TM 03070110031

| | | |
|---|---|---|
| 9. PRINCIPAL: | $ | 101,642.20 |
| 10. INTEREST: | | |
| 11. ADMINISTRATIVE COSTS: | | |
| 12. PENALTY: | | |
| 13. AMOUNT DUE: | $ | 101,642.20 |
| 14. AMOUNT CREDITED: | | |
| 15. NET AMOUNT DUE: | $ | 101,642.20 |

NOTE:
PLEASE SEND ALL CORRESPONDENCE, INQUIRIES, AND CHANGE OF ADDRESS TO:

WILLIAMS RGR DIST
USDA FS WILLIAMS RD
742 SOUTH CLOVER RD
WILLIAMS AZ 86046

FAILURE TO MAKE PAYMENT BY THE DUE DATE WILL RESULT IN THE ASSESSMENT OF LATE PAYMENT CHARGES (INTEREST, ADMINISTRATIVE COST, AND/OR PENALTY CHARGES) IN ACCORDANCE WITH YOUR CONTRACT, PERMIT, OR THE DEBT COLLECTION ACT OF 1982, AS AMENDED. POSTMARKS ARE NOT HONORED.

| 16. ORG | 17. JOB | 18. AMOUNT | 16. ORG | 17. JOB | 18. AMOUNT | 16. ORG | 17. JOB | 18. AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 0307 | 87002601 | $ 101,642.20 | | | | | | |

United States Department of Agriculture
Forest Service
Gila National Forest
505-388-8201
3005 E. Camino del Bosque
Silver City, NM 88061-7863
FAX: 505-388-8204
TDD: 505-388-8489

**File Code:** 2450

**Date:** March 14, 2001

Mr. Lorin D. Porter, President
Precision Pine & Timber, Inc.
P. O. Box 70
Heber, AZ 85928

CERTIFIED MAIL - RRR
7000 0520 0021 4560 0372

Re: Contracting Officer Decision 03-06-01; Lily Timber Sale

Dear Mr. Porter:

Attached are the Contracting Officer's Decision, Damage Calculations and Bill for Collection for the defaulted Lily Timber Sale, Contract No. 020140, on the Gila National Forest.

Marion R. Yost

MARION R. YOST
Contracting Officer

Enclosures

cc:
Frontier Insurance Co.
2636 Elm Hill Pike, Suite 500
Nashville, TN 37214
Pat Morrison, FSR
Henry Zamora, SA
Alan Lucas, RO Forestry

# DECISION DOCUMENT

PURCHASER AND ADDRESS:

Precision Pine & Timber, Inc
P.O. Box 70
Heber, AZ 85928

1) Preface & Digest:

Decision Number: 03-06-01

Location of Sale:

| | |
|---|---|
| Region | 3 |
| National Forest | GILA |
| Ranger District | QUEMADO |

Sale Information:

| | |
|---|---|
| Purchaser Name: | Precision Pine & Timber, Inc. |
| Contract Date: | 12/23/1997 |
| Contract Number: | 020140 |
| Sale Name: | LILY |
| Contract Form: | FS 2400-6T |
| Termination Date: | August 1, 2002 |

2) Claim Summary:

This documents the Contracting Officer's Decision regarding a claim under the Contract Disputes Act by the United States Government against Precision Pine & Timber, Inc. for the sum of $66,512.35 for its default of the Lily Timber Sale, contract number 020140.

3) Government's Claim:

The Lily timber sale was cancelled by Regional Forester Eleanor S. Towns, on January 9, 2001, for failure to remedy breach pursuant to special contract provision CT 9.3 - Breach. When a timber sale contract is terminated before completion, the Contracting Officer must determine if the United States has been damaged (FSM 2453.5). Damages due to the United States for Purchaser's failure to cut and remove included timber are outlined in contract provision CT9.4 -- Failure to Cut.

Based on procedures and applicable costs described in provision CT9.4 I have estimated the damages due the United States to be $66,512.35 for the Lily timber sale. This estimate may be adjusted once final damages are determined following the resale of the remaining timber. At that time any surplus damages collected by this estimate will be refunded to the purchaser, or any additional damages due will be collected, as appropriate.

4) Findings:

A. Contract Requirements:

The following CT contract provisions are pertinent to the claim.

CT9.3 B BREACH (6/90)
CT9.4 B FAILURE TO CUT (4/82)

B. Facts:

Precision Pine designated Frontier Insurance Company as its surety for the Lily timber sale. In June, the Department of the Treasury removed Frontier Insurance Company from their list of acceptable sureties for federal contracts. The Contracting Officer sent Purchaser a letter advising it of the removal, and reminding the Purchaser of the contract requirement in BT9.1 -- Performance Bond to provide alternative surety satisfactory to the Forest Service.

Precision Pine failed to provide a surety satisfactory to the Forest Service within the appropriate time period. On July 31, 2000, the Contracting Officer notified Purchaser that it was in material breach of the contract. Purchaser thereafter failed to remedy the material breach. Based on this failure, the Regional Forester terminated the Lily timber sale contract for failure to remedy breach pursuant to CT9.3-- BREACH, on January 9, 2001.

Pursuant to CT9.4– FAILURE TO CUT, the Contracting Officer has estimated the damages suffered by the Government as a result of the default. A summary of the Contracting Officer's calculations of the estimated damages for the Lily timber sale is attached.

**5) Contracting Officer's Disposition of the Claim:**

The Contracting Officer estimates the damages due the government for the default of the Lily timber sale to be $66,512.35.

A Bill for Collection in that amount is attached to this decision.

**6) Concluding Information:**

This is the final decision of the Contracting Officer. This decision may be appealed to the Agriculture Board of Contract Appeals.

If you decide to make such an appeal, you must mail or otherwise furnish written notice thereof to the Agriculture Board of Contract Appeals within 90 days from the date you receive this decision. A copy thereof shall be furnished to the Contracting Officer from whose decision appeal is intended, shall reference this decision, and identify this contract by number. In lieu of appealing to the Agriculture Board of Contract Appeals, you may bring an action directly in the Court of Federal Claims within 12 months of the date you receive this decision.

In the event you appeal this decision to the Agriculture Board of Contract Appeals, you may request that the Board process this appeal under the accelerated procedures (41 U.S.C. 601, et seq., section 8f), or under the small claims procedures (41 U.S.C. 601,et seq., section 9).

Marion R. Yost

Contracting Officer
MARION R. YOST
3005 E. Camino del Bosque
Silver City, NM 88062
505-388-8471

Date: March 13, 2001

# DEFAULT DAMAGE CALCULATIONS

## LILY TIMBER SALE
## CONTRACT NO. 020140
## USDA FOREST SERVICE
## GILA NATIONAL FOREST

The Lily timber sale was cancelled by the Regional Forester, Eleanor S. Towns, on January 9, 2001, for failure to remedy breach pursuant to special contract provision CT 9.3 - Breach. As directed by the Regional Forester and in accordance with Forest Service policy when a timber sale contract is terminated before completion, the Contracting Officer must determine if the United States has been damaged (FSM 2453.5). Damages due the United States for Purchaser's failure to cut and remove included timber are outlined in contract provision CT9.4 -- Failure to Cut.

The Lily timber sale consisted of three (3) separate payment units when originally sold. No operations were conducted on the Lily timber sale. At the time of termination, the remaining volume of included timber on the Lily timber sale was 1890 CCF of sawtimber and 750 CCF of pulpwood. The current contract value of the sale at termination was **$79,593.90.** The sale was sold as a Flat Rate sale so there will be no adjustments to the current contract rates necessary at the end of this quarter. There was no purchaser credit on the sale. An appraisal of the remaining timber at the time of termination, using the standard Forest Service method in use at that time and conditions of the original contract, resulted in an appraised value of **$13,728.00.** (The 2400-17 indicates $13,721.40. Multiplying volumes times rates yields $13,728.00. The difference is in the rounding of the rate values.)

Based on procedures and applicable costs described in provision CT9.4, the following outlines the calculation of estimated damages due the United States for default of the Lily timber sale contract. This estimate may be adjusted once final damages are determined following the resale of the remaining timber. At that time, any surplus damages collected by this estimate will be refunded to the purchaser, or any additional damages due will be collected, as appropriate.

**REMAINING TIMBER**

At the time of default the contract value of the timber at termination was:

| Species | Volume | Rates @ Termination | Value |
|---|---|---|---|
| PP-Sawtimber | 1710 ccf | $ 41.59/ccf | $71,118.90 |
| Douglas Fir and Other Sawtimber | 180 ccf | $ 20.00/ccf | $ 3,600.00 |
| PP and Other Roundwood | 750 ccf | $ 6.50/ccf | $ 4,875.00 |
| **REMAINING CONTRACT VALUE @ TERMINATION:** | | | **$79,593.90** |

## COST OF RESALE

The Lily timber sale will need to have cutting unit boundaries remarked prior to resale. Cut trees should not need to be remarked. Additional costs associated with resale include the cost of preparing a revised appraisal and contract packages as well as an additional advertisement. Costs here are based on best estimates of what will be required and will be adjusted, upward or downward depending upon actual costs incurred, once final damages are determined.

**Estimated time and costs to remark cutting unit boundaries:**

| | |
|---|---|
| GS 9: @ 10 days @ $203/day = | $2,030.00 |
| Paint: 12 gal orange remarking paint @ $23.99/gal = | $ 348.00 |
| **Total Field Preparation Costs:** | **$2,378.00** |

**Preparation of Appraisal Report, Prospectus and Advertisement:**

| | | |
|---|---|---|
| GS 11 | 9 days @ $255/day | $2,295.00 |

**Sale Package Preparation:**

| | | |
|---|---|---|
| GS 11 | 2 days @ $255/day | $ 510.00 |

**Total Cost For Appraisal And Package Preparation: $2,805.00**

**TOTAL COST OF RESALE: $5,183.00**

## INTEREST ON REMAINING CONTRACT VALUE

As per CT9.4-Failure to Cut (4/82), "interest will be charged for the total number of months, or portions thereof from Termination Date until mid-point of the contract resale period, less any time in excess of one year needed to make the resale." Interest is charged at the current rate being paid for borrowing by the United States (as calculated and published by the Treasury Department in TFRM 6-8020-20). The current interest rate for January 2001 is 6%; the resale offering will have a contract term of 2 years and the sale will be reoffered within 6 months. Therefore:

**INTEREST ($79,593.90 X 0.06 X 1.5 years): $7,163.45**

**CALCULATION OF RESALE VALUE**

According to FSH 2409.22, Section 62.3, an appraisal is done at the time of termination of the sale and is based upon the remaining contract volume and the original appraisal conditions. The only value in the original appraisal that has been updated is the Quality Adjustment figure for the included timber because of significant changes in the formulas since the original sale was sold. Appraisal Bulletin Number 10, CY 10, 4th Quarter (October) was used to determine the reappraised value of the sale: The results are as follows:

| Species | Volume | Predicted Bid Rate (Line 28) | Total Value |
|---|---|---|---|
| PP-Sawtimber | 1710 CCF | $7.25/ CCF | $12,397.50* |
| Douglas Fir and Other Sawtimber | 180 CCF | $4.35/CCF | $ 783.00 |
| PP and Other Roundwood | 750 CCF | $0.73/ CCF | $ 547.50 |
| **TOTAL REAPPRAISED VALUE @ TERMINATION:** | | | **$13,728.00** |

*The predicted bid contains a negative value of - $21.50/CCF for ponderosa pine sawtimber. Since this is less than base rates, thc base rate value (which equals the appraised value) is used as the resale value.

# CALCULATION OF DAMAGES

| A) **Calculation of Potential Damages** | | VOLUME | VALUE |
|---|---|---|---|
| 1. **Current Contract Value at Termination:** | | | |
| Volume and Contract Value, remaining timber: | | | |
| a. On area not cut over | Sawtimber | 1890 | $ 74,718.90 |
| | Pulpwood | 750 | $ 4,875.00 |
| b. On area cut over | Sawtimber | | 0 |
| | Pulpwood | | 0 |
| TOTAL REMAINING TIMBER | Sawtimber | 1890 | $ 74,718.90 |
| | Pulpwood | 750 | $ 4,875.00 |
| | **Sub-Total:** | | **$ 79,593.90** |
| 2. **Additional Damages:** | | | |
| Liquidated Damages | | | $ 0.00 |
| Cost of Resale (Field Preparation Only-Est) | | | $ 5,183.00 |
| Cost of Completing Contractual Requirements | | | $ 0.00 |
| Interest on remaining contract value *** | | | $ 7,163.45 |
| Other Damages— (List) | | | $ |
| | **Sub-Total:** | | $ 12,346.45 |
| 3. **Adjustment for Purchaser Credit:** | | | |
| Less Purchaser Credit that HAS NOT been earned: | | | ($ 0.00 ) |
| 4. **Maximum Potential Damages (A1 + A2 – A3):** | | | **$ 91,940.35** |

B) **Calculation of Resale Value:** (Use the Predicted Bid Value, Line 28, of the appraisal)

| | | |
|---|---|---|
| 1. **Predicted High Bid Appraisal value at termination:** | | |
| | (1890ccf @ $6.97/ccf) = $13,180.50 | **$ 13,728.00** |
| | ( 750ccf @ $0.73/ccf) =$ 547.50 | |
| Add Remaining Effective Purchaser Credit | | $ 0.00 |
| | **Sub-Total:** | **$ 13,728.00** |
| 2. **Actual Bid Value of Resale:** | | **$( )** |
| 3. **Resale Value:** | | **$ 13,728.00** |

(RESALE VALUE IS THE LARGER OF THE APPRAISAL SUB-TOTAL OR THE ACTUAL BID VALUE OF THE RESALE)

C) **Damages**:

| | |
|---|---|
| 1. Maximum Potential Damages (A4) | $ 91,940.35 |
| 2. Resale Value (B3) | $ 13,728.00 |
| 3. **Damages (C1-C2):** | **$ 78,212.35** |
| 4. Unobligated Cash on Account | $ 11,700.00 |
| 5. **Estimated Damages Due Government:** | **$ 66,512.35** |
| 6. **Refund Due Purchaser:** | **$ 0.00** |

*Appraisal at Termination*

2400-17 SUMMARY - TRANSACTION EVIDENCE (CCF) RUN DATE: 01/24/2001

SUMMARY CHECKED BY: M.R. Yost

REGION: 03
FOREST: Gila
SALE NAME: Lily

STARS ID: 3016 SALE ID: 03060350312001

| | | | | | |
|---|---|---|---|---|---|
| SPEC RD CONST (MI): | .0 | SPEC RD RECONST (MI): | .0 | ROAD COST: | 0 |
| ( 1) APPRAISED TO: Eagar | | HAUL MI: 62 RTN: 250 | | ESSENTIAL RV: | 0 |
| GROUND BASE VOL: | 1890 | SKY/GROUND LEAD VOL: | 0 | AERIAL VOL: | 0 |
| GRND BASE SKID COST: | 24.66 | SKY/GRND LEAD YARD COST: | .00 | AERIAL YARD COST: | .00 |
| CCF/ACRE (GRND/BASE): | 1.8 | ROADS IN PLACE: N | | SALE WT.AVG. SKID-YARD COST | 24.66 |
| CF/TREE(GRND/BASE): | 13 | | | RMPP % GRADE (R-3): | 9.9 |
| SKID DIST (GRND/BASE): | 300 | | | LRF (R-3): | 6.3067 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1 | PRODUCT/UNIT | 1-3 | 1-3 | 2-3 | | TOTAL OR AVG | | |
| 2 | SPECIES GROUP | PP | DF | PP | | | | |
| 3 | SPECIES CODE | 122 | 204 | 122 | | | | |
| 4 | % BY SPECIES | 50.78 | 9.53 | 39.69 | A | 100.00 | | |
| 5 | spvol( CCF | 1710 | 180 | 750 | T | 2640 | | |
| 6 | DBH (Inches) | 12.2 | 12.6 | 7.5 | A | 12.3 | | |
| 7 | BASE PERIOD PRICE (BPP) | 7.25 | 45.67 | .73 | A | 11.20 | | |
| 8 | MARKET ADJ | .00 | 10.58 | .00 | A | -1.01 | | |
| 9 | ADJ BPP (7+8) | 7.25 | 35.09 | .73 | A | 10.19 | | |
| 10 | BASE SKID-YARD COST | 26.75 | 26.75 | .00 | A | 26.75 | | |
| 11 | SALE SKID-YARD COST | 24.66 | 24.66 | .00 | A | 24.66 | | |
| 12 | SKID/YARD COST ADJ (10-11) | 2.09 | 2.09 | .00 | A | 2.09 | | |
| 13 | BASE HAUL COST | 41.00 | 41.00 | .00 | A | 41.00 | | |
| 14 | SALE HAUL COST | 21.17 | 21.17 | .00 | A | 21.17 | | |
| 15 | HAUL COST ADJ (13-14) | 19.83 | 19.83 | .00 | A | 19.83 | | |
| 16 | BASE RD MNT COST | 2.45 | 2.45 | .00 | A | 2.45 | | |
| 17 | SALE RD MNT COST | 4.31 | 4.31 | .00 | A | 4.31 | | |
| 18 | RD MNT COST ADJ (15-17) | -1.86 | -1.86 | .00 | A | -1.86 | | |
| 19 | BASE SLASH COST | 11.07 | 11.07 | .00 | A | 11.07 | | |
| 20 | SALE SLASH COST | 16.93 | 16.93 | .00 | A | 16.93 | | |
| 21 | SALE SLASH ADJ (19-20) | -5.86 | -5.86 | .00 | A | -5.86 | | |
| 22 | BASE TEMP RD COST | .37 | .37 | .00 | A | .37 | | |
| 23 | SALE TEMP RD COST | .00 | .00 | .00 | A | .00 | | |
| 24 | TEMP RD COST ADJ (22-23) | .37 | .37 | .00 | A | .37 | | |
| 25 | QUAL ADJ (RMPP) | -43.32 | .08 | .00 | A | -39.19 | | |
| 26 | UNUSUAL ADJ | .00 | .00 | .00 | A | .00 | | |
| 27 | TOTAL ADJ | -28.75 | 14.57 | .00 | A | -24.62 | | |
| | (Sum: 12,15,18,21,24,25,26) | | | | | | | |
| 28 | PREDICTED BID (9+27) | -21.50 | 49.66 | .73 | A | -14.43 | | |
| 29 | COMPETITION AMOUNT | .34 | 1.75 | .00 | A | .49 | | |
| 30 | IND ADV RATES (28-29-34+36) | -21.86 | 47.91 | .73 | A | -14.93 | TV | -28217.70 |
| 31 | BASE RATES + TPV (35+36) | 7.25 | 4.35 | .73 | A | 7.26 | | |
| 32 | ADJ TO BASE RATES | 29.11 | -43.56 | .00 | A | 22.19 | | |
| 33 | ADVERTISED RATES (30+32) | 7.25 | 4.35 | .73 | A | 7.26 | TV | 13721.40 |
| 34 | SALE SPECIFIED RD COST | .00 | .00 | .00 | A | .00 | | |
| 35 | BASE INDICES (SSP 00) | 141.20 | 127.64 | .00 | | | | |
| 36 | TIMBER PROPERTY VALUE | .00 | .00 | .00 | A | .00 | | |
| | MBF/CCF ratio: | .46060 | .46060 | .63250 | | .46085 | | |
| | TSA TABLE: | NWPAB | NWPAB | WWPAE | | | | |

*** Deficit Sale Increased: 41939.10 Ineffective Roads: .00

MBF = Thousands of Board Feet CCF = Hundreds of Cubic Feet
Bulletin: BULLETIN # 10 CY 00 REV. 23-DEC-1999

*Original appraisal*

# APPRAISAL SUMMARY -- TRANSACTION EVIDENCE

FOREST:GILA — SUMMARY CHECKED BY:JD — DATE:101697

SALE NAME:LILY

SPEC RD CONST (Mi) .0 — RECONST (Mi) .0 — PURCH CR LIMIT 0

APPRAISED TO: EAGAR — HAUL MI: 62 HAUL RTM: 250 — ESSENTIAL KV 0

CCF/ACRE 1.8 — CF/TREE 13 — SKID DISTANCE 300 — PP % GRADE 9.9 PP LRF 6.3867

APPRAISAL BULLETIN No. 09 CY 97 3rd QTR (Sep)

| | CARD TYPE 6 | | | | | T/MEAS CD TYPE 7 | |
|---|---|---|---|---|---|---|---|
| 1 Product Unit | 1-3 | 1-3 | 2-3 | | | | |
| 2 Species | PP | DF&O | PP&O | | | TOTAL OR AVERAGE | |
| 3 Species Code | 122 | 204 | 122 | | | ///////////////// | |
| 4 % By Species | 64.8 | 6.8 | 28.4 | .0 | .0 | T | 100 |
| 5 Volume | 1710 | 180 | 750 | 0 | 0 | T | 2640 |
| 6 DBH (inches) | 12.2 | 12.6 | 7.5 | .0 | .0 | A | 10.9 |
| 7 Base Period Price | 84.43 | 42.54 | 6.50 | .00 | .00 | A | 59.43 |
| 8 Market Adj. | 2.29 | 9.20 | .00 | .00 | .00 | A | 2.11 |
| 9 Adj. BPP (7+8) | 86.72 | 51.74 | 6.50 | .00 | .00 | A | 61.55 |
| 10 Base Skidding Cost | 20.94 | 20.94 | .00 | .00 | .00 | A | 14.99 |
| 11 Sale Skidding Cost | 24.66 | 24.66 | .00 | .00 | .00 | A | 17.66 |
| 12 Skidding Cost Adj. | -3.72 | -3.72 | .00 | .00 | .00 | A | -2.67 |
| 13 Base Haul Cost | 30.93 | 30.93 | .00 | .00 | .00 | A | 22.14 |
| 14 Sale Haul Cost | 21.17 | 21.17 | .00 | .00 | .00 | A | 15.16 |
| 15 Haul Cost Adj. | 9.76 | 9.76 | .00 | .00 | .00 | A | 6.99 |
| 16 Base Rd. Maint. Cost | 6.49 | 6.49 | .00 | .00 | .00 | A | 4.65 |
| 17 Sale Rd. Maint. Cost | 4.31 | 4.31 | .00 | .00 | .00 | A | 3.09 |
| 18 Rd. Maint. Cost Adj. | 2.18 | 2.18 | .00 | .00 | .00 | A | 1.56 |
| 19 Base Slash Cost | 5.16 | 5.16 | .00 | .00 | .00 | A | 3.69 |
| 20 Sale Slash Cost | 16.93 | 16.93 | .00 | .00 | .00 | A | 12.12 |
| 21 Slash Cost Adj. | -11.77 | -11.77 | .00 | .00 | .00 | A | -8.43 |
| 22 Base Temp Rd Cost | .09 | .09 | .00 | .00 | .00 | A | .06 |
| 23 Sale Temp Rd Cost | .00 | .00 | .00 | .00 | .00 | A | .00 |
| 24 Temp Rd Cost Adj. | .09 | .09 | .00 | .00 | .00 | A | .06 |
| 25 Quality Adj. LS | -73.17 | .00 | .00 | .00 | .00 | A | -47.39 |
| 26 Unusual Cost | .00 | .00 | .00 | .00 | .00 | A | .00 |
| 27 Total Adj. | -76.63 | -3.46 | .00 | .00 | .00 | A | -49.87 |
| (Sum:12,15,18,21,24,25,26) | | | | | | | |
| 28 Pred Bid Price(9+27) | 10.09 | 48.28 | 6.50 | .00 | .00 | A | 11.67 |
| 29 Competition Amount | 4.34 | 2.59 | .00 | .00 | .00 | A | 2.98 |
| | ////// | ////// | ////// | ////// | ////// | T | 22931.70 |
| 30 In adv rates(28-29) | 5.75 | 45.69 | 6.50 | .00 | .00 | A | 8.69 |
| 31 Base rates 1/ | 5.00 | 3.00 | .50 | .00 | .00 | A | 3.59 |
| 32 Adj to Std Rates | 14.25 | -25.70 | .00 | .00 | .00 | A | 7.48 |
| | ////// | ////// | ////// | ////// | ////// | T | 42675.00 |
| 33 adv rates (30+32) | 20.00 | 20.00 | 6.50 | .00 | .00 | A | 16.16 |
| 34 Sprc Rd Cost (A10) | .00 | .00 | .00 | .00 | .00 | A | .00 |
| 35 Base indices | 242.65 | 178.73 | .00 | .00 | .00 | A | 159.36 |
| 36 Property Value | .00 | .00 | .00 | .00 | .00 | A | .00 |
| CONVERSION RATIO | 0.4602 | 0.4056 | 0.6350 | 0.0000 | 0.0000 | A | 0.5062 |
| WWPA TABLE | WWPAB | WWPAA | | | | | |

Gila N.F. Lily T.S.

USDA Forest Service

REPORT OF TIMBER SALE
Convertible and Nonconvertible Products

CARD TYPE 1

REGION 03 2-3 FOREST 06 4-5 DISTRICT 03 6-7 STAR NUMBER 03016 8-10 QTR FY 1 11-

STATE 35 14-15 COUNTY 003 16-18 SALE NAME:LILY 19-44

ACRES 2853 49-55 LEGAL DESCRIPTION T6S, R19-20W; NMPM 56-80 COMPARTMENT 00 45-

CARD TYPE 2

BID DATE 121897 14-19 STATUS 1 20 SBA SET ASIDE N 21 APP BASE PERIOD 6 97 22-24 ZONE 2

SALVAGE N 26 PRICE METHOD 1 27 PLAN SAB 27739 28-34 TERMDATE 013100 35-40 CONTRACT DATE 12239 41-46

CONT NO 020140 47-57 CONTRACT FORM 6T 58-59 CO R 60 METHOD OF SALE S 61 REG36CFR223 1 62-64

CARD TYPE 3

| SP | SPEC CODE 14-16 | PROD UNIT 17-18 | VOLUME | AD RATE | STAT BID 19-24 | HIGH BIDDER 25-30 | 2ND BIDDER 31-36 | 3RD BIDDER 37-42 | 4TH BIDDER 43-48 | 5TH BIDDER 49-54 | 6TH BIDDER 55-6 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PP | 122 | 1-3 | 1710 | 20.00 | 41.59 | 41.59 | 20.51 | .00 | .00 | .00 | .0 |
| DF&O | 204 | 1-3 | 180 | 20.00 | 20.00 | 20.00 | 20.00 | .00 | .00 | .00 | .0 |
| PP&O | 122 | 2-3 | 750 | 6.50 | 6.50 | 6.50 | 20.00 | .00 | .00 | .00 | .0 |
| TOT/AVE | | | 2640 | 16.16 | 30.15 | 30.15 | 20.33 | .00 | .00 | .00 | .0 |

CARD TYPE 4
SUMMARY OF BIDDERS

| RANK 15 | NAME 16-40 | SBA CLASS 41 | TAX ID NUMBER 42-57 | TOTAL VALUE OF BID 58-69 |
|---|---|---|---|---|
| HIGH | PRECISION PINE & TIMBER | S | *********** | 79594 |
| 2 | STONE FOREST INDUSTRIES | L | *********** | 53672 |

I CERTIFY THAT I HAVE PERSONALLY EXAMINED THE BIDS SUBMITTED FOR THIS SALE AND THAT THIS IS AN ACCURATE RECORD THEREOF.

[signature]
SIGNATURE
NAME AND TITLE J.HIBBETTS, CONTR.OFFICER
REMARKS DATE 122397

USDA FOREST SERVICE
BILL FOR COLLECTION

1. BILL DATE: 03/15/01 PAGE: 1

ENCLOSE A COPY OF THIS BILL WITH YOUR CHECK OR MONEY ORDER. DO NOT SEND CASH. PLEASE INCLUDE BILL NO. AND PAYER CODE NO. ON YOUR CHECK.
MAKE CHECK PAYABLE TO:
USDA FOREST SERVICE

MAIL PAYMENT TO:
USDA FOREST SERVICE
FILE 71652
P.O. BOX 60000
SAN FRANCISCO, CA 94160-1652

TO:

PRECISION PINE & TIMBER
PO BOX 70

HEBER AZ 85928

PAYER INDICATE AMOUNT ENCLOSED: $__________

2. NET AMOUNT DUE: $ 66,512.35

3. DUE DATE: 03/30/01

4. BILL NUMBER: BD 03061010052

5. PAYER CODE: MISC C

6. AGREEMENT NO: CONTRACT NO:

7. DESCRIPTION: DAMAGES DUE GOV'T FOR DEFAULT

8. REMARKS:
RE: PAYER CODE: MISC C BILL NO: BD 03061010052

| | | |
|---|---|---|
| 9. PRINCIPAL: | $ | 66,512.35 |
| 10. INTEREST: | | |
| 11. ADMINISTRATIVE COSTS: | | |
| 12. PENALTY: | | |
| 13. AMOUNT DUE: | $ | 66,512.35 |
| 14. AMOUNT CREDITED: | | |
| 15. NET AMOUNT DUE: | $ | 66,512.35 |

NOTE:
PLEASE SEND ALL CORRESPONDENCE, INQUIRIES, AND CHANGE OF ADDRESS TO:

GILA N F
3005 E CAMINO DEL BOSQUE

SILVER CITY NM 88061

FAILURE TO MAKE PAYMENT BY THE DUE DATE WILL RESULT IN THE ASSESSMENT OF LATE PAYMENT CHARGES (INTEREST, ADMINISTRATIVE COST, AND/OR PENALTY CHARGES) IN ACCORDANCE WITH YOUR CONTRACT, PERMIT, OR THE DEBT COLLECTION ACT OF 1982, AS AMENDED. POSTMARKS ARE NOT HONORED.

Lily Timber Sale Contract #020140
Estimated Damages due to the Government for Default (Calculations attached)
Sale Cancelled 01/09/01

| 16. ORG | 17. JOB | 18. AMOUNT | 16. ORG | 17. JOB | 18. AMOUNT | 16. ORG | 17. JOB | 18. AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 0306 | 89900901 | $ 59,348.90 | 0306 | 89901301 | $ 7,163.45 | | | |

USDA FOREST SERVICE
BILL FOR COLLECTION

1. BILL DATE: 03/15/01 PAGE: 1

ENCLOSE A COPY OF THIS BILL WITH YOUR CHECK OR MONEY ORDER. DO NOT SEND CASH. PLEASE INCLUDE BILL NO. AND PAYER CODE NO. ON YOUR CHECK.
MAKE CHECK PAYABLE TO:
USDA FOREST SERVICE

MAIL PAYMENT TO:
USDA FOREST SERVICE
FILE 71652
P.O. BOX 60000
SAN FRANCISCO, CA 94160-1652

TO:

PRECISION PINE & TIMBER
PO BOX 70

HEBER AZ 85928

PAYER INDICATE AMOUNT ENCLOSED: $________

2. NET AMOUNT DUE: $ 66.512.35

3. DUE DATE: 03/30/01

4. BILL NUMBER: BD 03051010052

5. PAYER CODE: MISC C

6. AGREEMENT NO: CONTRACT NO:

7. DESCRIPTION: DAMAGES DUE GOV'T FOR DEFAULT

8. REMARKS:
RE: PAYER CODE: MISC C BILL NO: BD 03061010052

| | | |
|---|---|---|
| 9. PRINCIPAL: | $ | 66,512.35 |
| 10. INTEREST: | | |
| 11. ADMINISTRATIVE COSTS: | | |
| 12. PENALTY: | | |
| 13. AMOUNT DUE: | $ | 66,512.35 |
| 14. AMOUNT CREDITED: | | |
| 15. NET AMOUNT DUE: | $ | 66,512.35 |

NOTE:
PLEASE SEND ALL CORRESPONDENCE, INQUIRIES, AND CHANGE OF ADDRESS TO:

GILA N F
3005 E CAMINO DEL BOSQUE

SILVER CITY NM 88061

FAILURE TO MAKE PAYMENT BY THE DUE DATE WILL RESULT IN THE ASSESSMENT OF LATE PAYMENT CHARGES (INTEREST, ADMINISTRATIVE COST, AND/OR PENALTY CHARGES) IN ACCORDANCE WITH YOUR CONTRACT, PERMIT, OR THE DEBT COLLECTION ACT OF 1982, AS AMENDED. POSTMARKS ARE NOT HONORED.

Lily Timber Sale Contract #020140
Estimated Damages due to the Government for Default (Calculations attached)
Sale Cancelled 01/09/01

| 16. ORG | 17. JOB | 18. AMOUNT | 16. ORG | 17. JOB | 18. AMOUNT | 16. ORG | 17. JOB | 18. AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 0306 | 89900901 | $ 59,348.90 | 0306 | 89901301 | $ 7,163.45 | | | |

United States Department of Agriculture | Forest Service | Tonto National Forest | 2324 E. McDowell Road
Phoenix, Arizona 85006

**File Code:** 2450

**Date:** April 5, 2001

Mr. Lorin Porter
Precision Pine and Timber, Inc.
P.O. Box 70
Herber, AZ 85928

RETURNED RECEIPT REQUESTED
7000 0600 0023 9694 8426
RETURNED RECEIPT REQUESTED (5/7/01)
7000 0600 0023 9494 8402
RETURNED RECEIPT REQUESTED (6/18/01)
7001 0360 0002 5085 2470

Dear Mr. Porter:

I have enclosed my Contracting Officer's Decision document regarding a claim under the Contract Disputes Act by the United States Government against Precision Pine & Timber, Inc. for its default of the Manaco Timber Sale, contract number 004625. I have estimated that the government was not harmed and there are no damages due the government for the default of the Manaco Timber Sale.

If you have any questions, please contact me at 520-467-3200.

DAVID P. CUMMINGS
Contracting Officer

CC:
Alan Lucas – RO Forestry
Payson Ranger District – Forestry
SO – Forestry

Enclosures

# DECISION DOCUMENT

PURCHASER AND ADDRESS:

Precision Pine & Timber, Inc
P.O. Box 70
Heber, AZ 85928

1) Preface & Digest:

Decision Number: 3-01-13

Location of Sale:

| | |
|---|---|
| Region | 3 |
| National Forest | TONTO |
| Ranger District | PAYSON RD |

Sale Information:

| | |
|---|---|
| Purchaser Name: | Precision Pine & Timber, Inc. |
| Contract Date: | 01/17/95 |
| Contract Number: | 004625 |
| Sale Name: | MANACO |
| Contract Form: | FS 2400-6T |
| Termination Date: | May 4, 2004 |

2) Claim Summary:

This documents the Contracting Officer's Decision regarding a claim under the Contract Disputes Act by the United States Government against Precision Pine & Timber, Inc. for the sum of $00.00 for its default of the Manaco Timber Sale, contract number 004625.

3) Government's Claim:

The Manaco timber sale was cancelled by the Regional Forester, Eleanor S. Towns, on January 9, 2001, for failure to remedy breach pursuant to special contract provision CT 9.3 - Breach. When a timber sale contract is terminated before completion, the Contracting Officer must determine if the United States has been damaged (FSM 2453.5). Damages due to the United States for Purchaser's failure to cut and remove included timber are outlined in contract provision CT9.4 – Failure to Cut.

Based on procedures and applicable costs described in provision CT9.4 I have estimated that there are no damages due the United States for the Manaco timber sale. This estimate may be adjusted once final damages are determined following the resale of the remaining timber and any additional damages due will be collected, as appropriate.

4) Findings:

A. Contract Requirements:

The following CT contract provisions are pertinent to the claim.

CT9.3 B BREACH (6/90)
CT9.4 B FAILURE TO CUT (4/82)

B. Facts:

Precision Pine designated Frontier Insurance Company as its surety for the Manaco timber sale. In June, the Department of the Treasury removed Frontier Insurance Company from their list of acceptable sureties for federal contracts. The Contracting Officer sent Purchaser a letter advising it of the removal, and reminding the Purchaser of the contract requirement in BT9.1 -- Performance Bond to provide alternative surety satisfactory to the Forest Service.

Precision Pine failed to provide a surety satisfactory to the Forest Service within the appropriate time period. On July 18, 2000, the Contracting Officer notified Purchaser that it was in material breach of the contract. Purchaser thereafter failed to remedy the material breach. Based on this failure, the Regional Forester terminated the MANACO timber sale contract for failure to remedy breach pursuant to CT9.3-- BREACH, on January 9, 2001.

Pursuant to CT9.4-- FAILURE TO CUT, the Contracting Officer has estimated the damages suffered by the Government as a result of the default. A summary of the

# CALCULATION OF DAMAGES

## A) Calculation of Potential Damages

| | | VOLUME | VALUE |
|---|---|---|---|
| **1. Current Contract Value at Termination:** | | | |
| Volume and Contract Value, remaining timber: | | | |
| a. On area not cut over | Sawtimber | 3,468 | $ 161,435.40 |
| | Pulpwood | 836 | $ 7,858.40 |
| b. On area cut over | Sawtimber | 46 | $ 3,898.96 |
| | Pulpwood | 66 | $ 620.40 |
| TOTAL REMAINING TIMBER | Sawtimber | 3,514 | $ 165,334.36 |
| | Pulpwood | 902 | $ 8,478.80 |
| | | **Sub-Total:** | **$ 173,813.16** |
| **2. Additional Damages:** | | | |
| Liquidated Damages | | | $ 0.00 |
| Cost of Resale (Est) | | | $ 28,483.00 |
| Cost of Completing Contractual Requirements | | | $ 0.00 |
| Interest on remaining contract value *** | | | $ 26,071.97 |
| Other Damages— (List) | | | $ |
| | | **Sub-Total:** | $ 54,554.97 |
| **3. Adjustment for Purchaser Credit:** | | | |
| Less Purchaser Credit that HAS NOT been earned: | | | ($ 128,816.00 ) |
| **4. Maximum Potential Damages (A1 + A2 – A3):** | | | **$ 99,552.13** |

## B) Calculation of Resale Value: (Use the Predicted Bid Value, Line 28, of the appraisal)

| | | |
|---|---|---|
| **1. Predicted High Bid Appraisal value at termination:** | (3,514ccf @ $46.43/ccf) = $163,155.02<br>(902 ccf @ $0.73/ccf) =$ 658.46 | **$ 163,813.48** |
| Add Remaining Effective Purchaser Credit | | $ 0.00 |
| | **Sub-Total:** | **$ 163,813.48** |
| **2. Actual Bid Value of Resale:** | | **$( )** |
| **3. Resale Value:** | | **$ 163,813.48** |

(RESALE VALUE IS THE LARGER OF THE APPRAISAL SUB-TOTAL OR THE ACTUAL BID VALUE OF THE RESALE)

## C) Damages:

| | |
|---|---|
| 1. Maximum Potential Damages (A4) | **$ 99,552.13** |
| 2. Resale Value (B3) | $ 163,813.48 |
| **3. Damages (C1-C2):** | **$ (64,261.35)** |
| 4. Unobligated Cash on Account | $ 0.00 |
| **5. Estimated Damages Due Government:** | **$ 0.00** |
| **6. Refund Due Purchaser:** | **$ 0.00** |

Case 1:02-cv-00131-GWM Document 33-15 Filed 03/25/2004 Page 8 of 9

2453.66 - Cancellation for Conviction of Violation of Environmental Laws. The Regional Forester may cancel timber sale contracts and permits due to the purchaser's conviction of violation of criminal statutes or regulations for the protection of environmental quality. The cancellation authorization applies only to violations resulting from a purchaser's operations under a contract on National Forest System land. The purchaser must not receive any compensation.

The Contracting Officer must refer purchasers that have contracts canceled for breach to the Debarring and Suspending Official for possible administrative action (FSM 2431.15 and 2455.4).

2454 - CONTRACT CLAIMS AND LAWSUITS.

2454.1 - Contract Disputes. Forest Service Handbook 2409.15, chapter 70, provides detailed information for Contracting Officers regarding contract disputes. The intent of the contract is that the purchaser and the Forest Service jointly achieve contract interpretation and performance, without resorting to contract claims. Line officers should understand the following tenants of contract disputes:

1. A claim is a written demand by one of the contracting parties seeking, as a legal right, the payment of money, adjustment or interpretation of contract terms, or other relief arising under or related to the contract.

2. When a conflict arises between the contract and the Forest Service Manual, timber sale environmental assessments or environmental impact statements, timber sale reports, handbooks, and other material, the language of the contract governs and is the basis for a decision on any dispute or claim. These materials are only guides to contract interpretation.

2454.11 - Payment of Purchaser Claims. Follow procedures on payment and settlement of claims contained in FSM 6511.11i, FSM 6540, and FSH 6509.11h, section 34.1.

Except when money has been erroneously collected, claims are paid from appropriated or salvage funds available to the Forest Service. The amount determined payable in the Contracting Officer's decision, plus interest from the date of claim until payment, should be paid promptly, without awaiting purchaser action on an appeal. Funds must be available to avoid violating the Anti-Deficiency Act. It may be necessary for the involved Forest and the Region to reprogram funds to cover these costs.

Attempt to resolve all disputes that result in claims by agreement. Keep an open mind regarding the matter in dispute and the adequacy of the information provided in support of the claim by both the purchaser and the Government. In appropriate circumstances, and before issuing a Contracting Officer's decision on a claim, consider requesting informal discussions by individuals representing the purchaser and the Forest Service who have not participated substantially in the matter in dispute to aid in the resolution of differences.

Use the Forest Service Manual, applicable handbooks, environmental documentation, the appraisal, and other material as guides or estimates for interpreting disputes. Use the language of the contract when a point of conflict arises between the contract and related documents. Use the timber sale contract as the basis for decision on any dispute or claim.

<u>72</u> - <u>DISPUTES UNDER CONTRACT DISPUTES ACT AUTHORITY</u>. The Contract Disputes Act authorizes the timber sale Contracting Officer to settle disputes relating to the timber sale contract and applicable claims. Apply this authority (FSM 2450.1) to disputes involving timber sale contracts. FS-2400-1, Forest Products Removal Permit, and FS-2400-8, Forest Products Free Use Permit, are not covered by the Contract Disputes Act.

Do not attempt to resolve disputes or claims involving fraud or claims that another Federal agency is specifically authorized to administer or settle. These are excluded from this authorization. If in doubt, seek advice from Regional staff or the Office of the General Counsel.

Contracting Officers may settle a dispute under the Contract Disputes Act even though provisions of the Debt Collection Improvement Act of 1996 (FSM 2450.1), include limitations on the authority to compromise a claim of $100,000 or more owed to the United States (FSH 6509.11h, Service-wide Claim Management Handbook). The Debt Collection Improvement Act is a separate and independent authority to compromise a claim and, as such, does not limit the authority provided by the Contract Disputes Act.

The Contract Disputes Act provides limited authority to reform the timber sale contract when necessary in conjunction with an award of monetary relief. This authority allows a Contracting Officer to correct a mistake in the written contract to make the contract reflect the actual intent of the parties.

Modifications of the timber sale contract are guided by 36 CFR 223.112 and 36 CFR 223.113. Consult the applicable statutory and regulatory authorities before reaching any decision that would result in reformation or modification of the timber sale contract in response to a dispute.

The Contracting Officer does not have authority to cancel the contract to prevent environmental damage (36 CFR 223.40 and FSM 2453.64).

Issue a final claim decision under the Contract Disputes Act when the parties cannot agree to satisfy or settle a claim. The final decision of the Contracting Officer is not subject to review within the Forest Service, except when the decision goes beyond the Contracting Officer's delegated authority.

72.1 - Claims by the Government Against the Purchaser. Bills for Collection (form FS-6500-89) relating to timber sales and retention of purchaser deposits by the Government which are undisputed are not claims. However, if the purchaser does not pay within the time specified in the contract or the Bill for Collection, or if the purchaser disputes either liability or amount, a Government claim against the purchaser exists. Assert the Government claim by means of a Contracting Officer's decision. Document such claims in writing.

72.2 - Claims by the Purchaser Against the Government. A timber sale purchaser's claim against the Government must be in writing and must be submitted to the Contracting Officer. For claims of more than $100,000, require the purchaser to submit with the claim (1) their certification that the claim is made in good faith, (2) that the supporting data are accurate and complete to the best of the purchaser's knowledge and belief, and (3) that the amount requested accurately reflects the contract adjustment for which the purchaser believes the Government is liable. Do not require this certification in a nonmonetary claim.

The timber sale contract specifies a maximum time allowed for filing specific types of claims in contract provision C(CT)9.21. Accept the purchaser's claim only if filed within that period.

72.3 - Processing a Claim.

72.31 - Preparing a Claim File. The Contracting Officer's claim decision must be based on a claim file (case file). Start to compile this file when it becomes apparent that either the purchaser or the Government has a Contract Disputes Act claim. Prepare the claim file in a timely manner so that the Contracting Officer's decision can be made within the required timeframe (sec. 72.4).

Include in the claim file all of the information that the Contracting Officer needs to make a decision on the claim. If the Contracting Officer's decision is ultimately appealed, the claim file may become an exhibit in evidence. The claim file should be complete but should not include material that is not necessary for the decision. Vary its length and content depending upon the complexity of the claim.

Bind the claim file in a file folder or notebook so that the file remains intact and can be readily used. Include the following material if the information is pertinent to the particular claim being considered:

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PRECISION PINE AND TIMBER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02-131 |
| | ) | (Judge Damich) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

## DEFENDANT'S ANSWER

For its answer to the complaint, defendant admits, denies, and alleges as follows:

1. Admits.

2. Admits.

3. The allegations contained in paragraph 3 are plaintiff's characterizations of its own suit or conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied; further denies the amount of damages sought by the Government; the Government seeks a total of at least $767,625.72.

4. Denies regarding the Lily contract, which relates to timber located in New Mexico; otherwise admits the allegations contained in paragraph 4 of the complaint.

5. Admits that the Forest Service suspended 14 of Precision Pine's timber sale contracts as a result of a court-ordered injunction; admits the alleged basis for the injunction to the extent supported by the decision cited, which is the best evidence of its contents; otherwise denies the allegation in paragraph 5.

6. Admits that the majority of the suspensions remained in place until December 4, 1996.

7. Admits the allegations contained in paragraph 7 to the extent supported by the decision cited, which is the best evidence of its contents; otherwise denies the allegations in paragraph 7.

8. The allegations contained in paragraph 8 are plaintiff's characterizations of its own suit or conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied; to the extent that they address plaintiff's "hopes," denies the allegations in paragraph 8 for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

9. The allegations contained in paragraph 9 are plaintiff's characterizations of its own suit or conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

10. The allegations contained in paragraph 10 are plaintiff's characterizations of its own suit or conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

11. Admits that in 1999 plaintiff submitted documentation of bonding obtained from Frontier; the remainder of the allegations contained in paragraph 11 are plaintiff's characterizations of its own suit or conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

12. Admits.

13. Admits that plaintiff submitted bonding issued by Frontier during the 2000 harvest season; further admits that in June of 2000 Frontier was removed from the Government's list of acceptable sureties; the remainder of the allegations contained in paragraph 13 are plaintiff's characterizations of its own suit or conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

14. Admits the allegations contained in paragraph 14 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations in paragraph 14.

15. The allegations contained in paragraph 15 are plaintiff's characterizations of its own suit or conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

16. Admits that the Forest Service terminated the contracts for default and that the Forest Service issued final decisions seeking monies owed; the remainder of the allegations contained in paragraph 16 are plaintiff's characterizations of its own suit or conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

17. The allegations contained in paragraph 17 are plaintiff's characterizations of its own suit or conclusions of law to which no response is required; to the extent that they

of its own suit or conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

104. The allegations contained in paragraph 104 are plaintiff's characterizations of its own suit or conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

105. Denies each and every allegation not previously admitted or otherwise qualified.

106. Denies that plaintiff is entitled to the relief set forth in the "wherefore" clause immediately following paragraph 104, or to any relief whatsoever.

DEFENDANT'S AFFIRMATIVE DEFENSES

107. Plaintiff's claim is barred by the doctrine of payment.

108. Plaintiff's claim is barred by the doctrine of unclean hands.

109. Plaintiff's claim is barred by the doctrine of estoppel.

110. Plaintiff's claim is barred by the doctrine of waiver.

DEFENDANT'S COUNTERCLAIM

111. The Court possesses jurisdiction to consider this counterclaim pursuant to 28 U.S.C. §§ 1503 and 2508.

112. The Government awarded the following timber sale contracts to plaintiff on the dates indicated:

(a) O.D. Ridge Timber Sale, awarded August 14, 1992;

(b) Brookbank Multi-Product Sale, awarded April 13, 1995;

(c) Jersey Horse Timber Sale, awarded December 13, 1993;

(d) Saginaw-Kennedy Timber Sale, awarded September 29, 1994;

(e) Brann Timber Sale, awarded September 29, 1994;

(f) U-Bar Timber Sale, awarded on October 5, 1992;

(g) Monument Multi-Product Sale, awarded September 28, 1994;

(h) Manaco Timber Sale, awarded January 17, 1995;

(i) Hutch-Boondock Multi-Product Sale, awarded June 29, 1994;

(j) Gentry Multi-Product Sale, awarded January 15, 1998;

(k) Wiggins Multi-Product Sale, awarded December 2, 1998;

(l) Lily Timber Sale Contract, awarded December 23, 1997.

113. Plaintiff breached each of the contracts identified in paragraphs 112(a)-(l) by failing to maintain bonding issued by a company identified on the Government's list of acceptable sureties.

114. Because of these breaches of contract, the Government terminated each of the contracts identified in paragraphs 112(a)-(l).

115. As a result of the breaches, the contracting officer issued final decisions, on the following dates, and demanded payment in the following amounts:

(a) O.D. Ridge Timber Sale: March 1, 2001 final decision demands $148,845.38;

(b) Brookbank Multi-Product Sale: March 1, 2001 final decision demands $00.00;

(c) Jersey Horse Timber Sale: March 1, 2001 final decision demands $9,035.47;

(d) Saginaw-Kennedy Timber Sale: March 1, 2001 final decision demands $101,642.20;

(e) Brann Timber Sale: March 1, 2001 final decision demands $36,888.97;

(f) U-Bar Timber Sale: February 21, 2001 final decision demands $215,691.04;

(g) Monument Multi-Product Sale: February 21, 2001 final decision demands $81,477.88;

(h) Manaco Timber Sale: April 5, 2001 final decision demands $00.00;

(i) Hutch-Boondock Multi-Product Sale: February 21, 2001 final decision demands $2,278.72;

(j) Gentry Multi-Product Sale: March 1, 2001 final decision demands $92,236.78;

(k) Wiggins Multi-Product Sale: March 1, 2001 final decision demands $13,016.93;

(l) Lily Timber Sale Contract: March 14, 2001 final decision demands $66,512.35.

116. Plaintiff has failed to remit any of the payments demanded in the final decisions identified in paragraphs 115(a)-(l), and payment of each is due and owing to the United States.

WHEREFORE, defendant respectfully requests that plaintiff's claims be dismissed and that judgment be entered in favor of the Government in the amount of $767,625.72, which is the total of the monies demanded in the final decisions identified in paragraphs 115(a)-(l), plus interest pursuant to the Contract Disputes Act, and that the Court grant defendant such other and further relief as the Court deems just and proper.

Respectfully submitted,

ROBERT D. McCALLUM, JR.
Assistant Attorney General

DAVID M. COHEN
Director

KATHRYN A. BLEECKER
Assistant Director