United States Department of Agriculture | Forest Service | Coconino National Forest | 2323 E. Greenlaw Lane
Flagstaff, AZ 86004
Phone: (520) 527-3600
Fax: (520) 527-3620

File Code: 2450

Date: June 12, 2000

Mr. Lorin D. Porter
Precision Pine & Timber Inc.
P. O. Box 70
Heber, AZ 85928

CERTIFIED - RETURN RECEIPT REQUESTED
Z 472 174 630

Dear Mr. Porter,

It has recently been brought to my attention that Frontier Insurance Company has been removed from the Department of the Treasury's List of Approved Sureties (Department Circular 570 dated June 1, 2000). Frontier Insurance Company is the surety that Precision Pine & Timber is using to cover the Performance and Payment Bond requirements for Timber Sale Contracts on the Coconino National Forest.

Therefore, as per contract Standard Provision BT9.1 Performance Bond, I am requesting that you furnish a new bond with surety satisfactory to the Forest Service. Other acceptable coverage for performance and payment bonds is cash, negotiable securities deposited in a Federal Depository per BT4.22, or a letter of credit. Please furnish us with performance and payment bond coverage within 30 days of receipt of this letter. Failure to provide bond coverage with 30 days of receipt of this letter will result in Breach of Contract.

The following timber sale contracts will require new Performance and Payment bond coverage: Hutch-Boondock M/P, Contract No. 005465; Monument M/P, Contract No. 005564; and U-Bar Timber Sale, Contract No. 005051.

Thank you in advance for your prompt attention to this matter. If you have any questions, feel free to contact me at 520-527-3443.

Sincerely,

RICHARD STEPHENS
Contracting Officer

CC: John Smith, Precision Pine, Winslow
: D. Derrick, FSR
: Contract files

United States Department of Agriculture
Forest Service
Apache-Sitgreaves National Forests
P.O. Box 640
Springerville, AZ 85938
(520) 333-4301
V/TTY (520) 333-6292

File Code: 2450
Date: June 9, 2000

Precision Pine and Timber Inc.
ATTN: Lorin Porter
P.O. Box 70
Heber, AZ 85928

CERTIFIED MAIL - RRR

Dear Lorin:

It has come to our attention that your surety for performance bonds and blanket payment bonds, Frontier Insurance Company, is no longer listed in the Department of Treasury Circular 570 as an acceptable surety for Federal bonding, as required by BT4.3 - Payment Guaranteed by Bond or Deposited Securities, and BT9.1 - Performance Bond.

The following sales are affected:

1. Wiggins Multiproduct (#020012) – Performance Bond #136483 of $24,000.
   Blanket Payment Bonding - $20,000.
2. Jersey Horse (#001756) – Performance Bond # 136486 of $60,000.
   Blanket Payment Bonding – $0.
3. Brookbank (#001822) – Performance Bond #136485 of $26,000.
   Blanket Payment Bonding - $34,000.
4. O.D. Ridge (#001574) – Performance Bond #136487 of $89,000.
   Blanket Payment Bonding - $216,000.
5. Gentry Multiproduct (#001939) – Performance Bond #136484 of $24,000.

Notice of Breach is hereby given, and under the terms of BT9.3 - Breach, you have 30 calendar days from the date of receiving this notice to provide acceptable surety or other security for the aforementioned timber sales.

Sincerely,

KERRY NEDROW
Acting Contracting Officer

cc:
Susan Lee, Springerville RD
Don Holmstrom, Heber RD
Alan Lucas, RO

CT9.2 - DISPUTES. (7/80)

(a) This contract is subject to the Contract Disputes Act of 1978 (Pub. L. 95-563).

(b) Except as provided in the Act, all disputes arising under or relating to this contract shall be resolved in accordance with the provision.

(c)(i) As used herein, "claim" means a written demand or assertion by one of the parties seeking, as a legal right, the payment of money, adjustment or interpretation of contract terms, or other relief, arising under or relating to this contract.

(ii) A voucher, invoice, or request for payment that is not in dispute when submitted is not a claim for the purposes of the Act. However, where such submission is subsequently not acted upon in a reasonable time, or disputed either as to liability or amount, it may be converted to a claim pursuant to the Act.

(iii) A claim by the contractor shall be made in writing and submitted to the Contracting Officer for decision. A claim by the Government against the contractor shall be subject to a decision by the Contracting Officer.

(d) For contractor claims of more than $50,000, the contractor shall submit with the claim a certification that the claim is made in good faith; the supporting data are accurate and complete to the best of the contractor's knowledge and belief; and the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable. The certification shall be executed by the contractor if an individual. When the contractor is not an individual, the certification shall be executed by a senior company official in charge at the contractor's plant or location involved, or by an officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs.

(e) For contractor claims of $50,000 or less, the Contracting Officer must render a decision within 60 days. For contractor claims in excess of $50,000, the Contracting Officer must decide the claim within 60 days or notify the contractor of the date when the decision will be made.

(f) The Contracting Officer's decision shall be final unless the contractor appeals or files a suit as provided in the Act.

(g) The authority of the Contracting Officer under the Act does not extend to claims or disputes which by statute or regulation other agencies are expressly authorized to decide.

(h) Interest on the amount found due on a contractor claim shall be paid from the date the claim is received by the Contracting Officer until the date of the payment.

(i) Except as the parties may otherwise agree, pending final resolution of a claim of the contractor arising under the contract the contractor shall proceed diligently with the performance of the contract in accordance with the Contracting Officer's decision.

<u>WO-2452-CT9.2</u>
7/80

CT9.2 - DISPUTES. (10/96)

(a) This contract is subject to the Contract Disputes Act of 1978 (Pub. L. 95-563).

(b) Except as provided in the Act, all disputes arising under or relating to this contract shall be resolved in accordance with this clause.

(c) (i) As used herein, "claim" means a written demand or assertion by one of the parties seeking, as a legal right, the payment of money, adjustment or interpretation of contract terms, or other relief, arising under or relating to this contract.

(ii) A voucher, invoice, or request for payment that is not in dispute when submitted is not a claim for the purposes of the Act. However, where such submission is subsequently not acted upon in a reasonable time, or disputed either as to liability or amount, it may be converted to a claim pursuant to the Act.

(iii) A claim by the contractor shall be made in writing and submitted to the Contracting Officer for decision. A claim by the Government against the contractor shall be subject to a decision by the Contracting Officer.

(d) For contractor claims of more than $100,000, the contractor shall submit with the claim a certification that the claim is made in good faith; the supporting data are accurate and complete to the best of the contractor's knowledge and belief; and the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable. The certification shall be executed by the contractor if an individual. When the contractor is not an individual, the certification shall be executed by a senior company official in charge at the contractor's plant or location involved, or by an officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs.

(e) For contractor claims of $100,000 or less, the Contracting Officer must render a decision within 60 days. For contractor claims in excess of $100,000, the Contracting Officer must decide the claim within 60 days or notify the contractor of the date when the decision will be made.

(f) The Contracting Officer's decision shall be final unless the contractor appeals or files a suit as provided in the Act.

(g) The authority of the Contracting Officer under the Act does not extend to claims or disputes which by statute or regulation other agencies are expressly authorized to decide.

(h) Interest on the amount found due on a contractor claim shall be paid from the date the claim is received by the Contracting Officer until the date of the payment.

(i) Except as the parties may otherwise agree, pending final resolution of a claim of the contractor arising under the contract the contractor shall proceed diligently with the performance of the contract in accordance with the Contracting Officer's decision.

CT9.3 - BREACH. (6/90) The Contracting Officer, with the concurrence of the Regional Forester, may terminate this contract for breach in the event Purchaser:

A. Is convicted for violation of criminal statutes, civil standards, or any other offense indicating a lack of business integrity or honesty that seriously and directly affects the responsibility of Purchaser pursuant to CT6.0,

B. Is convicted for a violation of criminal statutes or civil standards, orders, permits, or other regulations for the protection of environmental quality issued by a Federal agency, State agency, or political subdivision thereof in the conduct of operations thereunder on National Forest System lands, pursuant to CT6.0,

C. Files false information or makes false statements on bid forms or other documents to gain award of this contract,

D. Has engaged in a pattern of activity that demonstrates flagrant disregard for the terms of this contract, such as, but not limited to, repeated suspensions for breach pursuant to BT9.3; causing undesignated timber meeting Utilization Standards to be unnecessarily damaged, negligently, or willfully cut; or, causing other serious environmental degradation or resource damage,

E. Fails to remedy a breach of contract within time limits stated in BT9.3.

Damages due the United States for termination under this provision shall be determined pursuant to CT9.4.

WO-CT9.4

CT9.4 - FAILURE TO CUT. (4/82) In event of (a) termination for breach or (b) Purchaser's failure to cut designated timber on portions of Sale Area by Termination Date, Forest Service shall appraise remaining Included Timber, unless termination is under CT8.2 or BT8.22. Such appraisal shall be made with the standard Forest Service method in use at time of termination.

Damages due the United States for Purchaser's failure to cut and remove Included Timber meeting Utilization Standards shall be the amount by which Current Contract Value, plus costs described below, less any Effective Purchaser Credit remaining at time of termination, exceeds the resale value at new Bid Rates. If there is no resale, damages due shall be determined by subtracting the value established by said appraisal from the difference between Current Contract Value and unused Effective Purchaser Credit, plus any of the following applicable costs:

(a) The cost of resale or reoffering;

(b) Any increase in Purchaser Credit Limit allowance for unconstructed Specified Road facilities which are needed to harvest the remaining uncut volume. Such increases are limited to costs for constructing the road to the same standard and specifications required by this contract;

(c) If Purchaser has failed to cut individual trees in the portions of Sale Area cutover and there is no resale of such individual trees, Purchaser shall pay Forest Service for cost of felling and removal or otherwise eliminating such uncut trees in addition to payment of damages described above, except for occasional trees not cut for reasons stated in BT6.4;

(d) The Government's loss caused by the delay in receipt of stumpage payments. Such loss will be measured by interest at the current rate being paid for borrowing by the United States (as calcuLated and published by the Treasury Department in TFRM 6-8025.2) on the unpaid contract value at Termination Date. Interest will be charged for the total number of months, or portions thereof from Termination Date until midpoint of the contract resale period, less any time in excess of 1 year needed to make the resale;

(e) Any increase in reforestation costs, including site preparation, seeding, and planting caused by Purchaser's failure to harvest Included Timber by Termination Date.

C9.4 - FAILURE TO CUT. (4/82) In event of (a) termination for breach or (b) Purchaser's failure to cut designated timber on portions of Sale Area by Termination Date, Forest Service shall appraise remaining Included Timber, unless termination is under C8.2 or B8.22. Such appraisal shall be made with the standard Forest Service method in use at time of termination.

Damages due the United States for Purchaser's failure to cut and remove Included Timber meeting Utilization Standards shall be the amount by which Current Contract Value, plus costs described below, less any Effective Purchaser Credit remaining at time of termination, exceeds the resale value at new Bid Rates. If there is no resale, damages due shall be determined by subtracting the value established by said appraisal from the difference between Current Contract Value and unused Effective Purchaser Credit, plus any of the following applicable costs:

(a) The cost of resale or reoffering;

(b) Any increase in Purchaser Credit Limit allowance for unconstructed Specified Road facilities which are needed to harvest the remaining uncut volume. Such increases are limited to costs for constructing the road to the same standard and specifications required by this contract;

(c) If Purchaser has failed to cut individual trees in the portions of Sale Area cutover and there is no resale of such individual trees, Purchaser shall pay Forest Service for cost of felling and removal or otherwise eliminating such uncut trees in addition to payment of damages described above, except for occasional trees not cut for reasons stated in B6.4;

(d) The Government's loss caused by the delay in receipt of stumpage payments. Such loss will be measured by interest at the current rate being paid for borrowing by the United States (as calculated and published by the Treasury Department in TFRM 6-8025.2) on the unpaid contract value at Termination Date. Interest will be charged for the total number of months, or portions thereof from Termination Date until midpoint of the contract resale period, less any time in excess of 1 year needed to make the resale;

(e) Any increase in reforestation costs, including site preparation, seeding, and planting caused by Purchaser's failure to harvest Included Timber by Termination Date.

United States Department of Agriculture

Forest Service

Unit Name

517 Gold Avenue, SW
Albuquerque, NM 87102-0084
FAX (505) 842-3800
V/TTY (505) 842-3292

File Code: 2450

Date: JAN - 9 2001

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Mr. Lorin D. Porter, President
Precision Pine & Timber, Inc.
P.O. Box 70
Heber, AZ 85928

Dear Mr. Porter:

By letters from the Contracting Officers on the timber sale contracts noted below, sent between the dates of September 26 and October 2, 2000, you were given final notice that unless you provided adequate bonding for the timber sale contracts indicated, the contracts would terminate on October 25, 2000. You did not provide the requested bonding.

On Thursday, October 26, 2000, I received requests from the Timber Sale Contracting Officers to terminate the referenced contracts for failure to remedy breach pursuant to contract provisions BT9.3 - Breach and CT9.3 - Breach. The breach stems from your failure to provide new bonding satisfactory to the Forest Service when Frontier Insurance Company was removed from the list of acceptable sureties on Government contracts in June of this year. Along with their requests, the Contracting Officers provided information pertinent to the situation, sufficient to form a basis for making a decision.

I have reviewed the information provided to me regarding the failure of Precision Pine & Timber, Inc. to provide payment guaranties or other bonding or surety acceptable to the Forest Service as required by timber sale contract provision BT9.1 - Performance Bond on the following Region 3 timber sales:

| National Forest | Sale Name | Contract Number |
|---|---|---|
| Apache-Sitgreaves: | Gentry Multiproduct | 030104001939 |
| | Wiggins Multiproduct | 030104020012 |
| | Jersey Horse | 030105001756 |
| | Brookbank Multiproduct | 030105001822 |
| | O.D. Ridge | 030106001574 |
| Coconino: | Hutch-Boondock Multiproduct | 030404005465 |
| | Monument Multiproduct | 030404005564 |
| | U-Bar | 030407005051 |
| Gila: | Lily | 030603020140 |