No. 02-131C
(Judge George W. Miller)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PRECISION PINE & TIMBER, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

KATHRYN A. BLEECKER
Assistant Director

DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 307-0277

Attorneys for Defendant

OF COUNSEL:

Lori Polin Jones
Patricia L. Disert
Office of General Counsel
U.S. Department of Agriculture
1400 Independence Ave., S.W.
Washington, D.C. 20250

Dated: April 26, 2004

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . 2

I. Nature Of The Case . . . . . . . . . . 2

II. Statement Of Facts . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . 4

I. Standard Of Review . . . . . . . . . . 4

II. This Court Possesses Jurisdiction To Entertain The United States' Counterclaim . . . . . . . . . . 5

A. Contracting Officer Final Decisions Were Issued With Respect To Each Government Claim For Default Damages . . . . . . . . . . 5

B. Precision Pine's Argument That The Contracting Officers' Final Decisions Are Invalid Is Without Merit . . . . . . . . . . 7

1. The Federal Circuit Has Established That A Pre-Existing Dispute Is Not A Prerequisite For Non-Routine Claims Pursuant To The CDA . . . . . . . . . . 7

2. The Ordinary Meaning Of The Term "Claim" Does Not Require A Pre-Existing Dispute . . . . . . . . . . 9

3. Neither The CDA's Legislative History, Nor Its Purposes, Are Consistent With An "In Dispute" Requirement . . . . . . . . . . 10

4. The Contractual Language Does Not Support Precision Pine's Motion . . . . . . . . . . 11

III. Precision Pine's Motion For Summary Judgment Is Without Merit . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . 16

# TABLE OF AUTHORITIES

## Cases

A.E. Finley & Associates v. United States,
898 F.2d 1165 (6th Cir. 1990) . . . . . . . . . . 8

AK Steel Corp. v. United States,
226 F.3d 1361 (Fed. Cir. 2000) . . . . . . . . . . 8

Anderson v. Liberty Lobby,
477 U.S. 242, 247-48 (1986) . . . . . . . . . . 5

Brookfield Construction Co., Inc. v. United States,
228 Ct. C 661 F.2d 159 (1981) . . . . . . . . . . 5

Cosmic Construction Co. v. United States,
697 F.2d 1389 (Fed. Cir. 1982) . . . . . . . . . . 4

Cupey Bajo Nursing Home, Inc. v. United States,
23 Cl. Ct. 406, 412 (1991) . . . . . . . . . . 8

Curtis v. United States,
144 Ct. C 168 F. Supp. 213 (1958), cert. denied,
361 U.S. 843 (1959) . . . . . . . . . . 5

Dawco Construction, Inc. v. United States,
930 F.3d 872 (Fed. Cir. 1991) . . . . . . . . . . 7-8

Durable Metal Products, Inc. v. United States,
21 Cl. Ct. 41, 46 (1990) . . . . . . . . . . 13

Dynalectron Corp. v. United States,
4 Cl. Ct. 424 aff'd,
758 F.2d 665 (Fed. Cir. 1984) . . . . . . . . . . 4

Fidelity Construction Co. v. United States,
700 F.2d 1379 (Fed. Cir.), cert. denied,
464 U.S. 826 (1983) . . . . . . . . . . 5

Forman v. United States,
329 F.3d 837 (Fed. Cir. 2003) . . . . . . . . . . 5

Hi-Ridge Lumber Co. v. United States,
443 F.2d 452 (9th Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Hoskins Lumber Co. v. United States,
24 Cl. Ct. 259, 267 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

Hoskins Lumber Co. v. United States,
89 F.3d 816 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

Kentucky Dam & Bridge, Inc. v. United States,
42 Fed. Cl. 501 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Keystone Coat & Apron Mfg. Corp. v. United States,
150 Ct. Cl. 277 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Library of Congress v. Shaw,
478 U.S. 310 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Liesegang v. Secretary of Veterans Affairs,
312 F.3d 1368 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Lumber, Production & Industrial Workers Log Scalers v. United States,
580 F. Supp. 279 (D. Or. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Placeway Construction Corp. v. United States,
920 F.2d 903 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7, 9, 12

Reflectone, Inc. v. Dalton,
60 F.2d 1572 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Sharman Co. v. United States,
2 F.3d 1564 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 13

United States v. King,
395 U.S. 1 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5

United States v. Mitchell,
445 U.S. 535 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Sherwood,
312 U.S. 584 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Testan,
424 U.S. 392 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

W.M. Schlosser Co. v. United States,
705 F.2d 1336 (Fed. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Wise v. United States,
18 Cl. Ct. 763, 768 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Statutes**

41 U.S.C. § 605 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-7, 12

**Other Authority**

65 Fed. Reg. 35998-02 (June 6, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Webster's Ninth New Collegiate Dictionary 244 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

# INDEX TO APPENDIX

Document Page

Declaration of David P. Harris . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-8

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-131C |
| v. | ) | (Judge George W. Miller) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**INTRODUCTION**

A contracting officer's final decision upon a claim is a jurisdictional prerequisite to an action pursuant to the Contract Disputes Act ("CDA"). Contending that the United States' counterclaim for breach damages is based upon "invalid" final decisions, Precision Pine & Timber, Inc. ("Precision Pine") has moved to dismiss the counterclaim for lack of jurisdiction. This is surprising because Precision Pine's own complaint is based upon the very same final decisions. As a result, if the United States' counterclaim must be dismissed, so too must the complaint in this action.

As demonstrated below, however, Precision Pine's argument is without merit. United States Forest Service contracting officers issued final decisions assessing as a matter of right breach of contract damages. These final decisions concern Government claims. The United States' counterclaim is, therefore, properly before the Court.

Additionally, because Precision Pine raises, at most, issues of fact concerning the amount of damages resulting from its breach, Precision Pine's alternative motion for summary judgment should be denied.

## STATEMENT OF THE CASE

### I. Nature Of The Case

This action concerns 12 timber sale contracts that were awarded to Precision Pine by the Forest Service between August 1992 and December 1998. In 2000, Precision Pine failed to maintain performance bonds with a Government-approved surety as required by the terms of its contracts. As a result, the Forest Service terminated Precision Pine's contracts for default. In February and March 2001, Forest Service contracting officers issued final decisions assessing breach of contract damages based upon Precision Pine's default.

In its complaint, Precision Pine challenges the contracting officers' assessment of breach damages. See Compl. ¶¶ 5-24. The United States has asserted a mirror-image counterclaim seeking the recovery of damages for Precision Pine's breach. See Def.'s Answer, Affirmative Defenses and Counterclaim ¶¶ 111-16.

### II. Statement Of Facts [1]

This action concerns 12 contracts that Precision Pine bid upon and was awarded between August 1992 and December 1998: (1) the O.D. Ridge timber sale; (2) the Brookbank multi-product sale; (3) Jersey Horse timber sale; (4) the Saginaw-Kennedy multi-product sale; (5) the Brann multi-product sale; (6) the U-Bar timber sale; (7) the Monument multi-product sale; (8) the Manaco multi-product sale; (9) the Hutch-Boondock multi-product sale; (10) the Gentry multi-product sale; (11) Wiggins multi-product sale; and the (12) Lily multi-product sale. Compl. ¶ 3.

[1] Pursuant to RCFC 56.1(h)(2), the United States is filing with this motion a response to Precision Pine's proposed findings of fact and appropriate additional findings of uncontroverted fact. This section summarizes the facts relevant to this motion.

Each of the contracts at issue contain similar terms including the requirement that the purchaser maintain a bond or other security as a guarantee of performance. App. 535, 554, 575, 594, 614, 633, 651, 672, 696, 717, 736, 755.[2] In 1999, Precision Pine began using Frontier Insurance Company as the surety for performance bonds. Compl. ¶¶ 9, 11, 13; App. 10, 200, 278, 371-72. However, on June 6, 2000, Frontier was removed from the Government's list of approved sureties. Compl. ¶ 13; 65 Fed. Reg. 35998-02 (June 6, 2000).

The Forest Service promptly notified Precision Pine that Frontier was no longer an acceptable surety and, pursuant to clause BT 9.1, directed Precision Pine to obtain bonding from an acceptable surety within 30 days. Compl. ¶ 14; App. 10-11, 18-19, 90-94, 162-64, 200-01, 235-36, 278, 329-30, 372, 453-54. Precision Pine did not obtain a replacement bond from an acceptable surety as required. Compl. ¶ 15; App. 11, 19, 201, 278-79, 373. Consequently, in July 2000, and again in September 2000, Forest Service contracting officers advised Precision Pine that its failure to provide replacement performance bonding constituted a breach of contract. E.g., App. 11-14, 19-21, 96-98, 107-08, 168-72, 201-04, 238-43, 251-52, 279-81, 333-34, 341-42, 373, 455-59. Precision Pine still failed to obtain replacement bonds from an approved surety. Compl. ¶ 15; App. 14, 22, 204-05, 281-82, 374-75. Accordingly, on January 9, 2001, the Forest Service terminated the contracts at issue for default. App. 15, 22-23, 117-19, 205, 282, 375. In February and March 2001, the respective contracting officers issued final decisions assessing damages as a result of the breach of Precision Pine's contracts as follows: (1) O.D. Ridge – $148,845.38; (2) Brookbank – $0.00; (3) Jersey Horse – $9,035.47; (4) Saginaw-Kennedy –

---

[2] The appendix filed in conjunction with defendant's motion for summary judgment is cited as "App __." The appendix to plaintiff's motion to dismiss is cited as "PA__." The appendix filed with this response to plaintiff's motion to dismiss is cited as "DA__."

$101,642.20; (5) Brann – $36,888.97; (6) U-Bar – $215,691.04; (7) Monument – $81,477.88; (8) Manaco – $0.00; (9) Hutch-Boondock – $2,278.72; (10) Gentry – $92,236.78; (11) Wiggins – $13,016.93; (12) Lily – $66,512.35. Compl. ¶¶ 28, 36, 43, 51, 58, 65, 72, 79, 86, 91, 96, 102; PA 135-36.

After damages were assessed, the Forest Service resold timber upon the O.D. Ridge, Jersey Horse, and Wiggins timber sales. DA6-7 (Harris Decl ¶ 15). No timber upon the other contracts at issue has been resold or is intended to be resold. DA4, 7-8 (Harris Decl. ¶¶ 10, 15, 19, 22).

## ARGUMENT

### I. Standard of Review

The United States Court of Federal Claims is a court of limited jurisdiction. Dynalectron Corp. v. United States, 4 Cl. Ct. 424, 428, aff'd, 758 F.2d 665 (Fed. Cir. 1984) (table). Absent congressional consent to entertain a claim against the United States, the Court lacks authority to grant relief. United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941).

A waiver of sovereign immunity, and thus consent to be sued, must be expressed unequivocally and cannot be implied. Library of Congress v. Shaw, 478 U.S. 310 (1986); United States v. King, 395 U.S. 1, 4 (1969). Any grant of jurisdiction to this Court must be construed strictly, and all conditions placed upon such a grant must be satisfied before the Court may accept jurisdiction. United States v. Mitchell, 445 U.S. 535, 538 (1980); Cosmic Constr. Co. v. United States, 697 F.2d 1389, 1390 (Fed. Cir. 1982).

The provisions of the CDA constitute a limited waiver of sovereign immunity, and, as such, "the limitations and conditions under which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." Fidelity Constr. Co. v. United States, 700 F.2d 1379, 1387 (Fed. Cir.), cert. denied, 464 U.S. 826 (1983); King, 395 U.S. at 3-5; Brookfield Construction Co., Inc. v. United States, 228 Ct. Cl. 551, 560, 661 F.2d 159, 165 (1981). Accordingly, the requirements of the CDA are jurisdictional prerequisites that must be satisfied to maintain an action in this Court. See W.M. Schlosser Co. v. United States, 705 F.2d 1336, 1338-39 (Fed. Cir. 1983).

The familiar standard for summary judgment warrants only a brief restatement. Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); Forman v. United States, 329 F.3d 837, 841 (Fed. Cir. 2003) (citing Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986)). "The focus in determining whether summary judgment is appropriate is the lack of disputed material facts. A material fact has been defined as a fact that will make a difference in the outcome of a case." Curtis v. United States, 144 Ct. Cl. 194, 199, 168 F. Supp. 213, 216 (1958), cert. denied 361 U.S. 843 (1959). Put differently, only disputes over facts that would affect the outcome of a claim or defense will properly prevent summary judgment. See Anderson, 477 U.S. at 248.

## II. This Court Possesses Jurisdiction To Entertain The United States' Counterclaim

### A. Contracting Officer Final Decisions Were Issued With Respect To Each Government Claim For Default Damages

The Contract Disputes Act distinguishes between claims by a contractor and claims by the Government. See 41 U.S.C. § 605. "All claims by a contractor against the government

[must] be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 605(a). Contractor claims in excess of $100,000 must be certified as to accuracy by a duly authorized representative of the contractor. 41 U.S.C. § 605(b). On the other hand, "claims by the government against a contractor" need only "be the subject of a decision by the contracting officer." 41 U.S.C. § 605(a). No formal submission and no certification is required for Government claims. Placeway Constr. Corp. v. United States, 920 F.2d 903, 906 (Fed. Cir. 1990). Notwithstanding these differences, "a final decision by the contracting officer on a claim, whether asserted by the contractor or the government, is a 'jurisdictional prerequisite.'" Sharman Co. v. United States, 2 F.3d 1564, 1568 (Fed. Cir. 1993), overruled on other grounds, Reflectone, Inc. v. Dalton, 60 F.2d 1572 (Fed. Cir. 1995) (en banc).

Precision Pine concedes that Forest Service contracting officers issued final decisions assessing default damages with respect to each of the contracts at issue. See Compl. ¶¶ 28, 36, 43, 51, 58, 65, 72, 79, 86, 91, 96, 102; Mot. at 3-4; see also PA12-137.[3] These final decisions were in writing, stated the reasons for the decision, informed Precision Pine of its right to appeal, were furnished to Precision Pine, and pre-date the filing of this action. PA12-137. Thus, final decisions addressing "the subject of" the Government's counterclaim were issued in accordance with the CDA, see 41 U.S.C. § 605(a), and the Court possesses jurisdiction over the United States' counterclaims.

---

[3] Plaintiff's Motion to Dismiss Defendant's Counterclaim or, in the Alternative, for Summary Judgment is cited as "Mot. at __."

## B. Precision Pine's Argument That The Contracting Officers' Final Decisions Are Invalid Is Without Merit

Precision Pine contends that the contracting officers' final decisions are nevertheless "invalid." Mot. at 1. According to Precision Pine, the final decisions do not address a Government "claim" because the amount of breach damages was not "in dispute" when the decisions were issued. See Mot. at 7. Precision Pine's argument has been rejected by the United States Court of Appeals for the Federal Circuit, is contrary to the ordinary meaning of "claim," is unsupported by the legislative history and purposes of the CDA, and is belied by the language of the respective timber sale contracts.

### 1. The Federal Circuit Has Established That A Pre-Existing Dispute Is Not A Prerequisite For Non-Routine Claims Pursuant To The CDA

Overruling Dawco Construction, Inc. v. United States, 930 F.3d 872 (Fed. Cir. 1991), and "its progeny," the Federal Circuit held in Reflectone, Inc. v. Dalton that a non-routine submission from a contractor constitutes a "claim" regardless of whether preceded by a dispute. 60 F.2d 1572, 1575-766 (Fed. Cir. 1995) (en banc). The assertion of damages resulting from a breach of contract plainly is not routine. See Kentucky Dam & Bridge, Inc. v. United States, 42 Fed. Cl. 501, 519 (1998). Consequently, even assuming for the sake of argument that the "in dispute"

requirement could apply to a Government claim,[4] under Reflectone, the existence of a pre-existing dispute is irrelevant.

Precision Pine attempts to resurrect Dawco's "in dispute" requirement. Mot. at 7-8. As in Reflectone, the decision in Dawco concerned submissions by a contractor – not a Government claim. See 930 F.2d at 877. Moreover, like Reflectone, Dawco based its decision on provisions of the FAR. See id. at 877-78 (concluding that the FAR "mandates . . . a dispute at the time of submission"). Precision Pine's assertion that Dawco created "an all-encompassing 'in dispute' requirement" applying to Government claims or contracts not governed by the FAR is simply incorrect. See Mot. at 8. Moreover, the only aspect of the "in dispute" holding of Dawco that survives Reflectone pertains to "routine" submissions from the contractor. Dawco and its progeny are, therefore, inapposite.[5]

Precision Pine thus presents no authority – much less authority distinguishing the Federal Circuit's en banc decision in Reflectone – establishing that a dispute must exist before the Government can assert a "claim" pursuant to a contract not governed by the FAR.

---

[4] The Federal Circuit's decisions have involved contractor claims and, consequently, have discussed whether the "submission" of various documents by the contractor constitutes a "claim." E.g., Reflectone, 60 F.3d at 1575-76; Dawco, 930 F.2d at 877. The Government does not "submit" a claim to the contracting officer for a decision. See 41 U.S.C. § 605(a). Rather, the contracting officer issues a decision "the subject of" which is the Government's claim. Id. Consequently, with respect to a Government claim, the Court need only consider whether the "claim" is the subject of a final decision. See Placeway, 920 F.2d at 906 (entertaining a Government claim for a setoff where there was no prior demand for the setoff and, therefore, no dispute as of the contracting officer's final decision).

[5] The pre-Reflectone cases cited by Precision Pine are no different. See Cupey Bajo Nursing Home, Inc. v. United States, 23 Cl. Ct. 406, 412 (1991) (contract governed by the FAR; addressing a contractor's putative claim); A.E. Finley & Assocs. v. United States, 898 F.2d 1165 (6th Cir. 1990) (contract governed by the FAR); Keystone Coat & Apron Mfg. Corp. v. United States, 150 Ct. Cl. 277 (1960) (case does not involve the CDA).

**2. The Ordinary Meaning Of The Term "Claim" Does Not Require A Pre-Existing Dispute**

The Contract Disputes Act does not define the term "claim." Reflectone, 60 F.3d at 1575. However, "[w]hen [a] statute does not define a term, as it is the case here, the agency and the reviewing court must give the undefined term its ordinary meaning." Liesegang v. Secretary of Veterans Affairs, 312 F.3d 1368, 1374 (Fed. Cir. 2002); see also AK Steel Corp. v. United States, 226 F.3d 1361, 1371 (Fed. Cir. 2000) (citing Perrin v. United States, 444 U.S. 37, 42 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.")). The ordinary meaning of the term "claim" is "a demand for something due or believed to be due." Reflectone, 60 F.2d at 1576 (quoting Webster's Ninth New Collegiate Dictionary 244 (1990)). Moreover, as the Federal Circuit has explained, this ordinary meaning does not require any pre-existing dispute:

> [Construing the term] "claim" to be a written demand seeking a sum certain (or other contract relief) as a matter of right, but not necessarily in dispute, is consistent with the ordinary meaning of the term "claim": "a demand for something due or believed to be due." Webster's Ninth New Collegiate Dictionary 244 (1990). That the demand is made as a matter of right constitutes the essential characteristic of a claim according to both the FAR and the dictionary definitions. Nothing in the common definition of "claim," however requires a pre-existing dispute before a demand as a matter of right can be a claim. Indeed, everything suggests the contrary.

60 F.3d at 1576 (case citations omitted) (noting in addition, that "it is illogical to require a dispute before a demand for payment rightfully due can be a 'claim' because to have a dispute the contractor must first make a demand as a matter of right, i.e., a claim, that is then refused").

The Forest Service contracting officers' final decisions assess as a matter of right damages for breach of contract. See PA12-127. By demanding "something due or believed to be due," the final decisions assert a Government "claim." Reflectone, 60 F.2d at 1576; see also Placeway, 920 F.2d at 906.

**3. Neither The CDA's Legislative History, Nor Its Purposes, Are Consistent With An "In Dispute" Requirement**

"[N]either the CDA, its legislative history, nor the FAR, nor its history, suggests that a dispute must pre-date the contractor's submission of the claim to the CO when the claim is in the form of a non-routine demand as of right." Reflectone, 60 F.3d at 1576. Additionally, the CDA's goal of "providing for the efficient and fair resolution of contract claims" conflicts with a pre-existing dispute requirement. Reflectone, 60 F.3d at 1580 (citing Report of the Senate Governmental Affairs Committee and the Senate Judiciary Committee on the Contract Disputes Act of 1978, S. Rep. No. 1118, 95th Cong., 2d Sess. 4 (1978), reprinted in 1978 U.S.S.C.A.N. 5235, 5238). As the Federal Circuit explained in Reflectone:

> Judicial inquiries into whether a dispute predated a submission are at best an inefficient use of limited resources, given that before the Board or the court reaches this question there will necessarily have been a final CO's decision denying the contractor's submission. . . . Because a dispute clearly exists at the time an appeal is dismissed for lack of a dispute pre-dating submission of the demand for payment to the CO, after dismissal the contractor need only resubmit the identical demand to the CO. The resubmitted demand would now indisputably satisfy the pre-existing dispute requirement and, therefore, be a CDA claim. The process of final decision and appeal would begin all over again, but at great cost to the parties, the boards and the courts, often with no benefit because the disputed issues on the merits have already been well defined by the course of litigation. Clearly this repetitive and needlessly drawn-out process can hardly be said to promote the efficient

> resolution of claims. Nor its it "fair." Requiring . . . the identical claim [to be submitted twice] is a waste of . . . time and money.

Id. at 1580-81.

This is precisely the scenario here. If the Government's claims were dismissed, the contracting officers would issue new final decisions assessing breach damages. The existence of a pre-existing dispute clearly would be satisfied. Precision Pine would then once again challenge the assessment of breach damages.

The CDA's goal of the fair and efficient resolution of claims – as well as the interest in judicial economy – would be undermined by such a result. For this additional reason, the Court should reject Precision Pine's motion to dismiss.

**4. The Contractual Language Does Not Support Precision Pine's Motion**

The contracts at issue define "claim" in clause CT 9.2(c)(i). E.g., App. 543. This contractual definition is virtually identical to the definition in the FAR. Compare FAR 33.201 (defining "claim" as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief") with App. 543 (stating in clause CT 9.2(c)(i) that "'claim' means a written demand or assertion by one of the parties seeking, as a legal right, the payment of money, adjustment or interpretation of contract terms, or other relief"). The court's conclusion in Reflectone that the FAR does not support a pre-existing dispute requirement applies equally to the virtually identical contractual language here.

The respective contracting officer final decisions fall squarely within the contractual definition of claim. Each is written; each was issued upon behalf of a party (the Government);

and each directs as a matter of right the payment of money under the contracts. See PA12-127. The Government's assessments of breach damages, therefore, constitute "claims" pursuant to both the CDA and the contracts.

In its brief, Precision Pine cites a subsequent sentence in CT 9.2 that reads: "A voucher, invoice, or request for payment that is not in dispute when submitted is not a claim for purposes of the Act." Mot. at 6 (quoting CT 9.2(c)(ii)) (emphasis added). Precision Pine asserts that this contractual language requires a dispute to exist before a final decision asserting a Government claim can be issued.[6] As an initial matter, the contracting officers' final decisions assessing breach damages are not a "voucher, an "invoice" or a "request for payment."[7] See PA12-127. Furthermore, only claims from the contractor are "submitted." 41 U.S.C. § 605(a). Given that the "dispute" language in CT 9.2(c)(ii) applies only to submissions, it has no relevance to Government claims. Id; see also Placeway, 920 F.2d at 905-06 (finding jurisdiction to entertain a Government claim for setoff where no demand for a setoff was sent to the contractor prior to the final decision itself). Indeed, this conclusion is confirmed by the contracts' very next section – a section entitled "Submission of Claim" – which concerns only submissions from the contractor. See, e.g., App. 544 (clause CT 9.21).

---

[6] As discussed above, neither the CDA, nor the FAR, contain a pre-existing "disputes" requirement. Precision Pine's implicit assertion that this Court's jurisdiction can be established by agreement of the parties, rather than by statute, is misplaced. Wise v. United States, 18 Cl. Ct. 763, 768 (1989) ("it is well established that parties cannot confer jurisdiction on a court by agreement").

[7] The "Bill of Collections" sent by the respective contracting officers are irrelevant to the jurisdictional issue raised by Precision Pine in this action.

Precision Pine also refers to an excerpt from the Forest Service's Timber Sale Administration Handbook. Mot. at 6. This internal handbook is "a general guide which is intended primarily for use by Forest Service employees." Hoskins Lumber Co. v. United States, 24 Cl. Ct. 259, 267 (1991). It "does not rise to the status of a regulation" and "does not have the force and effect of law." Id. (quoting Hi-Ridge Lumber Co. v. United States, 443 F.2d 452, 455 (9th Cir. 1971), and citing Lumber, Production & Indus. Workers Log Scalers v. United States, 580 F. Supp. 279, 284 (D. Or. 1984)). Nor is it incorporated into the contracts. Consequently, even if the assessed damages were applicable to the referenced provision of the handbook, the handbook has no effect upon this Court's statutorily-established jurisdiction or the meaning of the CDA's substantive statutory provisions. While the Forest Service is free to develop its own informal policies to guide employees, those policies simply have no bearing upon the jurisdictional issue before this Court. See generally Hoskins Lumber, 24 Cl. Ct. at 266-67.

## III. Precision Pine's Motion For Summary Judgment Is Without Merit

Precision Pine moves in the alternative for summary judgment upon the ground that the Forest Service contracting officers did not correctly determine the Forest Service's breach damages in accordance with formulae in contract clause CT9.4. See Mot. at 2, 10-14. Even if Precision Pine were correct – and it is not – summary judgment would not be warranted.

Clause CT 9.4 provides two alternative measures of damages in the event of breach of a timber sale contract: one where the timber has been resold; and another where the timber has not been resold. E.g., App. 545-46. At the time of the contracting officers' decisions in early 2001, no timber upon any of the breached contracts had been resold. See DA4, 7-8 (Harris Decl.

¶¶ 10, 15, 19, 22). Consequently, the final decisions assessed damages using the "no resale" formula in clause CT 9.4. See DA4, 6-8 (Harris Decl. ¶¶ 9, 14, 18, 21).

Since the date of the respective contracting officers' decisions, the Forest Service has resold timber upon the O.D. Ridge, Jersey Horse, and Wiggins contracts. DA6-7 (Harris Decl. ¶ 15). The contracting officers have not issued a decision recalculating damages based upon the resale because of this litigation. See Sharman, 2 F.3d at 1571-72 (holding that a contracting officer is without jurisdiction to issue a final decision concerning a matter in litigation); Durable Metal Products, Inc. v. United States, 21 Cl. Ct. 41, 46 (1990) (same). The remaining contracts (Brookbank, Saginaw-Kennedy, Brann, U-Bar, Monument; Manaco, Hutch-Boondock, Gentry and Lily) were not resold and are not intended to be resold. DA4, 7-8 (Harris Decl. ¶¶ 10, 15, 19, 22).

Therefore, with respect to the Brookbank, Saginaw-Kennedy, Brann, U-Bar, Monument; Manaco, Hutch-Boondock, Gentry and Lily contracts, the respective contracting officers correctly assessed damages pursuant to CT 9.4. See PA12-127. Accordingly, not only should summary judgment upon behalf of Precision Pine be denied, summary judgment in favor of the United States should be entered. Hoskins Lumber Co. v. United States, 89 F.3d 816, 817 (Fed. Cir. 1996) ("Under section B9.4, compliance with the standard appraisal method is the sole measure of its accuracy and its reliability.");[8] DA4, 6-8 (Harris Decl. ¶¶ 9, 14, 18, 21) (damages were calculated using appraisals conducted in accordance with the standard Forest Service method in use at the time of termination).

---

[8] Section B9.4 in Hoskins is essentially the same as section CT 9.4 in the contracts at issue.

With respect to the O.D. Ridge, Jersey Horse, and Wiggins contracts, Precision Pine merely raises an issue of material fact concerning the amount of damages due as a result of its default. Precision Pine has not contended – much less established as a matter of law as required by RCFC 56(b) – that the United States suffered no damages as a result of Precision Pine's breach. Mot. at 14 (asserting only that the wrong formula was used in assessing damages). Precision Pine's motion for summary judgment should, therefore, be denied.

In its motion, Precision Pine's principal objection appears to be the Forest Service's purported use of "estimated" damages. See Mot. at 14. Precision Pine suggests that this is contrary to clause CT 9.4. However, clause CT 9.4 expressly contemplates the use of an "appraisal" of remaining timber. E.g., App.545-46. An appraisal is by its very nature an estimate of current market value. See Black's Law Dictionary 66 (abridged 6th ed. 1991) ("A valuation or an estimation of value of property."). In addition, the term "estimated" was used by the respective contracting officers to denote the possibility of an adjustment if a resale occurred. The fact remains that the damages caused by Precision Pine's breach of contract were assessed in accordance with clause CT 9.4. Precision Pine is entitled to no more. See Hoskins Lumber, 89 F.3d at 817 (Plaintiff "was emphatically not entitled to a 'fair' appraisal, an 'accurate appraisal, a 'reasonable' appraisal, or any manner of appraisal other than the one indicated in section B9.4") (emphasis in original).

**CONCLUSION**

For these reasons, the United States respectfully requests that the Court deny Precision Pine's motion to dismiss, deny Precision Pine's alternative motion for summary judgment, and enter judgment upon behalf of the United States upon its counterclaim.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Kathryn A. Bleecker

KATHRYN A. BLEECKER
Assistant Director

s/ David A. Harrington

DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 307-0277
(202) 307-0972 (fax)

Attorneys for Defendant

OF COUNSEL:

Lori Polin Jones
Patricia L. Disert
Office of General Counsel
U.S. Department of Agriculture
1400 Independence Ave., S.W.
Washington, D.C. 20250

April 26, 2004

# APPENDIX

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC. | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 02-131C (Judge George Miller) |
| THE UNITED STATES | ) | |
| Defendant. | ) | |

Declaration of David P. Harris

I, David P. Harris, declare as follows:

1. I am a Supervisory Forester in the Region 3, Regional Office of the U.S. Department of Agriculture Forest Service ("Forest Service") located in Albuquerque, New Mexico. Region 3 covers the states of Arizona and New Mexico.

2. As a Supervisory Forester, I am responsible for regional oversight of all sale preparation and sale administration aspects of timber sale contracts in Region 3. I am responsible for the training and certification of timber sale administrators and Contracting Officers in Region 3. In this role I am responsible for providing the necessary training opportunities and testing required for meeting the national standards established for certified sale administrators and Contracting Officers. I have held my current position since December 1, 2002.

3. Previously, I served as a Timber Specialist and Contracting Officer on the Kaibab National Forest in Williams,

Arizona. I served in that position from January 1994 to November 2002. As timber specialist and Contracting Officer for the Kaibab National Forest, my responsibilities included oversight of the Forest timber management program, including but not limited to, timber sale preparation, appraisal, contract formulation, and contract administration.

The Brann and Saginaw-Kennedy Contracts

4. While on the Kaibab National Forest, I served as Contracting Officer for two of the contracts at issue in Precision Pine & Timber, Inc. v. United States, No. 02-131C (Fed. Cl.): the Brann Timber Sale Contract No. 006577, and the Saginaw-Kennedy Timber Sale, Contract No. 006585.

5. Precision Pine & Timber, Inc. ("Precision Pine") was awarded the Brann Timber Sale contract on September 29, 1994, with a termination date of December 31, 1996, and the Saginaw-Kennedy Timber Sale contract on September 29, 1994, with a termination date of December 31, 1996.

6. On January 9, 2001, the Regional Forester terminated the Brann and Saginaw-Kennedy timber sale contracts, in addition to ten other timber sale contracts held by Precision Pine, for Precision Pine's failure to remedy their breach of the contracts by failing to provide adequate bonding to secure their performance of the contracts.

7. On March 1, 2001, I issued final Contracting Officer decisions assessing damages against Precision Pine pursuant to

the Contract Disputes Act, 41 U.S.C. § 601 et seq., for their default of the Brann and Saginaw-Kennedy timber sale contracts. Damages were assessed in the amount of $36,888.97 for default of the Brann timber sale contract, and in the amount of $101,642.20 for default of the Saginaw-Kennedy timber sale contract. Damages were calculated pursuant to contract provision CT9.4-Failure to Cut (4/82).

8. Contract Provision CT9.4- Failure to Cut (4/82) states in pertinent part:

> [I]n event of (a) termination for breach . . . Forest Service shall appraise remaining Included Timber . . . . Such appraisal shall be made with the standard Forest Service method in use at time of termination.
>
> Damages due the United States for Purchaser's failure to cut and remove . . . shall be the amount by which Current Contract Value, plus costs described below, less any Effective Purchaser Credit remaining at time of termination, exceeds the resale value at new Bid Rates. If there is no resale, damages due shall be determined by subtracting the value established by said appraisal from the difference between Current Contract Value and unused Effective Purchaser Credit, plus any of the following applicable costs:
>
> (a) The cost of resale or reoffering;
>
> (b) Any increase in Purchaser Credit Limit allowance for unconstructed Specified Road facilities . . . .
>
> (c) If Purchaser has failed to cut individual trees in the portions of Sale Area cutover and there is no resale of such individual trees, Purchaser shall pay Forest Service for cost of felling and removal or otherwise eliminating such uncut trees in addition to payment of damages described

above, except for occasional trees not cut for reasons stated in BT6.4;

(d) The Government's loss caused by the delay in receipt of stumpage payments. Such loss will be measured by interest at the current rate being paid for borrowing by the United States (as calculated and published by the Treasury Department in TFRM 6-8025.2) on the unpaid contract value at Termination Date. Interest will be charged for the total number of months, or portions thereof from Termination Date until midpoint of the contract resale period, less any time in excess of 1 year needed to make the resale;

(e) Any increase in reforestation costs, including site preparation, seeding, and planting caused by Purchaser's failure to harvest Included Timber by Termination Date.]

9. The remaining timber on each contract was appraised using the standard Forest Service appraisal method, and appraisal bulletin values, in effect at the time of termination. No final decision to re-offer the defaulted sales had been made at the time of issuance of the final Contracting Officer decisions and therefore damages were calculated as if the sales would not be resold.

10. Since my final Contracting Officer decision a significant portion of the Saginaw-Kennedy sale has been burned or has died as a result of insect epidemic and, as a result, will not be re-offered for sale. The Brann sale will also not be re-offered for sale.

Other Contracts At Issue

11. In my current position as Supervisory Forester in charge of sale preparation and timber sale contract administration for Region 3, I have reviewed the contract files for each of the following timber sales at issue in Precision Pine & Timber, Inc. v. United States, No. 02-131C (Fed. Cl.): Hutch-Boondock Multi-Product Timber Sale Contract No. 005465, awarded to Precision Pine on June 29, 1994; U-Bar Timber Sale Contract No. 005051, awarded to Precision Pine on October 5, 1992; Monument Multi-Product Timber Sale Contract No. 005564, awarded to Precision Pine on September 28, 1994; Brookbank Multi-Product Timber Sale Contract No. 001822, awarded to Precision Pine on April 13, 1995; O.D. Ridge Timber Sale Contract No. 001574, awarded to Precision Pine on August 14, 1992; Jersey Horse Timber Sale Contract No. 001756, awarded to Precision Pine on December 13, 1993; Gentry Multi-Product sale Contract No. 001939, awarded to Precision Pine on January 15, 1998; Wiggins Multi-Product Sale Contract No. 020012, awarded to Precision Pine on December 2, 1998, Manaco Timber Sale Contract No. 004625, awarded to Precision Pine on January 17, 1995 and the Lily Timber Sale Contract No. 020140 awarded to Precision Pine on December 23, 1997. Based upon my review of these contract files, I have determined:

12. On January 9, 2001, the Regional Forester terminated the Brookbank, O.D. Ridge, Jersey Horse, Gentry, Wiggins, U-Bar,

Hutch-Boondock, Monument, Lily, and Manaco timber sale contracts, for Precision Pine's failure to remedy their breach of the contracts by failing to provide adequate bonding to secure their performance on the contracts.

<u>The Gentry, Wiggins, Brookbank, O.D.Ridge and Jersey Horse Contracts:</u>

13. On March 1, 2001, the Contracting Officer for the Apache-Sitgreaves NF issued final decisions assessing damages against Precision Pine pursuant to the Contract Disputes Act, 41 U.S.C. § 601 <u>et seq.</u>, for its default on the: Wiggins Multi-product sale in the amount of $13,016.93; Gentry Multi-product sale in the amount of $92,236.78; O.D. Ridge sale in the amount of $148,845.38, and the Jersey Horse sale in the amount of $9,035.47. Damages were assessed pursuant to CT9.4-Failure to Cut (4/82), as quoted above. The contracting officer concluded that the Government had not been damaged as a result of the default of the Brookbank sale.

14. The remaining included timber on each contract was appraised using the standard Forest Service appraisal method, and appraisal bulletin values, in effect at the time of termination. The final Contracting Officer decisions do not indicate that final decisions to re-offer the defaulted sales had been made at the time the decisions were issued and, therefore, damages were calculated as if the sale would not be resold.

15. The Wiggins Multi-product sale was re-offered for sale (renamed the Wiggins II), on July 11, 2001 and it received one valid bid. The O.D. Ridge sale was re-offered for sale (renamed the O.D. Ridge II), on July 11, 2001 and it received one valid bid. The Jersey Horse sale was re-offered for sale (renamed the Jersey Horse 2), on November 28, 2001 and it received one valid bid. Neither the Gentry nor Brookbank multi-products sales have been re-sold.

16. The contract files do not indicate that damage calculations, based upon the results of re-offer, have occurred.

The Monument, Hutch-Boondock and U-Bar Contracts:

17. On February 21, 2001, the Contracting Officer for the Coconino NF issued final Contracting Officer decisions assessing damages against Precision Pine pursuant to the Contract Disputes Act, 41 U.S.C. § 601 et seq., for their default of: Monument Multi-product sale in the amount of $81,477.88; U-Bar sale in the amount of $215,691.04, and the Hutch-Boondock sale in the amount of $2,278.72. Damages were assessed pursuant to CT9.4-Failure To Cut (4/82) as quoted above.

18. The remaining timber on each contract was appraised using the standard Forest Service appraisal method, and appraisal bulletin values, in effect at the time of termination. The final Contracting Officer decisions do not indicate that a final decision to re-offer the defaulted sales had been made at the time the decisions were issued, with the exception of Hutch-

Boondock, and, therefore, damages were calculated as if the sale would not be resold.

19. The Monument Multi-product sale has not been re-sold and the U-Bar sale will not be re-offered.

The Lily Contract:

20. On March 14, 2001, the Contracting Officer for the Gila NF issued a final Contracting Officer decision assessing damages against Precision Pine pursuant to the Contract Disputes Act, 41 U.S.C. § 601 et seq., for its default of the Lily timber sale in the amount of $66,512.35. Damages were assessed pursuant to CT9.4-Failure To Cut (4/82), as quoted above.

21. The remaining timber on the contract was appraised using the standard Forest Service appraisal method, and appraisal bulletin values, in effect at the time of termination. The final Contracting Officer decision does not indicate that a final decision to re-offer the defaulted sale had been made at the time the contracting officer decision was issued and, therefore, damages were calculated as if the sale would not be resold.

22. The Lily timber sale has not been re-sold.

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this __23rd__ day of April 2004.

David P. Harris
Supervisory Forester