# APPENDIX

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC.<br>Plaintiff,<br>v.<br>THE UNITED STATES<br>Defendant. | ) | No. 02-131C<br>(Judge George Miller) |

Declaration of David P. Harris

I, David P. Harris, declare as follows:

1. I am a Supervisory Forester in the Region 3, Regional Office of the U.S. Department of Agriculture Forest Service ("Forest Service") located in Albuquerque, New Mexico. Region 3 covers the states of Arizona and New Mexico.

2. As a Supervisory Forester, I am responsible for regional oversight of all sale preparation and sale administration aspects of timber sale contracts in Region 3. I am responsible for the training and certification of timber sale administrators and Contracting Officers in Region 3. In this role I am responsible for providing the necessary training opportunities and testing required for meeting the national standards established for certified sale administrators and Contracting Officers. I have held my current position since December 1, 2002.

3. Previously, I served as a Timber Specialist and Contracting Officer on the Kaibab National Forest in Williams,

Arizona. I served in that position from January 1994 to November 2002. As timber specialist and Contracting Officer for the Kaibab National Forest, my responsibilities included oversight of the Forest timber management program, including but not limited to, timber sale preparation, appraisal, contract formulation, and contract administration.

The Brann and Saginaw-Kennedy Contracts

4. While on the Kaibab National Forest, I served as Contracting Officer for two of the contracts at issue in Precision Pine & Timber, Inc. v. United States, No. 02-131C (Fed. Cl.): the Brann Timber Sale Contract No. 006577, and the Saginaw-Kennedy Timber Sale, Contract No. 006585.

5. Precision Pine & Timber, Inc. ("Precision Pine") was awarded the Brann Timber Sale contract on September 29, 1994, with a termination date of December 31, 1996, and the Saginaw-Kennedy Timber Sale contract on September 29, 1994, with a termination date of December 31, 1996.

6. On January 9, 2001, the Regional Forester terminated the Brann and Saginaw-Kennedy timber sale contracts, in addition to ten other timber sale contracts held by Precision Pine, for Precision Pine's failure to remedy their breach of the contracts by failing to provide adequate bonding to secure their performance of the contracts.

7. On March 1, 2001, I issued final Contracting Officer decisions assessing damages against Precision Pine pursuant to

the Contract Disputes Act, 41 U.S.C. § 601 et seq., for their default of the Brann and Saginaw-Kennedy timber sale contracts. Damages were assessed in the amount of $36,888.97 for default of the Brann timber sale contract, and in the amount of $101,642.20 for default of the Saginaw-Kennedy timber sale contract. Damages were calculated pursuant to contract provision CT9.4-Failure to Cut (4/82).

8. Contract Provision CT9.4- Failure to Cut (4/82) states in pertinent part:

> [I]n event of (a) termination for breach . . . Forest Service shall appraise remaining Included Timber . . . . Such appraisal shall be made with the standard Forest Service method in use at time of termination.
>
> Damages due the United States for Purchaser's failure to cut and remove . . . shall be the amount by which Current Contract Value, plus costs described below, less any Effective Purchaser Credit remaining at time of termination, exceeds the resale value at new Bid Rates. If there is no resale, damages due shall be determined by subtracting the value established by said appraisal from the difference between Current Contract Value and unused Effective Purchaser Credit, plus any of the following applicable costs:
>
> (a) The cost of resale or reoffering;
>
> (b) Any increase in Purchaser Credit Limit allowance for unconstructed Specified Road facilities . . . .
>
> (c) If Purchaser has failed to cut individual trees in the portions of Sale Area cutover and there is no resale of such individual trees, Purchaser shall pay Forest Service for cost of felling and removal or otherwise eliminating such uncut trees in addition to payment of damages described

above, except for occasional trees not cut for reasons stated in BT6.4;

(d) The Government's loss caused by the delay in receipt of stumpage payments. Such loss will be measured by interest at the current rate being paid for borrowing by the United States (as calculated and published by the Treasury Department in TFRM 6-8025.2) on the unpaid contract value at Termination Date. Interest will be charged for the total number of months, or portions thereof from Termination Date until midpoint of the contract resale period, less any time in excess of 1 year needed to make the resale;

(e) Any increase in reforestation costs, including site preparation, seeding, and planting caused by Purchaser's failure to harvest Included Timber by Termination Date.]

9. The remaining timber on each contract was appraised using the standard Forest Service appraisal method, and appraisal bulletin values, in effect at the time of termination. No final decision to re-offer the defaulted sales had been made at the time of issuance of the final Contracting Officer decisions and therefore damages were calculated as if the sales would not be resold.

10. Since my final Contracting Officer decision a significant portion of the Saginaw-Kennedy sale has been burned or has died as a result of insect epidemic and, as a result, will not be re-offered for sale. The Brann sale will also not be re-offered for sale.

Other Contracts At Issue

11. In my current position as Supervisory Forester in charge of sale preparation and timber sale contract administration for Region 3, I have reviewed the contract files for each of the following timber sales at issue in Precision Pine & Timber, Inc. v. United States, No. 02-131C (Fed. Cl.): Hutch-Boondock Multi-Product Timber Sale Contract No. 005465, awarded to Precision Pine on June 29, 1994; U-Bar Timber Sale Contract No. 005051, awarded to Precision Pine on October 5, 1992; Monument Multi-Product Timber Sale Contract No. 005564, awarded to Precision Pine on September 28, 1994; Brookbank Multi-Product Timber Sale Contract No. 001822, awarded to Precision Pine on April 13, 1995; O.D. Ridge Timber Sale Contract No. 001574, awarded to Precision Pine on August 14, 1992; Jersey Horse Timber Sale Contract No. 001756, awarded to Precision Pine on December 13, 1993; Gentry Multi-Product sale Contract No. 001939, awarded to Precision Pine on January 15, 1998; Wiggins Multi-Product Sale Contract No. 020012, awarded to Precision Pine on December 2, 1998, Manaco Timber Sale Contract No. 004625, awarded to Precision Pine on January 17, 1995 and the Lily Timber Sale Contract No. 020140 awarded to Precision Pine on December 23, 1997. Based upon my review of these contract files, I have determined:

12. On January 9, 2001, the Regional Forester terminated the Brookbank, O.D. Ridge, Jersey Horse, Gentry, Wiggins, U-Bar,

Hutch-Boondock, Monument, Lily, and Manaco timber sale contracts, for Precision Pine's failure to remedy their breach of the contracts by failing to provide adequate bonding to secure their performance on the contracts.

<u>The Gentry, Wiggins, Brookbank, O.D.Ridge and Jersey Horse Contracts:</u>

13. On March 1, 2001, the Contracting Officer for the Apache-Sitgreaves NF issued final decisions assessing damages against Precision Pine pursuant to the Contract Disputes Act, 41 U.S.C. § 601 <u>et seq.</u>, for its default on the: Wiggins Multi-product sale in the amount of $13,016.93; Gentry Multi-product sale in the amount of $92,236.78; O.D. Ridge sale in the amount of $148,845.38, and the Jersey Horse sale in the amount of $9,035.47. Damages were assessed pursuant to CT9.4-Failure to Cut (4/82), as quoted above. The contracting officer concluded that the Government had not been damaged as a result of the default of the Brookbank sale.

14. The remaining included timber on each contract was appraised using the standard Forest Service appraisal method, and appraisal bulletin values, in effect at the time of termination. The final Contracting Officer decisions do not indicate that final decisions to re-offer the defaulted sales had been made at the time the decisions were issued and, therefore, damages were calculated as if the sale would not be resold.

15. The Wiggins Multi-product sale was re-offered for sale (renamed the Wiggins II), on July 11, 2001 and it received one valid bid. The O.D. Ridge sale was re-offered for sale (renamed the O.D. Ridge II), on July 11, 2001 and it received one valid bid. The Jersey Horse sale was re-offered for sale (renamed the Jersey Horse 2), on November 28, 2001 and it received one valid bid. Neither the Gentry nor Brookbank multi-products sales have been re-sold.

16. The contract files do not indicate that damage calculations, based upon the results of re-offer, have occurred.

The Monument, Hutch-Boondock and U-Bar Contracts:

17. On February 21, 2001, the Contracting Officer for the Coconino NF issued final Contracting Officer decisions assessing damages against Precision Pine pursuant to the Contract Disputes Act, 41 U.S.C. § 601 et seq., for their default of: Monument Multi-product sale in the amount of $81,477.88; U-Bar sale in the amount of $215,691.04, and the Hutch-Boondock sale in the amount of $2,278.72. Damages were assessed pursuant to CT9.4-Failure To Cut (4/82) as quoted above.

18. The remaining timber on each contract was appraised using the standard Forest Service appraisal method, and appraisal bulletin values, in effect at the time of termination. The final Contracting Officer decisions do not indicate that a final decision to re-offer the defaulted sales had been made at the time the decisions were issued, with the exception of Hutch-

Boondock, and, therefore, damages were calculated as if the sale would not be resold.

19. The Monument Multi-product sale has not been re-sold and the U-Bar sale will not be re-offered.

The Lily Contract:

20. On March 14, 2001, the Contracting Officer for the Gila NF issued a final Contracting Officer decision assessing damages against Precision Pine pursuant to the Contract Disputes Act, 41 U.S.C. § 601 et seq., for its default of the Lily timber sale in the amount of $66,512.35. Damages were assessed pursuant to CT9.4-Failure To Cut (4/82), as quoted above.

21. The remaining timber on the contract was appraised using the standard Forest Service appraisal method, and appraisal bulletin values, in effect at the time of termination. The final Contracting Officer decision does not indicate that a final decision to re-offer the defaulted sale had been made at the time the contracting officer decision was issued and, therefore, damages were calculated as if the sale would not be resold.

22. The Lily timber sale has not been re-sold.

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this __23rd__ day of April 2004.

David P. Harris
Supervisory Forester