**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-131C |
| v. | ) | (Judge George W. Miller) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO**
**PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACTS**

Pursuant to Rule 56(h)(2) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant respectfully submits this response to the proposed findings of uncontroverted facts filed by plaintiff, Precision Pine & Timber, Inc., on March 25, 2004.

1. Prior to 2000, the United States Forest Service ("Forest Service") awarded to plaintiff, Precision Pine & Timber, Inc. ("Precision Pine") the following twelve timber sale contracts, which are at issue in this case ("contracts at issue"): O.D. Ridge, Brookbank, Jersey Horse, Saginaw-Kennedy, Brann, U-Bar, Monument, Manaco, Hutch-Boondock, Gentry, Wiggins, and Lily.

Response:

Agrees.

2. For the year 2000, Precision Pine secured required bonding for the contracts at issue from Frontier Insurance Company ("Frontier"). This bonding was accepted by the Forest Service for each of the contracts.

Response:

Disagrees. Precision Pine secured bonding from Frontier in 2000. However, Precision Pine's bonding was accepted by the Forest Service only through June 6, 2000 – the date on which Frontier was removed from the Department of the Treasury's list of Approved Sureties. Comp. ¶¶ 13-14; App. 10-11, 18-19, 90-94, 162-64, 200-01, 235-36, 278, 329-30, 372, 453-54; 65 Fed. Reg. 35998-02 (June 6, 2000).[1]

3. During the summer of 2000, Frontier was removed from the Department of the Treasury's List of Approved Sureties. Appendix at 1-2. See also Appendix at 133, Defendant's Answer at ¶ 13.

Response:

Agrees. Frontier was removed from the Department of Treasury's list of approved sureties on June 6, 2000. 65 Fed. Reg. 35998-02 (June 6, 2000)

4. Because Precision Pine was unable to secure new bonding or other security for the contracts at issue that was acceptable to the Forest Service, by letter dated January 9, 2001, the Forest Service terminated all of the contracts at issue for breach, pursuant to contract clause CT9.3. This letter also stated that the Forest Service would determine its damages pursuant to clause CT9.4. Appendix 9-11. See also Appendix at 133, 135-136, Defendant's Answer at ¶¶ 16, 113-114.

[1] The appendix filed in conjunction with defendant's motion for summary judgment is cited as "App __." The appendix to plaintiff's motion to dismiss is cited as "PA__." The appendix filed with the response to plaintiff's motion to dismiss is cited as "DA__."

Response:

Disagrees. Precision Pine has presented no evidence that it was "unable" to secure new bonding or other security from an acceptable surety. Precision Pine did not in fact secure new bonding or other security from an acceptable surety. App. 11, 19, 201, 278-79, 373. We agree that the Forest Service terminated the contracts at issue for breach, pursuant to contract clause CT 9.3, by letter dated January 9, 2001. We also agree that the Forest Service's letter stated that default damages would determined pursuant to clause CT 9.4.

5. Between February 21 and April 15, 2001, the Forest Service sent a packet of documents for each of the contracts at issue regarding its damages claims to Precision Pine. The packets generally contained a "Bill for Collection" of estimated Damages, and estimated "Default Damages Calculations," and a "Decision Document," i.e., putative final decisions. Appendix at 12-127. See also Appendix at 135-136, Defendant's Answer at ¶ 115.

Response:

Agrees, except that Precision Pine inaccurately characterizes the documents received from the Forest Service as"putative" final decisions; the documents constituted the contracting officer's final decisions on the contracts.

6. Part 5 of each of the Decision Documents states that "[t]he Contracting Officer estimates the damages due the government for the default of the [Y] sale to be [$X]" (emphasis added). Appendix at 15, 25, 34, 44, 53, 61, 71, 79, 90, 102, 114.

Response:

Disagrees. Part 5 of the Decision Documents for the O.D. Ridge, Jersey Horse, Saginaw-Kennedy, Brann, U-Bar, Monument, Hutch, Boondock, Gentry, Wiggins, and Lily contracts

contain the statement that "[t]he Contracting Officer estimates the damages due the government for the default of [the specified] sale to be [a certain sum]." PA15, 25, 34, 44, 53, 61, 71, 90, 102, 114. Part 5 of the Decision Documents for the Brookbank and Manaco contracts do not contain this language. PA79; App. 353.

7. Part 6 of each of the Decision Documents for each of the contract except Manaco states that "[t]his is the final decision of the contracting officer." Appendix at 15, 25, 34, 44, 53, 62, 71, 80, 90, 102, 114. See also Appendix at 133, Defendant's Answer at ¶ 16.

Response:

Disagrees. Part 6 of the Decision Documents for each of the contracts at issue (including Manaco) states that "[t]his is the final decision of the contracting officer." DA353.

8. Part 3 of each of the Decision Documents (except for Hutch-Boondock and Manaco for which damages were estimated by the Forest Service to be $0.00) states:

> [The Contracting Officer] estimated the damages due the United States to be [$X] for the [Y] sale. This estimate may be adjusted once final damages are determined following the resale of the remaining timber. At that time any surplus damages collected by this estimate will be refunded to the purchaser, or any additional damages due will be collected, as appropriate.

Appendix at 14, 24, 43, 52, 60-61, 70, 79, 89, 101, 113 (emphasis added).

Response:

Disagrees. The language used in the quoted paragraph of Part 3 of the respective decision documents, which is entitled "Government's Claim," reads as follows:

> Based on the procedures and applicable costs described in provision CT9.4, I have estimated the damages due the United States to be [a specified sum] for the [applicable] timber sale. This estimate may be adjusted once final damages are determined following the resale of the remaining timber. At that time any

> surplus damages collected by this estimate will be refunded to the purchaser, or any additional damages due will be collected, as appropriate.

PA14, 24, 43, 52, 60-61, 70, 79, 89, 101, 113.

9. Part 3 of the Decision Document for the Hutch-Boondock sale is nearly identical to that in the other contracts at issue, except that it states that "[t]he decision is NOT to re-offer this sale," and the other language of Part 3 is modified accordingly. Appendix at 33.

Response:

Agrees.

10. Part 3 of the Decision Document for the Manaco sale is nearly identical to that in the other contracts at issue, except that it states that "[the Contracting Officer has] estimated that there are no damages due the United States for the Manaco timber sale," and the other language of Part 3 is modified accordingly. Appendix at 126.

Response:

Agrees.

11. For all of the contracts at issue, except for Hutch-Boondock, the calculation of the estimated damages was based upon an anticipated resale of the contract. None of the estimated damages amounts were, however, based upon an actual resale of the contract. Appendix at 14, 20, 24, 29, 33, 38, 43, 47, 52, 57, ,60-61, 66, 70, 76, 79, 85, 89, 97, 101, 108, 113, 118, 126, 127.

Response:

Disagrees. When the respective contracting officers' final decisions were issued, with the exception of the Hutch-Boondock contract, the Forest Service had made no final decision regarding the resale of uncut timber. DA4, 6-8 (Harris Decl. ¶¶ 9, 14, 18, 21). Consequently, the

respective assessments of breach of contract damages assumed no resale of uncut timber. Id; PA12-127. Ultimately, only timber upon the O.D. Ridge, Jersey Horse and Wiggins contracts was resold. DA6-7 (Harris Decl. ¶ 15).

12. The estimated damages for the contracts at issue are as follows:

| Sale | Estimated Damages |
|---|---:|
| O.D. Ridge | $148,845.38 |
| Jersey Horse | $9,035.47 |
| Saginaw-Kennedy | $101,642.20 |
| Brann | $36,888.97 |
| U-Bar | $215,691.04 |
| Monument | $81,477.88 |
| Hutch-Boondock | $2,278.72 |
| Gentry | $92,236.78 |
| Wiggins | $13,016.93 |
| Lily | $66,512.35 |
| Brookbank | $0 |
| Manaco | $0 |

Appendix at 135-136, Defendant's Answer at ¶ 115.

Response:

Agrees.

13. Each of the contracts at issue contains contract clauses CT9.3 – Breach (6/90) and CT9.4 – Failure to Cut (4/82). Appendix at 10.

Response:

Agrees.

14. Clause CT9.3 (6/90) states, in pertinent part, that "damages due the United States for termination under this provision shall be determined pursuant to CT9.4." Appendix at 6.

Response:

Agrees, but notes that the quoted language is not the only "pertinent part" of clause CT9.3.

15. Clause CT9.4 provides that:

> In the event of (a) termination for breach . . . , Forest Service shall appraise remaining Included Timber . . . . Such appraisal shall be made with the standard Forest Service method in use at the time of termination.
>
> Damages due the United States for Purchaser's failure to cut and remove Included Timber meeting Utilization Standards shall be the amount by which Current Contract Value, plus costs described below, less any Effective Purchaser Credit remaining at time of termination, exceeds the resale value at new Bid Rates. If there is no resale, damages due shall be determined by subtracting the value established by said appraisal from the difference between Current Contract Value and unused Effective Purchaser Credit, plus . . . applicable costs.

Appendix at 7.

Response:

Agrees, but notes that Clause CT 9.4 enumerates "applicable costs," which include, among other things, the cost of resale or reoffering. App. 546.

**ADDITIONAL PROPOSED FINDINGS OF UNDISPUTED FACT**

Pursuant to RCFC 56(h)(2), the United States submits the following additional proposed findings of undisputed fact:

16. Each appraisal used in the respective contracting officers' final decisions assessing damages as result of Precision Pine's default was conducted in accordance with the standard Forest Service method in use at the time of termination. DA4, 6-8 (Harris Decl. ¶¶ 9, 14, 18, 21).

17. Each contracting officer final decision assessing damages as a result of Precision Pine's default assessed damages in accordance with contract clause CT9.4. DA2-3, 6-8 (Harris Decl. ¶¶ 7, 13, 17, 20).

18. No timber upon the Brookbank, Saginaw-Kennedy, Brann, U-Bar, Monument; Manaco, Hutch-Boondock, Gentry and Lily has been resold. DA4, 7-8 (Harris Decl. ¶¶ 10, 15, 19, 22). The Forest Service does not plan to resell timber from these contracts. Id..

19. The Forest Service has resold some or all of the remaining timber upon the O.D. Ridge, Jersey Horse and Wiggins contracts. DA6-7 (Harris Decl. ¶ 15).

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Kathryn A. Bleecker

KATHRYN A. BLEECKER
Assistant Director

/s David A. Harrington

OF COUNSEL:

Lori Polin Jones
Patricia L. Disert
Office of General Counsel
U.S. Department of Agriculture
1400 Independence Ave., S.W.
Washington, D.C. 20250

DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 307-0277
(202) 307-0972 (fax)

Attorneys for Defendant

April 26, 2004