**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02-131C |
| | ) | (Judge George W. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**APPENDIX TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Alan I. Saltman
SALTMAN & STEVENS, P.C.
1801 K Street, NW
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiff

Of Counsel:

Richard W. Goeken
David J. Craig
SALTMAN & STEVENS, P.C.
1801 K Street, NW
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Dated: April 26, 2004

# INDEX TO PLAINTIFF'S APPENDIX

**Description** **Pl. App. Page**

Letter dated September 5, 1995 from Lewis Tenney to Clifford Dils re: Forest Service liability for the August 1995 suspension ........ 1

Letter dated September 5, 1995 from Lewis Tenney to Ken Broyles re: Forest Service liability for the August 1995 suspension ........ 2

Letter dated September 6, 1995 from Lewis Tenney to David Harris re: Forest Service liability for the August 1995 suspension ........ 3

Letter dated October 4, 1995 from Lorin Porter to David Harris re: Forest Service liability for damages and refunds owed Precision Pine ........ 4

Letter received by the Forest Service on June 26, 1996 from Lorin Porter to Chip Cartwright and certain contracting officers re: harm caused to Precision Pine and expected compensation ........ 5

Letter dated December 31, 1996 from Lewis Tenney to Ken Broyles re: expected items of compensation ........ 7

Letter dated December 31, 1996 from Lewis Tenney to Eddie Alford re: expected items of compensation ........ 8

Letter dated December 11, 1996 from David Unger to Lorin Porter re: remedies provided by the contracts ........ 9

Letter dated December 13, 1996 from Milo Larson (signed Marlin Johnson) to Forest Supervisors re: consistency of contract administration activities following the lifting of the suspension ........ 10

Letter dated January 24, 1997 from Robert Leaverton to Lewis Tenney re: compensation addressed in December 31, 1996 letter from Precision Pine ........ 12

Letter dated January 30, 1997 from Ken Broyles to Lewis Tenney re: compensation addressed in December 31, 1996 letter from Precision Pine ........ 13

Letter dated February 7, 1997 from Clifford Dils to Lewis Tenney re: compensation addressed in December 31, 1996 letter from Precision Pine ........ 14

Email dated January 14, 1997 from Alan Lucas to C. Dills, B. Leaverton, K. Broyles, D. Harris and M. Johnson re: a consistent response to Precision Pine. ........ 15

Letter dated January 9, 2001 from Eleanor Towns to Lorin Porter re: terminating the contracts at issue ....16

Letter dated January 12, 2001 from Alan Saltman to Eleanor Towns re: cancellation of Precision Pine's timber sales ....18

Letter dated September 17, 2001 from Lorin Porter to Eleanor Towns re: bidding on the resale of contracts and partial payment of money owed on O.D. Ridge....19

Letter dated September 28, 2001 from Alan Saltman to Laurie Tippin re: Forest Service review of Precision Pine for possible suspension or debarment....23

Cover letter enclosing Decision Document and Default Damage Calculations for O.D. Ridge ....31

Page 1 of Decision Document for O.D. Ridge....31A

Calculation sheet for estimated damages for O.D. Ridge ....31B

Letter dated October 12, 2001 from Eleanor Towns to Lorin Porter re: partial payment for O.D. Ridge....32

Letter dated October 27, 2001 from Lorin Porter to Eleanor Towns re: payment of balance on O.D. Ridge, the ruling against the Forest Service on liability, and settlement, with copy of check attached ....34

Letter dated November 16, 2001 from Eleanor Towns to Lorin Porter re: payment of balance on O.D. Ridge and a possible meeting with the agency ....39

"A" clauses from the Monument Multi-product Timber Sale ....40

Declaration of Kennard Williams ....52

Declaration of Lorin Porter....54

Page 1 of Decision Document for Wiggins Multi-Product Sale....61

Decision Document and Default Damage Calculations for Jersey Horse ....62

MCO-691

SEP 12 1995

**PRECISION PINE & TIMBER, INC.**
P.O. BOX 70
HEBER, ARIZONA 85928
(602) 535-9112 • FAX (602) 535-9196

September 5, 1995

Clifford J. Dils
U.S. Department of Agriculture
Forest Service
Tonto National Forests
2324 E. McDowell Road
Phoenix, AZ 95938

Re: Salt Timber Sale-Contract #005937
Manaco Timber Sale-Contract #004625

Dear Mr. Dils:

We are in receipt of your letter of August 25, 1995 suspending our operations on the above referenced sales. As you know, we are a small company that is unfortunately almost totally dependent on federal timber. Accordingly, this suspension, unless promptly lifted, is going to have a devastating effect on our operations to the point of threatening our continued existence.

Please be advised that since we believe that the proximate cause of the suspension is the Forest Service's apparent failure to meet its implied obligation to take all steps necessary to insure that these sales complied with the law, we intend to hold the Forest Service fully liable for any and all damages that we incur as a result of this totally avoidable suspension.

Sincerely yours.

Lewis N. Tenney, Jr.

cc: Saltman & Stevens P.C.

MON 319

# PRECISION PINE & TIMBER, INC.

P.O. BOX 70
HEBER, ARIZONA 85928
(602) 535-9112 • FAX (602) 535-9196

September 5, 1995

Ken Broyles
U.S. Department of Agriculture
Forest Service
Coconino National Forest
2323 E. Greenlaw Lane
Flagstaff, AZ 86004

Re: Barber Multiproduct-Contract #005226
Merritt Multiproduct-Contract #005101
Hutch-Boondock Multiproduct-Contract #005465
Monument Multiproduct-Contract #005556
U-Bar Timber Sale-Contract #005051

Dear Ken:

We are in receipt of your letter of August 28, 1995 suspending our operations on the above referenced sales. As you know, we are a small company that is unfortunately almost totally dependent on federal timber. Accordingly, this suspension, unless promptly lifted, is going to have a devastating effect on our operations to the point of threatening our continued existence.

Please be advised that since we believe that the proximate cause of the suspension is the Forest Service's apparent failure to meet its implied obligation to take all steps necessary to insure that these sales complied with the law, we intend to hold the Forest Service fully liable for any and all damages that we incur as a result of this totally avoidable suspension.

Sincerely yours,

Lewis N Tenney, Jr.

cc: Saltman & Stevens P.C.

Pl. App. 2

MON ____

 S-K 508

PRECISION PINE & TIMBER, INC.
P.O. BOX 70
HEBER, ARIZONA 85928
(602) 535-9112 • FAX (602) 535-9196

September 6, 1995

David P. Harris
Contracting Officer
U.S. Department of Agriculture
Forest Service
Kaibab National Forest
800 S. 6th Street
Williams, AZ 86046

Re: Dog Timber Sale-Contract #006593
Brann Timber Sale-Contract #006577
Saginaw-Kennedy Timber Sale-Contract #006585

Dear Mr. Harris:

We are in receipt of your letter of August 30, 1995 suspending our operations on the above referenced sales. As you know, we are a small company that is unfortunately almost totally dependent on federal timber. Accordingly, this suspension, unless promptly lifted, is going to have a devastating effect on our operations to the point of threatening our continued existence.

Please be advised that since we believe that the proximate cause of the suspension is the Forest Service's apparent failure to meet its implied obligation to take all steps necessary to insure that these sales complied with the law, we intend to hold the Forest Service fully liable for any and all damages that we incur as a result of this totally avoidable suspension.

Sincerely yours,

Lewis N. Tenney, Jr.

cc: Saltman & Stevens

October 4, 1995

Mr. David Harris
Contracting Officer
Kaibab National Forest
800 S. 6th Street
Williams, AZ 86046

Mr. Harris:

In reference to your letter dated October 2, 1995, I find it ironic that you would suggest Precision Pine being in breach of contract. We are required to build specified roads on the Brann Timber Sale and are allowed effective purchaser credit for doing so, yet we are locked out of the woods and unable to cut timber which is rightfully ours according to our contract. Because the work has been done, we have paid our contractor and the money has been gone from our cash flow some 35 to 40 days.

We hold the Forest Service liable, not only for the loss of cash flow (with no timber to cut and no sales to apply the effective purchaser credit), but also for our inability to operate our mills on the timber that is contractually ours to cut. The damages we have incurred due to these curtailments should be yours to bear.

Regardless of the situation or who is at fault, I hereby request that you transfer to the Dog Timber Sale moneys from the down payment refund we have requested from the Brann and Saginaw-Kennedy contracts. These moneys should be applied to Bill for Collection #7001. Also, please refund the effective purchaser credit earned on the Brann Timber Sale in the form of cash. Please include 10% interest for 30 days in the amount of $93.40 plus an administrative charge of $50.

Mr. Harris, we realize this is not personally your fault, but it isn't ours either. However, the Forest Service is ultimately responsible.

Sincerely,

Lorin D. Porter
Precision Pine & Timber, Inc.

 JRH-449

**PRECISION PINE & TIMBER, INC.**

P.O. BOX 70
HEBER, ARIZONA 85928
~~(602) 536-2181~~

Phone: (520) 535-9112 Fax: (520) 535-9196

REC'D USDA
REGIONAL FORESTER'S OFFICE
JUN 26 1996

Mr. Chip Cartwright, Regional Forester
& Contracting Officers of A-S, Coconino,
Kaibab and Tonto National Forests
Region 3
517 Gold Avenue, SW
Albuquerque, NM 87102

Dear Mr. Cartwright & Contracting Officers

This letter will inform you of our situation regarding the contracts we have in force in your region.

We recognize the impact of the injunction put out by Judge Muecke's court, however, this injunction has gone at least six to eight months past a reasonable period of time. Our sawmill in Eagar, Arizona has been shut down since November 1995 and we have three timber sales, Hay, O.D. Ridge and Kettle, that we could have and should have been able to operate on.

Our Heber mill was shut down between September and December of 1995 and will be forced to shut down again as of June 17, 1996. We have four timber sales under contract that should flow to this mill. They are the Brookbank, the Jersey Horse, the Monaco, and the Salt.

Our Winslow mill was shut down between March 12 and April 15, 1996. We have kept this mill running longer because of private and Native American timber we have purchased, but will be forced to close this mill by the end of June. We have under contract the U-Bar, the Saginaw-Kennedy and the Monument Timber Sales.

We actually built the Eagar sawmill (at a cost of around one million dollars) because of the Forest Service Timber Sale contracts we had been able to procure in that area, especially the Hay Timber Sale. We actually bought the Reidhead mill in Show Low so that we could have the timber from the Hay sale. Our projections showed that we would be better off to build a mill in Eagar because of the timber we now had in that area (specifically the Hay T.S.), than to try to transport the logs to our Heber mill. Those projections also showed that our planing operation would be more efficient with two mills feeding it. Since we had the timber under contract we decided to go ahead with the building of the Eagar mill. As your records will show we have not been

JRH-450

able to harvest much volume from the Hay sale specifically r any of the other sales we have under contract with your agency.

Because of curtailments, modifications, injunctions, appeals and other legal or administrative challenges we were also forced to close our Snowflake Planing and Drying facility. This closure occurred May 5, 1995.

We have been forced to jump around from sale to sale, to go out further and pay more for either private or Native American timber in order to maintain any sort of viability in our business.

We have done this so that we could have the ability to fulfill our contractual obligations on the timber sale contracts we have with the Forest Service. These contracts are still in force. We have had to maintain performance bonds, payment bonds and cash deposits on these contracts; therefore we know they are in force and that we will be expected to complete them, and fulfill our obligations or be placed in breach. We have therefore, at great additional cost, and great loss of profitability, tried to maintain our viability so we can fulfill our obligations to your agency.

We submit that we have been unjustly harmed financially because of the breach of your contracts with us, and that we expect to be justly compensated for our lost opportunities, the additional expenses incurred, and other reasonable costs and/or losses associated with not only closures, but the keeping open and viable our mills in order to fulfill our contractual obligations with you.

We do not like to do this, but we have been severely harmed and we see no other way. You will be receiving actual dollar amounts associated with the above mentioned harm.

Sincerely,

Lorin D. Porter
President

cc: Saltman & Stephens, P.C.

RF
DRF-Admin Pat
DRF-Resources
FOR
AS
Coconino
Kaibab
Tonto

Ken Broyles
Contracting Officer
Coconino National Forest
2323 E. Greenlaw Lane
Flagstaff, Az. 86004

12-31-96

Re: (Hutch-Brookbank, Monument, Mud, Saginaw-Kennedy and U-bar timber sales.)

Dear Ken Broyles,

We have received a letter dated December 11, 1996, from the Acting Chief stating among other things that we should contact you with regard to obtaining reimbursement for the substantial costs we incurred as a result of the Forest Service's suspension of the above-referenced sales for nearly a year and a half. As he states, Contracting Officers have the authority to take action, "i.e. pay us for the costs we have incurred.

We believe that among other things we should be compensated for:

-the cost of maintaining our bonds during the suspension;
-interest on our deposits including interest on any effective purchaser credit that we could not transfer because of the suspension;
-the unamortized cost of maintaining our manufacturing facilities and critical personnel:
-the unamortized cost of administration and management;
-idle equipment cost;
-the extra cost we incurred in transferring logs between mills in order to keep them operating for as long as possible;
-increases in the cost of manufacturing the wood; and
-lost market opportunity.

Please advise us as to how soon we can expect compensation for these items.

Sincerely yours,

[signature]

Lewis N. Tenney Jr.

CC: Alan I. Saltman
David G. Unger, Acting Chief
Senator John McCain