**PRECISION PINE & TIMBER, INC.**
P.O. BOX 70
HEBER, ARIZONA 85928
(602) 535-9112 • FAX (602) 535-9196

Eddie Alford
Contracting Officer
Tonto National Forest
2324 E. McDowell Rd. 85006

12-31-96

Re: (Manaco and Salt timber sales)

Dear Eddie Alford,

We have received a letter dated December 11, 1996, from the Acting Chief stating among other things that we should contact you with regard to obtaining reimbursement for the substantial costs we incurred as a result of the Forest Service's suspension of the above-referenced sales for nearly a year and a half. As he states, Contracting Officers have the authority to take action, "i.e. pay us for the costs we have incurred.

We believe that among other things we should be compensated for:

-the cost of maintaining our bonds during the suspension;
-interest on our deposits including interest on any effective purchaser credit that we could not transfer because of the suspension;
-the unamortized cost of maintaining our manufacturing facilities and critical personnel:
-the unamortized cost of administration and management;
-idle equipment cost;
-the extra cost we incurred in transferring logs between mills in order to keep them operating for as long as possible;
-increases in the cost of manufacturing the wood; and
-lost market opportunity.

Please advise us as to how soon we can expect compensation for these items.

Sincerely yours,

Lewis H. Tenney Jr.

CC: Alan I. Saltman
David G. Unger, Acting Chief
Senator John McCain

U-B 1099

United States Department of Agriculture
Forest Service
Washington Office
14th & Independence SW
P.O. Box 96090
Washington, DC 20090-6090

**File Code:** 2450

**Date:** December 11, 1996

Mr. Lorin D. Porter
President, Precision Pine
and Timber, Inc.
Post Office Box 70
Heber, Arizona 85928

Dear Mr. Porter:

Thank your for your October 4, 1996, letter to Senator John McCain concerning the need for financial assistance for your company Precision Pine and Timber, Inc., Heber, Arizona. Senator McCain has forwarded your letter to the USDA Forest Service for consideration and response.

The Forest Service is well aware of the hardships that the long injunction in the Thomas vs. Silver lawsuit has caused to the timber industry. Fortunately, as you are probably aware now, that injunction has recently been lifted.

The timber sale contracts of those sales of yours that have had operations suspended provide for remedies in your situation. You may contact the Contracting Officers to discuss what remedies your specific contracts provide. The Contracting Officers have the authority to take action, as provided in your timber sale contracts.

Thank you again for writing. Stories such as yours dramatically illustrate the effects that have resulted from the environmentalist effort to stop all timber sales.

Sincerely,

/s/ Robert Lynn for
DAVID G. UNGER
Acting Chief

Case 1:02-cv-00131-GWM Document 39-3 Filed 04/26/2004 Page 3 of 10

MUN 398

United States Department of Agriculture | Forest Service | Southwestern Region | 517 Gold Avenue SW. Albuquerque, NM 87102-0084
FAX: (505) 842-3800
V/TTY: (505) 842-3292

**File Code:** 2450 **Date:** December 13, 1996

**Subject:** Timber Sale Contracts and Permits

**To:** Forest Supervisors

On December 4, 1996, U.S. District Court Judge Robert G. Strand signed an order granting the Forest Service motion to declare the required consultation complete in the Silver v. Thomas lawsuit. In addition, it was ordered that the injunction against tree cutting activities on Forest Service lands in Arizona and New Mexico be terminated. This action opens the door for the Forest Service to again issue NEPA decisions on projects involving tree cutting, award timber sale contracts, and allows for operations under existing timber sale contracts to resume.

As a result of the effects of the injunction and before operations under existing timber sale contracts can resume, certain contract administration activities may be required. This memo is to serve as a reminder of these activities and to promote consistency throughout the Region in working with our purchasers as timber sale contract operations start up again.

Before on-the-ground operations on a specific timber sale can resume, it is important that the following activities have taken place, where applicable:

a. That the purchaser is notified in writing that the injunction is lifted and that operations may resume as on-the-ground conditions permit and contract requirements are met.

b. That any temporary reduction in the required downpayment on the contract is returned to the full amount. **(CT4.222)**

c. That the general operating plan required under **CT6.3** - **Plan of Operation**, be updated and approved by the FS.

d. That the purchaser provide an annual operating schedule of anticipated major logging activities, as required in standard provision **BT6.31**.

e. That both purchaser and Forest Service representatives responsible for administration of the contract are verified and named in writing as per **BT6.1**.

f. That the sale traffic control (safety) plan is reviewed and agreed to by the purchaser and the FS, and that all required traffic control devices and warning signs are in place prior to beginning operations. **(CT6.33)**

g. That on all payment units the purchaser is proposing to enter that payment or payment guarantee has been confirmed and a written "Release For Cutting" has been issued. **(BT6.3)**

**Pl. App. 10**

h. It is recommended that a pre-work conference be held with the purchaser to go over the above and other contract requirements and allow for questions to be brought up and discussed.

As a result of the injunction, there may be other contract actions required that do not necessarily have to take place before purchaser's operations begin. The following actions fall into this category and should be acted on where applicable:

a. Contract Term Adjustment (CTA) **(BT8.21)**. Adjust contract termination date by the number of days, during the "Normal Operating Season" specified in the contract, that the purchaser's operations were shut down due to the injunction. Since the FS was aware of the cause for this interruption, a written request from the purchaser is not required to initiate CTA **(FSH 2409.15, 31.1)**. The Contracting Officer should provide written notice to the purchaser of the adjusted contract termination date.

b. Adjust the periodic payment date(s) **(CT4.264#)** by the number of days qualifying for CTA under BT8.21 if Periodic Payment Determination Date(s) had not been reached prior to the injunction.

c. Where road construction remains to be done, purchaser should submit or revise their annual Plan of Operation for Road Construction **(CT6.311)**. Also, adjustment of the road completion date specified in **CT5.101#** may be needed.

d. Under special contract provision **CT6.01 - Interruption or Delay of Operations**, purchasers may submit claims for out-of-pocket expenses incurred as a direct result of the interruption and delay of their operations due to the injunction. The Contracting Officer must respond to all claims following procedures outlined in the Contract Disputes Act.

It is possible that claims will be received for questionable expenses or other alleged damages. Whenever there is a question, you are encouraged to seek advice from the Regional Contract Disputes Act team and our Office of General Counsel (OGC).

The above actions and noted contract references were specific to our 2400-6T timber sale contracts. Similar actions may be needed on 2400-03 timber sale contracts and 2400-4, Forest Products Sale Permits. If you have any questions regarding these actions or any other contract administration activity, contact Alan Lucas at (505) 842-3426.

/s/ Marlin Johnson (for)
MILO J. LARSON
Director of Forestry, Forest Health

cc:
M.Johnson
A.Lucas

**Concur:A.Lucas:12/13/96**
**Concur:A.Benavides:12/13/96**
**CONCURRENCE:A.WILLIAMS:12/13/96**

COPY

United States Department of Agriculture
Forest Service
Apache-Sitgreaves NFs
P.O. Box 640
Springerville, AZ 85938
520 333-4301

Reply To: 2450

Date: January 24, 1997

Lewis N. Tenney, Jr.
Precision Pine & Timber, Inc.
P.O. Box 70
Heber, AZ 85928

Dear Lewis:

We are in receipt of your letter dated December 31, 1996, concerning compensation for the suspension time on the Brookbank, Hay, Kettle, Jersey Horse, and the O.D. Ridge timber sales as a result of the Silver vs. Thomas lawsuit.

I am unsure as to what compensation you are requesting from the content of your letter. Please refer to CT6.01 - Interruption or Delay of Operation clause of the timber sale contract for the types of compensation allowed, and the procedure for requesting specific amounts. I will respond to your request for specific compensation, as per the timber sale contract.

The Hay Timber Sale Contract does not include C6.01, but would certainly qualify for a contract term adjustment for the time period of the suspension. Any additional claims beyond the adjustment will be handled according to C9.2 and C9.21 of the contract.

If you should have any questions concerning this letter, please contact Susan Lee or myself directly.

Sincerely,

Robert J. Leaverton

ROBERT J. LEAVERTON
Contracting Officer

Pl. App. 12

United States Department of Agriculture
Forest Service
Coconino National Forest
2323 E. Greenlaw Lane
Flagstaff, AZ 86004
FAX: (520) 527-3620
V/TTY: (520) 527-3600

U-B 1108

Reply To: 2450

Date: January 30, 1997

Lewis N. Tenney Jr.
Precision Pine & Timber, Inc.
P.O. Box 70
Heber, Arizona 85928

Dear Lewis:

We are in receipt of your letter dated December 31, 1996, concerning compensation for a variety of things related to the suspension time on the Hutch-Brookbank, Monument, Mud, Saginaw-Kennedy, and U-Bar Timber Sale contracts due to the injunction as a result of the Silver vs Thomas lawsuit. The only contracts Precision Pine had on the Coconino during the injunction period were Hutch-Boondock (#005465), Monument (#005564), Mud (#005556), and U-Bar (#005051). We do not have a Hutch-Brookbank, or Saginaw-Kennedy contract with Precision Pine.

I am unsure as to what compensation you are requesting from the content of your letter. Please refer to CT6.01 - Interruption or Delay of Operation clause of the timber sale contracts for the types of compensation allowed. These contracts are subject to the Contract Disputes Act of 1978 (Pub. L. 95-563). Procedures for submitting a written claim seeking, as a legal right, payment of money, adjustment or interpretation of contract terms, or other relief, arising under or relating to these contracts are outlined in special contract provisions CT9.2 - Disputes and CT9.21 - Submission of Claim. Upon receipt of a written claim on an individual contract, I will respond to your specific requests for compensation on each contract, as per the timber sale contract.

If you should have any questions concerning this letter, please contact me directly.

Sincerely,

Ken Broyles
Contracting Officer

cc: Dan Derrick, FSR
Dick Stephens, FSR

United States Department of Agriculture
Forest Service
Payson RD
1009 E. Hwy. 260
Payson, AZ 85541
(520) 474-7900

File Code: 2450

Date: February 7, 1997

Precision Pine and Timber, Inc.
Attention: Lewis N. Tenney, Jr.
P.O. Box 219
Heber, AZ 85928

Dear Mr. Tenney:

We are in receipt of your letter dated December 31, 1996, concerning compensation for a variety of things related to the suspension time on the Salt Timber Sale, Contract No. #005937 and Manaco Timber Sales, Contract No. #004625, as a result of the Silver vs. Thomas lawsuit.

I am unsure as to what compensation you are requesting from the content of your letter. Please refer to CT6.01 - Interruption or Delay of Operation clause of the timber sale contract for the types of compensation allowed. These contracts are subject to the Contract Disputes Act of 1978 (Pub. L. 95-563). Procedures for submitting a written claim seeking, as a legal right, payment of money, adjustment or interpretation of contract terms, or other relief, arising under or relating to this contract are outlined in special contract provisions CT9.2 - Disputes and CT9.21 - Submission of Claim. Upon receipt of a written claim on an individual contract, I will respond to each of your specific requests for compensation, as per the timber sale contract.

I would also like to remind you that all correspondence relating to the above mentioned contracts should be addressed to the Contracting Officer.

Should you have any questions concerning this letter, please contact Cliff Dils, Contracting Officer, at (520) 474-7900.

Sincerely,

Clifford J. Dils

CLIFFORD J. DILS
Contracting Officer

cc:
S.O. - Forestry

MON 35L

MESSAGE SCAN FOR BROYLES,KEN

'o C.DILLS:R03F12D04A
o B.LEAVERTON:R03F01A
To K.BROYLES:R03F04A
To D.HARRIS:R03F07A
CC M.JOHNSON

From: Alan Lucas:R03A
Postmark: Jan 14,97 1:08 PM Delivered: Jan 14,97 1:09 PM
Status: Previously read Urgent
Subject: Forwarded:

---

Comments:
From: Alan Lucas:R03A
Date: Jan 14,97 1:08 PM
For your information, attached is a copy of the Dec. 11, 1996 letter from the acting Chief to Precision Pine regarding remedies for the suspension of contracts in the Silver v. Thomas injunction. This is the letter referred to in Precision Pine's 12/31/96 letter to Contracting Officers, that you may have received. We will want to be consistent across the Region in any response to Precision Pine on this issue. Therefore, I will set up a conference call to discuss this after I have visited with our OGC. I will notify you when this will be. In the meantime, if you have any suggestions or additional information, let me know. -- alan

Previous comments:
From: Rex Baumback:WO
Date: Jan 14,97 2:45 PM
As requested. I apparently neglected to put a cc to the Region.

---------========X======-------

United States Department of Agriculture

Forest Service

Unit Name

517 Gold Avenue, SW
Albuquerque, NM 87102-0084
FAX (505) 842-3800
V/TTY (505) 842-3292

File Code: 2450

Date: JAN - 9 2001

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Mr. Lorin D. Porter, President
Precision Pine & Timber, Inc.
P.O. Box 70
Heber, AZ 85928

Dear Mr. Porter:

By letters from the Contracting Officers on the timber sale contracts noted below, sent between the dates of September 26 and October 2, 2000, you were given final notice that unless you provided adequate bonding for the timber sale contracts indicated, the contracts would terminate on October 25, 2000. You did not provide the requested bonding.

On Thursday, October 26, 2000, I received requests from the Timber Sale Contracting Officers to terminate the referenced contracts for failure to remedy breach pursuant to contract provisions BT9.3 - Breach and CT9.3 - Breach. The breach stems from your failure to provide new bonding satisfactory to the Forest Service when Frontier Insurance Company was removed from the list of acceptable sureties on Government contracts in June of this year. Along with their requests, the Contracting Officers provided information pertinent to the situation, sufficient to form a basis for making a decision.

I have reviewed the information provided to me regarding the failure of Precision Pine & Timber, Inc. to provide payment guaranties or other bonding or surety acceptable to the Forest Service as required by timber sale contract provision BT9.1 - Performance Bond on the following Region 3 timber sales:

| National Forest | Sale Name | Contract Number |
|---|---|---|
| Apache-Sitgreaves: | Gentry Multiproduct | 030104001939 |
| | Wiggins Multiproduct | 030104020012 |
| | Jersey Horse | 030105001756 |
| | Brookbank Multiproduct | 030105001822 |
| | O.D. Ridge | 030106001574 |
| Coconino: | Hutch-Boondock Multiproduct | 030404005465 |
| | Monument Multiproduct | 030404005564 |
| | U-Bar | 030407005051 |
| Gila: | Lily | 030603020140 |

| | | |
|---|---|---|
| Kaibab: | Saginaw-Kennedy<br>Brann | 030701006585<br>030702006577 |
| Tonto: | Manaco | 031204004625 |

Upon review of the material provided, it is apparent that the Contracting Officers have given you ample opportunity to remedy this situation. Not only have you had the time granted under the terms of the contract to rectify the situation, but you were also given more than 50 additional calendar days to comply with the terms of your contracts. In addition, you were presented with the opportunity to unburden yourself of these contracts, without the assessment of damages, through mutual cancellation at our recent settlement discussions. Unfortunately, you chose not to take advantage of this offer, leaving our Contracting Officers no choice but to take action pursuant to the terms of these contracts when you failed to provide adequate bonding or otherwise remedy the breaches by October 25, 2000.

Based upon the failure of Precision Pine & Timber, Inc. to provide surety acceptable to the Forest Service despite having over 3 months to remedy the situation, I conclude that it is appropriate to cancel the above-listed contracts by termination for breach pursuant to special contract provision CT9.3 - Breach and for the Contracting Officers to seek recovery for any damages due the government arising out of the termination of these contracts in accordance with special contract provision CT9.4 - Failure to Cut.

I understand that the Contracting Officers have referred to a cancellation of the contracts as of December 4, 2000. Due to a clerical error, which we have only now discovered, I realize that the appropriate letter canceling all of the contracts may not have been sent.

Therefore, pursuant to 36 CFR § 223.116(b), I hereby cancel the above-listed timber contracts pursuant to contract provisions and regulations regarding cancellation for breach effective Tuesday, January 9, 2000. This decision is final. The Contracting Officers will determine damages due pursuant to CT9.4 - Failure to Cut.

Eleanor S. Towns

ELEANOR S. TOWNS
Regional Forester

Cc:
Frontier Insurance Company
2636 Elm Hill Pike, Suite 500
Nashville, TN 37214