SALTMAN & STEVENS, P.C.

1801 K Street, N.W., Washington, D.C. 20006

(202) 452-2140
Fax: (202) 775-8217
E-mail: asaltman@saltmanandstevens.com

January 12, 2001

Eleanor S. Towns
Regional Forester
United States Forest Service
517 Gold Avenue
Albuquerque, NM 87102

Re: Precision Pine & Timber, Inc. v. United States,
CoFC No. 98-720C

Dear Ms. Towns:

A copy of your letter dated January 9, 2001 putatively cancelling a number of timber sales held by Precision Pine has been forwarded to me. While I realize that you had to do what you thought best in the circumstances, I feel that this action was unfortunate.

Moreover, I was troubled by the fact that you chose to characterize Precision Pine's unwillingness to accept the Forest Service's nuisance value offer to settle a huge breach of contract action against the Forest Service on these very contracts as an "opportunity to unburden yourself of these contracts." Using a similar rationale, Precision Pine could accurately say that the Forest Service precipitated these defaults by failing to propose a realistic resolution of the long-pending breach of contract action. However, Precision Pine will refrain from doing so at this time and will simply await the decision of Judge Damich on the material breach issue.

Perhaps, after that decision is issued and the indication that it will contain as to which party first breached the contracts is known, the parties can again meet to try to resolve the issues that surround these sales.

Sincerely yours,

SALTMAN & STEVENS, P.C.

Alan I. Saltman

AIS/bjr

cc: Precision Pine & Timber, Inc.

**PRECISION PINE & TIMBER, INC.**
P.O. BOX 70 • HEBER, ARIZONA 85928
(520) 535-9112 • FAX (520) 535-9196

September 17, 2001

Eleanor S. Towns
Regional Forester
Southwestern Region
USDA Forest Service
517 Gold Avenue, SW
Albuquerque, NM 87102

Dear Ms. Towns:

I am writing because I believe that we currently have a window of opportunity to move beyond the combative relationship that has existed between Precision Pine and the Forest Service for far too long. Indeed, it is my hope that we can now begin a dialogue about how to restore what was once a mutually beneficial relationship for both of our organizations. As I see it, we currently have two basic options before us:

Our first option is simply to allow inertia to continue us down the path we have been traveling for years, *i.e.*, still more legal proceedings and bad feelings on both sides. In this regard, it is my perception (and I hope that I am wrong) that there are those in Region 3 who have lost the ability to view this situation objectively and who continue to re-fight legal battles they have been consistently losing since at least 1995. If nothing else, two recent court rulings should have sounded the alarm that something has been terribly amiss in Region 3. In the first ruling, issued on March 6, 2001 and which sanctioned the government more than $53,000.00 for its improper conduct during discovery, the Court of Federal Claims found:

> [T]he Forest Service and the Department of Agriculture did not fully cooperate or communicate with the Department of Justice. Miscommunication between Department of Justice counsel and the agencies they defend does, unhappily, occur from time to time. Rarely are the problems that the Court encountered in this case so acute. The year-long delay in rectifying its patently deficient discovery responses inexcusably prejudiced [Precision Pine] by causing it to waste valuable resources in prosecuting this case.

Additionally, and more significantly, on July 30, 2001, the court issued a 52-page opinion which found that the Forest Service had breached 12 of Precision Pine's contracts over which we have been forced to battle in the Court of Federal Claims for several years now. If I am correct that individuals with entrenched views have been driving events in Region 3, I implore you to reject their destructive counsel which has already needlessly prolonged and increased our differences.

As you can probably imagine, I did not get into the timber business for the purpose of engaging in lengthy court battles with the federal government. I would like nothing better than to get back to the work that I love and that Region 3 needs to have performed— which brings me to our second option, something that requires both of us to begin the process of compromise in resolving at least some of our differences. I am not necessarily suggesting settling the pending Court of Federal Claims cases, (although I am not unwilling to discuss doing so). Rather, I want to propose two steps toward a more normal relationship between the Forest Service and Precision Pine.

As you may know, despite the court's ruling that the Forest Service breached most of Precision Pine's contracts in 1995 and 1996, many of the Forests in Region 3 continue to press for damages from Precision Pine on some of these same contracts.[1] Additionally, these Forests are refusing to let Precision Pine bid on the resale of the "defaulted" contracts, claiming that to do so would not be in the public interest. In this regard, the Forest Service is scrupulously choosing to ignore the black letter law that a pre-existing material breach of contract, such as the Court of Federal Claims found the Forest Service committed on our sales, precludes a subsequent finding of default by Precision Pine. Moreover, the alleged defaults were wholly beyond the control of Precision Pine due, in part, to the apparent financial difficulties of the bonding company and the government's decision to delist it.[2]

---

[1]All but two of these "defaults" were premised on the fact that the government removed Precision Pine's bonding company from a list of government approved sureties. Thereafter, Precision Pine was unable to either obtain the return of its premiums or find affordable alternative bonding and the "defaults" ensued.

[2]I note that despite the government's delisting of Precision Pine's bonding company, the Forest Service has continued to make demands for payment from the bonding company for Precision Pine's alleged defaults.

However, regardless of whether or not the Forest Service is acting within the letter of the law by refusing to allow Precision Pine to bid on the resale contracts, the fact is that you retain the ultimate discretion to allow Precision Pine to bid on these sales if you find that it is in "the public interest" to do so. 36 C.F.R. § 223.86; FSH, Timber Sale Preparation § 2409.18 at 56.7. In determining whether or not to allow a purchaser to bid on a resale contract, the Handbook indicates that the Forest Service is to "consider both the circumstances of the original sale and the circumstances of the resale." *See* §2409.18 at 56.72. As noted above, the circumstances of the "default"— *e.g.*, the delisting of Precision Pine's bonding company, the Forest Service's breach of these contracts by suspending them during 1995 and 1996, the subsequent suspension of many of these same sales by the Forest Service in 1997, followed by the 1998 closure of Stone Container (the primary roundwood outlet in the region)— all suggest the "defaults" were caused by factors beyond Precision Pine's control.

Additionally, by permitting Precision Pine to participate in the bidding for the resales, the Forest Service will avoid situations where it receives only one, or at best, only a few bids for the timber. By increasing competition for these resales, not only will the Forest Service maximize the price it receives for this timber, but it will help maintain Precision Pine as a viable contractor for future work to be performed in Region 3. In doing so the Forest Service would be unquestionably acting in the public interest as well as in its own interest and Precision Pine's interest. As you may know, between 1984 when Precision Pine started in business and 1997, Precision Pine completed dozens of contracts and was not once put into default. This shows that when our relationship with the Forest Service is on an even keel, Precision Pine has an exemplary record of performance. Under the circumstances, I request that you use your authority under the regulations to make the determination that allowing Precision Pine to participate in the bidding process on these resale contracts would be in the public interest.[3]

An additional reason sometimes raised by the Forest Service for not letting Precision Pine bid on the resale contracts is that Precision Pine allegedly owes $148,845.38 for timber removed

---

[3]I would ask that in deciding whether to exercise this discretion that you view critically the advice of anyone involved in the initial failure to consult and the subsequent lengthy consultation on the LRMPs in 1995-1996 that the Court found breached Precision Pine's contracts. If this requires that you solicit a more objective view from outside of the Region, then so be it.

from the O.D. Ridge sale. Although Precision Pine has struggled financially in the aftermath of the suspensions, I have personally secured the funds to bring this account current. Toward this end, I have enclosed a certified check in the amount of $50,000.[4] I will pay the remaining balance of the bill (*i.e.*, $98,845.38) within 30 days, if the Forest Service agrees to waive any and all additional claims it may have due to Precision Pine's alleged default for failure to pay this amount, including interest, administrative costs, and penalties. My lawyers tell me that Precision Pine would have been entirely within its rights to refuse to pay the $148, 845.38 and to set-off the government's claim for payment on O.D. Ridge against the funds that we will recover in the Court of Federal Claims litigation, including the funds which we have already been awarded by way of sanctions against the government. Nevertheless, I offer this payment as a reaffirmation of Precision Pine's good faith desire to re-establish its working relationship with the Forest Service.

I look forward to your decision regarding permitting Precision Pine to bid on the "defaulted" sales. Hopefully, our ability to resolve these peripheral matters can lead to the resolution of larger issues.

If you have any questions about this letter, please do not hesitate to give me a call.

Sincerely,

Lorin D. Porter
President
Precision Pine & Timber, Inc.

cc: Dale Bosworth

---

[4]The offer of these funds is in no way prejudicial to Precision Pine's defenses to the payment of this amount including, but not limited to, the fact that Forest Service materially breached the O.D. Ridge contract in 1995.

SALTMAN & STEVENS, P.C.

1801 K Street, N.W., Washington, D.C. 20006

(202) 452-2140
Fax: (202) 775-8217
E-mail: asaltman@saltmanandstevens.com

September 28, 2001

**VIA HAND DELIVERY**

Laurie Tippin
United States Forest Service
Timber Management - 3 SW
201 14th Street, S.W.
Washington, D.C. 20250

Dear Ms. Tippin:

I understand that Precision Pine & Timber, Inc. is being reviewed for possible suspension and/or debarment as a result of its purported "default" of a number of timber sales in Region 3.

While I certainly do not know what information has been forwarded to you, I am concerned that you have been apprized of the applicable law and/or all of the facts.

First, virtually all of the sales which Region 3 has no doubt indicated Precision Pine "defaulted," were, in fact, **never defaulted**. That is, the cause of the "default" was the ostensible failure of Precision Pine to provide a replacement bonding when the company it had been using was removed from the Treasury's list of approved sureties in June of 2000. However, the fact of the matter is that prior to this alleged default the Forest Service had materially breached nearly all of the contacts in question. Moreover, those few contracts not directly breached by the Forest Service were rendered impossible of performance by virtue of the Forest Service's actions.

As you may know, during the 1995 timber harvest season the Forest Service suspended all of Precision Pine's timber sales in the wake of an August 24, 1995 injunction issued against

the Forest Service due to its failure to abide by its obligations under the Endangered Species Act. See Silver v. Babbitt, 924 F. Supp. 976 (D.Ariz. 1995). During the suspension which remained in place until December 4, 1996, operations at Precision Pine's three mills were severely disrupted and all three mills were shut down for a time due to the resulting shortage of raw material.

Subsequent to the suspension, Precision Pine sought compensation from the Forest Service for the breach of its timber sale contracts. The Forest Service denied these claims almost entirely. Thereafter, in 1998 Precision Pine filed suit in the Court of Federal Claims to obtain compensation for the breach of 14 of its contracts. See Precision Pine & Timber, Inc. v. United States, No. 98-720C. At all times Precision Pine believed the suspension of the 14 timber sale contracts between August 24, 1995 and December 4, 1996, was the result of the Forest Service's failure to abide by its environmental obligations and therefore was a material breach of the timber sale contracts. Moreover, on numerous occasions Precision Pine advised the Forest Service that any actions it took with respect to these sales was without prejudice to this belief.

In the course of the litigation in the Court of Federal Claims, the court held that during much of 1999 and into 2000 the government had failed to provide responses to Precision Pine's discovery requests thereby improperly increasing the time and expense to Precision Pine to obtain a resolution of breach of its contract claims. The court also noted that the government's year-long delay in rectifying its patently deficient discovery responses inexcusably prejudiced Precision Pine by causing it to waste valuable resources in prosecuting this case. See Order dated March 6, 2001. As a result of this improper delay of Precision Pine's case, the Court sanctioned the government in the amount of $53,335.33. Id.

Following full briefing, oral argument and supplemental briefing on the parties cross-motions for summary judgment in Case No. 98-720C, on July 30, 2001, the court held that the Forest Service had breached 12 of the 14 timber sale contracts at issue in the case. Precision Pine & Timber, Inc. v. United States, 50 Fed. Cl. 35 (2001), copy attached. On August 13, 2001 the government filed a motion for reconsideration and clarification. On September 25, 2001, the government's motion for reconsideration was denied in toto.[1] Copy enclosed.

The existence of these rulings is critical to the question before you since it is a fundamental principle of law that an owner's material breach of contract, such as existed here, relieves a contractor of its obligation to perform and precludes the termination by the owner for default. See Marathon Oil Co. v. Hollis, 305 S.E. 864 (Ga. 1983); D.E.W. Inc., v. Depco Forms, Inc. 827 SW 2d 379 (Tex. App. 1992 ). See also Restatement (Second) of Contacts § 243 comment a (1979). This rule has been adopted in the Federal Circuit which held in Malone v. United States, 849 F.2d 1441 (Fed. Cir. 1988), that, notwithstanding the presence in the contract of a clause which required the contractor to continue performance pending resolution of any dispute, a material breach provides the contractor with the legal right to void the contract, discharge its duty to perform and relieves it of a default determination and its consequences, citing Brand S Roofing, ASBCA No. 24688, 82-1 BCA ¶15,513.

As stated more recently in Alaska Pulp Corporation v. United States, 48 Fed. Cl. 655, 659 (2001), "[a] material breach terminates the contract, relieving the injured party of its remaining duties of performance" (citing E. Allen Farnsworth, Farnsworth on Contracts § 8.20 (2d ed. 1998); Restatement (Second) of Contracts at § 243 comment a (1981)).

---

[1] The sole remaining item still to be decided by the Court flows from the Government's motion for clarification and involves the question of whether significant hindrance to Precision Pine's operations, (something which the Court had found had occurred) need also be addressed in the damage phase of the case. See Courts )order of Septemeber 25, 2001 at 8.

As the Court of Federal Claims found in its decision of July 30, 2001, in Precision Pine & Timber v. United States, the Forest Service breached 11 timber sale contracts by violating its implied duty not to hinder Precision Pine's performance as a result of the Forest Service's not submitting its Land Resources Management Plans for consultation under § 7 of the Endangered Species Act, 16 U.S.C. § 1531, et seq., upon the Ninth Circuit's decision in Pacific Rivers Council v. Thomas, 30 F.3d 1050 (9th Cir. 1994), until ordered to do so. 50 Fed Cl. at 70. The Court went on to find the resulting suspension of the these 11 sales for 18 months covering the best portion of two operating seasons was not only unreasonable but both "inexplicable" and "particularly egregious" under the circumstances. Id. The Court further found that the Forest Service also breached its implied duty to cooperate on 7 sales (one of which was not also included in the group of 11 noted above) by breaching an express warranty that it had at the time of award to disclose all measures (that were known or should have been known) needed to protect endangered species on the sales. In sum, twelve of the 14 sales at issue were found to have been breached by the Forest Service. (At least one of the two contracts that the court found were not breached was successfully completed and are not, we suspect, included on Region 3's list of "defaulted"sales.)

The Forest Service actions were a material breach of these 12 sales contracts. That is, the breach, which the Court found, related not just to a "matter of vital importance" to the contract as in Alaska Pulp but, in fact, went "to the essence of the contract." Thomas v. H.U.D., 124 F.3d 1439, 1442 (Fed. Cir. 1997), citing 5 Corbin on Contracts § 1104 (1964).

The provisions of the contract that were violated in the instant case involved Precision Pine's right to proceed with the contracts, i.e., something that was certainly within the justifiable expectation of Precision Pine. Indeed, given the fact that each contract provided for completion by a date certain, Precision Pine certainly believed that any impediments to its performance that

were within the purview of the Forest Service to remove either had been removed prior to award or, if arising thereafter, would be removed promptly when they became known. As Judge Baskir stated in Alaska Pulp, "purchasers [of Forest Service timber sales] make long-term commitments **to assure supply of a product . . ."** Alaska Pulp, 124 F.3d at 665. Certainly, Precision Pine made such a commitment. In these sales, Precision Pine was looking for an assured source of raw material to supply its mills. As the court noted in its July 30 decision, the Forest Service was fully aware of this as well. 50 Fed. Cl. at 47, 71. Under the circumstances, Precision Pine was certainly reasonable in believing that once the requirement for consultation arose, the Forest Service would proceed reasonably and that no long interruption of planned operations would result from any Forest Service failure to take prompt and appropriate action. Nevertheless, the suspension precluded Precision Pine from removing any timber from 11 of the sales. Quite clearly, as of the time of the suspension the Forest Service had not rendered substantial performance of these contracts and the suspension made substantial performance unachievable until after the suspension was lifted.

In sum, irrespective of the subsequent ostensible failure of Precision Pine to provide a replacement surety when the one that it was using was removed from the Treasury's list of approved sureties in June of 2000, for the 11 sales which the Forest Service has been found to have materially breached, which remained uncompleted, that material breach of contract relieved Precision of its obligation to perform and precluded the Forest Service's termination of those contracts for default.

With regard to the sales which were not the subject of the Court of Federal Claims litigation, that fact does not mean that the Forest Service was not culpable in their "default" as well. That is, in the aftermath of the seriatim court ordered injunction of Forest Service timber