sale operations in Region 3 in 1995, 1996 and again in 1997[2], the extreme financial repercussions that the resulting suspensions had on Precision Pine as well as the decreasing market for timber products, Precision Pine's long-standing bonding company refused to renew its bonding for Precision Pine's Forest Service timber sales at in 1999 a rate that Precision Pine could afford. In fact, the only surety acceptable to the government that would provide bonding to Precision Pine at anything approaching affordable rates was Frontier Insurance Group, Inc. ("Frontier").

As the litigation in the Court of Federal Claims dragged on, due to the Forest Service's failure to cooperate during discovery, Precision Pine obtained bonding from Frontier for its Forest Service timber sale contracts in 1999, albeit at a considerable premium over the price it had paid for bonding prior to the seriatim injunctions. In addition to providing relatively high-priced bonding, Frontier required payment in cash, in full, at the beginning of the harvest season. The bonding provided by Frontier was accepted by the Forest Service throughout the entire 1999 harvest season. Precision Pine again secured bonding from Frontier for its timber sales by paying for the bonding in cash, in full, prior to the start of the 2000 harvest season. However, as of June, 2000, Frontier was removed by the government from the government's list of acceptable sureties.

In "Notice of Breach" letters issued in June 2000, the Forest Service advised Precision Pine that Frontier was no longer an acceptable surety and demanded that Precision Pine provide a "surety or other security" that would be acceptable to the government within 30 days. Due to the fact that substantial premiums were tied up with Frontier, while other resources had been used up in attempting to get the Forest Service to compensate it for the devastating breaches of

---

[2] In 1997, Forest Service sales in Region 3 were suspended from June 4, to and including December 20 as a result of two injunctive stays issued by the 9th Circuit in Forest Guardians v. Thomas, 967 F. Supp. 1536 (D. Ariz,); aff'd sub nom. Forest Guardians v. Dombeck, 131 F.3d 1309 (9th Cir. 1997).

contract that had occurred earlier, Precision found itself in an impossible position of not being able to secure an approved surety. Rather, all that Precision Pine could do was to hope that the publicized efforts to sell Frontier to another approved surety company would prove successful.

This notwithstanding, the fact remains that but for the Forest Service's intransigence and failure to abide by the rules of discovery in the Court of Federal Claims, the litigation in that Court should have been concluded prior to any problem having arisen with Frontier and/or Precision would have been in a position to have secured a substitute surety if such problems had occurred.

Even if this had not been the case, prior to being terminated for "default", Precision Pine had earned an additional year within which to complete a number of its Forest Service timber sale contracts contract pursuant to clause CT8.212# "Market Related Contract Term Addition." Accordingly, performance was neither required nor could have it been expected by the Forest Service on these sales in 2000. As such, the Forest Service, in a reasonable exercise of discretion in view of the totality of the circumstances, could and should have permitted Precision Pine the additional time so that the potential acquisition of Frontier might occur or for Precision Pine could obtain a refund of its premiums and thus secure alternative bonding that would have been acceptable to the Forest Service. However, in its zeal to place Precision Pine in breach, the Forest Service refused to provide Precision Pine with additional time, and "defaulted" numerous sales.

In conclusion, I respectfully request that you bear the foregoing points in mind while formulating your recommendation regarding any suspension and/or debarment proceeding against Precision Pine and that you include this letter in any material that you pass on to the

suspension/debarring official. Should you have any questions or require any addition information, please do not hesitate to contact me.

Sincerely yours,

SALTMAN & STEVENS, P.C.

Alan I. Saltman

AIS/smg

Enclosures

cc: Precision Pine & Timber, Inc.
Senator Jon Kyl
Senator John McCain
Congressman J.D. Hayworth

United States Department of Agriculture | Forest Service | Apache-Sitgreaves National Forests | P.O. Box 640
Springerville, AZ 85938-0640
(520) 333-4301 Fax: 333-6357
TTY/TDD: (520) 333-6292

**File Code:** 2450
**Date:** March 1, 2001

CERTIFIED MAIL - RRR

Lorin Porter
Precision Pine and Timber, Inc.
P.O. Box 70
Heber, AZ 85928

RE: Brookbank Multi-Product Sale, #001822, Gentry Multi-Product, #001939, Jersey Horse Timber Sale, #001756, O.D. Ridge Timber Sale #001574,Wiggins Multi-Product Sale, #020012.

Dear Lorin:

The above-mentioned timber sales were terminated on January 9, 2001, (for failure to remedy CT 9.3 Breach), by Regional Forester, Eleanor S. Towns. This breach stems from your failure to provide new bonding satisfactory to the Forest Service when Frontier Insurance Company was removed from the list of acceptable sureties on Government contracts in June of 2000.

Enclosed are the estimated Default Damage Calculations, Decision Documents, and Bill for Collection for estimated damages for these sales. Payment is due on March 30, 2001. The O.D. Ridge Timber Sale Bill for Collection includes a bill for volume cut and removed which you have not paid. The Bill for Collection for the Jersey Horse Timber Sale Periodic Payment has been cancelled.

Because you have had the above-mentioned contracts cancelled for breach, your company will be referred to the Debarring or Suspending Official for possible administrative action.

Your bonding company, Frontier Insurance Company will be notified of this pending claim.

Sincerely,

SUSAN N. LEE
Contracting Officer

Enclosures

cc:
Alan Lucas, R.O. - Forestry
Patricia Disert, OGC
Springerville R.D.
Black Mesa R.D.
Frontier Insurance Co
Resources

# DECISION DOCUMENT

PURCHASER AND ADDRESS:

Precision Pine & Timber, Inc
P.O. Box 70
Heber, AZ 85928

1) Preface & Digest:

Decision Number: 3-01-05
Location of Sale:

| | |
|---|---|
| Region | 3 |
| National Forest | Apache-Sitgreaves N.F.'s |
| Ranger District | Springerville |

Sale Information:

| | |
|---|---|
| Purchaser Name: | Precision Pine & Timber, Inc. |
| Contract Date: | August 14, 1992 |
| Contract Number: | 001574 |
| Sale Name: | O.D. Ridge Timber Sale |
| Contract Form: | FS 2400-6T |
| Termination Date: | January 9, 2001 |

2) Claim Summary:

This documents the Contracting Officer's Decision regarding a claim under the Contract Disputes Act by the United States Government against Precision Pine & Timber, Inc. for the sum of **$148,845.38** for its default of the O.D. Ridge Timber Sale, contract number 001574.

3) Government's Claim:

The O.D. Ridge Timber Sale was cancelled by the Regional Forester, Eleanor S. Towns, on January 9, 2001, for failure to remedy breach pursuant to special contract provision

# CALCULATION OF DAMAGES

| A) Calculation of Potential Damages | | VOLUME | VALUE |
|---|---|---|---|
| 1. **Current Contract Value at Termination:** | | | |
| Volume and Contract Value, remaining timber: | | | |
| a. On area not cut over | Sawtimber | 1218 | $ 292,663.18 |
| | Pulpwood | 0 | $ 0.00 |
| b. On area cut over | Sawtimber | 0 | $ 0.00 |
| | Pulpwood | 0 | $ 0.00 |
| TOTAL REMAINING TIMBER | Sawtimber | 991 | $ 292,663.18 |
| | Pulpwood | 0 | $ 0.00 |
| | **Sub-Total:** | | **$ 292,663.18** |
| 2. **Additional Damages:** | | | |
| Liquidated Damages | | | $ 0.00 |
| Cost of Resale | | | $ 11,358.69 |
| Cost of Completing Contractual Requirements | | | $ 0.00 |
| Interest on remaining contract value *** | | | $ 34,119.58 |
| Other Damages— (List) | | | $ |
| | **Sub-Total:** | | $ 45,478.27 |
| 3. **Adjustment for Purchaser Credit:** | | | |
| Less Purchaser Credit that HAS NOT been earned: | | | ($ 0.00 ) |
| 4. **Maximum Potential Damages (A1 + A2 – A3):** | | | **$ 338,141.45** |

**B) Calculation of Resale Value:** (Use the Predicted Bid Value, Line 28, of the appraisal)

| | | |
|---|---|---|
| 1. **Predicted High Bid Appraisal value at termination:** (1218 MBF) | | **$ 455,374.20** |
| Add Remaining Effective Purchaser Credit | | $ 0.00 |
| | **Sub-Total:** | **$ 455,374.20** |
| 2. **Actual Bid Value of Resale:** | | **$( )** |
| 3. **Resale Value:** | | **$ 455,374.20** |

(RESALE VALUE IS THE LARGER OF THE APPRAISAL SUB-TOTAL OR THE ACTUAL BID VALUE OF THE RESALE)

**C) Damages:**

| | |
|---|---|
| 1. Maximum Potential Damages (A4) | $ 338,141.45 |
| 2. Resale Value (B3) | $ 455,374.20 |
| 3. **Damages (C1-C2):** | **$ 0.00** |
| 4. Unobligated Cash on Account | $ 0.00 |
| 5. **Estimated Damages Due Government: Volume Cut, Removed Not paid for** | **$ 148,845.38** |
| 6. **Refund Due Purchaser:** | **$ 0.00** |

Pl. App. 31B

United States Department of Agriculture | Forest Service | R3 Regional Office | 333 Broadway SE
Albuquerque, NM 87102
FAX (505) 842-3800
V/TTY (505) 842-3292

File Code: 2450
Date: October 12, 2001

Lorin D. Porter
President
Precision Pine & Timber, Inc.
P.O. Box 70
Heber, AZ 85928

**CERTIFIED MAIL -**
**RETURN RECEIPT REQUESTED**

Dear Mr. Porter:

Thank you for your letter of September 17, 2001, and your tender of $50,000.00 toward the balance you owe for timber cut and removed on the O.D. Ridge Timber Sale Contract. The check is being forwarded to the lockbox and will be applied to the current balance. Acceptance of this check does not waive the agency's rights to the balance of the debt.

After factoring in the interest and this partial payment, we find the balance due on this account is $116,130.70* as of October 31, 2001.

As we have indicated before, the agency has been and continues to be interested in settlement possibilities with you, and hopes that at some time we will again be able to count Precision Pine among the responsible timber operators in Region 3. That being said, there is no basis upon which the agency can waive the interest on this account; and holding Precision Pine to a lesser standard than we hold all other timber operators would be against public interest.

After receipt of the remaining debt, including the interest thereon, and any information you wish to provide to support the conclusion that it would be in the public's best interest to allow Precision Pine to bid on the re-offered sale, I will reconsider whether, in accordance with 36 CFR §223.86, it would be in the public's best interest to allow Precision Pine to bid on any re-offered sales.

If you have any questions or would like to discuss this matter further, please do not hesitate to give me a call.

Sincerely,

Abel M. Camarena for
ELEANOR S. TOWNS
Regional Forester

Enclosure

cc:
- Chief, USFS
- Patricia Disert, OGC

**Calculation of Amount Owed by Precision Pine & Timber**

| | | |
|---|---|---|
| * | $ 141,520.75 | PRINCIPAL (BILLINGS FOR TIMBER CUT AND REMOVED) |
| + | $ 725.00 | Administrative Fees |
| + | $ 23,884.95 | Interest on: $94,029.87 since 5/27/00 and $54,083.31 since 6/28/00 |
| | ----------------- | |
| | $ 166,130.70 | Total |
| - | $ 50,000.00 | Paid Sept. 17 |
| | $ 116,130.70 | Still due |

**PRECISION PINE & TIMBER, INC.**
P.O. BOX 70 • HEBER, ARIZONA 85928
(520) 535-9112 • FAX (520) 535-9196

October 27, 2001

Eleanor S. Towns
Regional Forester
Southwestern Region
USDA - Forest Service
517 Gold Avenue, SW
Albuquerque, NM 87102

Dear Ms. Towns:

Thank you for your letter dated October 12, 2001 in response to my letter of September 17, 2001. I was generally encouraged by your stated willingness to work with Precision Pine to try to resolve the spectrum of issues that confront us. As further evidence of Precision Pine's continuing good faith desire to resume a more normal relationship with the Forest Service, enclosed please find a check in the amount of $116,130.70 for the balance of stumpage payments plus included interest, penalties and administrative fees claimed by the Forest Service on the O.D. Ridge timber sale.[1]

I was puzzled, however, by your statement that the Forest Service "hopes that at some time we will again be able to count Precision Pine among the responsible timber operators in

[1] I was disappointed that the Forest Service rejected our reasonable suggestion that it waive its claim for interest, penalties, and administrative fees and chose instead to impose more than $24,500 in such costs, which Precision Pine can ill-afford at this time. However, in the spirit of compromise, I have decided to "bite the bullet" and pay the full amount you seek in the hope that the Forest Service might begin to realistically assess the full extent of its liability to Precision Pine.

Region 3." As I think you know, there has never been any question about Precision Pine's desire or ability to perform operations in the woods. Indeed, all but one of Precision Pine's pending "defaults" resulted from the government's decision to remove Precision Pine's bonding company from an approved list of sureties. This was an event entirely out of our control. Additionally, with respect to many of these "defaults," the Court of Federal Claims has already ruled that the Forest Service materially breached these contracts back in 1995 and 1996, a fact which provides us with a virtually impregnable defense to these "defaults."[2]

Wholly apart from the legal issue of who will ultimately bear the liability for the "defaults," there is no serious question that having Precision Pine as a viable timber contractor in Region 3 is in the public interest. In this regard in my letter of September 17, 2001, I summarized many of the reasons I believe that the continued existence of Precision Pine is vital to the accomplishment of the Forest Service management objectives in Region 3. A more elaborate statement of my reasoning can also be found in my letter to you of May 4, 1999 (copy attached). I know that you and members of your staff already understand these reasons well and have publically stated the desire to retain Precision Pine as a viable contractor in Region 3.

---

[2]I note that the Forest Service has improperly seized funds belonging to Precision Pine including deposits, performance guarantees, periodic payments and the like on a number of these "defaulted" sales. The Forest Service's liability to Precision Pine in this regard alone likely more than offsets the amount the Forest Service seeks from Precision Pine with respect to the O.D. Ridge sale. However, in an effort to resolve at least one of the issues between us, I have decided not to offset these funds against the amounts you say that are owed on O.D. Ridge at this time. Of course, Precision Pine continues to expect the Forest Service to return these funds to us, with interest.