AT9-1 **Specified Roads**, applicable to BT5.2

| PROJECT No. | PROJECT NAME | | DESIGN CLASS | APPROXIMATE LENGTH (Miles) | SHEET NUMBERS AND APPROVAL DATE | SURVEY CLASS | PERFORMANCE RESPONSIBILITY SURVEY | DESIGN | CONST. STAKING 1/ |
|---|---|---|---|---|---|---|---|---|---|
| 9359X | Local | Reconst | SL-5 | .61 | | N/A | FS | FS | PUR. BC* |
| 9392C | Local | Reconst | SL-5 | .84 | | N/A | FS | FS | PUR. BC* |
| 9357J | Local | Reconst | SL-5 | .18 | | N/A | FS | FS | PUR. BC* |

* BC = Before Clearing

AT10-1 **Estimated Costs of Specified Roads**, applicable to BT5.24

| PROJECT SEGMENT NUMBER | STATION FROM-TO | SUR-VEY | DESIGN | STAK-ING | CLEAR-ING | EXCA-VATION | CUL-VERTS | BASE COURSE | SUR-FACING | STABIL-IZATION | OTHER | TOTAL | PURCHASER CREDIT LIMIT $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | TOTAL | $ 22,649.28 |

AT11 - Base Course Surface Rock and Rock Riprap, applicable to BT3.257

| 1/ | ROAD NUMBER | STATION FROM - TO | TYPE 2/ | SOURCE, SHOWN ON SALE AREA MAP: MAP KEY NO. | SOURCE, SHOWN ON SALE AREA MAP: LOCATION |
|---|---|---|---|---|---|
| | FOR ROCK TYPES, GRADATIONS, ESTIMATED QUANTITIES AND UNIT COSTS FOR PROJECT SEGEMENTS LISTED IN TABLE AT-9, SEE SCHEDULE OF ITEMS. FOR SOURCE LOCATIONS SEE THE SALE AREA MAP, BORROW AND AGGREGATE MAPS AND SPECIFIED ROAD DRAWINGS | | | | |

| 1/ | ESTIMATED QUANTITIES (STATE UNIT) | ESTIMATED RATES PER UNIT: BASIC ROCK COST 3/ $ | LOAD AND APPLY COST 4/ $ | HAUL COSTS: HAUL COST PER UNIT PER MILE 5/ $ | ESTIMATED AVERAGE HAUL MILES 6/ | HAUL COST 7/ $ | TOTAL COST PER UNIT 8/ $ | TOTAL ESTIMATED COST 9/ $ |
|---|---|---|---|---|---|---|---|---|
| | | | | SEE SCHEDULE OF ITEMS FOR COSTS | | | | |

1/ Letters cross reference lines in two portions of table.
2/ Show, e.g. pit run, screened, crushed, graded,etc.
3/ Including pit developments, crush, screen, stockpile, and purchase price, if any.
4/ Including loading, dumping, spreading, watering, mixing, compacting, loading and dumping delay, etc.
5/ Including required maintenance, resurfacing, and road-use charges.
6/ To nearest 0.1 mile.
7/ Obtain by multiplying Haul Cost Per Unit Per Mile by Estimated Average Haul.
8/ Sum of Basic Rock Cost, Load and Apply Cost, and Haul Cost.
9/ Obtain by multiplying Total Cost Per Unit by Estimated Quantity.

AT12 - Culvert Co... Rates, applicable to BT5.252

| CULVERTS | | | | DRAINAGE ACCESSORIES | | | |
|---|---|---|---|---|---|---|---|
| DIAMETER OR RISE AND SPAN | GAUGE & MATERIAL Al Fe | ESTIMATED COST RATE PER FOOT FURNISH & INSTALL $ | INSTALL ONLY $ | ITEM AND SIZE | GAUGE & MATERIAL Al Fe | ESTIMATED COST PER UNIT FURNISH & INSTALL $ | INSTALL ONLY $ |
| | | NOT | APPLICABLE | | | | |

Material Abbreviation Al - Aluminum; Fe - Galvanized Steel

AT13 - Fire Precautionary Period, applicable to BT7.2
April 1 to November 30 , inclusive 1994 through 1996

AT14 - Purchaser Responsibility to Furnish Crews and Equipment for:
Initial Fire Suppression, applicable to BT7.3
Within 10 road miles

Fire Suppression Reinforcement, applicable to BT7.312 and BT7.313
Within 50 road miles

AT15 - Maximum Amount of Purchaser's Obligation per Operations Fire, applicable to BT7.41
$5,000.00

AT16 - Termination Date, applicable to BT8.2 December 31, 1996.

AT17 - Normal Operating Season, applicable to BT6.31, BT6.65, BT8.21, and BT9.3
April 15 to November 30 , inclusive

AT18 - Performance Bond Amount, applicable to BT9.1
$11,000.00

AT19 - Inapplicable Standard Provisions

The following listed Sections, Subsections or Items of Division BT - Standard Provisions - are hereby made inapplicable. (Instructions: List by reference number and title.)

BT3.21
BT4.221
BT4.224
BT4.226
BT4.23
BT4.4
BT5.211
BT5.251
BT5.252
BT5.253
BT5.254
BT6.24
BT8.23
BT9.2
BT9.4

AT20 - List of Special Provisions

The following listed special provisions are attached to and made a part of this contract as Division CT. Unless listed herein or added by modification pursuant to BT8.23, BT8.3 or BT8.31 no provision of Division CT shall have force or effect. Provisions with reference numbers followed by # contain blanks into which data have been entered for this sale. (Instructions: List by reference number, title and date.)

SEE ATTACHED LIST

MONUMENT MULTIPRODUCT TIMBER SALE
2400-6T DIVISION CT PROVISIONS

| | |
|---|---|
| CT2.351# | Individual Trees (Cut Tree Marking) (11/86) |
| CT3.312 | Rate Redetermination for Environmental Modification (4/82) |
| CT4.12 | Adjustment of Volume (6/81) |
| CT4.211# | Transfer of Purchaser Credit (3/83) |
| CT4.220# | Down Payment (4/94) |
| CT4.221 | Advance Deposits (7/91) |
| CT4.222 | Temporary Reduction of Downpayment (7/93) |
| CT4.224 | Deposit When Payment Guaranteed (6/87) |
| CT4.23 | Refund of Excess Cash (7/91) |
| CT4.264# | Periodic Payment Schedule (10/91) |
| CT4.3 | Letters of Credit for Payment Bond (9/78) |
| CT4.4 | Payment Not Received For Timber Cut and Other Charges (3/93) |
| CT4.41 | Other Payments Not Received (3/93) |
| CT5.101# | Road Completion Date (11/85) |
| CT5.12# | Use of Roads by Purchaser (12/76) |
| CT5.123 | Existing Roads (11/86) |
| CT5.2 | Specifications and Drawings for Construction of Specified Roads (12/89) |
| CT5.211 | Contract Documents (6/80) |
| CT5.221# | Material Sources (5/91) |
| CT5.251# | Variation in Quantities (12/79) |
| CT5.253 | Physical Change (12/79) |
| CT5.254 | Design Change (10/86) |
| CT5.4# | Road Maintenance (2/94) |
| CT5.412# | Required Surface Replacement Deposit (11/83) |
| CT5.46 | Snow Removal (11/86) |
| CT6.0 | Operations (6/90) |
| CT6.01 | Interruption or Delay of Operations (6/90) |
| CT6.1 | Representatives (7/88) |
| CT6.2 | Improvements (6/80) |
| CT6.22 | Protection of Improvements Not Owned by Forest Service (1/80) |
| CT6.221 | Protection of Property (6/80) |
| CT6.222 | Protection of Fences (3/80) |
| CT6.24# | Protection of Cultural Resources (7/90) |
| CT6.241 | Protection of Cultural Resources (11/86) |
| CT6.242 | Cultural Resource Protection (7/87) |
| CT6.25# | Protection of Habitat of Endangered Species (7/86) |
| CT6.3 | Plan of Operation (10/77) |
| CT6.311 | Plan of Operations for Road Construction (6/80) |
| CT6.33 | Safety (6/78) |
| CT6.341 | Prevention of Oil Spills (6/81) |
| CT6.35 | Final Acceptance of Specified Roads (1/80) |
| CT6.351 | Acceptance of Specified Road (6/78) |
| CT6.4# | Conduct of Logging (9/90) |
| CT6.43 | Protection of Public in Recreation Areas (3/75) |

AT-20 ATTACHMENT (CONT.)

MONUMENT MULTIPRODUCT TIMBER SALE
2400-6T DIVISION CT PROVISIONS

| | |
|---|---|
| CT6.6 | Erosion Prevention and Control (8/92) |
| CT6.601# | Erosion Control Seeding (2/87) |
| CT6.602 | Temporary Road and Landing Scarification (11/86) |
| CT6.7# | Slash Treatment (2/94) |
| CT6.8# | Quantity Determination Methods (4/83) |
| CT6.82 | Product Identification (9/90) |
| CT6.84 | Accountability (4/83) |
| CT7.2 | Specific Fire Precautionary Measures (3/91) |
| CT7.21 | Fire Guards (11/75) |
| CT7.22# | Emergency Fire Precautions (3/91) |
| CT7.23 | Communications (5/89) |
| CT8.2 | Termination (6/92) |
| CT8.21 | Delay in Reconstruction of Processing Facilities (6/78) |
| CT8.212# | Market-Related Contract Term Addition (9/91) |
| CT8.23 | Contract Term Extension (7/91) |
| CT8.231 | Conditions for Contract Term Extensions (7/91) |
| CT8.3 | Contract Modification (10/77) |
| CT8.63 | Nondiscrimination in Employment (6/78) |
| CT8.641# | Use of Timber (9/90) |
| CT9.1 | Letter of Credit (6/78) |
| CT9.11 | Failure to Provide Performance Bond (11/85) |
| CT9.2 | Disputes (7/80) |
| CT9.21 | Submission of Claims (4/94) |
| CT9.3 | Breach (6/90) |
| CT9.4 | Failure to Cut (4/82) |
| CT9.41 | Failure to Execute Contract (4/94) |
| CT9.5 | Settlement (10/77) |
| CT9.53 | Settlement (6/92) |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 02-131C (Judge George W. Miller) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

# DECLARATION OF KENNARD WILLIAMS

I, Kennard Williams, declare under penalty of perjury that the following is true and correct:

1. I am the president of North Pacific Timber Enterprises, Inc. ("NPTE"), P.O. Box 247, Chilcooot, CA 96105.

2. NPTE is a small logging company in California that occasionally purchases timber sale contracts from the Forest Service.

3. NPTE has no affiliation with Precision Pine & Timber, Inc., nor has it ever conducted business with Precision Pine & Timber, Inc. To the best of my knowledge, neither I nor any of NPTE's employees or representatives has any personal or business relationship with any employee or representative of Precision Pine & Timber, Inc.

4. On March 17, 1999, NPTE was awarded the Jordon Multi-product Salvage timber sale ("Jordon timber sale"), Contract No. 069288, by the U.S. Forest Service.

5. NPTE secured the contractually required bonding for the Jordon timber sale through Frontier Pacific Insurance Company ("Frontier") on April 16, 1999. The Jordon timber sale was located in the Beckwourth Ranger District, Plumas National Forest, in California.

6. On or about December 11, 2000, the Forest Service suspended operations on the Jordon timber sale because of environmental litigation that affected the sale area. NPTE was conducting harvesting operations on the Jordon timber sale at the time the suspension

was imposed.

7. Frontier was still providing bonding for the Jordon timber sale at the time of the suspension in December, 2000. Moreover, Frontier continued to provide bonding for the Jordon timber sale when the Forest Service lifted the suspension in February of 2001.

8. Sometime in 2002, it was brought to my attention that Frontier had been removed from the Treasury's list of approved sureties in July of 2000.

9. However, at no time during 2000 did NPTE receive notification from the Forest Service that Frontier had been removed from the Treasury's list of approved sureties, nor did the Forest Service request or demand that NPTE seek out a new source of bonding for the Jordon timber sale. NPTE also did not receive such a notification, request or demand at any time during 2001.

Respectfully submitted:

[signature]
Kennard Williams

Date: 4/17/04

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., Plaintiff, v. THE UNITED STATES, Defendant. | ) | No. 02-131C (Judge George W. Miller) |

**DECLARATION OF LORIN D. PORTER**

I, Lorin D. Porter, declare under penalty of perjury that the following is true and correct to the best of my personal knowledge and belief:

1. I am currently, and at all times relevant to this case have been, the President of Precision Pine & Timber, Inc. ("Precision Pine") based in Heber, Arizona.

2. I have 25 years of experience in the forest products industry in the Southwestern United States. I am generally familiar with the standard provisions of the Forest Service's timber sale contracts.

3. Precision Pine has been recognized for Distinguished Professional Forest Resource Management in the Southwest by the Southwest Section of the Society of American Foresters.

4. I co-founded Precision Pine in 1984 in order to obtain timber and to manufacture that timber into lumber products in Precision Pine's sawmills. Precision Pine is a small, privately-owned company that qualifies as a small business for purposes of purchasing federal timber to supply its lumber manufacturing operations. Precision Pine is one of the few lumber manufacturers remaining in its area.

5. In the area of Northeastern Arizona from which Precision Pine obtains raw material, i.e., timber for its sawmill(s), Forest Service is by far the largest holder of timber land and seller of timber. Since its founding, Precision Pine has been dependant on the Forest Service's timber sale program as the primary source of its raw material for its sawmill(s).

6. Through no fault of its own, some or all of Precision Pine's Forest Service timber sale contracts were suspended by the Forest Service, during parts of 1995, 1996 and 1997. The suspensions in each of these years were in place during the fall months, which is an important time period for Precision Pine to have access to its timber sales because the risk of fire closures is lower than in the summer months and Precision Pine typically built log decks at its sawmills at this time in order to have a supply of logs through the winter months. Due to an inability to build such winter log decks and/or to access our timber sales due to the suspensions, we ran out of logs and were forced to shut down one or more of our mills at various times during each of these years.

7. In 1999, our long-time bonding company, Capitol Indemnity Corporation, refused to continue bonding our Forest Service timber sale contracts.