8. The only bonding company I could locate that would bond Precision Pine's Forest Service timber sales was Frontier Insurance Company ("Frontier"), although they required payment of the annual cost in full and in advance. I obtained bonding for Precision Pine's Forest Service timber sale contracts from Frontier in 1999. These bonds were accepted by the Forest Service without incident.

9. For the year 2000, Precision Pine again obtained bonding from Frontier, for which it paid in full, in advance. The Forest Service again accepted this bonding. However, in approximately June of 2000, the Forest Service advised me for the first time that it was no longer willing to accept bonding from Frontier. Due to the financial impact that the Forest Service's *seriatim* suspensions had on Precision Pine, Precision Pine did not have funds readily available to pay for bonding a second time (had it been able to find a company willing to bond our sales). I was also engaged in trying to get the money back from Frontier that I had paid for bonding in 2000. I advised the Forest Service of Precision Pine's difficulties in finding and paying for bonding.

10. During the 1990s, the Forest Service began increasingly to offer multi-product sales, i.e., sales containing both sawlogs and roundwood. As identified in the Forest Service contract, sawlogs consists of trees, the diameter of which at breast height is 9" or greater. Sawlogs, as the term suggests, are suitable for use at a sawmill to produce lumber. Roundwood, which is also referred to as pulpwood, is identified in the Forest Service contract as material measuring less than 9" in diameter at breast height, the primary economic utility of which is in the making of wood pulp for use in a variety of products including paper.

11. Precision Pine has never had a manufacturing facility to make pulp from pulpwood. Precision Pine bid on Forest Service multi-product timber sales on the basis that it would be able to sell the pulpwood from the sale to Stone Container's pulp facility located in Snowflake, Arizona. Precision Pine had relied on the Stone Container pulp facility for years as an outlet for the pulpwood component of its Forest Service multi-product timber sales. These facts were known to the Forest Service at the time it awarded the multi-product sales at issue in this case to Precision Pine.

12. However, in February 1998, Stone Container announced that it was closing its wood pulp facility in Snowflake, Arizona and, therefore, it would no longer be utilizing any pulpwood. All of the sales at issue in this case, except for the Wiggins contract, were awarded to Precision Pine before Stone Container announced that it would no longer be utilizing pulpwood.

13. Prior to 1998, Precision Pine had never been defaulted on any Forest Service contract in more than a decade of operations under dozens of such contracts.

14. Had Precision Pine repudiated the contracts that the Forest Service breached at any time prior to a court ruling that the Forest Service had in fact breached the contracts, it was my belief that the Forest Service, which disputed that it had breached the contracts, would have terminated Precision Pine's contracts for default.

15. In placing Precision Pine in default, the Forest Service would likely have cited contract clause CT9.2 which indicates that pending the resolution of any claim, "the contractor shall proceed diligently with the performance of the contract."

16. Had Precision Pine repudiated and been defaulted on its contracts, it would have resulted in Precision Pine losing virtually its entire portfolio of timber sale contracts, i.e., a supply of raw material for it sawmills(s) that could not have been fully replaced except with other Forest Service timber sales offerings.

17. Had Precision Pine repudiated and been defaulted on its contracts, it was my belief that Precision Pine would have faced suspension or debarment as a bidder on future federal timber sale contracts or, at a minimum, Precision Pine would have no longer been viewed as a responsible bidder, precluding it from purchasing future Forest Service timber offerings, or even from accepting Forest Service timber sales from third parties.

18. Had Precision Pine repudiated and been defaulted on its contracts, it was my belief that the Forest Service would have tried to preclude Precision Pine from bidding on any resale of the defaulted contracts. The Forest Service in fact prevented Precision Pine from bidding on the Forest Service's resale of the Salt and O.D. Ridge contracts.

19. Moreover, the Forest Service also tried to bar Precision Pine from bidding on the resale of the Jersey Horse contract (i.e. the "Jersey Horse II contract") and only relented after Precision Pine filed a bid protest action in this Court. The resale of the Jersey Horse II contract was

conducted on or about November 26, 2001. Precision Pine was declared the high bidder and was awarded the Jersey Horse II contract, which it has continued to operate without incident since that time.

20. Had Precision Pine repudiated and been defaulted on its contracts, and even if it would have been allowed thereafter to bid on future Forest Service timber offerings, it was my belief that Precision Pine would have been required to make substantially increased downpayments on any future contracts. In this regard, the Forest Service in fact required Precision Pine to make such increased downpayments on the Jersey Horse II contract.

21. Absent the ability to obtain Forest Service timber sale contracts, I do not believe that Precision Pine could have survived until this Court ruled in July 2001 that the Forest Service had, in fact, breached its contracts. Accordingly, had Precision Pine repudiated its timber sale contracts during or shortly after the suspension as defendant claims it should have, the Forest Service would now be facing increased damages in the Court of Federal Claims Case No. 98-720C for the total destruction of Precision Pine's business.

22. Additionally, Precision Pine's harvesting of some or all of the remaining timber on some of the contracts that had been breached resulted in cash flow to the Forest Service and the accomplishment of some of the management goals desired by the Forest Service, i.e., the reasons that the contracts were offered in the first place.

23. In light of the foregoing facts, it was my belief that any performance rendered by Precision Pine under the contracts after the material breach was commercially reasonable, benefited the Forest Service and would not prejudice Precision Pine's ability to subsequently treat the contracts as being at an end.

Dated: April 23, 2004

Lorin D. Porter
President
Precision Pine & Timber, Inc.

# DECISION DOCUMENT

PURCHASER AND ADDRESS:

Precision Pine & Timber, Inc
P.O. Box 70
Heber, AZ 85928

1) Preface & Digest:

Decision Number: 3-01-02
Location of Sale:

| | |
|---|---|
| Region | 3 |
| National Forest | Apache-Sitgreaves N.F.'s |
| Ranger District | Black Mesa (formerly Chevelon R.D.) |

Sale Information:

| | |
|---|---|
| Purchaser Name: | Precision Pine & Timber, Inc. |
| Contract Date: | December 2, 1998 |
| Contract Number: | 020012 |
| Sale Name: | Wiggins Multi-Product Sale |
| Contract Form: | FS 2400-6T |
| Termination Date: | January 9, 2001 |

2) Claim Summary:

This documents the Contracting Officer's Decision regarding a claim under the Contract Disputes Act by the United States Government against Precision Pine & Timber, Inc. for the sum of **$13,016.93** for its default of the Wiggins Multi-Product Sale, contract number 020012.

# DECISION DOCUMENT

PURCHASER AND ADDRESS:

Precision Pine & Timber, Inc
P.O. Box 70
Heber, AZ 85928

1) Preface & Digest:

Decision Number: 3-01-03
Location of Sale:

| | |
|---|---|
| Region | 3 |
| National Forest | Apache-Sitgreaves N.F.'s |
| Ranger District | Black Mesa (formerly HeberR.D.) |

Sale Information:

| | |
|---|---|
| Purchaser Name: | Precision Pine & Timber, Inc. |
| Contract Date: | December 13, 1993 |
| Contract Number: | 001756 |
| Sale Name: | Jersey Horse Timber Sale |
| Contract Form: | FS 2400-6T |
| Termination Date: | January 9, 2001 |

2) Claim Summary:

This documents the Contracting Officer's Decision regarding a claim under the Contract Disputes Act by the United States Government against Precision Pine & Timber, Inc. for the sum of **$9,035.47** for its default of the Jersey Horse Timber Sale, contract number 001756.