**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 02-131C<br>(Judge George W. Miller) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Pursuant to Rules of the Court of Federal Claims, Rule 56(h)(2), plaintiff, Precision Pine & Timber Inc., provides this response to defendant's Proposed Findings of Fact.[1]

**DEFENDANT'S PROPOSED FINDING OF FACT NO. 1:**

The United States Forest Service manages approximately 198 million acres of Federal lands in National Forests throughout the United States for multiple purposes. As part of its

[1]Precision Pine notes that the defendant's Proposed Findings of Uncontroverted Fact are supported by, among other things, declarations of four Forest Service employees. Each of these declarations makes reference to certain attached exhibits which are supposedly identifiable by letter designation. However, the copy of the Appendix served on Precision Pine did not contain any lettered designation in the Appendix which corresponded to the exhibits purportedly relied upon by the affiants.

Additionally, many points in the declarations are not made on personal knowledge of the declarant and/or refer to events which occurred at times when the declarant was not the contracting officer. Such declarations are inherently unreliable and are not suitable for establishing the absence of a genuine issue of material fact. See, e.g., Declaration of David P. Harris at ¶¶ 42-58 (declarant was not the CO at the operative time periods and the "facts" sworn to are based solely on declarant's review of files); Declaration of Richard P. Stevens at ¶¶ 1-24 (declarant only served as CO for certain sales from November of 1998, yet opines as to "facts" that occurred years earlier); Declaration of David P. Cummings at ¶¶ 1-20 (declarant only served as CO for one sale from August of 1998, yet opines as to "facts" that occurred years earlier).

management of these lands, the Forest Service plans and conducts timber sales. 16 U.S.C. § 472a(a).

**RESPONSE:**

Plaintiff does not disagree with this Proposed Finding.

**DEFENDANT'S PROPOSED FINDING OF FACT NO. 2:**

This action concerns 12 contracts that Precision Pine bid upon and was awarded between August 1992 and December 1998: (1) the O.D. Ridge timber sale; (2) the Brookbank multi-product sale; (3) the Jersey Horse timber sale; (4) the Saginaw-Kennedy multi-product sale; (5) the Brann multi-product sale; (6) the U-Bar timber sale; (7) the Monument multiproduct sale; (8) the Manaco multi-product sale; (9) the Hutch-Boondock multi-product sale; (10) the Gentry multi-product sale; (11) Wiggins multi-product sale; and the (12) Lily multiproduct sale (the "contracts at issue"). Compl. ¶ 3.

**RESPONSE:**

Plaintiff does not disagree with this Proposed Finding.

**DEFENDANT'S PROPOSED FINDING OF FACT NO. 3:**

Each of the contracts at issue establishes an operating season, requires the purchaser to submit an annual operating schedule, requires the purchaser to meet with the Forest Service prior to commencing harvesting operations to finalize an operating plan, and prescribes harvesting methods to be employed. See generally App. 527-767 (clause BT 6.3 and 6.31).

**RESPONSE:**

Defendant's proposed finding of fact is not supported by the appendix as neither clause BT6.3 or BT6.31 appear to have been reproduced. Moreover, defendant's citation to two hundred and forty unordered and poorly indexed pages of its appendix in support of defendant's proposed findings of fact, which is purportedly contained in two contract clauses, is improper. Should defendant attempt to provide a specific citation or other evidence in support of its contentions in this Proposed Finding, Precision Pine reserves the right to present evidence rebutting it.

**DEFENDANT'S PROPOSED FINDING OF FACT NO. 4:**

Timber is defined by contract as trees larger than 9.0 inches in diameter at breast height ("dbh"). See App. 527-767 (clause AT 1.2 and BT 2.2). Such trees are commonly referred to as "sawtimber." "Roundwood" refers to smaller trees that are between 5.0 and 8.9 inches dbh. See id. Roundwood is sometimes referred to as pulpwood.

**RESPONSE:**

Defendant's Proposed Finding is both incorrect in several respects and also does not appear to be supported by its appendix. Contrary to defendant's assertion, "timber" is not a term defined by the contracts. See, e.g., Defendant's App. at 530-531 (Index to Terms). Pursuant to the terms of the contract, the "Forest Service agrees to sell and permit Purchaser to cut and remove and Purchaser agrees to purchase, cut and remove Included Timber." See, e.g., Pl. App. 40. Included Timber is a term defined under the contract at clause BT2.1. See, e.g., Defendant's App. at 530-532 (Index to Terms, first portion of clause BT2.1).

Moreover, the contract identifies "sawlogs" (not "timber" as asserted by defendant) as trees that are at least 9" in diameter at breast height. See, e.g., Pl. App. at 42 (Contract Clause AT2). As set forth in Mr. Porter's declaration, the term "sawlogs" suggests that such trees are suitable for use in a sawmill to produce lumber. Pl. App. 56 (Declaration of L. Porter at 10).

Once again, defendant's citation to two hundred and forty unordered and poorly indexed pages of its appendix in support of defendant's proposed findings of fact, which is purportedly contained in two contract clauses, is improper. Should defendant attempt to provide a specific citation or other evidence in support of its contentions in this Proposed Finding, Precision Pine reserves the right to present evidence rebutting it.

**DEFENDANT'S PROPOSED FINDING OF FACT NO. 5:**

Contracts where only sawtimber is required to be harvested are designated "timber sale" contracts. See App. 529, 548, 569, 588, 608, 627, 645, 666, 690, 711, 730, 749 (name of contracts). Contracts where both sawtimber and roundwood are required to be harvested are designated "multi-product sale" contracts. See id.

**RESPONSE:**

Plaintiff further notes that, as stated in response to Proposed Finding No. 4, the contract identifies "sawlogs." See, e.g., Pl. App. 42 (Contract Clause AT2).

**DEFENDANT'S PROPOSED FINDING OF FACT NO. 6:**

Each of the contracts at issue requires the purchaser to harvest all timber and, where applicable, roundwood, by the contract's termination date. App. 533, 536, 552, 555, 573, 576, 592, 595, 612, 615, 631, 634, 649, 652, 670, 673, 694, 697, 715, 718, 734, 737, 753, 756 (clause BT 8.2 and 9.4).

**RESPONSE:**

Defendant's citation to BT9.4 is misplaced as this clause had been rendered inapplicable by the inclusion of clause CT9.4 in each of the contracts at issue. See, e.g., Pl. App. 49. See also Defendant's Motion at 12-13, asserting that defendant calculated damages pursuant to CT9.4.

**DEFENDANT'S PROPOSED FINDING OF FACT NO. 7:**

In certain circumstances, the purchaser may request an extension of the contract's termination date. App. 533, 552, 573, 592, 612, 631, 649, 670, 694, 715, 734, 753 (clause BT6.21).

**RESPONSE:**

The pages of the appendix cited by defendant do not contain the contract clause identified in support of the Proposed Finding, nor does it appear that defendant has provided a copy of clause BT6.21 elsewhere in its appendix.

**DEFENDANT'S PROPOSED FINDING OF FACT NO. 8:**

Each of the contracts at issue contain clause BT 9.1, which concerns performance bonds and provides as follows:

> Performance Bond. As a further guarantee of the faithful performance of the provisions of this contract, Purchaser delivers herewith and agrees to maintain a surety bond in the dollar amount stated in AT18. . . . Should the surety on the bond delivered herewith, or any bond delivered hereafter in connection with this contract, become unsatisfactory to Forest Service, Purchaser shall, within 30 calendar days of receipt of demand, furnish a new bond with surety satisfactory to Forest Service.

App. 535, 554, 575, 594, 614, 633, 651, 672, 696, 717, 736, 755.

**RESPONSE:**

Plaintiff does not disagree with this statement.

**DEFENDANT'S PROPOSED FINDING OF FACT NO. 9:**

Pursuant to clause BT 9.1 of the respective contracts, Precision Pine was required to maintain a performance bond or provide other security as a guarantee of performance. Id.

**RESPONSE:**

The terms of the clause speak for themselves.

**DEFENDANT'S PROPOSED FINDING OF FACT NO. 10:**

On August 25, 1995, the Forest Service suspended the O.D. Ridge timber sale, the Brookbank multi-products sale, the Jersey Horse timber sale, the Saginaw-Kennedy multiproducts sale, the Brann multi-product sale, the U-Bar timber sale, the Monument multi-

product sale, the Manaco multi-product sale, and the Hutch-Boondock multi-product sale in order to comply with an injunction entered by the United States District Court for the District of Arizona. The Gentry, Wiggins, and Lily multi-product sales were not suspended. App. 3, 193, 272, 363.

**RESPONSE:**

Precision Pine notes that the contracts identified do not constitute a complete list of Precision Pine's Forest Service timber sale contracts that were suspended and that in fact all of Precision Pine's Forest Service timber sales were suspended by the Forest Service on August 25, 1995. Additionally, the Forest Service's adjudicated failure to comply with its environmental obligations was the cause of the injunction that was entered against it (Silver v. Babbitt, 924 F. Supp. 976 (D.Ariz. 1995), see also Precision Pine & Timber, Inc. v. United States, 50 Fed. Cl. 35 (2001)). The only reason that the Gentry, Wiggins and Lilly multi-product sales were not suspended at that time is that they were not yet under contract; had they been under contract, they too would have been suspended.

**DEFENDANT'S PROPOSED FINDING OF FACT NO. 11:**

The suspension of the Brann and Hutch-Boondock contracts was lifted on October 25, 1995; the suspension of the other suspended contracts was lifted on December 4, 1996. App. 3-4, 7-8, 195-96, 275, 365.

**RESPONSE:**

With respect to sales other than Brann and Hutch-Boondock, the declarations cited do not support defendant's contention. Although the District Court dissolved the injunction on December 4, 1996, the declarants do not state that the Forest Service lifted its suspension of Precision Pine's operations on December 4, 1996, nor has defendant provided other evidence that the suspensions were lifted that day.

**DEFENDANT'S PROPOSED FINDING OF FACT NO. 12:**

This Court has ruled that the suspension of the O.D. Ridge, Brookbank, Jersey Horse, Saginaw-Kennedy, Brann, U-Bar, Monument, and Manaco sales constituted a breach of contract. See Precision Pine & Timber, Inc. v. United States, 50 Fed. Cl. 35 (2001).

**RESPONSE:**

Agreed. This Court also ruled that the Forest Service's suspension had breached the Hay, Salt, Mud, and Kettle contacts.

**DEFENDANT'S PROPOSED FINDING OF FACT NO. 13:**

After the suspension was lifted, Precision Pine chose to continue performance of the respective contracts. See App. 4-10, 196-200, 275-77, 365-72 (and referenced exhibits).

**RESPONSE:**

Precision Pine did not conduct any timber harvest under the Monument contract after the suspension was lifted. Moreover, as demonstrated in Precision Pine's Response Brief, there is at

least a genuine issue of material fact precluding summary judgment in favor of defendant as to whether any performance rendered by Precision Pine on the contracts that had been materially breached by the Forest Service was commercially reasonable, benefited the Forest Service and did not prejudice Precision Pine's ability to subsequently treat the contracts as being at an end.

**DEFENDANT'S PROPOSED FINDING OF FACT NO. 14:**

Precision Pine requested that the Forest Service extend the term of the contracts affected by the suspension to provide additional time to perform. App. 4, 10, 197, 199-200, 273, 366-69.

**RESPONSE:**

The requests referred to would be the best evidence of their contents. Defendant has not included many of the putative requests referred to in the declarations. Moreover, as demonstrated in Precision Pine's Response Brief, there is at least a genuine issue of material fact precluding summary judgment in favor of defendant as to whether any performance rendered by Precision Pine on the contracts that had been materially breached by the Forest Service was commercially reasonable, benefited the Forest Service and did not prejudice Precision Pine's ability to subsequently treat the contracts as being at an end.

**DEFENDANT'S PROPOSED FINDING OF FACT NO. 15:**

Pursuant to Precision Pine's requests, the Forest Service and Precision Pine executed bilateral contract modifications that changed the respective contract termination dates in order to provide additional time for performance. App. 4, 10, 27-31, 67-84, 197, 214, 199-200, 273, 366-69, 390, 399, 412.

**RESPONSE:**

The modifications referred to would be the best evidence of their contents. Defendant has not included many of the putative modifications referred to in the declarations. Moreover, as demonstrated in Precision Pine's Response Brief, there is at least a genuine issue of material fact precluding summary judgment in favor of defendant as to whether any performance rendered by Precision Pine on the contracts that had been materially breached by the Forest Service was commercially reasonable, benefited the Forest Service and did not prejudice Precision Pine's ability to subsequently treat the contracts as being at an end.

**DEFENDANT'S PROPOSED FINDING OF FACT NO. 16:**

Precision Pine maintained performance bonds for the respective contracts from December 1996 through June 2000. App. 2-3, 10, 194-95, 200, 273, 278, 370-72, 433-52. In order to maintain this bonding, Precision Pine secured a new bonding company, Frontier Insurance Company, in 1999. Compl. ¶¶ 9, 11; App. 10, 251-53, 200, 278, 371, 444-52.

**RESPONSE:**

Precision Pine maintained performance bonding on the contracts after June 2000, however, after June 2000 the Forest Service no longer found that bonding acceptable. Moreover, as demonstrated in Precision Pine's Response Brief, there is at least a genuine issue of material fact precluding summary judgment in favor of defendant as to whether any performance rendered by Precision Pine on the contracts that had been materially breached by the Forest Service was commercially reasonable, benefited the Forest Service and did not prejudice Precision Pine's ability to subsequently treat the contracts as being at an end.

**DEFENDANT'S PROPOSED FINDING OF FACT NO. 17:**

Precision Pine obtained and paid for payment bonds on various contracts at various times after December 1996, so that it could conduct timber harvesting operations. App. 5, 7, 9, 198, 223-25, 274, 369-70, 413-32.

**RESPONSE:**

Many of the documents cited do not appear to support defendant's contention. For example: The declaration at pages 5, 7, and 9 of the appendix refers to letters of credit and performance bonding, not payment bonding as asserted by defendant; the documents at pages 223 and 224 are a rider and a power of attorney from 1993; the declaration at page 274 refers to a letter of credit issued in 1995; the documents at pages 413-420 were issued and appear to have expired before December 1996. Moreover, as demonstrated in Precision Pine's Response Brief, there is at least a genuine issue of material fact precluding summary judgment in favor of defendant as to whether any performance rendered by Precision Pine on the contracts that had been materially breached by the Forest Service was commercially reasonable, benefited the Forest Service and did not prejudice Precision Pine's ability to subsequently treat the contracts as being at an end.

**DEFENDANT'S PROPOSED FINDING OF FACT NO. 18:**

Precision Pine presented to the Forest Service annual operating schedules stating that it planned to operate the O.D. Ridge, Brookbank, Jersey Horse, Saginaw-Kennedy, Brann, U-Bar, Monument, Manaco and Hutch-Boondock contracts during 1997. App. 4, 6, 8-9, 196-99, 365-68, 378-380, 391-95. In subsequent operating schedules, Precision Pine informed the Forest

Service that it would be operating sale in 1998 and/or 1999. Id.

**RESPONSE:**

The annual operating schedules referred to would be the best evidence of their contents. Such a schedule is not binding on the purchaser, and, as the clause BT6.31 provides, ". . . such schedule shall be subject to modifications necessitated by weather markets or other unpredictable circumstances."

**DEFENDANT'S PROPOSED FINDING OF FACT NO. 19:**

Precision Pine harvested timber from O.D. Ridge, Brookbank, Jersey Horse, Brann, U-Bar and Manaco and Hutch-Boondock sales after the suspension was lifted in December 1996. App. 5-6, 38-40, 196-99, 210-212, 216-22, 232-33, 276-77, 366-69, 381-88, 396-97, 405-411.

**RESPONSE:**

The best evidence of such harvest would be Forest Service Timber Sale Statement of Account other contemporary documents demonstrating such harvest. Other than assertions in the declarations, the documents cited do not appear to support defendant's contention that harvest took place on the Manaco, Jersey Horse or Brookbank sales after December 1996. Moreover, as demonstrated in Precision Pine's Response Brief, there is at least a genuine issue of material fact precluding summary judgment in favor of defendant as to whether any performance rendered by Precision Pine on the contracts that had been materially breached by the Forest Service was commercially reasonable, benefited the Forest Service and did not prejudice Precision Pine's ability to subsequently treat the contracts as being at an end.

**DEFENDANT'S PROPOSED FINDING OF FACT NO. 20:**

In 1999, Precision Pine began using Frontier Insurance Company as the surety for performance bonds. Compl. ¶¶ 9, 11, 13; App. 10, 200, 278, 371-72.

**RESPONSE:**

Plaintiff adds that Frontier was the only company Precision Pine could find at that time that would bond its Forest Service timber sales. Pl. App. 56 (Declaration of L. Porter at 8).

**DEFENDANT'S PROPOSED FINDING OF FACT NO. 21:**

On June 6, 2000, the Department of the Treasury removed Frontier from its list of approved sureties. Compl. ¶ 13; 65 Fed. Reg. 35998-02 (June 6, 2000). The Department of the Treasury directed "bond approving officers" to "secure new bonds with acceptable sureties." 65 Fed. Reg. 35998-02 (June 6, 2000).

**RESPONSE:**

Plaintiff does not disagree with this statement.

**DEFENDANT'S PROPOSED FINDING OF FACT NO. 22:**

The Forest Service contracting officers notified Precision Pine that Frontier was no longer an acceptable surety and, pursuant to clause BT 9.1, directed Precision Pine to obtain bonding from an acceptable surety within 30 days. Compl. ¶ 14; App. 10-11, 18-19, 90-94, 162-64, 200-01, 235-36, 278, 329-30, 372, 453-54.

**RESPONSE:**

Plaintiff adds that Precision Pine explained the difficulty it was having in finding replacement bonding, that it had sought reimbursement of its bonding from Frontier and sought additional time within which to find bonding acceptable to the Forest Service. Pl. App. 56 (Declaration of L. Porter at 9), Defendant's App. at 10-11, 18-19, 201-203, 278-280 (Declarations of Harris, Stephens, and Cummings). It also appears that at or about the same time the Forest Service was not, however, requiring other companies to replace bonds for de-listed sureties. See, e.g., Pl. App. 52-53 (Declaration of K. Williams).

**DEFENDANT'S PROPOSED FINDING OF FACT NO. 23:**

Precision Pine did not obtain a replacement bond from an acceptable surety as required. See Compl. ¶ 15; App. 11, 19, 201, 278-79, 373.

**RESPONSE:**

Plaintiff adds that Precision Pine explained the difficulty it was having in finding replacement bonding, that it had sought reimbursement of its bonding from Frontier and sought additional time within which to find bonding acceptable to the Forest Service. Pl. App. 56 (Declaration of L. Porter at 9), Defendant's App. at 10-11, 18-19, 201-203, 278-280 (Declarations of Harris, Stephens, and Cummings). It also appears that at or about the same time the Forest Service was not, however, requiring other companies to replace bonds for de-listed sureties. See, e.g., Pl. App. 52-53 (Declaration of K. Williams).

**DEFENDANT'S PROPOSED FINDING OF FACT NO. 24:**

In July 2000, Forest Service contracting officers advised Precision Pine that its failure to provide replacement performance bonding constituted a breach of contract. App. 11-12, 19-20, 96-98, 168-70, 201-02, 238-43, 279, 333-34, 373, 455-56. Precision Pine was told how to cure its breach of contract, was offered the opportunity to cure its breach, and was informed that a failure to cure its breach would result in the termination of its timber sale contracts. Id.

**RESPONSE:**

Plaintiff adds that Precision Pine explained the difficulty it was having in finding replacement bonding, that it had sought reimbursement of its bonding from Frontier and sought additional time within which to find bonding acceptable to the Forest Service. Pl. App. 56 (Declaration of L. Porter at 9), Defendant's App. at 10-11, 18-19, 201-203, 278-280 (Declarations of Harris, Stephens, and Cummings). It also appears that at or about the same time the Forest Service was not, however, requiring other companies to replace bonds for de-listed sureties. See, e.g., Pl. App. 52-53 (Declaration of K. Williams).

**DEFENDANT'S PROPOSED FINDING OF FACT NO. 25:**

In September 2000, Forest Service contracting officers again advised Precision Pine that its failure to provide replacement performance bonding constituted a breach of contract. App.13-14, 20-21, 107-08, 172-73, 203-04, 251-52, 280-81, 341-42, 373, 457-59. Once again, Precision Pine was told how to cure its breach of contract, was offered the opportunity to cure its breach, and was warned that a failure to cure its breach would result in the termination of its timber sale contracts. Id.

**RESPONSE:**

Plaintiff adds that Precision Pine explained the difficulty it was having in finding replacement bonding, that it had sought reimbursement of its bonding from Frontier and sought additional time within which to find bonding acceptable to the Forest Service. Pl. App. 56 (Declaration of L. Porter at 9), Defendant's App. at 10-11, 18-19, 201-203, 278-280 (Declarations of Harris, Stephens, and Cummings). It also appears that at or about the same time the Forest Service was not, however, requiring other companies to replace bonds for de-listed sureties. See, e.g., Pl. App. 52-53 (Declaration of K. Williams).

**DEFENDANT'S PROPOSED FINDING OF FACT NO. 26:**

Despite these warnings, Precision Pine did not obtain replacement bonds from an approved surety or provide any other security to guarantee the performance of the contracts at issue. Compl. ¶ 15; App. 14, 22, 204-05, 281-82, 374-75.

**RESPONSE:**

Plaintiff adds that Precision Pine explained the difficulty it was having in finding replacement bonding, that it had sought reimbursement of its bonding from Frontier and sought additional time within which to find bonding acceptable to the Forest Service. Pl. App. 56 (Declaration of L. Porter at 9), Defendant's App. at 10-11, 18-19, 201-203, 278-280 (Declarations of Harris, Stephens, and Cummings). It also appears that at or about the same time the Forest Service was not, however, requiring other companies to replace bonds for de-listed sureties. See, e.g., Pl. App. 52-53 (Declaration of K. Williams).

**DEFENDANT'S PROPOSED FINDING OF FACT NO. 27:**

By letter dated January 9, 2001, the Forest Service Regional Forester terminated the contracts at issue for default. App. 15, 22-23, 117-19, 205, 282, 375. The effective date of the contract terminations was January 9, 2001. Id.

**RESPONSE:**

As demonstrated in Precision Pine's Response Brief, there is at least a genuine issue of material fact precluding summary judgment in favor of defendant as to whether the Forest Service's prior material breach relieved Precision Pine of liability for the putative terminations.

**DEFENDANT'S PROPOSED FINDING OF FACT NO. 28:**

Other than Precision Pine, the only contractor operating timber sales in Region 3 as of June 6, 2000 that was bonded by Frontier Insurance Company was Stone Container Corporation, and Stone Container was required to secure new bonding when Frontier's insolvency caused Frontier to be removed from the Government's list of acceptable sureties. App. 527-28.

**RESPONSE:**

The pages of the appendix cited do not demonstrate that: 1) Stone Container Corporation was the only other contractor operating timber sales in Region 3 as of June 6, 2000 that was bonded by Frontier; 2) that Stone was required to obtain new bonding, that Stone actually did obtain new bonding; or 3) that "Frontier's insolvency" was the reason that Frontier was removed from the Government's list of acceptable sureties.

**DEFENDANT'S PROPOSED FINDING OF FACT NO. 29:**

During February and March 2001, Forest Service contracting officers issued final decisions assessing damages for Precision Pine's breaches of the contracts at issue as follows: (a) O.D. Ridge – $148,845.38; (b) Brookbank – $0.00; (c) Jersey Horse – $9,035.47; (d) Saginaw-Kennedy – $101,642.20; (e) Brann – $36,888.97; (f) U-Bar – $215,691.04; (g) Monument – $81,477.88; (h) Manaco – $0.00; (i) Hutch-Boondock – $2,278.72; (j) Gentry – $92,236.78; (k) Wiggins – $13,016.93; (l) Lily – $66,512.35. App. 15, 23, 120-144, 181-92, 205-06, 262-71, 375-76, 468-526.

**RESPONSE:**

The putative final decisions speak for themselves. Moreover, as demonstrated in Precision Pine's Motion to Dismiss or in the Alternative for Summary Judgment, the putative final decisions were not valid. Additionally, as demonstrated in Precision Pine's Response Brief, with respect to the O.D. Ridge timber sale, the amount sought by the government has been paid in full.

**DEFENDANT'S PROPOSED FINDING OF FACT NO. 30:**

These amounts were assessed in accordance with clause CT 9.4 in the respective contracts. App. 15, 23, 120-144, 181-92, 205-06, 262-71, 375-76, 468-526.

**RESPONSE:**

Plaintiff disagrees. As demonstrated in Precision Pine's Motion to Dismiss or in the Alternative for Summary Judgment, the "estimated" amount of damages sought to be recovered

by the Forest Service in its putative final decisions were not determined or assessed in accordance with clause CT9.4.

**DEFENDANT'S PROPOSED FINDING OF FACT NO. 31:**

The price charged for the harvesting of roundwood is established administratively and is included in the prospectus for multi-product sales where the harvesting of roundwood is being required.

**RESPONSE:**

Defendant has proffered no support for its Proposed Finding, accordingly, this fact has not been established. Should defendant decide to provide evidence in support of its contention in this Proposed Finding, Precision Pine reserves the right to present evidence rebutting it.

**DEFENDANT'S PROPOSED FINDING OF FACT NO. 32:**

No provision in any of the contracts at issue requires that the terms of a resale following a breach by the purchaser be identical to the terms of the original sale. See App. 529-767.

**RESPONSE:**

Plaintiff disagrees. Clause CT9.4 allows the Forest Service to resell a contract (or a portion of a contract) which has not been cut. The clause does not authorize the Forest Service to resell a new configuration of that contract or alter the terms of performance on resale.

Moreover, even assuming that the Forest Service had authority to resell a slightly different version of a terminated contract, binding case law requires that the contract not be resold under materially different terms. See, e.g., Axman v. United States, 234 U.S. 36 (1914).

**DEFENDANT'S PROPOSED FINDING OF FACT NO. 33:**

Neither the O.D. Ridge contract nor the Jersey Horse contract were multi-product sales and, consequently, neither contract provided for the sale of roundwood to Precision Pine or the harvest of roundwood by Precision Pine. See App. 529-47, 569-87.

**RESPONSE:**

Plaintiff does not disagree with this Proposed Finding.

Respectfully submitted,

s/ Alan I. Saltman

SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiff

Of Counsel:

Richard W. Goeken
David J. Craig
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Dated: April 26, 2004