**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02-131C |
| | ) | (Judge George W. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S STATEMENT OF INFORMATION NEEDED TO RESPOND TO DEFENDANT'S RECALCULATION OF DAMAGES ON CERTAIN CONTRACTS**

Pursuant to the Court's Order of October 20, 2005, plaintiff submits the following statement with regard to information needed to respond to defendant's recalculation of damages on the Brann, Saginaw-Kennedy, U-Bar, Hutch-Boondock and Lily contracts.

By letter dated October 25, 2005 (copy attached as Ex. 1), plaintiff advised defendant that the appraisal summaries that had been provided to it at the status conference held on October 20th did answer several of the questions that plaintiff had identified regarding how the default damages had been calculated on the five contracts identified at § 1.iv of the Revised Statement of Plaintiff's Position With Respect to the Government's Recalculation of Damages. Plaintiff also advised defendant that the appraisal summaries did not, however, indicate how certain items set forth in the summaries had been derived. As such, plaintiff requested that defendant provide it with the following information:

| How did the Forest Service compute the following items on the appraisal summary: | | | | |
|---|---|---|---|---|
| | Brann | Saginaw-Kennedy | U-Bar | Hutch-Boondock |
| 11. Sale Skid-Yard Cost | x | x | x | x |
| 14. Sale Haul Cost | x | x | x | x |
| 17. Sale Road Maint. Cost | x | x | x | x |
| 20. Sale Slash Cost | x | x | x | x |
| 23. Sale Temp Road Cost | x | x | x | x |
| 25. Quality Adjustment | x | x | x | x |
| 26. Unusual Adjustment | | | x | |

Plaintiff indicated its belief that the most efficient way of obtaining an explanation of these items would be for the Forest Service to provide plaintiff with whatever paperwork it has as to them and then, if necessary, plaintiff would follow-up with an informal session with the one or two Forest Service employees most knowledgeable about the appraisals.

By letter faxed to our office yesterday (copy also attached as Ex. 2), defendant, perhaps predictably, but nevertheless unfortunately, indicated in essence that it will not provide the requested data or make any Forest Service personnel available to facilitate resolution of these issues. Rather, defendant indicated that it will simply provide a declaration.

Accordingly, pursuant to the Order of October 25, 2005, plaintiff advises the Court that it requires the information set out in the matrix above to respond to the government's recalculations relating to those five contracts identified in § 1.iv of its Revised Statement of Position With Respect to the Government's Recalculation of Damages. Not surprisingly, plaintiff does not believe that a declaration is the appropriate means to develop the necessary information fully or expeditiously.

Respectfully submitted,

s/Alan I. Saltman
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiff

Of Counsel:

Richard W. Goeken
Bryan T. Bunting
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Dated: November 3, 2005

***SALTMAN & STEVENS, P.C.***
1801 K Street, N.W., Washington, D.C. 20006

(202) 452-2140
Fax: (202) 775-8217
E-mail: asaltman@saltmanandstevens.com

October 25, 2005

**VIA E-MAIL**

David A. Harrington, Esq.
U.S. Department of Justice
Commercial Litigation Branch
Civil Division
Attn: Classification Unit
1100 L Street, N.W.
8th Floor
Washington, D.C. 20530

Dear David:

This letter will attempt to summarize the points that I brought up in our telephone conversation today. As I indicated, pursuant to the Court's Order of October 20, 2005, we have reviewed the appraisal summaries that you provided us at the status conference earlier that day. That material did answer several of the questions that we had. That is, of the items set forth on pages 9 and 10 of the Revised Statement of Plaintiff's Position with Respect to the Government's Recalculation of Damages, the material which you have provided does indicate:

(a) The Basic Data Period used and the values applicable in that Basic Data Period;

(c) Any adjustments made to Basic Data Period values;

(e) Any Market Value Adjustments made;

(g) Whether the Forest Service applied any rollback to determine the "Predicted High Bid Appraisal value at termination."

The material which you have provided does not, however, include the analysis by which the Forest Service confirmed that values set out in the Base Data Period were the product of bids

**EX. 1**

from competitive areas. Moreover, while the appraisal summaries do indicate that amount that the Forest Service calculated as the costs on each sale for hauling, road maintenance, skidding, slash removal and temporary road construction, they do not indicate how the Forest Service calculated these costs. Likewise, while the appraisal summaries do show the amount of any quality value adjustments that was made, it does not provide the basis for them and the precise means by which the amount of each was calculated. As such, we still need an explanation from the Forest Service about the following items relating to the indicated sales:

| How did the Forest Service compute the following items on the appraisal summary | | | | |
|---|---|---|---|---|
| | Brann | Saginaw-Kennedy | U-Bar | Hutch-Boondock |
| 11. Sale Skid-Yard Cost | x | x | x | x |
| 14. Sale Haul Cost | x | x | x | x |
| 17. Sale Road Maint. Cost | x | x | x | x |
| 20. Sale Slash Cost | x | x | x | x |
| 23. Sale Temp Road Cost | x | x | x | x |
| 25. Quality Adjustment | x | x | x | x |
| 26. Unusual Adjustment | | | x | |

We believe that the most efficient way of obtaining an explanation of these items is by the Forest Service providing whatever paperwork it has as to these items and, if necessary, our

following that up with an informal session with the one or two Forest Service folk most knowledgeable about the appraisals.

At the status conference you recognized the basic correctness of the point that we made on page 8 of the Revised Statement of Plaintiff's Position, i.e., that even if defendant were correct that the computation of a penalty on both principal and interest were appropriate and that interest should be calculated from the date of the initial Bill for Collection, defendant's calculation of penalty is still erroneous. As such, you asked me how plaintiff believes that such a calculation should be done given that the total amount of interest changes daily. Without prejudice to our position that penalty on interest is not recoverable, my thought is that if the Court were to disagree, the way to calculate the total penalty due is (1) to calculate the amount of penalty for each period during which the interest was fixed, (2) to do so based on the principal plus total accrued interest to date as of the mid-point of each such period, and (3) then sum the amount penalty calculated for each period. See the attached sheet.

Lastly, as to the $2,752.54 worth of unused Effective Purchaser Credits remaining on Brookbank, the regulation which you cited at the status conference, 36 C.F.R. § 223.41 does not, as you indicated, preclude the transfer of such credits to pay for damages owing on another sale. Rather, what the provision precludes is the transfer of such credits in "amounts needed to satisfy unfulfilled payment obligations or claims for damages due the United States [on the contract **from which** the Purchaser proposes to make the transfer]." This view not only makes common sense (particularly in comparison to the position that these credits, which after all represent payment for permanent roads built by Precision Pine, simply escheat to the Forest Service) but it is consistent with the Forest Service Manual.

Per contract clause B 4.2 as Purchaser Credit is earned, it is recorded in the Timber Sale account. Indeed, while it can only be used to pay for timber in excess of base rate value, it is treated as a deposit. See, e.g., B 4.222. In this regard, Forest Service Manual § 2456.6 indicates

that transfers of deposits will be permitted under the same conditions as are refunds which per § 2456.5 are allowed, except that "An amount sufficient to cover ['damages result from breach or non-completion of a contract'] must be retained out of deposits that would otherwise be refunded," i.e., retained so as to be applied to damages on the contract from which the deposit is being refunded/transferred.

Such being the case, since the $2,752.54 worth of Purchaser Credits in question is not needed to pay any damages resulting from the non-completion of the Brookbank contract, Precision Pine requests that the Forest Service apply these credits (whether by transfer or other means) to amounts it alleges is owing as a result of Precision Pine's not completing the Gentry timber sale contract. If the Forest Service is unwilling to do so, in the alternative, Precision Pine hereby simply requests that the unused Effective Purchaser Credit on the Brookbank sale be transferred to an active timber sale contract that Precision Pine has on the Apache-Sitgreaves National Forest, more precisely that it be transferred to the Jersey Horse II timber sale contract.

Please review the above points and get back to me so that I can get back to the Court as soon as possible.

Sincerely yours,

SALTMAN & STEVENS, P.C.

*Alan I. Saltman*

Alan I. Saltman

AIS/bjr
Attachment

| 2001 | Length of period | CDA Interest rate(per annum) | CDA Interest rate(per day) | principal | Principal plus accrued interest at the start of the period | interest for full period | interest at mid point of period | interest plus interest accrued as of the mid point of the period | 6% interest at daily rate | Penalty for the period at 6% per anum on interest plus interest accrued as of the mid point of the period | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Feb 21-Jun 30 | 129 | 0.06375 | 0.0002 | $ 25,994.78 | $ 25,994.78 | $ 585.68 | $ 292.84 | $ 26,287.62 | 0.000164 | $ 557.44 | |
| Jul 1 - Dec 31 | 184 | 0.05875 | 0.0002 | | $ 26,580.46 | $ 769.87 | $ 384.94 | $ 26,965.40 | 0.000164 | $ 815.61 | |
| 2002 | | | | | | | | | | | |
| Jan 1- Jun 30 | 181 | 0.055 | 0.0002 | | $ 26,580.46 | $ 708.98 | $ 354.49 | $ 26,934.95 | 0.000164 | $ 801.41 | |
| Jul 1 - Dec 31 | 184 | 0.0525 | 0.0001 | | $ 27,289.44 | $ 687.97 | $ 343.99 | $ 27,633.43 | 0.000164 | $ 835.82 | |
| 2003 | | | | | | | | | | | |
| Jan 1- Jun 30 | 181 | 0.0425 | 0.0001 | | $ 26,580.46 | $ 547.85 | $ 273.92 | $ 26,854.39 | 0.000164 | $ 799.01 | |
| Jul 1 - Dec 31 | 184 | 0.03125 | 9E-05 | | $ 27,128.31 | $ 409.43 | $ 204.71 | $ 27,333.03 | 0.000164 | $ 826.73 | |
| 2004 | | | | | | | | | | | |
| Jan 1- Jun 30 | 182 | 0.04 | 0.0001 | | $ 26,580.46 | $ 517.05 | $ 258.53 | $ 26,838.99 | 0.000164 | $ 802.96 | |
| Jul 1 - Dec 31 | 184 | 0.045 | 0.0001 | | $ 27,097.52 | $ 588.08 | $ 294.04 | $ 27,391.56 | 0.000164 | $ 828.50 | |
| 2005 | | | | | | | | | | | |
| Jan 1- Jun 30 | 181 | 0.0425 | 0.0001 | | $ 26,580.46 | $ 547.85 | $ 273.92 | $ 26,854.39 | 0.000164 | $ 799.01 | |
| Jul 1 - Sep 30 | 92 | 0.045 | 0.0001 | | $ 27,128.31 | $ 294.84 | $ 147.42 | $ 27,275.74 | 0.000164 | $ 412.50 | |
| Total | | | | **$ 25,994.78** | | **$ 5,657.61** | | | | **$ 7,478.99** | **$ 39,131.38** |

**This work sheet is submitted without prejudice to Precision Pine's position that no penalty should be computed on interest and interest should be calculated from the date of the initial Bill for Collection**

U.S. Department of Justice

Civil Division

DMC:KAB:DHarrington
DJ No. 154-02-131

Telephone: (202) 307-0277
Facsimile: (202) 307-0972

*Washington, D.C. 20530*

November 2, 2005

*Via Facsimile & U.S. Mail*

Alan Saltman, Esq.
Saltman & Stevens, P.C.
1801 K Street, N.W.
Washington, D.C. 20006

Re: *Precision Pine & Timber, Inc. v. United States*, Fed. Cl. No. 02-131C (Judge George W. Miller)

Dear Mr. Saltman:

I am writing in response to your October 24, 2005 letter, in which you ask for additional information about the default damages calculations in this action.

Five post-termination appraisal summaries were provided to you on October 20, 2005. In addition to that information, you ask that the following information be provided for the Brann, Saginaw-Kennedy, U-Bar and Hutch-Boondock contracts: (1) "the analysis by which the Forest Service confirmed that values set out in the Base Data Period were the product of bids from competitive areas;" and (2) "the precise means by which" the Forest Service calculated skidding costs, haul costs, road maintenance costs, slash removal costs, temporary road construction costs, a quality adjustment, and any unusual adjustment.

At this juncture, the only issue before the Court is whether the appraisals used as the basis for the default damages calculations were conducted in accordance "with the standard Forest Service method in use at the time of termination." Therefore, the pertinent issue is not how the Forest Service calculated the various line items in the appraisals, but whether calculations were done in accordance with Forest Service procedures.

As an initial matter, it is worth pointing out that each of the appraisals was performed by the Forest Service within a month of the contract's termination. In addition, we are prepared to provide a declaration confirming that the appraisals were conducted in accordance with the Forest Service method in use at the time of termination. However, because the precise parameters of the calculations are both complex and irrelevant, we do not believe it is appropriate or productive to delve further into such matters.

EX. 2

For instance, the quality adjustment is the product of a computer algorithm that takes data such as average dbh and percent clear face and calculates the appropriate factor. It should, therefore, be sufficient to verify that the Forest Service arrived at the quality adjustment factor using this standard method.

Similarly, the rolling quarterly average price for the competitive area (i.e., the base data period values) is determined by Forest Service personnel every three months in the ordinary course of business. No special calculation or determination was done specifically for the terminated contracts. It should, therefore, be sufficient to confirm this fact in a declaration.

Finally, with respect to the U-Bar appraisal, a clarification is in order. This appraisal appears to contain no quality adjustment on line 25, but an "unusual adjustment" on line 26. This is because the U-Bar quality adjustment was inadvertently input on line 26. There should be no unusual adjustment for the U-Bar contract. Significantly, this has no effect upon the appraisal's bottom line – a fact that will be included in the declaration concerning these appraisals.

It is my expectation that supplying a declaration along the lines described above will resolve the remaining issues with respect to the post-termination appraisals.

Very truly yours,

David Harrington

David A. Harrington
Trial Attorney
Commercial Litigation Branch