4. Allow for the risk that timber volumes, sale characteristics, or values may be mis-stated in the appraisal, and

5. Allow for the risk that markets or other economic conditions may change during the period of the contract.

In competitive markets, the roll-back factor normally should be from 10 to 20 percent. The amount of roll-back factor adjustment may be varied to reflect rapidly changing markets or to assure that the ratio of advertised to bid rates remains in the .70 to .85 range (sec. 45.3).

In non-competitive markets, a roll-back factor of from 0 to 5 percent should be used to arrive at the indicated advertised rate. Consistent use of a larger roll-back factor in non-competitive markets would create an incremental reduction in advertised rates for each base period which would result in an unrealistic estimate of fair market value and would not protect the interests of the Government.

45.33 - Responsiveness to Market Changes. Design transaction evidence appraisal systems from a pricing standpoint so that 85 percent of sales volumes advertised during the fiscal year will sell. This design addresses industry's concern that advertised rates may be too high during periods of significant drops in market prices and the Forest Service's concern about keeping advertised rates in pace with bid rates during periods of rapid market increases. Suggested approaches to reflect market change are:

1. Adjust base period price by a lumber or other product index or market indicator. If a reliable overrun factor is available, the index change may be multiplied by an overrun factor to approximate price changes on a log scale basis, which increases the sensitivity of the advertised value for any market change, up or

n. Unless the index is based on stumpage values, using percentage changes in the ex value to reflect market change is usually not appropriate, since it underestimates amount of market change.

2. Shorten the data base period, which would have the effect of using the most cent actual bid information and would be more sensitive to the most recent market anges.

3. For severe market changes, establish a triggering mechanism, perhaps based on a lumber price change from a trade journal, to identify when the roll-back factor should be adjusted.

Lumber price indices are used to adjust contract rates by species or species groups in timber sale contracts that call for stumpage rate adjustment (FSH 2409.15, sec. 42.52). Species indices for Regions 1 through 6 are provided on a monthly basis from the Western Wood Products Association. The Washington Office authorizes indices to enter in contract provision A(AT)5a during contract preparation on a monthly basis. These are the indices used for stumpage rate adjustment, with a lumber price base index established for each species or species group in the contract. These indices are normally the indices for the last month of the previous quarter; however, the current month's indices are authorized when at least two species' indices have changed more than 10 percent from the current level. One of these two indices must be a dimension indices which include: Coast Douglas Fir, Douglas Fir-Larch, White Fir, and White Woods. The latest month's indices may be used to update bid values of timber sales in the base period to the same time period as the base period used in the appraisal.

45.34 - Non-competitive Markets. Competition is a critical feature of a properly designed and effective transaction evidence appraisal system. Bid values from areas where there is little or no competition cannot be considered a fair market value. Therefore, processes to obtain bid values that represent competitive markets are necessary. Suggested processes in non-competitive markets are:

1. Use information from a data base compiled from only those National Forests that experience competitive bidding. For example, define a competitive Forest as a Forest where sales data shows bid premiums are greater than 5 percent of the advertised rate and 60 percent of the volume receives at least a 5 percent bid premium.

2. Use an appraisal data base that includes information from competitive sales from adjacent competitive appraisal zones.

3. Use base data from only competitive sales. The competitive sales may include sales from adjacent appraisal zones.

4. Use another market to establish advertised rates. For example, a trade association lumber index may be used if it is adjusted to reflect logging and manufacturing costs.

45.35 - Negative Value Species and Products. Transaction evidence appraisals cannot estimate the value of deficit species and products because a positive bid value is always required. The total appraised value must always reflect all operating costs and values for a sale, unless downward adjustments in appraised price are limited by base rates. Thus, high-valued species and products must subsidize low-valued species and

products. Use the following procedures when a species or product does not have enough value to cover its production cost:

1. Individual Timber Sales. Estimate the negative value with residual value or other analytical techniques. Use the best data available, but do not spend excessive effort in cost collection or other refined techniques. Delivered values may be estimated based on local knowledge or on a telephone survey. Production costs can be estimated based on equipment rental rates or constructed costs and estimated production rates.

2. Base Period Data. If timber sales in the base period contain species or products with a negative value, the base period timber sale data will need to be adjusted. Estimate the stumpage value of species and products with negative values with residual value or other analytical techniques. Adjust bid values of positive-value species and products upward to reflect the amount of subsidy provided to negative-value species and products, so that the total value of the base period sales remains unchanged. The intent is to develop representative values for those species with positive values for use in individual sale appraisals, while using the procedure in item 1 for individual timber sale appraisal of negatively-valued species. The negative values shown in the base period data should only be used if precision is not necessary, for example for use in economic analysis.

45.36 - Base Period Costs and Coefficients.

1. Weighted Average Analysis. Most transaction evidence appraisal methods use costs and quality differences as sale variables. Use costs or quality factors that are generally applicable to all sales. Compute the costs and quality factors for all sales sold during the base period on a volume weighted average basis. Adjust the base period price by the difference between the zone average base period cost and quality and the actual cost and quality for the sale being appraised. These differences may be either positive or negative. For example, higher than average haul costs for the sale being appraised results in a negative adjustment which reduces the base period price.

2. Regression Analysis. Transaction evidence methods, using regression analysis, use sale quality and market characteristics as appraisal adjustments. The appraisal adjustments that significantly affect bid prices on past sales are determined through the regression analysis. The regression analysis results in an appraisal equation which has: 1) an overall average bid price for the database period (the base period price), 2) coefficients for each statistically significant appraisal adjustment, and 3) an estimate of the variability in the bid prices which is used to determine the roll-back factor. Sales are appraised by multiplying the sale quality and market characteristics of the sale being appraised by the coefficients of the appraisal adjustments to derive the adjustment for the sale. The adjustment, which can be either positive or negative, is added to the base period price to derive the predicted high bid. The predicted high bid is adjusted for contractual costs; such as environmental protection, slash deposits and road maintenance deposits, and temporary developments; and unusual conditions, if the appraiser determines unusual conditions exist and are not accurately captured in the appraisal equation.

45.36a - Stump-to-Truck. Transaction evidence appraisals may require maintaining logging costs and using these costs to establish stumpage values to reflect differences between the sale being appraised and the base period sales. In addition, logging costs

...e needed for timber property values, special appraisals, and planning purposes. ...collection has been approved by the Office of Management and Budget for ...orting the transaction evidence appraisal system (OMB No. 0596-0017).

...np-to-truck and other needed costs should be collected from industry in the most ...ient manner. The purchaser's cost information is not normally subject to audit by ... Forest Service, but purchasers may voluntarily submit cost and related appraisal ...a to regional forest management or fiscal personnel for compilation. Where feasible, ...st collections should be on a shared basis between Regions. Other independent ...urces of costs may be available, such as those from State agencies.

...5.36b - Haul and Road Maintenance. Adjustments may be made for hauling and road ...naintenance if there are significant differences between sale costs.

45.36c - Environmental Protection (Contractual) Costs. Develop costs for use in the appraisal and/or required by provisions of the contract. For required brush disposal and road maintenance deposits, estimate the rates on the basis of Forest Service costs, including overhead, at the time the work is to be performed, and show the costs in the appraisal and contract.

The Granger-Thye Act requires the Forest Service to recover all costs of doing work for others. If the Forest Service undertakes such work, charge rates that cover actual costs. Compute rates by using current Forest Service wage rates, equipment use rates, and applicable overhead assessments. Rates so computed may vary from those used in the timber appraisal.

45.36d - Temporary Development. Coordinate closely with the local engineering staff to develop the cost of temporary roads or other temporary development construction identified in the timber sale contract. Record these construction work cost estimates.

Estimate the costs of all temporary roads, using cost data contained in zone or Regional cost guides and schedules.

6e - Specified Development. See FSM 7700 for Service-wide direction on cedures and methods for developing road cost estimates and requirements for eloping cost estimating guides. Estimate the costs of all specified roads using these cedures, including such purchaser expenses as deposits for actual reconstruction, posits for reconstruction engineering services, and cost share road deposits.

5.4 - Calculation of Contract Rates.

5.41 - Stumpage Rates by Species and Product Groups. For the species and product roups, develop stumpage rates to be specified in the sale advertisement, prospectus, and contract. Timber sale contracts may specify separate stumpage rates by species and, where appropriate, by type of round product. Species and products of similar value may be grouped together at a single stumpage rate.

45.42 - Calculation of Base Rates with Regeneration Costs and Timber Property. The base rate is the lowest rate at which timber is advertised under the authority at 36 CFR 223.61, even though appraisal calculations may indicate lower rates. Base rates are the applicable minimum rates established by the Region, by species; or the minimum deposit to the National Forest Fund of $0.25 per hundred cubic feet (CCF), plus the cost of regeneration made necessary by the sale and timber property; whichever is higher. When necessary to increase minimum rates to cover regeneration costs or timber property, use the minimum rate as the base rate for those species that are deficit and adjust the minimum rates of the positive species upwards in proportion to the amount of their positive value. A table similar to the one shown in exhibit 01 should be developed in the appraisal report.

1. Calculation of Regeneration Costs. To determine base rate regeneration costs, use the costs to reestablish the stand to be harvested, including appropriate overhead costs. Do not include costs of other desirable cultural work, such as thinning or habitat improvement. When calculating base rate regeneration costs, use good judgment to determine the proportion of the cost for stand reestablishment made necessary by a particular sale; for example, when final harvest is made on a stand with recent non-salvage harvest cuts. As a general rule, the essential reforestation timber sale base rate regeneration costs should not exceed the proportion of the remaining timber stand volume to the original estimated timber stand volume. There are no limitations on determining the amount of Knutson-Vandenberg funds needed on the sale area for sale area improvement or planned-for collections.

Where shelter wood cutting or seed-tree cutting are determined to be effective in obtaining natural regeneration, the estimated regeneration costs for such areas should presume that the objective of natural regeneration has a reasonable probability of being achieved. Limit regeneration costs to those necessary for site preparation work and regeneration surveys. If there is risk that natural regeneration may not be achieved, include costs for planting or seeding in the first entry.

2. Calculation of Timber Property Value. If applicable, add timber property value to base rates (FSH 6509.17, sec. 23.23). In order to have a consistent procedure for implementation of the Timber Information Manager system (TIM), do not collect timber property through an associated charge. Timber property value occurs when timber is partially or wholly processed into products either by direct Forest Service expenditures or by expenditures of others (FSM 2469.03;

FSH 2409.18, sec. 47.3). Indicated advertised rates reflect the value of timber property. The maximum amount of timber property value is the amount of increase in indicated advertised rates that is the result of such partial or whole processing prior to sale. The amount of timber property value to include in base rates is the smaller of either: 1) the increase in indicated advertised rates due to the partial or whole processing, or 2) the difference between indicated advertised rates and the base rates that would have been established had there been no timber property value. In other words, timber property can be used to offset deficit values.

## 45.42 - Exhibit 01

### Adjustment Table for Increasing Minimum Rates to Base Rates for Regeneration Costs

| | |
|---|---|
| Sale volume of 10,000 CCF at $0.25 per CCF | $ 2,500 |
| Regeneration cost | 95,000 |
| Timber Property | 0 |
| Regeneration cost, plus timber property, plus $0.25 per CCF | $ 97,500 |

| | Species | | | | |
|---|---|---|---|---|---|
| | A | B | C | D | Totals |
| 1. Volume (CCF) | 4,000 | 1,000 | 2,000 | 3,000 | 10,000 |
| 2. Indicated advertised rate | $24.00 | $-10.50 | $-33.00 | $76.00 | 24.75 |
| 3. Minimum rates | 10.00 | 1.00 | 6.00 | 10.00 | 8.30 |
| 4. Total value of minimum rates | 40,000 | 1,000 | 12,000 | 30,000 | 83,000 |
| 5. Regeneration cost + $0.25 per CCF | | | | | 97,500 |
| 6. Increase needed to minimum rates | | | | | 14,500 |
| 7. Above/below minimum rates/CCF | 14.00 | -11.50 | -39.00 | 66.00 | 16.45 |
| 8. Total deficit | | 11,500 | 78,000 | | 89,500 |
| 9. Total surplus | 56,000 | | | 198,000 | 254,000 |
| 10. Adjustment to base rates 1/ | +3,197 | 0 | 0 | +11,303 | 14,500 |
| 11. Adjustment to base rates per CCF | +0.80 | 0 | 0 | +3.77 | 1.45 |
| 12. Base rates | 10.80 | 1.00 | 6.00 | 13.77 | 9.75 |

1/ Adjustment to increase minimum rates to base rates:

| | |
|---|---|
| Species A (14,500/254,000) x 56,000 | $ +3,197 |
| Species B | $ 0 |
| Species C | $ 0 |
| Species D (14,500/254,000) x 198,000 | $ +11,303 |

45.43 - Adjustment to Eliminate Deficits. Consider a timber sale as deficit when the average indicated advertised rate is lower than the average base rate. If the average indicated advertised rate is higher than the average base rate, but the indicated advertised rates for some species are less than their base rates, use the base rate as the advertised rate for those species and adjust downward the advertised rates of the other species in proportion to the amount of their positive value. A table similar to the one shown in exhibit 01 should be developed in the appraisal report.

## 45.43 - Exhibit 01

### Adjustment Table for Elimination of Deficits

| | Species | | | | |
|---|---|---|---|---|---|
| | A | B | C | D | Totals |
| 1. Volume (CCF) | 4,000 | 1,000 | 2,000 | 3,000 | 10,000 |
| 2. Indicated advertised rate | $24.00 | $-10.50 | $-33.00 | $76.00 | 24.75 |
| 3. Base rates | 10.00 | 1.00 | 6.00 | 10.00 | 8.30 |
| 4. Above/below base rates per CCF | 14.00 | -11.50 | -39,000 | 66.00 | 16.45 |
| 5. Total deficit | | 11,500 | 78,000 | | 89,500 |
| 6. Total surplus | 56,000 | | | 198,000 | 254,000 |
| 7. Adjustment to eliminate deficit 1/ | -19,732 | +11,500 | +78,000 | -69.768 | 0.00 |
| 8. Adjustment per CCF | -4.93 | +11.50 | +39,000 | -23.26 | 0.00 |
| 9. Advertised rates | 19.07 | 1.50 | 6.00 | 52.74 | 24.75 |

1/ Adjustment to eliminate deficit:

| | |
|---|---|
| Species A (89,500/254,000) x 56,000 | $ -19,732 |
| Species B | $ +11,500 |
| Species C | $ +78,000 |
| Species D (89,500/254,000) x 198,000 | $ -69,768 |

45.5 - Appraisal by Comparison. In many instances, especially in connection with small sale, stumpage values may be determined by comparison with stumpage rates which were received by competitive bid on similar sale areas.

In making stumpage appraisals by comparison, it is generally not necessary to compare all elements of costs and returns with those of recent competitive sales. Although any element in an appraisal may vary, the principal variables that affect stumpage value are the quality of timber, the cost of transportation, and the cost of development. The other elements of cost, such as felling, bucking, skidding, loading, sawing, and planning, do not vary much in a general area for similar species, topography, and size of timber. Therefore, compare the costs of the three main variables for the timber appraised with the same variables for timber sold by competitive bid, adjusting stumpage value, as necessary, to reflect the market conditions.

Limit stumpage appraisals by comparison to small and low value sales. Appraisals for trespass cases are usually by comparison. Support each comparative appraisal with a brief discussion of the recommended stumpage rates, setting forth the comparison with other recent sales in the same general area.

45.6 - Standard Rates. Determine standard rates by transaction evidence procedures. If a sale is an unadvertised offering, include an expected bid premium (FSM 2431).

46 - RATE REDETERMINATIONS. Rate redetermination, where included in timber sale contracts, provides for adjustment of stumpage rates. The objective of a rate redetermination is to determine current appraised value as of the effective redetermination date, subject to the provisions of the contract.

46.1 - Special Characteristics of Rate Redetermination Appraisals. Unless the contract specifically provides otherwise, has been previously modified, or is being modified coincidentally with a rate redetermination, base the appraisal on the original contract requirements and appraisal premises. Include in the appraisal, applicable information and experience gained on the specific sale area since the original appraisal or since a previous rate redetermination. Redetermination rates may not be lower than base rates.

Update sale characteristic information used during the original appraisal, such as the average timber size or the proportion of solid rock to common excavation in a road segment.

Make a revised estimate of the total volume to be cut under the contract. This estimate is the sum of the volume cut or scaled to date, plus an estimate of the volume remaining to be cut or scaled. Make a direct estimate of the volume remaining to be cut or scaled, taking into account experience in cut-to-cruise results in the part of the sale where cutting is completed. Do not make the estimate by merely subtracting the volume cut or scaled to date from the original volume estimate.

46.2 - Rate Redetermination Premises. Major changes in logging or milling plants may take place after appraisal and may raise questions as to whether premises in the original appraisal should be maintained in the rate redetermination. Except for premises fixed by contractual agreement, the basis of the rate redetermination must be the current standard appraisal methods and premises applied to currently available data,

and the redetermination must consider investments made by the purchaser before rate redetermination. Some of the more common appraisal premise issues are:

1. Plant Location. Unless there has been a significant change in transportation or marketing conditions, use the plant location chosen for the original appraisal as a premise for the rate redetermination. However, if transportation facilities or marketing conditions have changed sufficiently, a location different from the original plant location premise may be appropriate at the time of rate redetermination. Shift the appraisal premise to the purchaser's plant if that point will develop the highest appraised or advertised rate.

2. Changes in Utilization Standards. Base the rate redetermination on contract utilization standards effective with redetermined rates. Such standards are those in the contract before rate redetermination unless they have been modified when rate redetermination occurs. When the effect of changed utilization standards would be to reduce receipts from remaining timber below the receipts that would have resulted from previous standards, adjust redetermined rates accordingly. For example, if the redetermined rate for a species is at the base rate and merchantability standards are adjusted so that the purchaser is required to remove less volume than was specified under the original contract merchantability specifications, increase the base rates by contract modification to compensate for the volume reduction.

3. Adjustments for Negative Stumpage. If possible, adjust costs and stumpage rates by species to eliminate negative stumpage values due to price shifts between an original appraisal and its rate redetermination.

46.3 - Establishing Redetermined Rates. Except in cases where purchasers execute contract modifications, which indicate knowledge and acceptance of redetermined rates, notify purchasers of the redetermined rates by certified mail, return receipt requested.

46.4 - Rate Redetermination Timing. Complete rate redeterminations and obtain approval 30 days before the redetermination date to provide adequate time for discussion of proposed rates with the purchaser.

46.5 - Rate Redetermination of Sales Originally Appraised Under Residual Value. Redetermine rates for sales originally appraised under the residual value appraisal system by establishing a transaction evidence appraisal (TEA) for the period when the sale was sold. Include the appropriate competition factor. For contract term extensions, appraise the sale using the TEA data in effect 45 days before the effective date of the new rate redetermination. Compare the advertised rates of the TEA rate redetermination with the rates determined from an appraisal of the original sale using TEA methods to establish rates at the time the sale was offered. If the redetermined rates are higher, add the difference to the bid rate. If the redetermined rates are lower, maintain the rates in effect.

46.6 - Types of Rate Redetermination Appraisals.

46.61 - Scheduled Rate Redeterminations. For sales exceeding 7 years duration, the interval between sale award and the first scheduled rate redetermination must be 5 years, plus the period allowed for the advanced construction of roads.

Generally, do not include scheduled rate redeterminations in other contracts unless here are sound reasons, such as:

1. The sale is made on a flat-rate basis at very high or very low market levels.

2. The sale includes unusually costly road construction where terrain and soil conditions are unusual to the area.

3. The sale contains timber whose recovery is uncertain because of species or size characteristics.

4. The sale requires specialized or experimental logging equipment not normally used in the area.

Appraisal variables, with the exception of specified roads, apply to the sale as a whole or to the timber to be cut during the ensuing period, depending upon the requirements specified in the contract. The revised purchaser credit cost estimate for specified roads is the sum of the purchaser credit earned as of the rate redetermination date, plus the revised cost estimate for the remaining specified road work.

If the last report of purchaser credit for specified road construction does not reflect actual construction status as of the rate redetermination date, prepare an updated report to reflect the work completed to that date.

Prepare rate redeterminations using the standard methods for new sale offerings in effect 45 days prior to the time of the rate redetermination. Consider all factors that may affect the timber value at the time of rate redetermination.

46.62 - Catastrophic Damage Rate Redeterminations. Catastrophic damage is defined in the contract. Steps for making rate redeterminations for catastrophic damage areas are as follows:

1. Complete any other rate redetermination that is needed under the contract terms.

2. Determine the timber remaining on the sale area immediately before the catastrophe.

3. Determine the timber volume to be included after the catastrophe in accordance with contract options.

4. Prepare two appraisals, one for the remaining volume before the catastrophe and the other for the remaining volume after the catastrophe, using the same appraisal base data to measure the change in unit value caused by the catastrophe. Use the standard Forest Service appraisal method and data in effect 45 days before the catastrophe.

5. Adjust the bid rate for each species by the change in unit value for each species to arrive at the redetermined rate. If a negative rate adjustment causes any species rate to be negative, adjust the deficit against the remaining positive-value species on the basis of a sale as a whole. Rates may be adjusted to below base rates, but not below $0.25 per hundred cubic feet (CCF). Exhibit 01 shows an example of this procedure.

The contract modification must include a modification of contract provision A(AT) 5, Timber Payment Rates.

46.62 - Exhibit 01

Adjustment for Catastrophic Damage

| | Pine | Fir | Cedar |
|---|---|---|---|
| Remaining volume (CCF) | 1,000 | 1,000 | 1,000 |
| Appraised rate: | | | |
| Before catastrophe | $130.00 | $58.00 | $75.00 |
| After catastrophe | 107.00 | 31.25 | 76.00 |
| Catastrophe-caused difference | -23.00 | -26.75 | +1.00 |
| Rates from contract Division A(AT): | | | |
| Base | 25.00 | 21.00 | 16.00 |
| Advertised | 122.00 | 21.00 | 53.00 |
| Bid Premium | 52.00 | 0.00 | 13.00 |
| Bid | 174.00 | 21.00 | 66.00 |
| Adjustment for catastrophe | -23.00 | -26.75 | +1.00 |
| Indicated redetermined rate | 151.00 | -5.75 | 67.00 |
| Adjustment to remove deficit 1/ | -3.00 | +6.00 | -3.00 |
| Redetermined rate | $148.00 | $0.25 | $64.00 |

1/ Adjustment to eliminate deficit:

| | |
|---|---|
| a. Species deficit per CCF ($5.75 + $0.25) | $ 6.00 |
| b. Total species deficit ($6.00 x 1,000 CCF) | $ 6,000.00 |
| c. Deficit shifted to other species | $-6,000.00 |
| d. Volume of other species | 2,000 CCF |
| e. Shifted deficit per CCF (-$6,000/2,000 CCF) | $ -3.00 |

46.63 - Environmental Modification Rate Redeterminations. When environmental conflicts are recognized after a timber sale has been made, contract modifications going beyond the original intent of the offering may be approved. Redetermine rates as a part of the modification, and adjust stumpage rates if the rate redetermination justifies such changes.

After completing any other rate redeterminations required by the contract terms, make two rate redeterminations: one reflecting conditions before the change and the other reflecting conditions after the change. Base both appraisals upon appraisal procedures and data in use 45 days before the change date and upon the volume remaining to be cut on the effective date. Use the original sale's revised volume estimate as the appraisal volume premise to establish the contract rates in effect immediately preceding the resource or environmental modification. Apply the difference between the two appraised rates as an adjustment to existing contract bid rates (ex. 01). This procedure is the same as a rate redetermination for catastrophic damage, except that rates cannot be set below base rates.

Adjust the bid rate for each species by the change in unit value for each species to arrive at the redetermined rate. If a negative rate adjustment causes any species rate to be below base rates, adjust the deficit against the remaining positive-value species on the basis of a sale as a whole (sec. 45.43, ex. 01). Rates cannot be adjusted to below base rates. Exhibit 01 shows an example of this procedure.

The contract modification must include a modification of contract provision A(AT) 5, Timber Payment Rates.

## 46.63 - Exhibit 01

### Appraisal Adjustment After Environmental Modification 1/

| | Before Modification | After Modification | Species Adjustment |
|---|---|---|---|
| Remaining volume (CCF) | 15,000 | 10,000 | |
| Average Bid Value | $105.00 | $103.00 | |
| Appraisal Variable Adjustment | -30.00 | -34.00 | |
| Quality Adjustment | -35.00 | -34.00 | |
| Market Adjustment | -10.50 | -10.30 | |
| Advertised Rate | 29.50 | 24.70 | -4.80 |

1/ This calculation is done for each species.

46.64 - Contract Extension Rate Redeterminations. If the contract for a sale with a scheduled rate redetermination provision is extended at the request of the purchaser, make a rate redetermination either for the timber on the sale as a whole or for the timber to be cut during the ensuing period, as specified in the contract. For a sale without a scheduled rate redetermination, base the extension rate redetermination on the sale as a whole.

Make the rate redetermination as though the sale were a new sale being originally appraised, using the appraisal method and data in effect 45 days before the effective date. If the weighted average redetermined rates, plus the weighted average bid premium rates on the volume remaining are greater than the weighted average current contract rates in effect immediately before the extension, place the new rates in effect. Otherwise, maintain the rates in effect at the time of the extension.

The proportion, by species, of the remaining volume can be the deciding factor in determining whether the weighted average value of redetermined rates plus bid premium is higher than the weighted value of current contract rates applied to the remaining volume. For this reason, make a reliable estimate of the remaining volume by species. The established rates of any species-product group cannot be less than the current contract rate. Therefore, it may be necessary to adjust the appraised rates downward for some species or products. This will compensate for establishing current contract rates for species/products that appraise below current contract rates so that the redetermined rate plus bid premium value of the remaining timber will be unchanged.

Carry forward into the extension period unused purchaser credits for specified road construction. Prepare an estimate to accurately reflect the work accomplished to that date. To establish new purchaser credit amounts, appraise the cost of unconstructed facilities by applying current costs to original quantities shown in the schedule of items. However, except for agreed changes in planned construction, do not increase the purchaser credit limit. In an appraisal for extension, change the purchaser credit limit to correspond with the revised estimates only if new appraised stumpage rates are placed in effect for the extended period. If purchaser credit is increased, do not increase it by more than the increase in contract value that is made as a part of the extension. This limitation is based upon the principle that the Forest Service shall not accept less for the remaining timber than would have been received under the rates in effect before the extension.

If the contract term is extended subsequent to a contract term adjustment, make a reappraisal for the extension as though no contract term adjustment had been made. Therefore, use the appraisal methods and data (but not adjustments) in effect 45 days before the original expiration date or any extensions. This procedure ensures that granting a contract term adjustment neither penalizes nor benefits the purchaser insofar as rates during the extended period are concerned.

46.65 - Rate Redeterminations with Contract Modifications. These are agreed-to contract modifications where contractual work requirements may change rates.

Appraise the original contract requirements and volume ("before" appraisal) and the new contract requirements and volume ("after" appraisal), using remaining volume and current costs and values. Adjust the bid rates by this difference. Increase base rates, if necessary, to reflect lower volume. Do not reduce base rates unless the cost per thousand board feet of essential reforestation decreases. Contracting Officers must ensure that these modifications are not to the disadvantage of the Government. Do not change contract requirements or rates until the contract modification is signed.

## 47 - SPECIAL APPRAISALS.

47.1 - Damage Appraisals. When the purchaser fails to cut and remove all included timber by the contract expiration date, determine whether or not the Government has suffered damages from loss of stumpage value. The general measure of such damage is the extent to which the resale value of remaining timber is less than the amount the purchaser would have paid had the contract been completed. The contract defines this as the value of stumpage rates in effect at termination, or current contract value. Resale value of the remaining timber is the appraised value at termination or the actual bid in a resale, whichever is greater. Because the appraised value is the minimum resale value, irrespective of subsequent actions, appraise the remaining timber using standard Forest Service methods in effect at termination and under the terms and conditions of the original contract. Appraise all incomplete work that was required of the original purchaser or made necessary by the purchaser's operation. Carefully determine the volume and quality of the remaining timber and its accessibility, as well as all other factors influencing its value. The appraised resale value may be different from the appraised value, exclusive of bid premium, that would have been developed for an extension because the appraised resale value is based on remaining timber at termination and the appraised value is based on the original sale volume.

The appraisal must result in an estimated market value of the remaining timber as though specified roads were in place. Use remaining effective purchaser credit to reduce damages.

Appraised resale value must be comparable to current contract value. When the appraised resale value is equal to or greater than current contract value at termination, do not assess damages for loss of stumpage value, regardless of how the timber is subsequently offered and what value is received.

When the appraised resale value is less than current contract value, damages depends on when and how the timber is reoffered. Regional Foresters may set requirements for review of damage cases involving incomplete, expired contracts and cases in which timber is not reoffered for resale, is reoffered under different

conditions, or is reoffered in part. The Contracting Officer must ensure the Regional Forester reviews all damage cases involving abandoned or expired contracts. Although the following lists four common situations, individual cases may involve unusual conditions and require special treatment:

1. Resale Value of Timber not Reoffered for Sale. In this situation, use the predicted high bid as the appraised value. The Government has damages equal to the amount that this value, plus remaining effective purchaser credit, is less than current contract value.

2. Resale Value of Timber Reoffered for Sale. When the remaining timber is offered for resale under the original conditions, resale value is the greater of the bid value of the resale or the appraised market value. Damage is the amount by which current contract value, plus cost of resale, less remaining effective purchaser credit exceeds resale value.

The choice between the bid value and the appraised market value is necessary because there may be no buyers, or because resale may be delayed for a lengthy period of time after the expiration date. In such cases, if the market has dropped significantly by the time of resale, the resale value might be lower than it would have been if resale had been made promptly after the expiration date. When the timber is reoffered, base advertised rates on the market at the time of advertisement and not at the time of expiration.

3. Resale Value of Timber Reoffered under Different Conditions. It may be desirable to reoffer the remaining timber under contract provisions different from those in the original sale. Under such circumstances, make two appraisals. Make the first under the assumption that the original contract provisions apply, and the second under the assumption that changed provisions apply. Make both appraisals using standard methods in effect at the expiration date. The difference between the two appraisals is the effect of the changed conditions on the value of the remaining timber. Use this difference to reduce damages even if it reduces the value of the remaining timber.

For example, the contract value of uncut timber at the expiration date is $6,000. An appraisal of the uncut timber, made by the standard method for new sale offerings and assuming the original contract provisions are in place, results in an appraised value of $4,000. An appraisal of the uncut timber made by using the standard method for new sale offerings, but assuming changed contract provisions (skyline yarding instead of tractor skidding) results in an appraisal value of $3,000; thus, the changed conditions reduce the appraised value by $1,000 ($6,000 minus $4,000, minus $1,000 due to increased costs equals $1,000). This results in damages of $1,000. An adjustment for market change, as discussed in paragraph 2, also may be necessary.

If changed contract provisions result in an increase in appraised value for uncut timber, do not use the changed-condition value in damage determination. In that event, determine damages as in paragraph 2.

4. Resale Value of Timber Reoffered Partially. The example discussed in paragraph 3 presumes that all uncut timber will be resold. It may be appropriate for environmental or other reasons to reoffer only a portion of the uncut timber or to include a portion of the uncut timber from that particular contract with other timber. When these

alternatives are appropriate, the prices received for the reoffered timber generally do not reflect the damages as well as when the entire volume of uncut timber is sold as a package. When making partial reofferings, give careful study to present a defensible analysis of the exact damages suffered by the Government.

Always determine the difference between the contract value of the uncut timber at the expiration date and the appraised value of the uncut timber under contract conditions in effect at time of expiration. Make this determination using the standard appraisal method in effect for new offerings. To determine whether or not the resale values justify any reduction of the appraised damages, make a detailed analysis of bid results for the portions of the sale that are resold. For example, if an expired sale has uncut timber with a contract value of $10,000 and appraises at $9,000 on the expiration date, the appraised damage is $1,000. If the Forest Service decides to resell only half of the timber and advertises it at $4,500, and if the timber is bid in at $5,000, there is no loss on that half. The other half remains unsold with an appraised $500 of damages. However, if study indicates that the other half would have been bid in at $500 above the appraisal had the Forest Service chosen to include it in the resale, the appraiser could recommend there are no damages other than resale costs that would have been incurred.

<u>47.2</u> - <u>Trespass Appraisals</u>. Assess civil damages accurately and document them carefully so that values can be justified in civil court, if necessary. Determine civil damages resulting from a trespass based on the market value of the timber cut or damaged, plus any other damage the Government may have suffered as a result of the trespass. In addition, assess timber property values. Determine objectively the market value of the timber cut. Whether the trespass appears to be willful or unintentional does not influence the appraisal of stumpage values, since multiple stumpage values associated with willful trespass may be determined easily after the basic value is determined. In addition to stumpage value, there may be other values to include as damages.

1. <u>Appraisal by Comparison</u>. Comparison with commercial transactions is one of the best ways to establish stumpage rates for trespass. If possible, compare trespass damage with several transactions to avoid allegations that a single transaction is not representative of fair market value. Also, evaluate comparable transactions. Evaluate species composition, accessibility, logging difficulty, timber quality, and other factors.

Make adjustments to elements in a comparative appraisal when it is necessary to update the values to the time of trespass. Published index values are often useful for this purpose.

2. Alternative Appraisals. If reasonably comparable sales are not available, use the transaction evidence appraisal, following standard appraisal procedures. Fixed costs may need special treatment to avoid cost and value distortion. For example, the estimated unit cost of roads should be limited to the lowest cost of one of the following:

a. The estimated road investment by trespasser divided by the volume cut.

b. The average road amortization rate for typical sales in the area.

c. The estimated cost of the transportation system for a logical sale area that includes the trespass area and other tributary timber, divided by the estimated tributary volume.

The appraisal should reflect transaction evidence of bids received in the general area.

47.3 - Timber Property Appraisals. Timber property sales involve recovery of value in excess of stumpage value or standing tree value. Timber property values are the cost of manufacture from the standing tree to the state of manufacture where the sale is made, which is usually in decks. This would include the constructed cost of felling and bucking, skidding, decking, slash treatment, erosion prevention, and a proportionate share of overhead and depreciation. In trespass cases where the timber was found at a mill, add transportation costs and an estimated cost for unloading.

Determine the average unit rates for the species or products with property value for the entire volume in the species or product group, based on its current state of processing. Enter the total timber property value in one of the blank lines on the bottom of the Appraisal Summary portion of form FS-2400-17, Report of Timber Sale - Convertible and Non-convertible Products.

In completing the Report of Timber Sale portion of form FS-2400-17, after the sale is made, subtract the timber property rates and specified road costs from the rates bid by the high bidder to develop the statistical high bid.

47.4 - Timber Settlement Appraisals. Timber settlement sales occur when a permittee is granted the right to cut, damage, or destroy timber or other forest products in conjunction with an authorized occupancy of National Forest System land (FSM 2464) such as a road right-of-way to private land.

The appraised value is the predicted bid, which includes predicted bid premiums. No timber property values are added to the predicted high bid rates for standing timber. If the permittee decks timber and the Forest Service sells that timber to another party, treat the transaction as a timber property sale.

## 48 - TIMBER SALE APPRAISAL REPORT.

48.1 - Appraisal Report. The appraisal report portion of the timber sale report documents the appraised value development shown on form FS-2400-17. To provide a clear picture of the appraisal analysis and results, include sufficient written explanations of data sources and premises in the report. The amount of detail contained in an appraisal depends on the volume and value of the timber involved and the need for supplying information to the approving officer to support the appraised value. Rate redeterminations depend on information provided in the appraisal report.

Make the presentation as brief as practicable; however, ensure essential information is included. Make computations clear and simple so that the reviewer may easily follow the basis and derivations of values. Discuss such items as:

1. Method of operation contemplated, including logging method, transportation, and period of operation.

2. Factors which affect cost and value. As appropriate, this may include location of timber with respect to the market to which it is appraised; shipping and appraisal point; haul distance by road class or by other means, such as rail or water; location with respect to other markets; and relative transportation costs.

3. Market requirements as to specification and demand for each class of material.

4. Deviations from appraisal zone averages and development of specialized costs.

49 - SELLING VALUE AND COST COLLECTION. Selling value and cost collection to support the transaction evidence appraisal system has been approved by the Office of Management and Budget for supporting the transaction evidence appraisal system (OMB No. 0596-0017). The purchaser's cost information is not normally subject to audit by the Forest Service, but purchasers may voluntarily submit cost and related appraisal data to regional forest management or fiscal personnel for compilation.