**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02-131C |
| | ) | (Judge George W. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF QUANTUM**

Alan I. Saltman
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiff

OF COUNSEL:

Richard W. Goeken
Bryan T. Bunting
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Dated: February 6, 2006

# TABLE OF CONTENTS

PAGE

Table of Authorities ........ iii

Index to Plaintiff's Appendix ........ v

INTRODUCTION ........ 1

ARGUMENT ........ 5

I. Standard of Review ........ 5

II. Legal Issues ........ 6

A. Defendant Has Improperly Sought Interest from the Date of the Invalid "Estimated" Bills for Collection Rather Than from Defendant's Calculation of Damages in Conformity with the Contracts ........ 6

1. The Calculation of Interest Where the Remaining Timber Was Not Resold ........ 7

2. Calculation of Interest on Damages Where the Contracts Were Resold ........ 11

a. If the Court Concludes that Interest Can Run from the Date on Which the Forest Service Provided its Initial Bill for Collection on Jersey Horse and Wiggins, Then it is Not Entitled to Interest Calculated Under CT9.4(d) ........ 12

B. Except with Regard to U-Bar, Defendant Miscalculates the Amount of Interest Due By Using a Fixed, Rather Than a Variable, Rate of Interest ........ 13

1. The Forest Service's Calculation of a Fixed Rate of Interest on the Bills for Collection Under CDA is Incorrect ........ 13

2. The Forest Service's Use of a Fixed Rate of Interest on the Delay in Receipt of Stumpage Payments is Also Incorrect ........ 15

C. Defendant's Calculation of a Penalty Is Incorrect Because It Has Been Applied to the Total Amount of Principal Plus Interest Claimed by Defendant as of September 30, 2005, As If That Total Amount Had Been Outstanding for More Than Four Years ..........................................17

D. Defendant Has Failed to Credit Precision Pine for Effective Purchaser Credit that Existed on the Brookbank Contract at The Time of Default, An Amount Which Should Have Been Credited to the Gentry, Jersey Horse, or Jersey Horse II Contracts ..........................................................19

E. The Forest Service Is Not Entitled to the Costs It Incurred in Attempting to Resell the Small Amount of Pulpwood on the Wiggins Contract..........................................................................................22

F. Defendant Has Used the Wrong Rate of Interest for the U-Bar Sale ........24

G. Defendant Is Not Entitled to Any Penalty Under the U-Bar Contract.......25

CONCLUSION..........................................................................................................26

## TABLE OF AUTHORITIES

**CASES** **PAGE**


Anderson v. Liberty Lobby, Inc.,
477 U.S. 422 (1986) .....5

Baker & Ford Co.,
GSBCA No. 5723, 81-1 BCA ¶ 14,918 (1981) .....10

Brookfield Constr. Co. v. United States,
661 F.2d 159 (Ct.Cl. 1981) .....14, 15

Brooks v. United States,
65 Fed.Cl. 135 (2005) .....5

Capital Development Co. v. United States,
49 Fed.Cl. 178 (2001) .....12, 13

Fred A. Arnold, Inc. v. United States,
18 Cl.Ct. 1 (1989) .....25

Hall v. Aqua Queen Mfg., Inc.,
93 F.3d 1548 (Fed.Cir. 1996) .....6

Higgs v. United States,
212 Ct.Cl. 146 (1976) .....26

J.F. Shea Co., Inc. v. United States,
784 F.2d 338 (Fed.Cir. 1985) .....16

Ketchikan Pulp Co. v. United States,
20 Cl.Ct. 164 (1990) .....23

L & A Jackson Enterprises v. United States,
38 Fed.Cl. 22 (1997) .....25

Lockheed Martin IR Imaging Systems, Inc. v. West,
108 F.3d 319 (Fed.Cir. 1997) .....17

Maintenance Engineers v. United States,
50 Fed.Cl. 399 (2001) .....5

Matsushita Elec. Co., Ltd v. Zenith Radio Corp.,
475 U.S. 574 (1986) ..... 5-6

Mil-Pak Co.,
GSBCA No. 7332, 84-3 BCA ¶ 17,555 (1984) ..........10

Nicholson v. United States,
29 Fed.Cl. 180 (1993) ..........5

Precision Pine & Timber Inc. v. Unites States,
62 Fed.Cl. 635 (2004) .......... *passim*

Sweats Fashion, Inc. v. Pannill Knitting Co.,
833 F.2d 1560 (Fed.Cir. 1987)..........5

Thomas Creek Lumber & Log Co. v. United States,
36 Fed.Cl. 220 (1996) ..........23

United States v. Hyundai Merchant Marine Co., Ltd.,
172 F.3d 1187 (9th Cir. 1999) ..........14

Webster Univ. v. United States,
20 Cl.Ct. 429 (1990) ..........5

**STATUTES AND REGULATIONS**

16 U.S.C. § 535..........20

31 U.S.C. § 3117(a)(1)..........8

31 U.S.C. § 3717(g) ..........14, 16

41 U.S.C. § 611..........14

7 C.F.R. § 3.34..........8

36 C.F.R. § 223.42..........20, 21

36 C.F.R. § 223.80..........23

RCFC 56(a)..........1, 5

**MISCELLANEOUS**

Forest Service Manual § 2456.5 ..........21

Forest Service Manual § 2456.6 ..........21

# INDEX TO PLAINTIFF'S APPENDIX

**Description** **Pl. App. Page**

Forest Service Contract Clause B4.2 – Timber Sale Account ........................................................1

Forest Service Contract Clause CT4.4 – Payments Not Received (1/84) .......................................2

Forest Service Contract Clause CT4.41 – Other Payments Not Received (3/93) ............................3

Forest Service Contract Clause CT9.4 – Failure to Cut (4/82)........................................................4

Letter, dated January 9, 2001, from Eleanor Towns, Regional Forester, to Precision Pine terminating 12 contracts for failure to provide bonding or other acceptable surety.........................5

Cover letter, dated February 21, 2001, from Richard Stephens to Precision Pine, accompanying the Decision Document, Estimated Damage Calculations, and Bills for Collection for Hutch-Boondock, Monument and U-Bar ..................................................................8

U-Bar Sale Decision Document with attached Estimated Damage Calculations and Bill for Collection ...........................................................................................................9

Monument Multi-Product Sale Decision Document with attached Estimated Damage Calculations and Bill for Collection ..........................................................................19

Hutch-Boondock Multiproduct Sale Decision Document with attached Estimated Damage Calculations and Bill for Collection..........................................................................28

Cover letter, dated March 1, 2001, from Susan Lee to Precision Pine, accompanying the Decision Document, Estimated Damage Calculations, and Bill for Collections for Brookbank, Gentry, Jersey Horse, O.D. Ridge, and Wiggins .........................................................37

O.D. Ridge Sale Decision Document with attached Estimated Damage Calculations and Bill for Collection .........................................................................................38

Jersey Horse Sale Decision Document with attached Estimated Damage Calculations and Bill for Collection .........................................................................................47

Gentry Multi-Product Sale Decision Document with attached Estimated Damage Calculations and Bill for Collection ..........................................................................56

Wiggins Multi-Product Sale Decision Document with attached Estimated Damage Calculations and Bill for Collection ..........................................................................65

Brookbank Multi-Product Sale Decision Document with attached Estimated Damage Calculations ....74

Cover letter, dated March 1, 2001 from David Harris to Precision Pine, accompanying the Final Decision of the Contracting Officer regarding Brann ....83

Brann Decision Document with attached Estimated Damage Calculations and Bill for Collection ....84

Saginaw-Kennedy Decision Document with attached Estimated Damage Calculations and Bill for Collection ....96

Cover letter, dated March 14, 2001, from Marion Yost to Precision Pine, accompanying the Decision Document, Estimated Damage Calculations, and Bill for Collections for Lily ....107

Lily Decision Document with attached Estimated Damage Calculations and Bill for Collection ....108

Cover letter, dated April 5, 2001, from David Cummings to Precision Pine, accompanying the Decision Document for Manaco ....120

Manaco Decision Document with attached Calculation of Damages Worksheet ....121

April 28, 2005 Damage Calculations
Summary Sheet ....124

Forest Service Damage Calculations for the Brann Contract ....125

Forest Service Damage Calculations for the Brookbank Contract ....128

Forest Service Damage Calculations for the Gentry Contract ....132

Forest Service Damage Calculations for the Hutch-Boondock Contract ....136

Forest Service Damage Calculations for the Jersey Horse Contract ....139

Forest Service Damage Calculations for the Lilly Contract ....143

Forest Service Damage Calculations for the Manaco Contract ....147

Forest Service Damage Calculations for the Monument Contract ....151

Forest Service Damage Calculations for the O.D. Ridge Contract ....155

Forest Service Damage Calculations for the Saginaw-Kennedy Contract ....159

Forest Service Damage Calculations for the U-Bar Contract ....................................................162

Forest Service Damage Calculations for the Wiggins Contract ................................................165

July 14, 2005 Revised Damage Calculations (Summary Sheet)......................................................169

September 16, 2005 Re-Revised Damage Calculations (Summary Sheet) ....................................170

Excerpts from the Transcript of the October 20, 2005 Status Conference in Precision Pine & Timber, Inc. v. United States, No. 02-131 ....................................................................171

Forest Service Manual § 2456.5 ..........................................................................................177

Forest Service Manual § 2456.6 ..........................................................................................177

36 C.F.R. § 223.42 ................................................................................................................178

36 C.F.R. § 223.80 ................................................................................................................179

Letter dated October 26, 2005 from Lorin D. Porter, President, Precision Pine & Timber, Inc. to Kerry Nedrow, Acting Contracting Officer, Apache-Sitgreaves National Forest. ...................180

As set forth below, pursuant to Rule 56(a) of the Rules of the Court of Federal Claims, plaintiff, Precision Pine & Timber, Inc. ("Precision Pine"), moves for partial summary judgment on the issue of quantum.

**INTRODUCTION**

This case involves Precision Pine's defenses against the government's attempts to collect improperly calculated and vastly overstated default damages allegedly resulting from the Forest Service's termination of the following 12 timber sale contracts: Jersey Horse, O.D. Ridge, Wiggings, Saginaw-Kennedy, Brann, U-Bar, Monument, Hutch-Boondock, Gentry, Lilly, Brookbank and Manaco.[1] Plaintiff's Appendix 5-123 ("PA"). The Forest Service initially based its damages claim on an estimate of what the financial impact might be if at some future date the Forest Service resold the timber remaining on all of the contracts as it claimed it was going to do. These amounts were set forth in Bills for Collection issued in the first few months of 2001. The Forest Service, recognizing that these estimated damages were not accurate, nevertheless asserted that Precision Pine should pay the full amount of the estimated damages subject to future "adjustment" once the actual damages were determined following resale of the remaining timber. Precision Pine, 62 Fed.Cl. at 639. In fact, the Forest Service only ultimately resold the timber remaining on three of the twelve contracts at issue, i.e., the O.D. Ridge, Jersey Horse and Wiggins contracts. As such, the Forest Service's estimates of the costs it would incur in performing the resale and the revenues it would receive upon the resale did not correspond at all

---

[1] The damages claimed by the Forest Service for the alleged default of the Brookbank and Manaco timber sale contracts was $0. Precision Pine & Timber Inc. v. United States, 62 Fed.Cl. 635, 639 (2004).

to the damages it claimed for contracts that were never resold nor did they correspond to what, in fact, the Forest Service incurred and received on the three sales that were resold.

In light of these facts, on October 29, 2004, this Court issued an opinion, holding in pertinent part that the contracting officers were asserting default damages that were computed in a manner inconsistent with the terms of clause CT9.4 of the timber sale contracts. Precision Pine, 62 Fed.Cl. at 636.[2] In doing so, the Court specifically rejected the Forest Service's attempt to recover "estimated" damages based on a possible future resale of the remaining timber:

> **[S]ection CT9.4 does not provide the Government the right to be paid an interim assessment of estimated damages which will later be adjusted once the Government determines its actual damages**. Rather, the contracts require the Forest Service to decide whether to resell the contract and wait until the resale is concluded to calculate damages or not to resell the contract and calculate the damages immediately.

Id. at 655 (emphasis supplied). Because the Forest Service's attempt to base its damages on an interim estimate was invalid, the Court remanded the matter to the Contracting Officers to perform a proper calculation of damages in conformity with the terms of the contracts. Id. The Forest Service was given a maximum of six months to complete the calculations, i.e., it was to respond to the Court on or before April 28, 2005.

[2]The "default" at issue was Precision Pine's technical failure to find a replacement surety within the time allotted after the government removed Precision Pine's surety, Frontier Insurance, from its list of acceptable sureties. Id. at 838. Frontier Insurance had essentially become the surety of last resort for Precision Pine which had great difficulty finding bonding at affordable rates following three consecutive harvest seasons (1995-1997) in which all or a substantial portion of its timber under contract with the Forest Service had been suspended, through no fault of its own.

On the last day possible, the Forest Service produced new calculations for all of the contracts at issue. PA 124-168 (April 28, 2005 calculations).[3] By not estimating its damages, the principal amount of the Forest Service's claim was reduced from a total of $767,625.72 under the original invalid Bills of Collection to $472,209.28, i.e., a reduction of more than 38%. The Forest Service asserted that its April 28, 2005 "calculations are in conformity with the Court's interpretation of CT9.4." Id.

Thereafter, on July 14, 2005, the government sought and was granted leave to file revised damage calculations which further reduced its damages from their "estimated" amount. PA 169 (July 14, 2005). Furthermore, during a telephonic status conference held on September 13, 2005, defendant orally moved for leave to file yet another revised damage calculation, which leave was granted by the Court. On September 16, 2005, defendant submitted its further revision of its calculations, but did not specifically identify what changes had been made. PA 170 (September 16, 2005 Revision of Damages). In sum, defendant did not finally comply with the contract requirements for calculating damages for all the contracts until September 16, 2005. The table below sets forth the principal amount of the original, invalid claims as well as the principal, interest and penalty claimed by the government in the September 16, 2005 revised calculation.

[3]The Court also remanded the calculation of damages on the Manaco and Brookbank contracts even though the Forest Service's estimated damages had been $0. Upon recalculation, the damages on these two sales remained $0. Additionally, the Forest Service dropped its claim for damages on the O.D. Ridge sale from the principal amount of $148,845.38 to $0.

| Sale Contract | Principal Stated in Original Invalid Claim | Principal as of 9/16/05 Revision | Interest as of 9/16/05 Revision | Penalty as of 9/16/05 Revision |
|---|---|---|---|---|
| O.D. Ridge Timber Sale | $148,845.38 | $ - | $ - | $ - |
| Jersey Horse Timber Sale | $ 9,035.47 | $ 17,056.01 | $ 4,715.69 | $ 5,665.42 |
| Saginaw-Kennedy Timber Sale | $101,642.20 | $ 83,157.15 | $ 22,991.53 | $ 27,621.92 |
| Brann Timber Sale | $ 36,888.97 | $ 25,994.78 | $ 7,187.11 | $ 8,634.56 |
| U-Bar Timber Sale | $215,619.04 | $124,367.14 | $ 34,646.04 | $ 41,691.95 |
| Monument Multi-Product Sale | $ 81,477.88 | $ 70,845.50 | $ 19,736.05 | $ 23,749.74 |
| Hutch-Boondock Multi-Product Sale | $ 2,278.72 | $ 2,278.72 | $ 632.81 | $ 760.99 |
| Gentry Multi-Product Sale | $ 92,236.78 | $ 35,029.56 | $ 9,685.07 | $ 11,635.61 |
| Wiggins Multi-Product Sale | $ 13,016.93 | $ 9,128.70 | $ 2,523.93 | $ 3,032.24 |
| Lily Timber Sale | $ 66,512.35 | $ 59,761.05 | $ 16,376.78 | $ 19,637.30 |
| Brookbank Multi-Product Sale | $ - | $ - | $ - | $ - |
| Manaco Timber Sale | $ - | $ - | $ - | $ - |
| **Totals** | $767,553.72 | $427,618.61 | $118,495.01 | $142,429.73 |

As demonstrated above, defendant's September 16, 2005 statement of damages (which is still considerably overstated) sets forth a total that is a 44% reduction from the estimated amount set forth in its original Bills for Collection. Pursuant to Court order, on September 20, 2005, Precision Pine submitted its Statement of Plaintiff's Position With Respect to the Government's Recalculation of Damages and on October 11, 2005 filed a revised version of that statement also at the Court's request. On October 20, 2005, the Court conducted a status conference to discuss the parties' respective positions in light of Precision Pine's filings. Later that same day, the Court issued an order that identified certain issues which the Court believed could be resolved as a matter of law and identifying other issues which it believed involved mixed questions of fact and law. Chief among the issues in the later category were how defendant had performed certain sale-specific calculations on appraisals for certain timber sales.

On January 10, 2006, pursuant to Court order, the government filed the declaration of David P. Harris, setting forth in some detail how certain sale-specific calculations on some of the appraisals had been performed. Following a status conference in which Mr. Harris was questioned on the contents of his declaration by the Court, the Court directed Precision Pine to prepare and file the instant brief addressing issues that could be resolved as a matter of law. As demonstrated below, Precision Pine is entitled to the entry of summary judgment in its favor on each of the foregoing issues as a matter of law.

**ARGUMENT**

**I. Standard Of Review**

Summary judgment is proper when no genuine issues of material fact are in dispute and the moving party is entitled to judgment as a matter of law. RCFC 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 422 (1986). "An issue is genuine only if, on the entirety of the record, a reasonable jury could resolve a factual matter in favor of the non-movant, while the materiality of the fact is determined by reference to applicable legal standards." Nicholson v. United States, 29 Fed.Cl. 180, 186 (1993), quoting Webster Univ. v. United States, 20 Cl.Ct. 429, 432 (1990), citing Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1562, 1567 (Fed.Cir.1987). An outcome-determinative fact is a material fact. Brooks v. United States, 65 Fed.Cl. 135, 140 (2005), citing Liberty Lobby, 477 U.S. at 248. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings. Maintenance Engineers v. United States, 50 Fed.Cl. 399, 408 (2001), citing Matsushita Elec.

Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Hall v. Aqua Queen Mfg., Inc., 93 F.3d 1548, 1553 n.3 (Fed.Cir.1996).

## II. Legal Issues

### A. Defendant Has Improperly Sought Interest from the Date of the Invalid "Estimated" Bills for Collection Rather Than from Defendant's Calculation of Damages in Conformity with the Contracts

Each of the contracts at issue (except U-Bar) provides in clause CT4.41 (3/93) that:

> Pursuant to the Debt Collection Act as amended (31 U.S.C. § 3702 et seq.) if payment is not received by the Forest Service within 30 days after the date of issue on the Bill for Collection:
>
> > (a) Simple interest shall be assessed at the higher of the U.S. Treasury current value of funds rate, . . . or the rate established by the Secretary of the Treasury under Section 12 of the Contract Disputes Act . . . Interest will begin to accrue as of the date of issue indicated on the initial Bill for Collection.

PA 3-3a (CT4.41 (3/93)).

Upon a termination for breach, the first obligation of the Forest Service in determining its damages is to reappraise the remaining timber on the sale. Id. As this Court has already determined, after the Forest Service has reappraised the remaining timber, under clause CT9.4 it has two (and only two) options for determining its damages: (1) If it does not resell the timber, the Forest Service is to immediately seek damages premised upon the difference between the timber's market value at the time of termination (as determined by appraisal) and the contract value of the remaining timber; or (2) resell the timber and, only after doing so, seek the difference between the resale value of the timber and contract value of the timber. Precision Pine, 62 Fed.Cl. at 655; PA 4. In the former circumstance, damages are determinable at the time

of termination and, if the bill is not paid, interest as provided for under clause CT4.41 begins to run from the date of the issuance of a valid Bill for Collection. On the other hand, where the Forest Service elects to resell the timber, damages are, by definition, not calculable until after the resale occurs. Precision Pine, 62 Fed.Cl. at 655. Of course, where the government elects to resell the remaining timber, the contract more than amply protects the government by providing for the recovery of:

> The Government's loss caused by the delay in receipt of stumpage payments. Such loss will be measured by interest at the current rate being paid for borrowing by the United States (as calculated and published by the Treasury Department in TFRM 6-8025.s) on the unpaid contract value at Termination Date until midpoint of the contract resale period, less any time in excess of 1 year to make the resale[.]

PA 4 (CT9.4(d)). Accordingly, because the two means of determining damages have implications for the correct calculation of interest, if any, owed to the government and when that interest begins to run, the two situations are treated separately below.

### 1. The Calculation of Interest Where the Remaining Timber Was Not Resold

In the instant case, the Forest Service eventually elected not to resell the timber remaining on the following nine contracts: Saginaw-Kennedy, Brann, U-Bar, Monument, Gentry, Lilly and Hutch-Boondock.[4] Importantly, however, following the January 9, 2001 termination of the contracts by the Regional Forester (PA 5-6), the Forest Service issued "estimated" Bills for Collection" based on its stated intention to resell the timber remaining on all of these contracts. As noted above, this Court has already determined and it is, therefore, law of the case that if the Forest Service wished to assess damages based upon a resale it had to wait

[4]The timber on the Monument, Gentry and Lilly sales was offered for resale but received no bids.

until such time as the resale was concluded and then calculate its damages. Id. at 655. Indeed, "CT9.4 does not provide the Government the right to be paid an interim assessment of estimated damages" and no reasonable person acquainted with the provision could believe otherwise. Id. It follows, therefore, that Precision Pine was fully justified in not paying a Bill for Collection, the amount of which was calculated in a manner not contemplated by the contracts and thus sought payment in an amount to which the government was not entitled. Indeed, because the Forest Service failed to "wait until the resale is concluded to calculate its damages" (id.), the Bills for Collection were a nullity.

Both the Debt Collection Act and Department of Agriculture regulations implementing the Act require the existence of a valid debt before interest begins to accrue. That is, the Debt Collection Act, pursuant to which the Forest Service claims to be seeking the recovery of interest under CT 4.41, provides for charging interest "on an outstanding debt on a United States Government claim." 31 U.S.C. § 3117(a)(1). Similarly, regulations promulgated by the Department of Agriculture for use by its member agencies, including the Forest Service, refer to interest on "delinquent debts owed to the United States. . . ." 7 C.F.R. § 3.34.[5] At the time the original Bills for Collection were issued, however, the government had in no way complied with its contractual obligations and, as a result, the damages sought by the government were not only incorrect they were overstated by more than 44%. Indeed, by terming the damages "estimates," the Forest Service acknowledged that the payment sought was not accurate. Accordingly, no

[5]Because, as this Court has determined, "CT9.4 does not provide the Government the right to be paid an interim assessment of estimated damages," the Bills for Collection issued by the Forest Service seeking to recover such estimates simply do not constitute a debt owed to the government.

amount even purporting to have been calculated under either of the two methods provided in the contract had been presented to Precision Pine so that it might decide whether to contest or pay it. Had the Forest Service at least attempted to use the method provided for in the contract to immediately seek its claimed damages, the possibility remains that Precision Pine may have paid or sought to negotiate a compromise of the damages rather than incurring the considerable costs of litigating this matter since 2002. This possibility is further heightened by the fact that the Forest Service's September 16, 2005 calculations resulted in a huge reduction from its invalid "estimated" damages issued in 2001. In such circumstances, where no valid claim has been calculated as provided for by the terms of the contract, a contractor should not be penalized for refusing to pay a facially invalid Bill for Collection by incurring interest and penalty based on its issuance.

Here, defendant made no attempt to calculate damages in the manner specified in the contracts at any time prior to this Court's order of October 29, 2004 requiring it to do so. Moreover, even after being under Court order to calculate its damages as required by the contract, defendant first provided Precision Pine with a calculation of damages purporting to be in conformity with the terms of the contract on the final day allotted to it by the Court, i.e., six months later on April 28, 2005. Defendant should not be rewarded with interest during any of the time that it failed to even attempt to perform damage calculations as required by its own contracts.

Additionally, even after preparing the April 28, 2005 calculations, defendant, by its own admission, had still not properly applied the contract requirements to all of its damage

calculations until it submitted its re-recalculation of damages on September 16, 2005. Accordingly, to the extent that Precision Pine is liable to the Forest Service for any damages, interest on that amount should only begin to accrue as of the time defendant first advised Precision Pine of the claims against it in conformity with the terms of the contract, i.e., on September 16, 2005.

The question of the proper date from which interest begins to accrue where the actions of the party seeking interest causes resolution of the matter to be greatly extended has been the subject of discussion in several contexts. Some cases have focused on the propriety of interest accruing on the contractor's CDA claim due to its failure to sign a claim release form delayed payment of the claims. In both Baker & Ford Co., GSBCA No. 5723, 81-1 BCA ¶ 14,918 (1981), and Mil-Pak Co., GSBCA No. 7332, 84-3 BCA ¶ 17,555 (1984), notwithstanding the period of interest specifically prescribed by the CDA, the Board tolled the accrual/collection of interest for the period caused by the contractors' delay. The reasoning in these cases is that if a party seeking interest were allowed to delay the receipt of payment and then collect interest for the period of delay caused by his own actions, he would receive more interest and, conversely, the other party would pay more interest than is appropriate in the circumstances. As the Board stated in Baker & Ford, "interest does not run on a [contractor's] claim that has not been perfected when the contractor has complete control over whether and when the claim is perfected." 81-7 BCA ¶ 14,918 at 73,823. That logic is equally applicable here where, in accordance with the governing contractual provision, it was the government that was in complete control of the method by which such damages are to be determined but failed to follow either of the methods prescribed in the contracts. Indeed, because none of defendant's claims were, as

this Court has determined, initially calculated in accordance with the terms of the contract, it is inappropriate to attach any obligation on Precision Pine's part to pay them, let alone award the government interest and penalties on such sums. Again, this is not a situation in which the agency attempted to perform the correct calculation as provided for by the contracts and made a simple clerical, arithmetical or other error. Rather, as this Court has already found here, the Forest Service ignored the two options the contracts provided it for assessing damages and, instead, "created and employed a third method" which was both contractually invalid and vastly overstated the amount of those damages. Precision Pine, 62 Fed.Cl. at 655. Stated another way, interest and penalty cannot properly run on any claim until at least an attempt has been made to calculate the claim using the methodology provided for by the terms of the contract and, therefore, the estimated damages that the Forest sought to recover in its Bills of Collection were not recoverable against Precision Pine.

2. Calculation of Interest on Damages Where the Contracts Were Resold

In contrast to the situation where the Forest Service eventually elected not to resell the contracts, the Forest Service did resell three of the contracts and continues to seek damages with regard to two of them: Jersey Horse and Wiggins.[6] Of course, the damages sought by the Forest Service in its original Bills for Collection were issued prior to any resale taking place and, therefore, were also invalid estimates that are not provided for by the contracts. As was the case with respect to the contracts that were never resold, Precision Pine was thus entirely within its

[6]As noted above, in its April 28, 2005 calculations, the government conceded that it had sustained no damages on the O.D. Ridge contract which was also resold and, therefore, dropped its claim for $148,845.38. Compare PA 38 with PA 124. Accordingly, O.D. Ridge is no longer at issue in this case.

rights to refuse to pay such invalid bills. Accordingly, for the reasons discussed in the foregoing subsection A, Precision Pine should not be required to pay interest and penalty on damages until such time as those damages were calculated in conformity with the terms of the contracts and presented to Precision Pine for payment, something that was not possible until after the sales were resold.

a. If the Court Concludes that Interest Can Run from the Date on Which the Forest Service Provided its Initial Bill for Collection on Jersey Horse and Wiggins, Then it is Not Entitled to Interest Calculated Under CT9.4(d)

CT9.4(d) provides for the government to recover interest for the delay in receipt of stumpage payments between the termination date and the mid-point of the contract resale period, less any time in excess of one year to make the resale. PA 4. Even if the Court were to conclude that the original Bills for Collection were valid for purposes of starting the accrual of interest under the Debt Collection Act as provided for in CT4.41, the case law is clear that it is improper for the government to accrue interest simultaneously under clause CT9.4 for the delay in receipt of stumpage payments. Capital Development Co. v. United States, 49 Fed.Cl. 178, 186 (2001) (Construing Forest Service timber sale contracts and holding that once interest under the Debt Collection Act begins to accrue, interest for the delayed receipt of stumpage payments ceases). In the instant case, however, the government seeks to recover interest damages under CT9.41(d) of the Jersey Horse and Wiggins contracts for delayed stumpage payments (PA 142 (Jersey Horse), PA 5 (Wiggins)) AND the full amount of interest on the Bills for Collection from the day they were issued until the present. Id. The time period when these interest charges allegedly accrued are, however, overlapping and such a double recovery of interest is improper under

Capital Development. To make matters worse, the Forest Service has also applied penalty payments to the double recovery of interest on the Jersey Horse and Wiggins contracts. PA 124. This too is improper. Accordingly, even if the Court were to find that interest did begin to run on the date the Bills for Collection were issued in 2001, the government's current calculations overstates its damages on these two contracts by simultaneously seeking to recover interest for delayed stumpage payments, thereby conferring a double recovery of interest on the Forest Service. Moreover, the Forest Service's attempt to apply a penalty on this double recovery is also improper.[7]

### B. Except with Regard to U-Bar,[8] Defendant Miscalculates the Amount of Interest Due by Using a Fixed, Rather Than a Variable, Rate of Interest

#### 1. The Forest Service's Calculation of a Fixed Rate of Interest on the Bills for Collection Under the CDA is Incorrect

For each of the sales in issue, the Forest Service has calculated interest under CT4.41 due to Precision Pine's putative failure to pay the amounts it now calculates were due at a fixed rate. This is erroneous. The relevant provision of each contract (except U-Bar) indicates that

---

[7]In recalculating its damages on the contracts that were resold, the Forest Service should also have taken into account the length of time it took to make the resale. For example, the resale of the Jersey Horse contract was completed upon award of the contract on April 24, 2002. Because it took the Forest Service "in excess of one year" from the termination date to accomplish the resale, Precision Pine is entitled to a corresponding reduction in interest pursuant to CT9.4(d). It is not presently known to Precision Pine when the Forest Service completed the resale of the Wiggins contract, however, to the extent that it took in excess of one year, the same argument applies to Wiggins.

[8]As discussed infra, although using a fixed rate of interest was proper with respect to U-Bar, the fixed rate actually used with regard to any damages due on U-Bar was, however, erroneous.

> Simple interest shall be assessed at the higher of the U.S. Treasury current value of funds rate, . . . or the rate established by the Secretary of the Treasury under Section 12 of the Contract Disputes Act. . . .

PA 3-3a (Contract Clause CT4.41 (3/93)).[9]

In contrast, the language of clause CT4.4 (1/84) of the U-Bar contract states that:

> [P]ayments received after the due date are subject to an interest charge at the current rate of interest prescribed by the U.S. Department of the Treasury (TFRM 6-8020.20). . . . Such interest rate shall remain unchanged until those bills have been paid or settled.

PA 2 (emphasis added and deleted). For the contracts other than U-Bar, at all times relevant, the CDA rate, which is established semi-annually, was higher than the corresponding U.S. Treasury current value of funds rate. As such, to the extent, if any, that interest is appropriate, CDA interest rates are applicable for these contracts.

Section 12 of the CDA relating to interest states in pertinent part that

> Interest on amounts found due contractors shall be paid to the contractor . . . at the rate established by the Secretary of the Treasury. . . .

41 U.S.C. § 611 (emphasis added).[10] The reference to "the rate" of interest established by the Secretary of the Treasury notwithstanding, in Brookfield Constr. Co. v. United States, 661 F.2d 159 (Ct.Cl. 1981), the court interpreted this language as requiring that "the rate" of interest to be

[9]Because contract clause CT4.41 establishes the rate at which interest shall be applied, the interest provision of the Debt Collection Act does not apply, including any putative obligation to apply a fixed rate of interest under that provision. 31 U.S.C. § 3717(g) ("This section [§ 3717] does not apply if a . . . contract . . . explicitly fixes the interest. . . ."); see also United States v. Hyundai Merchant Marine Co., Ltd., 172 F.3d 1187, 1192 (9th Cir. 1999).

[10]Clause CT4.41 and the CDA are parallel in their reference to the applicability of "the rate" of interest established by the Secretary of the Treasury.

applied varied each six months, i.e., that the rate to be applied initially was the rate in effect on the date when interest accrued and that "this rate will rise and fall in concert with any changes in effect for subsequent six month periods." Id. at 170. This rule has been applied ever since to determine "the rate established by the Secretary of the Treasury" relative to the Contract Disputes Act. This approach is the binding law of the Circuit and, therefore, must be followed in the instant case.

Indeed, as the language of CT4.4 of the U-Bar contract clearly indicates (PA 2), the Forest Service knew how to state that a fixed rate of interest was to apply to amounts due and owing to the government. In fact, the standard clause in the U-Bar contract was prepared by the Washington office of the Forest Service and available for use throughout the agency as of January 1984, i.e., more than nine years prior to the issuance of the version of CT4.41 in the other contracts at issue in this case.[11] Thus, in light of the clear case law in this Circuit and the Forest Service's decision not to include language in the contracts at issue, except U-Bar, that provided for a fixed rate of interest, the unavoidable conclusion is that interest, if any, due on any of defendant's claims, except U-Bar, must be computed using a variable rate of interest.

2. The Forest Service's Use of a Fixed Rate of Interest on the Delay in Receipt of Stumpage Payments is Also Incorrect

As noted above, the Forest Service has also sought to recover interest on the delay in receipt of stumpage payments pursuant to CT9.4(d) on the Jersey Horse and Wiggins contracts.

[11]Because the goal of damages is to compensate the injured party for its actual losses, a variable rate of interest actually occurring during the damage period should be favored as it is a more accurate measure of the actual cost of money incurred during the period when compared to a rate of interest fixed as of some arbitrary point in time.

Although the amount of that interest has not been calculated correctly because it overlaps with the Forest Service's attempt to recover CDA interest on the original Bills for Collection, to the extent that any amount of interest is owed under CT9.4(d) for delayed receipt of stumpage payments, a variable rate of interest should be applied.

Contract clause CT9.4(d), which does not claim to be assessing interest pursuant to the Debt Collection Act, provides that the government may seek to recover interest on the delayed receipt of stumpage payments

> at the current rate being paid for borrowing by the United States (as calculated and published by the Treasury Department in TFRM 6-8025.2) on the unpaid contract value at Termination Date. Interest will be charged for the total number of months, or portions thereof from Termination Date until midpoint of contract resale period, less anytime in excess of 1 year[.]

CT9.4(d).[12] As was the case with interest payments under the CDA, this Circuit has interpreted comparable contract language to require the payment of interest at variable, rather than fixed, rates. See J.F. Shea Co., Inc. v. United States, 784 F.2d 338, 340 (Fed.Cir. 1985) (Pre-CDA standard contract provision providing for the payment of interest at the rate determined by the Secretary of the Treasury under the Renegotiation Act from the date Contractor submits his written appeal required payment of interest at a variable rate).

Moreover, as discussed above, at the time the Forest Service awarded the Jersey Horse contract in the early 1990s and the Wiggins contract in mid-1990s, it has already demonstrated its ability to draft contract language expressly providing for payment of a fixed rate of interest

[12] As noted above, the interest as provided for under the Debt Collection Act does not apply where a contract provision addresses the issue. 31 U.S.C. § 3717(g).

when it wished to do so. That is, the language of clause CT4.4 (1/84) of the U-Bar contract states that:

> [P]ayments received after the due date are subject to an interest charge at the current rate of interest prescribed by the U.S. Department of the Treasury (TFRM 6-8020.20). . . . Such interest rate shall remain unchanged until those bills have been paid or settled.

PA 2. Notably, CT4.4 of the U-Bar contract includes the express proviso that interest shall remain at fixed rates even though the preceding sentence specifies that the interest is to be at the "current rate." Therefore, to read the phrase "current rate" as requiring a fixed rate of interest would render the subsequent requirement that the interest rate remained unchanged to be mere surplusage or a redundancy. Of course, it is a well-established cannon of contract construction that the various terms of a contract must be read as part of an organic whole, according reasonable meaning to all of the contract terms, such that no contract provision is made inconsistent, superfluous or redundant. Lockheed Martin IR Imaging Systems, Inc. v. West, 108 F.3d 319, 322 (Fed.Cir. 1997). Accordingly, the only reasonable interpretation of CT4.41 is that, absent the express statement that the rate of interest is to "remain unchanged," the phrase "current rate" in CT4.41 refers to the current rate charged by the Treasury over the life of the debt. Thus, the Forest Service's use of a fixed rate of interest in calculating the cost of the delay in receipt of stumpage payments is incorrect.

### C. Defendant's Calculation of a Penalty Is Incorrect Because It Has Been Applied to the Total Amount of Principal Plus Interest Claimed by Defendant as of September 30, 2005, As If That Total Amount Had Been Outstanding for More Than Four Years

Even if defendant's calculation of interest using a fixed rate were correct (which it is not) and interest should be calculated from the date of the initial invalid Bills for Collection (which it

should not be), defendant's calculation of penalty is still erroneous. As can be seen in the Summary of Default Damages submitted by defendant on September 16, 2005 (PA 170), defendant has calculated the amount of penalty in a simplistic manner which actually overstates the penalty. Using the Brann sale as an example, defendant calculated the amount of penalty as follows:

1. It computed the total amount of interest allegedly owed. (For Brann it determined interest to be $7,187.11 by multiplying the alleged principal ($25,994.78) by a fixed interest rate (6.375 %) by the time between the initial bill and September 30, 2005 (4.33699 years).

2. It added the amount that it calculated for interest to principal to come up with a subtotal for Principal and Interest (i.e., for Brann defendant determined that principal plus interest through September 30, 2005 was $33,181.89 by adding $7,187.11 of interest to principal of $25,994.78).

3. To determine penalty, it then multiplied this amount by 6% per annum for 4.33699 years (i.e., $33,181.89 x 6% x 4.33699 = $41,816.46).

The fallacy of this calculation is that it assumes that $33,181.89 was the amount of principal plus interest owing throughout the 4.33699 years when, in fact, it was only the amount of principal and interest one – September 30, 2005. Simply put, all other arguments aside, the penalty which defendant seeks is calculated on an amount that it substantially overstated.

At the October 20, 2005 status conference held in this matter, counsel for defendant acknowledged that, with respect to this argument, Precision Pine:

> make[s] a substantial point . . . that the actual mechanics of the calculation are incorrect because the penalty is based on the total at the end of 4-1/2 years, and we believe that is a valid point, and frankly I would like to talk to Mr. Saltman, and perhaps maybe even resolve it today what they believe is the correct way of calculating it is so that we can reach some accord on that particular point.

PA 173. The parties did discuss the issue on October 20, 2005, and subsequently by telephone. Thereafter, counsel for Precision Pine sent a letter to counsel for defendant which stated:

> At the status conference you recognized the basic correctness of the point that we made on page 8 of the Revised Statement of Plaintiff's Position, i.e., that even if defendant were correct that the computation of a penalty on both principal and interest were appropriate and that interest should be calculated from the date of the initial Bill for Collection, defendant's calculation of penalty is still erroneous. As such, you asked me how plaintiff believes that such a calculation should be done given that the total amount of interest changes daily. Without prejudice to our position that penalty on interest is not recoverable, my thought is that if the Court were to disagree, the way to calculate the total penalty due is (1) to calculate the amount of penalty for each period during which the interest was fixed, (2) to do so based on the principal plus total accrued interest to date as of the mid-point of each such period, and (3) then sum the amount penalty calculated for each period. See the attached sheet.

Precision Pine included a sample calculation sheet demonstrating how this methodology could work in practice. Defendant has not responded to this proposed methodology or offered an alternative means of dealing with the calculation of penalty. Precision Pine continues to believe that this methodology is preferable to that employed by defendant. Absent express agreement of defendant to this methodology, Precision Pine requests that the Court simply apply this methodology to the calculation of penalty, if any, that the Court determines is owed.

D. Defendant Has Failed to Credit Precision Pine for Effective Purchaser Credit that Existed on the Brookbank Contract at the time of Default, An Amount Which Should Have Been Credited to the Gentry, Jersey Horse, or Jersey Horse II Contracts

The recalculation of damages for the Brookbank sale on the Apache-Sitgreaves National Forest not only indicates that there are no damages due the government (because the Resale Value substantially exceeded the maximum potential damages) but that at the time the sale terminated uncompleted, Precision Pine had accumulated $2,752.54 worth of earned effective

unused purchaser credits. PA 128. Simply put, these credits, which are earned by a contractor by building specified permanent roads in the forest, are like company scrip and can be used to pay for a variety of things on a timber sale. Indeed, the Forest Service did apply such credits in other of the recalculations to reduce the amounts that Precision Pine would otherwise have owed the government.[13] Moreover, pursuant to 16 U.S.C. § 535 and the timber sale contract clause BT4.2, such credits are transferable to other timber sales within the same National Forest. See PA 1.

However, with respect to the credits earned on the Brookbank contract, where there were no damages to which the credits could be applied, the Forest Service has failed to apply these credits to any amount that defendant claims is owing by Precision Pine. There is, however, no reason why the $2,772.54 remaining on Brookbank was not applied to an amount deemed owing on another sale. In particular, because the Forest Service has calculated that there are damages owing on the Gentry and Jersey Horse sales, both of which are also located on the Apache-Sitgreaves National Forest, these credits should have been transferred and/or otherwise applied to the damages claimed to be owed on one of those sales.

At the October 20, 2005 status conference, the government pointed to 36 C.F.R. § 223.42 as precluding the transfer of credits to pay for damages owing on another sale. PA 178. In fact, however, the regulation only precludes the transfer of such credits in "amounts needed to satisfy unfulfilled payment obligations or claims for damages due the United States [on the contract

[13] See, e.g., the April 28, 2005 calculation of damages on the Saginaw-Kennedy sale where defendant credited Precision Pine with $9,764.47 of effective purchaser credit remaining on that sale. PA 159, 161.

**from which** the Purchaser proposes to make the transfer].” Id. In other words, all that is precluded is the transfer of credits from a sale on which the Forest Service has a claim for damages. This view not only makes common sense (particularly in comparison to the position that these credits, which represent payments for permanent roads built by Precision Pine, simply escheat to the Forest Service) but it is also consistent with the Forest Service Contract and Manual.

That is, per contract clause BT4.2, as Purchaser Credit is earned, it is recorded in the Timber Sale account. Indeed, while it can only be used to pay for timber in excess of base rate value, it is treated as a deposit. See, e.g., BT4.222. PA 1. In this regard, Forest Service Manual § 2456.6 indicates that transfers of deposits will be permitted under the same conditions as are refunds which, per § 2456.5, are allowed, except that “An amount sufficient to cover [‘damages resulting from breach or non-completion of a contract’] must be retained out of deposits that would otherwise be refunded,” i.e., retained so as to be applied to damages on the contract from which the deposit is being refunded/transferred. PA 177. Because the $2,752.54 of Purchaser Credits in question is not needed to pay any damages resulting from the non-completion of the Brookbank contract, Precision Pine sent a letter to defendant requesting that the Forest Service apply these credits (whether by transfer or other means) to amounts it alleges are owing as a result of Precision Pine not completing the Gentry timber sale contract. To date, the Forest Service has not responded to Precision Pine’s request.

Moreover, in effort to mollify the Forest Service in its (quite incorrect) reading of 36 C.F.R. § 223.42 as barring the transfer of unused Effective Purchaser Credit to pay for damages,

Precision Pine has also submitted a written request that the Forest Service simply transfer this Credit from the Brookbank sale to ongoing charges for an active timber sale contract held by Precision Pine on the Apache-Sitgreaves National Forest. PA 180. An example of such a contract on the Apache-Sitgreaves National Forest is the Jersey Horse II timber sale contract.[14] However, to date the Forest Service has not complied with this request and, in what appears to be part of an unfortunate pattern of overreaching, continues to improperly hold $2,752.54 of Purchaser Credit that belong to Precision Pine.

In light of the foregoing, Precision Pine requests that the Court either apply the unused Effective Purchaser Credit (as the Forest Service should have) to the payment of the principal amount, if any, that the Court finds to be owed in this matter, or in the alternative order the Forest Service to apply the Credit from Brookbank to another active timber sale on the Apache-Sitgreaves National Forest.

E. The Forest Service Is Not Entitled to the Costs It Incurred in Attempting to Resell the Small Amount of Pulpwood on the Wiggins Contract

Defendant seeks a total of $9,128.70 with respect to 991 ccf of pulpwood that remained on the Wiggins sale area at the time that the sale terminated uncompleted. As the Forest Service's April 28, 2005 recalculation of damages shows, the reason that there are any damages regarding Wiggins at all lies in the fact that the Forest Service expended $9,878.60 to resell pulpwood which, by its own calculations, only had a value of $723.40. PA 167. In this regard, some $7,703.60 of the costs incurred by the Forest Service were due to its reappraising the

[14]Precision Pine purchased Jersey Horse II, which is the Forest Service's resale of the timber remaining on the terminated Jersey Horse contract.

remaining pulpwood. PA 166. Because the price of pulpwood is established administratively by the Forest Service's Regional Office in Albuquerque, all that was necessary to resell the pulpwood was the preparation of an estimate of the volume remaining on the sale, a portion of which had already been felled and placed in log decks, and the standing portion of which had been estimated as part of the original sale of the Wiggins contract in December of 1998. PA 165. Expending more than $7,700 to make an estimate of decked and standing pulpwood in these circumstances is unreasonable on its face.

Moreover, given the miniscule value of the pulpwood remaining, there was no need for the Forest Service to have incurred anything like the administrative costs that it did in offering the pulpwood for resale. That is, because the appraised value of the pulpwood was less than $10,000 (indeed, substantially below that threshold), defendant was fully authorized to sell this timber by soliciting informal bids from potential purchasers. See 36 C.F.R. § 223.80. PA 179. Indeed, under the formal proceedings used by the Forest Service, only one valid bid was received for the pulpwood on Wiggins (PA 169), a rather predictable result given the lack of competition for Forest Service timber in that part of Arizona. By spending more than 13 times the value of the timber in the process of selling it, defendant hardly mitigated its damages, something which it is required to do. See Thomas Creek Lumber & Log Co. v. United States, 36 Fed.Cl. 220, 247-48 (1996) (stating that "the government, when enforcing a damages clause, has a duty to mitigate such damages" and that "[t]he government cannot charge the contractor for damages which could have been avoided by the government 'with reasonable effort and without undue risk or expense'" (quoting Ketchikan Pulp Co. v. United States, 20 Cl.Ct. 164, 166 (1990)). Obviously

here, the Forest Service could have readily avoided much of the costs of resale and, as such, they are not chargeable to Precision Pine.[15]

F. Defendant Has Used the Wrong Rate of Interest For the U-Bar Sale

Pursuant to contract clause CT4.4 the fixed interest rate applicable to damages on U-Bar is the one set out by the U.S. Department of the Treasury in TFRM 6-8020.20. For the reasons above, for U-Bar the date by which defendant completed its calculation of damages is no earlier than April 28, 2005. As set forth in the Summary of Final Default Damages filed by the defendant in this matter on September 16, 2005 (PA 170), defendant, however, apparently believes that the appropriate date is February 17, 2001 and thus has applied a rate of 6.375% per annum to the principal it deems to be owing. While 6.375% was the applicable rate of interest under the CDA on February 17, 2001, it was not the rate set out in the U.S. Department of the Treasury in TFRM 6-8020.20 either on that date or on April 28, 2005. TFRM 6-8020.20, in fact, indicated the following rates:

| Date | Rate indicated as of that date in TFRM 6-8020.20 |
|---|---|
| February 7, 2001 | 6% |
| April 28, 2005 | 1% |

[15]During the October 20, 2005 status conference, the Court indicated that assessing the reasonableness of the government's effort in reselling the small volume of pulpwood on the Wiggins contract may well require an explanation of what the Forest Service did and why it was necessary. PA 174; accord Order dated October 20, 2005 at paragraph 3 ("The issues [involving resale of the pulpwood on Wiggins] shall be resolved upon briefs to be submitted by the parties and upon declarations to be submitted by the defendant attesting to the factual points essential to its legal argument"). Precision Pine reserves to the right to investigate and challenge such facts as may be provided by defendant.

As such, irrespective of the inappropriate date for the commencement of interest which defendant has used or the incorrectness of amount of principal to which defendant has applied it, defendant's calculation of interest through September 30, 2005 with respect to U-Bar is erroneous and must recalculated at the appropriate rate. In fact, defendant appears to have conceded the point that the rate set out in the U.S. Department of the Treasury in TFRM 6-8020.20 and not the CDA rate used by the Forest Service governs the accumulation of interest, if any, on U-Bar. PA 175-176.

G. Defendant Is Not Entitled to Any Penalty Under the U-Bar Contract

As noted above, the contractual provision pursuant to which defendant may be entitled to penalty on a delinquent debt is C(T)4.41. PA 3-3a. Unlike the other contracts here in issue, the U-Bar sale does not contain C(T)4.41. Indeed, it does not contain any clause pursuant to which the Debt Collection Act was incorporated into the U-Bar contract. This fact notwithstanding, contract clause CT4.4 of the U-Bar contract does indicate that if the contractor breaches his contractual obligation to pay a bill presented to him, the Forest Service will impose interest and "In addition, amounts overdue shall be subject to an additional **6 percent penalty** charge." Such a penalty for breaching the terms of the contract, existing without regard to actual damage, if any, suffered by the Government is, however, unenforceable.[16]

[16]A contract provision which by its terms provides the government with damages for a breach of contract without regard to any actual damages suffered would be unenforceable. See Fred A. Arnold, Inc. v. United States, 18 Cl.Ct. 1, 12-13 (1989) (stating that "there is a . . . long held principle that whenever the . . . amount stipulated in the contract . . . for failure of performance bears no relation to actual damages . . . courts decline to enforce the terms of the stipulation" (internal citations omitted)); see also L & A Jackson Enterprises v. United States, 38 Fed. Cl. 22, 42 (1997) (requiring that "the amount of liquidated damages bear a reasonable

Moreover, CT4.4 of the U-Bar contract contains a provision which stays all remedies (including the Purchaser's obligation to make the payment and the imposition of any penalty) for any period during which a bona fide dispute exists and the Purchaser files and prosecutes an appeal of the contracting officer's decision in accordance with the Contract Disputes Act. Since that is exactly what Precision Pine did after receiving the contracting officers' final decisions, pursuant to contractual provisions drafted by the Forest Service, there is no basis for the assessment of any penalty under the U-Bar contract no matter how it is computed.

## CONCLUSION

Precision Pine respectfully requests that the Court enter an order finding that the amounts, if any, due the Forest Service should have been computed in the manner set forth herein and remanding the matter to the parties for recalculation.

Respectfully submitted,

s/Alan I. Saltman

SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiff

relationship to any actual damages that may be sustained by the breach," (citing Higgs v. United States, 212 Ct.Cl. 146, 151-52 (1976)).

Of Counsel:

Richard W. Goeken
Bryan T. Bunting
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Dated: February 6, 2006