No. 02-131C
(Judge George W. Miller)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PRECISION PINE & TIMBER, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF QUANTUM

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

KATHRYN A. BLEECKER
Assistant Director

DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 307-0277

Attorneys for Defendant

OF COUNSEL:

Lori Polin Jones
Patricia L. Disert
Office of General Counsel
U.S. Department of Agriculture
1400 Independence Ave., S.W.
Washington, D.C. 20250

Dated: March 6, 2006

**TABLE OF CONTENTS**


INTRODUCTION . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . 3

I. Standard Of Review . . . . . . . . . . 3

II. The Total Default Damages Owed Pursuant To CT 9.4 Is Not In Dispute . . . . . . . . . . 4

III. Precision Pine Owes Interest And Penalty Charges In Accordance With The Contracts And The Debt Collection Act . . . . . . . . . . 5

A. Interest And Penalty Charges Begin To Accrue On The Date Of Issue Of The Forest Service's Initial Bill Of Collection . . . . . . . . . . 5

B. The Accrual Of Interest Pursuant To CT 4.41 Does Not Affect The Calculation Of Default Damages . . . . . . . . . . 10

C. In Accordance With The Contracts And The Debt Collection Act, The Forest Service Correctly Used A Fixed Interest Rate Of 6.375 Percent . . . . . . . . . . 11

D. Calculation Of The *Per Annum* Penalty Charge . . . . . . . . . . 14

III. Precision Pine's Contract-Specific Arguments . . . . . . . . . . 15

A. The Forest Service's Recalculation Of Default Damages Correctly Applied The Brookbank Purchaser Credit To The Brookbank Contract . . . . . . . . . . 15

B. The Forest Service Did Not Fail To Mitigate Damages On The Wiggins Contract . . . . . . . . . . 17

C. The Applicable Interest Rate For The U-Bar Contract Is Six Percent . . . . . . . . . . 19

D. Penalty Interest Of Six Percent Per Annum Is Owed On The U-Bar Contract . . . . . . . . . . 20

CONCLUSION . . . . . . . . . . 22

# TABLE OF AUTHORITIES

**Cases:**

Addington Mining, Inc. v. United States,
35 Fed. Cl. 754 (1996) . . . . . . . . . . 21

Amax Land Co. v. Quarterman,
181 F.3d 1356 (D.C. Cir. 1999) . . . . . . . . . . 7, 12-13

Anderson v. Liberty Lobby,
477 U.S. 242 (1986) . . . . . . . . . . 3

Brookfield Constr. Co. v. United States,
661 F.2d 159 (Ct. Cl. 1981) . . . . . . . . . . 13

Capital Development Co. v. United States,
49 Fed. Cl. 178 (2001) . . . . . . . . . . 11

Curtis v. United States,
144 Ct. Cl. 194, 168 F. Supp. 213 (1958),
cert. denied 361 U.S. 843 (1959) . . . . . . . . . . 3

Cuyahoga Metro. Housing Auth. v. United States,
65 Fed. Cl. 534 (2005) . . . . . . . . . . 17

Estee Lauder, Inc. v. L'oreal S.A.,
129 F.3d 588 (Fed. Cir. 1997) . . . . . . . . . . 17

Forman v. United States,
329 F.3d 837 (Fed. Cir. 2003) . . . . . . . . . . 3

Fred A. Arnold, Inc. v. United States,
18 Cl. Ct. 1, 12 (1989) . . . . . . . . . . 20

Gevyn Construction Corp. v. United States,
225 Ct. Cl. 580, 583 (1980) . . . . . . . . . . 22

Harris v. Dep't of Veterans Affairs,
142 F.3d 1463 (Fed. Cir. 1998) . . . . . . . . . . 5

ITT Arctic Servs., Inc. v. United States,
207 Ct. Cl. 743, 524 F.2d 680 (1975) . . . . . . . . . . 22

International Transducer Corp. v. United States,
30 Fed. Cl. 522 (1994),
aff'd, 48 F.3d 1235 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

L & A Jackson Enterprises v. United States,
38 Fed. Cl. 22 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

McAbee Construction, Inc. v. United States,
97 F.3d 1431 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 12

McDonnell Douglas Corp. v. United States,
229 Ct. Cl. 323, 670 F.2d 156 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21-22

Precision Pine & Timber, Inc. v. United States,
62 Fed. Cl. 635 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Seaboard Lumber Co. v. United States,
48 Fed. Cl. 814 (2001),
aff'd 308 F.3d 1283 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Sharman Co. v. United States,
3 F.3d 1564 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

T.C. Bateson Constr. Co. v. United States,
162 Ct. Cl. 145, 319 F.2d 135 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Westchester Fire Ins. Co. v. United States,
52 Fed. Cl. 567 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

**Statutes and Regulations:**

7 C.F.R. § 3.34(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20-21

36 C.F.R. 223.42 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

65 Fed. Reg. 82457-01 (Dec. 28, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

65 Fed. Reg. 65040-03 (Oct. 31, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 19

31 U.S.C. § 3701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

31 U.S.C. § 3717 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

41 U.S.C. § 611 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-131C |
| v. | ) | (Judge George W. Miller) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

# DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF QUANTUM

## INTRODUCTION

In October 2004, the Court ruled that plaintiff, Precision Pine & Timber, Inc. ("Precision Pine"), breached 12 timber and multi-product sale contracts awarded by the United States Forest Service and, accordingly, granted the United States' motion for summary judgment as to liability. The sole issue that remains to be resolved in this action is the quantum of damages that Precision Pine owes to the United States.

As explained below, pursuant to the terms of the respective contracts and the Debt Collection Act, Precision Pine owes default damages in the amount of $427,994.19, plus interest and penalties. Therefore, the Court should deny Precision Pine's motion for summary judgment and grant the United States' cross-motion for summary judgment on quantum.

## STATEMENT OF THE CASE

This action concerns 12 contracts that were awarded to Precision Pine between August 1992 and December 1998: (1) the O.D. Ridge timber sale; (2) the Brookbank multi-product sale; (3) Jersey Horse timber sale; (4) the Saginaw-Kennedy multi-product sale; (5) the Brann multi-product sale; (6) the U-Bar timber sale; (7) the Monument multi-product sale; (8) the

Manaco multi-product sale; (9) the Hutch-Boondock multi-product sale; (10) the Gentry multi-product sale; (11) the Wiggins multi-product sale; and (12) the Lily multi-product sale. Precision Pine & Timber, Inc. v. United States, 62 Fed. Cl. 635, 636-37 (2004).

In 2000, Precision Pine failed to comply with contractual bonding requirements. Id. at 637-38. Accordingly, on January 9, 2001, the respective contracts were terminated for default. Id. at 638; PA5-6. In February and March 2001, Forest Service contracting officers issued final decisions assessing damages as a result of the breach of Precision Pine's contracts as follows: (1) O.D. Ridge – $148,845.38; (2) Brookbank – $0.00; (3) Jersey Horse – $9,035.47; (4) Saginaw-Kennedy – $101,642.20; (5) Brann – $36,888.97; (6) U-Bar – $215,691.04; (7) Monument – $81,477.88; (8) Manaco – $0.00; (9) Hutch-Boondock – $2,278.72; (10) Gentry – $92,236.78; (11) Wiggins – $13,016.93; (12) Lily – $66,512.35. See PA8-123.[1] Bills of collection were provided to Precision Pine at that time. See PA8, 37, 83, 107, 120. With the exception of the O.D. Ridge timber sale contract, Precision Pine did not pay the respective bills of collection. See PA43, 158.

On October 29, 2004, this Court granted the United States' motion for summary judgment on its counterclaim with respect to liability and remanded the action to the Forest Service with instructions to recalculate the default damages owed by Precision Pine. Precision Pine, 62 Fed. Cl. at 653, 656. In accordance with the Court's order, the United States filed default damage calculations in April 2005. The United States revised and updated certain aspects of the calculations in July 2005 and September 2005.

[1] "PA__" refers to the appendix filed in conjunction with plaintiff's motion for summary judgment. "DA__" refers to the appendix filed with this response and cross-motion.

## ARGUMENT

### I. Standard of Review

The familiar standard for summary judgment warrants only a brief restatement. Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); Forman v. United States, 329 F.3d 837, 841 (Fed. Cir. 2003) (citing Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986)). "The focus in determining whether summary judgment is appropriate is the lack of disputed material facts. A material fact has been defined as a fact that will make a difference in the outcome of a case." Curtis v. United States, 144 Ct. Cl. 194, 199, 168 F. Supp. 213, 216 (1958), cert. denied 361 U.S. 843 (1959). Put differently, only disputes over facts that would affect the outcome of a claim or defense will properly prevent summary judgment. See Anderson, 477 U.S. at 248.

In this action, on September 20, 2005, Precision Pine filed objections to the Forest Service's recalculation of default damages. See Statement of Pl.'s Position With Respect to the Government's Recalculation of Damages (Sept. 20, 2005) (docket no. 64). The Court subsequently ordered Precision Pine to clarify its objections. See Order at 1 (Sept. 28, 2005) (docket no. 66) (requiring "a detailed explanation"). Accordingly, on October 11, 2005, Precision Pine filed revised objections to the Forest Service's default damages calculations. Revised Statement of Pl.'s Position With Respect to the Government's Recalculation of Damages (Oct. 11, 2005) (docket no. 68).

In these filings and a subsequent status conference, the only pertinent factual issues identified by Precision Pine concerned the manner in which the Forest Service conducted post-

termination appraisals.[2] See Order at 1-2 (Oct. 10, 2005) (docket no. 71). On January 10, 2006, the United States filed a declaration that addressed each of the issues raised by Precision Pine. Declaration of David P. Harris (Jan. 10, 2006) (docket no. 79). During a subsequent status conference, Precision Pine agreed that previously-raised factual issues had been satisfactorily addressed. See Order at 1 (Jan. 13, 2006) (docket no. 82). Accordingly, this matter is suitable for adjudication on the parties' cross-motions for summary judgment.

## II. The Total Damages Owed Pursuant To CT 9.4 Is Not In Dispute

On October, 29, 2004, the Court remanded the action to the Forest Service to recalculate default damages pursuant to CT 9.4. Id. at 656. In accordance with the Court's order, the Forest Service recalculated the amount owed by Precision Pine (excluding interest and penalty charges) as follows:

| Contract | Amount Owed |
|---|---|
| Brann | $25,994.77 |
| Brookbank | $0.00 |
| Gentry | $35,029.56 |
| Hutch-Boondock | $2,278.72 |
| Jersey Horse | $17,431.60 |
| Lily | $59,761.05 |
| Manaco | $0.00 |
| Monument | $70,845.50 |
| O.D. Ridge | $0.00 |

---

[2] With respect to the Forest Service's alleged failure to mitigate damages on the Wiggins contract, the Court stated that the United States should address any issues of fact using declarations "attesting to factual points essential to its legal arguments." Order at 2 (Oct. 10, 2005). The United States has included such a declaration in the appendix to this brief.

| | |
|---|---|
| Saginaw-Kennedy | $83,157.15 |
| U-Bar | $124,367.14 |
| Wiggins | $9,128.70 |
| **TOTAL** | **$427,994.19** |

PA127, 131, 138, 142, 146, 150, 154, 158, 161, 164, 168; DA32 (Gentry). In its motion for summary judgment on quantum, Precision Pine does not contend that the Forest Service's calculations were not performed in accordance with contract clause CT 9.4.[3]

## III. Precision Pine Owes Interest And Penalty Charges In Accordance With The Contracts And The Debt Collection Act

### A. Interest And Penalty Charges Begin To Accrue On The Date Of Issue Of The Forest Service's Initial Bill Of Collection

Bills of collection for default damages were provided to Precision Pine in February and March 2001. See PA8, 37, 83, 107. Precision Pine nevertheless contends that interest on the default damages should not begin to accrue until September 16, 2005. Pl.'s Mot. at 10. This contention disregards the operative contract provision and governing law.

It is black letter law that contract interpretation begins with the "plain language" of the agreement. E.g., McAbee Construction, Inc. v. United States, 97 F.3d 1431, 1435 (Fed. Cir. 1996). Courts "give the words of the agreement their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning." Harris v. Dep't of Veterans Affairs, 142 F.3d 1463, 1467 (Fed. Cir. 1998).

---

[3] Precision Pine has asserted objections to interest and penalty charges, alleged a failure to mitigate damages with respect to the Wiggins contract, and raised several other collateral issues. Each of Precision Pine's objections are addressed below.

Here, the contracts are absolutely clear that interest runs from the date of issue of the initial bill of collection. With the exception of the U-Bar contract, which is discussed below, the contracts each provide:

> Payments are due and payable on the date of issue as indicated on the Bill of Collection. . . . Pursuant to the Debt Collection Act, as amended (31 U.S.C. 3701 et seq.), if payment is not received by the Forest Service within 15 days of the date of issue as indicated on the Bill of Collection:
>
> 1. Simple interest will be assessed at the higher of the U.S. Treasury current value of funds rate, as published by the Secretary of the Treasury in the Federal Register, or the rate established by the Secretary of the Treasury under section 12 of the Contract Disputes Act of 1978 (41 U.S.C. 611). Interest will begin to accrue as of the date of issue as indicated on the initial Bill of Collection.
>
> * * *
>
> 3. A penalty charge of 6 per cent per annum will be assessed on any portion of a debt delinquent more than 90 days. This penalty charge will be in addition to the interest and administrative charges under paragraphs (1) and (2). Such penalty charge shall accrue from the date of issue as indicated on the Bill of Collection and shall be assessed on all outstanding amounts including interest and administrative costs assessed under paragraphs (1) and (2).

See DA17-18, 22-23, 36-38. In accordance with CT 4.41, the Forest Service has calculated interest from the date of issue as indicated on the initial bill of collection. DA1-7, 40. Precision Pine's objection about the accrual of interest is, therefore, without merit.

Precision Pine argues that the bills of collection issued by the Forest Service should be considered "a nullity" because the Court ultimately directed the Forest Service to recalculate default damages. See Pl.'s Mot. at 7-9. Precision Pine's argument is faulty for several reasons.

First, Precision Pine's argument is contrary to the Debt Collection Act. 31 U.S.C. § 3701 et seq. The Debt Collection Act directs that interest be charged on any "outstanding debt on a United States government claim." 31 U.S.C. § 3717(a)(1); see also Amax Land Co. v. Quarterman, 181 F.3d 1356, 1368 (D.C. Cir. 1999) ("31 U.S.C. 3717(a)(1) requires agencies to assess interest on overdue obligations"). For purposes of the Debt Collection Act, "the term 'claim' or 'debt' means any amount of funds or property that has been determined by an appropriate official of the Federal Government to be owed to the United States by a person, organization, or entity other than another Federal agency." 31 U.S.C. § 3701(b)(1) (emphasis added). Here, Precision Pine's contracts were terminated for default on January 9, 2001. PA5-6; Precision Pine, 62 Fed. Cl. at 638. Subsequently, Forest Service contracting officers assessed default damages and issued bills of collection. See PA8-123. Given that the amount owed was determined by "an appropriate official of the Federal Government," the assessed damages constitute a "debt" upon which the accrual of interest at a rate no less than "the average investment rate for the Treasury tax and loan accounts" is required by statute.[4] 31 U.S.C. § 3717(a)(1).

Second, the interest and penalty charges owed by Precision Pine result from the company's own decision not to pay the amount billed. Upon receiving bills of collection, a contractor such as Precision Pine can (at least as practical matter) chose between two routes: (1) it can pay the bills and assert a Contract Disputes Act ("CDA") claim against the Forest

[4] Precision Pine asserts that ignoring the Forest Service bills of collection was "fully justified" because they were not a "valid debt" for purposes of the Debt Collection Act. Pl.'s Mot. at 8. Because the Debt Collection Act definition of "debt" simply requires a determination by an appropriate Federal official, Precision Pine is mistaken. See 31 U.S.C. § 3701(b)(1).

Service for any overpayment; or (2) it can refuse to pay and require the Forest Service to bring a claim for the amount due. For present purposes, the significance of this choice concerns the payment of interest. By following the first route, a contractor can be certain that it will owe no interest or penalty charges and, to the extent there is an overpayment, the contractor will be paid interest pursuant to the CDA. Westchester Fire Ins. Co. v. United States, 52 Fed. Cl. 567, 586 (2002); see also 41 U.S.C. § 611. A contractor that chooses the second route will owe interest and penalties from the date the bill of collection was issued. Westchester, 52 Fed. Cl. at 586; see also 31 U.S.C. § 3717. Precision Pine decided not to pay the bills of collection received from the Forest Service and now faces the consequences of that decision.

Third, the accrual of interest as of the date of the respective bills of collection is consistent with the way that this Court routinely handles CDA claims. Innumerable contractors have asserted claims against the Government that succeeded only in part. In this common situation, CDA interest is not barred because the contractor's claimed damages were not accepted by the Court *in toto*. To the contrary, CDA interest is paid from the date of the claim on whatever amount the contractor ultimately is awarded.[5] See, e.g., 41 U.S.C. § 611 (providing interest on "amounts found due contractors on claims"). The same principle applies where, as here, a Government claim is at issue. Seaboard Lumber Co. v. United States, 48 Fed. Cl. 814, 836 (2001) ("The fact that the amount has been reduced in litigation does not mean that it would

---

[5] Precision Pine's repeated assertion that the bills of collection "vastly overstated damages" is inaccurate. There was no change to the amount billed on several contracts. See Pl.'s Mot. at 4. Moreover, Precision Pine fails to acknowledge that the March 1, 2001 bill of collection for the O.D. Ridge contract was not for CT 9.4 default damages, but was for $148,845 in timber that Precision Pine previously had cut and removed. PA43. Over half of the "reduction" in assessed damages occurred because Precision Pine paid this bill of collection in full. See PA158.

be unfair to assess interest on the balance . . . . We hold that interest should be awarded to the government."), aff'd 308 F.3d 1283 (Fed. Cir. 2003); Westchester, 52 Fed. Cl. at 585-87 (awarding interest on a Government claim where less than the amount awarded by the contracting officer's final decision was ultimately recovered).

Precision Pine also argues that it should not have to pay interest on the unpaid default damages because the United States "cause[d] the resolution of this matter to be greatly extended." Pl.'s Br. at 10. A cursory review of the docket shows that Precision Pine's argument is without merit. The Forest Service terminated Precision Pine's contracts for default on January 9, 2001. Precision Pine, 62 Fed. Cl. at 638. The contracting officers promptly assessed damages and issued bills of collection. PA8, 37, 83, 107, 120. Precision Pine, on the other hand, did not file this action until nearly a year after receiving the contracting officers' final decisions. See Complaint (Feb. 15, 2002) (docket no. 1). After filing, Precision Pine repeatedly requested to stay this action. See Pl.'s Mot. to Stay Proceedings (June 11, 2002) (docket no. 10); Pl.'s Mot. to Reinstate Stay of Proceedings (Nov. 8, 2002) (docket no. 12). And once the stays were lifted, Precision Pine filed a motion to dismiss the very suit that it had filed. See Pl.'s Mot. to Dismiss (Mar. 25, 2004) (docket no. 33). The suggestion that the United States has acted to delay the resolution of this action – an action in which Precision Pine must pay damages to the United States – is contrary to both logic and the record.

Precision Pine cites two board of contract appeals decisions that purportedly support its argument. See Pl.'s Mot. at 10 (citing Baker & Ford Co., GSBCA No. 5723, 81-1 BCA ¶ 14,918 (1981), and Mil-Pak Co., GSBCA No. 7332, 84-3 BCA ¶ 17,555 (1984)). However, both board decisions concern delay caused by a contractor that did not present a perfected claim to the

contracting officer. Here, there was no delay in asserting a claim. In fact, the Forest Service contracting officers asserted Government claims for default damages within two months of the default terminations. PA8, 37, 83, 107, 120. Moreover, under the terms of the contracts, no interest accrues until default damages are assessed and a bill of collection presented. DA37-38 (quoting CT 4.41). Any delay by the Forest Service in asserting a claim would, therefore, work to the purchaser's benefit.

### B. The Accrual Of Interest Pursuant To CT 4.41 Does Not Affect The Calculation Of Default Damages

Precision Pine argues that "interest calculated under CT 9.4(d)" should not be available if interest under CT 4.41 runs from the date of the initial bill of collection.[6] Pl.'s Mot. at 12. Precision Pine's argument demonstrates a basic misunderstanding of the distinct purposes CT 4.41 and CT 9.4. On one hand, CT 9.4 establishes the "principal" owed as damages for the purchaser's default. See Precision Pine, 62 Fed. Cl. at 653. On the other hand, CT 4.41 requires that the purchaser pay interest on the "principal" where timely payment is not made. The mere fact that interest must be paid on late payments provides no basis to disregard the contractually-established damages formula.

Precision Pine nevertheless suggests that complying with both CT 4.41 and CT 9.4 would provide the Forest Service a "double recovery." Pl.'s Mot. at 12. Precision Pine is incorrect. In CT 9.4, the resale damages formula deducts proceeds from a post-termination resale (i.e., "resale value") from the amount that would have been earned on the original sale (i.e., "current contract

[6] Precision Pine also argues that the calculations in CT 9.4(d) should use a variable interest rate. The language of CT 9.4(d), like the language in CT 4.41, does not provide for a variable interest rate. To the contrary, CT 9.4(d) specifies "the rate" that is to be used to increase current contract value to the midpoint of the new timber sale contract.

value"). See DA11-12, 19, 24-25, 33-34. However, payments by a new purchaser will occur months (or years) later than payments under the original contract. As a result, in order to make an apples-to-apples comparison of the "resale value" and the "current contract value," an adjustment to take into account the time value of money is required. Clause CT 9.4(d) provides just such an adjustment by increasing the "current contract value" (using an appropriate interest rate) to the midpoint of the new contract. Simply put, CT 9.4(d) is necessary to accurately establish the "principal" that is owed as default damages. On the other hand, CT 4.41 simply charges interest pursuant to the Debt Collection Act in the event of a late payment by the original purchaser. Consequently, CT 4.41 and CT 9.4(d) do not effect a "double recovery."

Precision Pine points the Court to Capital Development Co. v. United States, 49 Fed. Cl. 178 (2001). Capital Development, like this action, concerned a purchaser's breach of a number of timber sale contracts. However, unlike this case, the contracts in Capital Development did not contain CT 4.41. See id. at 186. Further, the Court failed to recognize that the purpose of CT 9.4(d) is to allow a meaningful comparison of the current contract value and the resale value. See id. at 186-87. Consequently, Capital Development does not, as Precision Pine argues, provide a basis for disregarding either CT 9.4(d) or CT 4.41.

### C. In Accordance With The Contracts And The Debt Collection Act, The Forest Service Correctly Used A Fixed Interest Rate Of 6.375 Percent

With the exception of the U-Bar timber sale contract, which is discussed separately below, each contract states:

> Pursuant to the Debt Collection Act, as amended (31 U.S.C. 3701 et seq.), . . . [s]imple interest will be assessed at the higher of the U.S. Treasury current value of funds rate, as published by the Secretary of the Treasury in the Federal Register, or the rate

> established by the Secretary of the Treasury under section 12 of the Contract Disputes Act of 1978 (41 U.S.C. 611).

DA37-38 (quoting CT 4.41). The CDA rate was higher than the current value of funds ("CVF") rate when the bills of collection were issued in early 2001. See 65 Fed. Reg. 82457-01 (Dec. 28, 2000) (CDA rate of 6.375 percent); 65 Fed. Reg. 65040-03 (Oct. 31, 2000) (CVF rate of 6.0 percent). Accordingly, pursuant to CT 4.41, Forest Service calculations apply a 6.375 percent interest rate to the unpaid balance owed by Precision Pine. See DA1.

Precision Pine argues that the Forest Service erred by using a fixed interest rate in its calculations. Pl.'s Mot.'s at 13-15. Precision Pine is mistaken.

As noted above, the starting point for contract interpretation is the "plain language" of the agreement. See, e.g., McAbee Construction, 97 F.3d at 1435. Contract clause CT 4.41 does not explicitly establish a variable interest rate. To the contrary, it refers to the current value of funds rate and the CDA rate. The reference to a single "rate" – not variable "rates" – demonstrates that a fixed rate of interest should be charged. Additionally, the contracts expressly state that interest is being charged "pursuant to the Debt Collection Act." DA37 (quoting CT 4.41). The Debt Collection Act, in turn, states that "the rate of interest" charged "is the rate in effect on the date from which interest begins to accrue" and "remains fixed for the duration of the indebtedness." 31 U.S.C. § 3717 (c). Thus, interest "pursuant to the Debt Collection Act" accrues at a fixed rate. See Amax Land Company v. Quarterman, 181 F.3d 1356, 1359 (D.C. Cir. 1999) ("The Debt Collection Act plainly forbids the utilization of shifting interest rates.").

Precision Pine argues that by referencing the CDA interest rate, CT 4.41 implicitly provides for variable interest. Pl.'s Mot. at 15-16. Precision Pine relies on a single case holding

that interest pursuant to the Contract Disputes Act "will rise and fall with any changes [to the CDA rate] in effect for subsequent six month periods." Brookfield Constr. Co. v. United States, 661 F.2d 159, 170 (Ct. Cl. 1981). Precision Pine's reference to Brookfield is misplaced. Brookfield discussed the accrual of interest pursuant to the CDA. Here, on the other hand, interest on the outstanding debt accrues "pursuant to the Debt Collection Act." See DA37. As a result, the rate of interest is "fixed" as of "the date that interest begins to accrue." 31 U.S.C. § 3717(c).

The decision of the Court of Appeals for the District of Columbia Circuit in Amax Land Company v. Quarterman, 181 F.3d 1356 (D.C. Cir. 1999), confirms this conclusion. Amax concerned Mineral Management Service regulations that charged interest on late coal lease payments at the rate used by the IRS for the underpayment of taxes. See id. at 1360. The "IRS rate" generally is higher than the current value of funds rate and, additionally, is a variable interest rate. Id. Amax challenged the use of the IRS rate as contrary to the Debt Collection Act. The D.C. Circuit first held that the Debt Collection Act "provides authority for an agency to decide what rate is compensatory or even to impose a greater-than-compensatory rate." Id. at 1363. Consequently, the current value of funds rate merely "sets a floor" on the interest to be charged on overdue obligations. Id. at 1368. An agency is free under the Debt Collection Act to select a higher interest rate. Id. However, the rate selected must "remain fixed for the duration of the indebtedness." Id. Consequently, variable interest rates are barred by the Debt Collection Act. Id.

Precision Pine observes in a footnote that section 3717 does not apply if a "contract . . . explicitly fixes the interest or charges." Pl.'s Mot. at 14 n.9 (citing 31 U.S.C. § 3717(g)). Of

course, CT 4.41 neither "explicitly" opts out of the Debt Collection Act, nor "explicitly" establishes a variable interest rate. Consequently, Precision Pine's reference to section 3717(g) is inapposite.

Lastly, Precision Pine notes that clause CT 4.4 (1/84) in the U-Bar contract states that the "interest rate shall remain unchanged until those bills have been paid or settled." Pl.'s Mot. at 15, 17. Precision Pine's reference to a different provision in a different contract sheds no light on the meaning of CT 4.41. Furthermore, the two contract clauses simply take a different approach to reach the same result. CT 4.4 (1/84), which makes no reference to the Debt Collection Act, states that interest will accrue at a fixed interest rate. See DA9. By contrast, CT 4.41 states that interest is being charged "pursuant to the Debt Collection Act." See DA37. Because interest pursuant to the Debt Collection Act accrues at a fixed rate, 31 U.S.C. § 3717(c), any additional statement to the effect that the interest rate is fixed would be superfluous.

**D. Calculation Of The *Per Annum* Penalty Charge**

The contracts each assess a "penalty charge of 6 percent per annum." DA37-38 (quoting CT 4.41); DA9 (U-Bar). The penalty charge applies to "all outstanding amounts including interest and administrative costs." Id.

Precision Pine argues that the Forest Service's penalty calculation is incorrect because penalty interest is assessed on the "final total" of outstanding debt. Pl.'s Mot. at 17-19. As explained during the October 10, 2005 status conference, we agree. The respective contracts provide for a penalty charge of 6 percent per annum. DA9, 36-39. Accordingly, a 6 percent simple interest penalty should be assessed on the outstanding debt (i.e., "all outstanding amounts including interest and administrative costs") every 12 months. See id.

Precision Pine has failed to include corrected damages calculations with its brief.[7] Consequently, we have attached to this motion restated interest and penalty calculations that assess a 6 percent per annum penalty on the outstanding debt balance. DA1-7.

## IV. Precision Pine's Contract-Specific Arguments

### A. The Forest Service's Recalculation Of Default Damages Correctly Applied The Brookbank Purchaser Credit To The Brookbank Contract

At the time of termination, Precision Pine had an effective purchaser credit of $2,752.54 on the Brookbank contract. See PA81. The purchaser credit was taken into account in the recalculations of damages on the Brookbank contract. PA131. However, it did not affect the conclusion that no default damages were owed. See DA131. As a result, Precision Pine now argues that the Forest Service should have transferred the Brookbank purchaser credit to reduce the default damages on some other timber sale contract. See Pl.'s Mot. at 20 (suggesting a transfer to the Gentry, Jersey Horse or Jersey Horse II contract). Precision Pine's argument is without merit.

Brookbank contract clause CT 4.211 governs transfers of effective purchaser credit. It states, in pertinent part, "[u]pon Forest Service approval of Purchaser's written request, unused Effective Purchaser Credit earned after December 16, 1975, shall be transferred from this contract to Purchaser's other timber sale contracts within the same National Forest." DA15 (emphasis added). Thus, the Forest Service was not authorized, much less required, to transfer

[7] Precision Pine asks the Court to remand the case "to the parties" for a recalculation of damages. Pl.'s Mot. at 26. To the extent that Precision Pine disagrees with the Forest Service's interest and penalty calculations, it should have submitted corrected calculations with its brief. Precision Pine's proposal for a remand, followed by a second round of proposed calculations and objections, would be cumbersome and inefficient, would further delay the resolution of this case, and should be denied.

the effective purchaser credit on Brookbank without a "written request" from Precision Pine. Because Precision Pine did not request a transfer of the purchaser credit on the Brookbank sale prior to the contract's termination, the Forest Service's April 2005 damages calculations are correct.

Precision Pine has belatedly sought to transfer the Brookbank purchaser credit. Specifically, in an October 26, 2005 letter, Precision Pine asked the Forest Service to apply the Brookbank purchaser credit to either the Gentry timber sale or Jersey Horse II timber sale. PA180. This request – coming years after the contract was terminated for default, default damages assessed (and reassessed), and the contract administratively closed – is untimely and impermissible.[8] See DA45. However, the Court need not reach this issue. As explained above, it is clear that the Forest Service's April 2005 recalculation of default damages properly applied the Brookbank purchaser credit to the Brookbank contract.[9] And the propriety of the Forest Service's recalculation of default damages is the only issue that remains before the Court in this action.

---

[8] Even if the untimeliness of Precision Pine's request were put aside, Forest Service regulations would preclude a transfer to pay damages on a contract that was terminated for default. DA46; 36 C.F.R. § 223.42 (2005) ("Approval for transfer shall not be granted for . . . claims for damages due the United States."). In arguing otherwise, Precision Pine simply adds bracketed text to make it look as if the regulation supports Precision Pine's interpretation. See Pl.'s Mot. at 19-20.

[9] The Court is not in a position to assess the viability of a request to transfer purchaser credit to the Jersey Horse II contract for the additional reason that the Jersey Horse II contract is not at issue in this action. As a result, the ability of the contract to accept the transfer of purchaser credit is unclear. See DA46. If the Court does not reject Precision Pine's purchaser credit argument outright, the Court should allow the Forest Service to address this issue in the first instance. The Forest Service cannot act, however, while the purchaser credit issue remains pending in this action. See Sharman Co. v. United States, 3 F.3d 1564, 1571-72 (Fed. Cir. 1993) (the contracting officer lacks authority to address matters that are "the subject of litigation").

**B. The Forest Service Did Not Fail To Mitigate Damages On The Wiggins Contract**

Precision Pine argues that the Forest Service failed to mitigate damages in connection with the Wiggins multi-product sale contract. Pl.'s Mot. at 22-24. The party alleging a failure to mitigate bears the burden of proof. E.g., T.C. Bateson Constr. Co. v. United States, 162 Ct. Cl. 145, 319 F.2d 135, 160 (1963); Cuyahoga Metro. Housing Auth. v. United States, 65 Fed. Cl. 534, 546-47 (2005). In conjunction with its motion, Precision Pine fails to present declarations, documents or other evidence that establish a failure to mitigate damages by the Forest Service. Pl.'s Mot. at 22-24 (citing only the calculation itself); see also Estee Lauder, Inc. v. L'oreal S.A., 129 F.3d 588, 595 (Fed. Cir. 1997) ("arguments of counsel cannot take the place of evidence lacking in the record"). For this reason alone, Precision Pine's argument should be rejected.

Furthermore, "[t]he rule of mitigation of damages may not be invoked by a contract breaker as a basis for hypercritical examination of the conduct of the injured party, or merely for the purpose of showing that the injured person might have taken steps which seemed wiser or would have been more advantageous to the defaulter." Cuyahoga Metro. Housing Auth. v. United States, 65 Fed. Cl. 534, 546-47 (2005). Consequently, even if the Court were to entertain usupported arguments of counsel, Precision Pine has failed to establish a breach of the duty to mitigate.

Precision Pine's principal objection is that the Forest Service spent approximately $7,700 to reappraise the Wiggins multi-product sale following Precision Pine's default. Pl.'s Mot. at 22-23. Precision Pine ignores that the terms of the Wiggins contract required the Forest Service to conduct a reappraisal of remaining timber. DA43; DA24-25 (CT 9.4) (stating that the "Forest Service shall appraise remaining Included Timber" using "the standard Forest Service method in

use at the time"). The Forest Service complied with this contractual requirement by performing a post-termination appraisal in accordance with the standard Forest Service method in use at the time. PA68; see also DA43-45. Precision Pine's complaint that the Forest Service took the very steps required by the contract is baseless.[10]

Furthermore, much of the cost incurred by the Forest Service was due to Precision Pine's failure to harvest the Wiggins sale in a workmanlike manner.[11] When the contract was terminated, the Forest Service discovered the sale area in a state of disarray. It turned out that Precision Pine had "high-graded" the sale (i.e., it had removed only large diameter material), left standing timber scattered throughout the sale area, and failed to remove large decks of cut material. See PA68; DA43-44. This increased the time and effort that was necessary to recruise and remark the sale area. See DA43-44. Precision Pine should not be heard to complain about the Forest Service's failure to mitigate where the costs were the result of Precision Pine's own poor harvesting practices.

Precision Pine also objects that the Forest Service incurred "administrative costs" in offering timber for resale. Pl.'s Mot. at 23-24. Precision Pine does not contend that choosing to resell uncut timber on the Wiggins sale was itself a failure to mitigate. Rather, according to Precision Pine, the Forest Service should have used "informal bids" for the resale. Pl.'s Mot.

---

[10] Precision Pine appears to argue that the Forest Service should not have conducted a post-termination appraisal because only low-value trees (roundwood) remained to be cut. Pl.'s Mot. at 23. This suggests that the result of the appraisal should somehow have been divined without performing the appraisal. Of course, it was only through the contractually-required appraisal that the Forest Service determined the volume and quality of remaining timber.

[11] While the value of the timber remaining on the Wiggins sale was relatively low, Precision Pine left uncut a substantial volume of roundwood (991 ccf). PA68. This volume would be enough to fill approximately 250 logging trucks. DA27-28.

at 23 (citing 36 C.F.R. § 223.80). Forest Service policy is to use the same method for a resale as for the original sale. DA45; see also Forest Service Handbook 2409.18 § 56.75. This policy is equitable in that it helps ensure that the original purchaser is not adversely affected by the process used to effectuate the resale. Furthermore, the informal bid process would have resulted in virtually no reduction in the costs charged to Precision Pine. For instance, no savings would have been realized with respect to appraisal, prospectus and contract preparation costs. DA45. The only potential benefit is the elimination of advertising in a local newspaper. DA45. And this advertising cost is *de minimus*. In the case of the Wiggins resale, mailing costs, copying costs, and advertising costs totaled only $100.00. PA166; DA45.

In sum, the Forest Service acted reasonably by conducting the Wiggins resale in accordance with the Wiggins contract and applicable Forest Service regulations. Precision Pine has, therefore, failed to establish a failure to mitigate damages.

**C. The Applicable Interest Rate For The U-Bar Contract Is Six Percent**

Precision Pine asserts that interest rate for the U-Bar contract on February 21, 2001 was 6.0 percent.[12] See Pl.'s Mot. at 24. As explained during the October 10, 2005 status conference, we agree that 6.0 percent is the correct interest rate. See 65 Fed. Reg. 65040-03 (Oct. 31, 2000) (6.0 percent). Accordingly, the restated calculations attached to this motion use a 6.0 percent interest rate for the U-Bar contract. See DA1-7.

---

[12] Precision Pine also asserts that the rate set out in "TFRM 6-8020.20" on April 28, 2005 was 1 percent. Pl.'s Mot. at 24. Precision Pine provides no evidence in support of this statement, which we have been unable to verify. In any event, as explained above, interest begins to accrue on the date of the Forest Service's initial bill of collection. See section III.A., supra. For U-Bar, that date is February 17, 2001. PA18.

**D. <u>Penalty Interest Of Six Percent Per Annum Is Owed On The U-Bar Contract</u>**

The U-Bar contract specifically states that a 6 percent penalty will be charged on amounts overdue by more than 90 days. DA9. Precision Pine would, once again, have the Court disregard the contract's plain language. Pl.'s Br. at 25-26. Precision Pine provides no valid reason to do so.

Precision Pine's principal argument is that the penalty charge in the U-Bar contract is legally unenforceable. Pl.'s Br. at 25. Not only does Precision Pine ignore that the Debt Collection Act expressly authorizes a 6 percent penalty on overdue debt, 31 U.S.C. § 3717(e), the penalty in the U-Bar contract is <u>required</u> by Department of Agriculture regulations. 7 C.F.R. § 3.34(a)(2) ("Agencies will assess a penalty of six percent a year on any unpaid debt balance delinquent for more than 90 days."); <u>see also</u> 7 C.F.R. § 3.34(a) (requiring the Forest Service to "attempt to collect interest, penalties and administrative costs on debts owed to the United States.").

Precision Pine cites no authority for the proposition that statutorily-authorized penalty interest is unenforceable. The only two cases cited by Precision Pine are relegated to a footnote, <u>see</u> Pl.'s Br. at 25 n.16, make no reference the Debt Collection Act, and fail to address the recovery of penalty interest. In fact, far from supporting Precision Pine's position, the cases require contractors to pay liquidated damages to the Government. <u>See</u> <u>L & A Jackson Enterprises v. United States</u>, 38 Fed. Cl. 22, 41, 44 (1997) (affirming the Government's assessment of liquidated damages); <u>Fred A. Arnold, Inc. v. United States</u>, 18 Cl. Ct. 1, 12 (1989) (reversing a board decision that failed to award damages pursuant to a liquidated damages clause). Moreover, this Court has held that a six percent penalty on overdue debt is reasonable

and enforceable. Addington Mining, Inc. v. United States, 35 Fed. Cl. 754, 759 (1996). Simply put, Precision Pine has provided no basis to conclude that it does not owe penalty interest in accordance with the terms of the U-Bar contract.

As a fall back position, Precision Pine argues that CT 4.4 stays all remedies, including the accrual of 6 percent penalty interest, during the period when a bona fide CDA claim is pending. Pl.'s Mot. at 26. Precision Pine's two-sentence argument conspicuously omits the actual contract language. This is hardly surprisingly as the contract language rebuts Precision Pine's argument.

Clause CT 4.4 of the U-Bar contract provides:

> Forest Service remedies for Purchaser's failure to pay amounts due, except for the accrual of interest, suspension of all or part of Purchaser's Operation and Administrative offset, shall be stayed for so long as (a) a bona fide dispute exists as to Purchaser's failure to make such payment, and (b) Purchaser files and timely prosecutes a timely claim under the Contract Disputes Act of 1978.

DA9 (emphasis added). Thus, while CT 4.4 stays certain remedies for non-payment (e.g., a collection action), it specifically excludes from such a stay the accrual of penalty interest.

Precision Pine may respond that the exception for "the accrual of interest" should not include penalty interest. However, the contractual language provides no basis to distinguish between types of interest. Furthermore, such a reading of CT 4.4 would be contrary to Department of Agriculture regulations that require penalty interest on overdue debts. See 7 C.F.R. § 3.34(a)(2). The Court should not construe CT 4.4 in a way that would result in a conflict with applicable agency regulations. See International Transducer Corp. v. United States, 30 Fed. Cl. 522, 529 (1994) (contract provisions must "be read in light of the regulations under which they are administered"), aff'd, 48 F.3d 1235 (Fed. Cir. 1995); McDonnell Douglas Corp.

v. United States, 229 Ct. Cl. 323, 327, 670 F.2d 156, 160 (1982) ("contract provisions are to be read, if fairly possible, to accord with" implementing regulations); Gevyn Construction Corp. v. United States, 225 Ct. Cl. 580, 583 (1980) (contract provisions must be interpreted in conformity with implementing statute); ITT Arctic Servs., Inc. v. United States, 207 Ct. Cl. 743, 763, 524 F.2d 680, 690 (1975) (regulations implementing contract clauses "govern the interpretation of the contract").

In sum, like Precision Pine's other contracts, the U-Bar contract expressly provides for penalty interest at a rate of 6.0 percent per annum. Precision Pine's objection to the penalty charge on U-Bar is without merit.

## CONCLUSION

For these reasons, the United States respectfully requests that the Court enter judgment upon behalf of the United States upon its counterclaim in the amount of $427,994.19, plus interest and penalties through the date of payment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Kathryn A. Bleecker

KATHRYN A. BLEECKER
Assistant Director

s/ David A. Harrington

OF COUNSEL:

Lori Polin Jones
Patricia L. Disert
Office of General Counsel
U.S. Department of Agriculture
1400 Independence Ave., S.W.
Washington, D.C. 20250

DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 307-0277
(202) 307-0972 (fax)

Attorneys for Defendant

March 6, 2006