**Summary of Final Default Damages in PP&T v United States, Fed Cl. No. 02-131C**

Damages are calculated pursuant to CT9.4 and represent the final calculations. The initial, estimated damages calculations resulted in Bills for Collection being issued. The respective bills were never paid when initially issued and interest continues to accrue pursuant to CT4.4 or CT4.41. Additionally, amounts due in exces of 90 days are assessed a penalty from the initial date of issue at the rate of 6 % per annum on all principal, accrued interest and accrued administrative charges. The interest rate is 6.375% for simple interest in effect in the first half of 2001 (January 1, 2001 through June 30, 2001). (No Administrative Charges have been applied to these calculations.) Penalties are assessed per CT4.4 or CT4.41 of the timber sale contract.

| Sale Name | Final Damages | Interest Rate/Yr | Date of Initial Bill For Collection | Length of time for Int. Calcs thru 6/30/2005 (Years = D/365) | Accrued Simple Interest | Subtotal P&I Due | Penalty per CT4.41 @ 6% | Total Due |
|---|---|---|---|---|---|---|---|---|
| Brann | $25,994.78 | 6.375 | 03/01/2001 | 4.33699 | $ 7,187.11 | $33,181.89 | $8,634.56 | $41,816.46 |
| Saginaw-Kennedy | $83,157.15 | 6.375 | 03/01/2001 | 4.33699 | $ 22,991.53 | $106,148.68 | $27,621.92 | $133,770.60 |
| Manaco | $0.00 | 6.375 | N/A | N/A | $0.00 | $0.00 | $0.00 | $0.00 |
| U-Bar | $124,367.14 | 6.375 | 02/17/2001 | 4.36986 | $ 34,646.04 | $159,013.18 | $41,691.95 | $200,705.13 |
| Hutch-Boondock | $2,278.72 | 6.375 | 02/21/2001 | 4.35616 | $ 632.81 | $2,911.53 | $760.99 | $3,672.52 |
| Monument | $70,845.50 | 6.375 | 02/17/2001 | 4.36986 | $ 19,736.05 | $90,581.55 | $23,749.74 | $114,331.29 |
| O.D.Ridge | $0.00 | 6.375 | N/A | N/A | $0.00 | $0.00 | $0.00 | $0.00 |
| Jersey Horse | $17,056.01 | 6.375 | 03/01/2001 | 4.33699 | $ 4,715.69 | $21,771.70 | $5,665.42 | $27,437.12 |
| BrookBank | $0.00 | 6.375 | N/A | N/A | $0.00 | $0.00 | $0.00 | $0.00 |
| Gentry | $35,029.56 | 6.375 | 03/01/2001 | 4.33699 | $ 9,685.07 | $44,714.63 | $11,635.61 | $56,350.24 |
| Wiggins | $9,128.70 | 6.375 | 03/01/2001 | 4.33699 | $ 2,523.93 | $11,652.63 | $3,032.24 | $14,684.87 |
| Lily | $59,761.05 | 6.375 | 03/15/2001 | 4.29863 | $ 16,376.78 | $76,137.83 | $19,637.30 | $95,775.13 |
| Totals | $427,618.61 | | | | $ 118,495.03 | $546,113.64 | $142,429.72 | $688,543.36 |

| Calculation of Days of Interest: | | Days |
|---|---|---|
| 2001 | 2/17 thru 12/31 | 318 |
| | 2/21 thru 12/31 | 313 |
| | 3/1 thru 12/31 | 306 |
| | 3/15 thru 12/31 | 292 |
| 2002 | 1/1 thru 12/31 | 365 |
| 2003 | 1/1 thru 12/31 | 365 |
| 2004 | 1/1 thru 12/31 | 366 |
| 2005 | 1/1 thru 6/30 | 181 |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02-131C |
| | ) | (Judge George W. Miller) |
| THE UNITED STATES | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Declaration of David P. Harris

I, David P. Harris, declare as follows:

1. I am a Supervisory Forester in the Region 3, Regional Office of the U.S. Department of Agriculture Forest Service ("Forest Service") located in Albuquerque, New Mexico. Region 3 covers the states of Arizona and New Mexico.

2. As a Supervisory Forester, I am responsible for regional oversight of all sale preparation and sale administration aspects of timber sale contracts in Region 3. I am responsible for the training and certification of timber sale administrators and Contracting Officers in Region 3. In this role I am responsible for providing the necessary training opportunities and testing required for meeting the national standards established for certified sale administrators and Contracting Officers. Additionally, I supervise both the

Regional TEA Appraisal specialist and the Regional Mensurationist (measurement specialist). I have held my current position since December 1, 2002.

3. Previously, I served as a Timber Specialist and Contracting Officer on the Kaibab National Forest in Williams, Arizona. I served in that position from January 1994 to November 2002. As timber specialist and Contracting Officer for the Kaibab National Forest, my responsibilities included oversight of the Forest timber management program, including but not limited to, timber sale preparation, appraisal, contract formulation, and contract administration, including Final Decisions of the Contracting Officer, damage appraisals and assessments and preparation of litigation reports and administrative records for the Court of Federal Claims.

4. In my current position I have served as the primary contact for all matters relating to Precision Pine & Timber, Inc. v. United States, United States Court of Federal Claims, number 02-131C. I have reviewed and updated each of the damage assessment documents initially prepared by the Contracting Officers for each of the defaulted timber sales. My review included the documentation prepared by the Contracting Officer to compute the final damages for the Wiggins contract.

5. Each of the contracts in question, including the Wiggins timber sale contract, contains provision CT9.4—Failure to Cut (4/82), which describes the method for calculating damages in the event of termination for breach.

6. Pursuant to CT9.4(a), the cost of resale or reoffering is a cost that the Contracting Officer is to take into account when calculating damages. Resale costs include: a) recruising the sale; b) remarking timber; c) remarking boundaries; d) the cost of conducting a new appraisal; e) the cost of preparing a new contract, and f) advertisement.

7. When a contract is terminated for default, the Forest Service is required to perform an appraisal of remaining included timber using the "standard Forest Service method in use at the time."

8. The first step in completing an appraisal of remaining included timber is to determine the volume of included timber (whether standing, or cut and decked) that remains on the sale area.

9. With respect to the Wiggins resale, there was a need to remark and re-cruise the remaining standing timber on the sale area due to the scattered nature of the remaining volume caused by partial harvest. Specifically, standing timber had to be remarked and re-cruised within payment unit 1, and decked

timber had to be measured within payment units 2 and 4. "Decked timber" refers to timber that had been cut and skidded to certain locations within the units, but had not yet been hauled and removed from the sale area.

10. The Contracting Officer documented "cruising" costs of $7,703.60 for marking, cruising, data entry and processing, vehicles and paint supplies associated with the volume determination on Wiggins. The volume determination was conducted in accordance with standard volume determination practices employed by Region 3 of the Forest Service, and the costs and items charged are consistent with normal project costing.

11. Although the price of "roundwood" is administratively set within Region 3, this does not alter the requirement to assess and document the remaining volume in an appraisal document for the record.

12. The Contracting Officer also documented "office" costs of $2,175.00 associated with the preparation of the appraisal, the prospectus, the contract and advertising. These costs are reasonable and are appropriate for inclusion in the final damage calculations as they represent one portion of the cost of resale or reoffering.

13. In sum, the Contracting Officer for the Wiggins timber sale conducted the appropriate volume determination and documented the costs required to prepare and re-offer the timber sale in accordance with the requirements of CT 9.4.

14. Additionally, the Contracting Officer appropriately reoffered the sale through the formal process of advertising for 30 days, which is consistent with the original offering format and Forest Service policy. Given the low value of the resale, the Contracting Officer could potentially have used an informal bid process. However, the only potential reduction in costs from informal bidding (advertising costs) would have been minimal, less than $100.

15. Precision Pine issued a request to the Contracting Officer on the Apache-Sitgreaves National Forest, on October 26, 2005, to transfer effective purchaser credit in the amount of $2,772.54 from the Brookbank timber sale to either the Gentry or Jersey Horse timber sale or the Jersey Horse II timber sale. The request is untimely as it comes approximately four and one-half years after the contracts at issue were terminated for breach on January 9, 2001. The request also is is administratively impossible since the sales (Brookbank, Gentry and Jersey Horse) have been "closed" within the Automated Timber Sale Accounting System since approximately

October of 2001 and, therefore, no mechanism for transferring purchaser credit exists.

16. Additionally, the transfer of effective purchaser credit between sales is for the purpose of making payment for timber subject to BT4.2. Pursuant to 36 C.F.R. § 223.42, "[a]pproval for transfer shall not be granted for amounts needed to satisfy unfilled payment obligations or claims for damages due the United States".

17. Finally, the Forest Service eliminated purchaser credit from new timber sale contracts in approximately 2000. Consequently, sales prepared for offer since that time, such as Jersey Horse II, do not contain a provision which allows purchaser credit to be transferred in from another sale.

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this __6th__ day of March, 2006.

David P. Harris
Supervisory Forester