# In the United States Court of Federal Claims

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., Plaintiff, | ) | No. 02-131 C |
| v. | ) | Filed December 26, 2006 |
| THE UNITED STATES, Defendant. | ) | |

**ERRATA**

Pursuant to Rule 60(a) of the Rules of the United States Court of Federal Claims, the Court, *sua sponte*, corrects the Opinion and Order filed December 22, 2006, in this case and also directs the correction of the judgment entered the same date.

The Opinion and Order is corrected in the following respect:

On page 15, in the fourth line of the second paragraph, insert "RICHARD A. LORD," between "13" and "WILLISTON."

On page 19, delete the period at the end of argument heading E.

On page 24, in the first line of the paragraph numbered 4 relating to the U-Bar contract, delete "$125,367.14" and substitute "$124,367.14". This change necessitates a corresponding change in the judgment, as set forth below.

The Court directs the Clerk to amend the judgment as follows:

In the 15th line of the judgment, relating to the U-Bar contract, delete "$125,367.14" and substitute "$124,367.14".

Attached are substitute pages 15, 19, and 24 of the Opinion and Order, which incorporate the foregoing corrections.

IT IS SO ORDERED.

s/ George W. Miller
GEORGE W. MILLER
Judge

The contract permits the Forest Service one year to "make the resale" before it must deduct time from its 9.4(d) calculations. The Court finds that a reasonable person acquainted with the contemporaneous facts would likely understand this phrase to mean the date on which the contract was executed. The Court interprets the phrase to "make the resale" to mean the same thing as "to sell." A reasonably intelligent person would understand this to require some degree of mutual obligation. The Oxford English Dictionary defines "sell" as "[t]o give up or hand over (something) to another person for money (or something that is reckoned as money)." 14 OXFORD ENGLISH DICTIONARY 935 (2d ed. 1989). In other words, in order to "sell" something, one must give something up. Here, the Forest Service consistently reserved the right to decline to award the contract to Precision throughout its communications with Precision leading up to the contract execution. Thus, the Forest Service did not "give up" or "hand over" anything of value until the contract was awarded and executed on April 24, 2002.

It was Precision's own delay, however, that caused the resale to extend beyond one year. "It is a principle of fundamental justice that if a promisor is personally the cause of the failure of performance, either of an obligation due him or of a condition upon which his own liability depends, the promisor cannot take advantage of the failure." 13 RICHARD A. LORD, WILLISTON ON CONTRACTS § 39:6 (4th ed.) (discussing what the treatise describes as the "prevention doctrine"). Here, Precision's liability under CT9.4 is subject to the condition that the Forest Service resell the contract within a year. It is uncontested that the Forest Service informed Precision on December 6, 2001, that it was the high bidder in the resale, and permitted four weeks to furnish the required information. Had Precision met this deadline, the Forest Service would have accomplished the resale within a year of Precision's breach. The Court finds that the Forest Service allowed Precision a reasonable amount of time to furnish the information relating to its responsibility as a contractor. Any time in excess of one year that it took the Forest Service to complete the sale is attributable to Precision's own delay and not to any lack of diligence on the part of the Forest Service. Accordingly, the Court holds that the Forest Service is not required to deduct from the period over which interest accrues under CT9.4(d) the time it took in excess of one year to re-award the Jersey Horse contract to Precision.

**D. Use of Fixed Interest Rates**

Both parties have moved for summary judgment on whether the contracts other than U-Bar require accrual of interest at a fixed or variable rate. As discussed above, the contracts contain two clauses that permit the accrual of interest: (1) either CT4.41 or CT4.4, and (2) CT9.4. All of the contracts, except U-Bar, contain clause CT4.41, which permits the collection of interest "pursuant to the Debt Collection Act" at a rate equal to the higher of "U.S. Treasury current value of funds rate"[8] ("CVF") or the rate applicable under the Contract Disputes Act

---

[8] The CVF rate generally changes only once a year and "is equal to the average investment rate for the Treasury tax and loan accounts for the 12-month period ending on September 30 of each year, rounded to the nearest whole percentage point." 31 U.S.C. §
(continued...)

adjusted CVF rates become known.[11] There is no indication in the language of the contracts that such procedures were contemplated. The Court is additionally skeptical that the parties understood that these provisions would require that a claim for default damages hang in suspense for potentially years so that the parties can apply a variable rather than a fixed interest rate. Moreover, elsewhere in the contracts the parties have explicitly provided that the DCA, which requires a fixed interest rate, governs the accrual of interest. This casts some doubt that the contracting parties placed such value on the use of variable interest rates that they would have been willing to delay the calculation and payment of default damages in order to make use of variable interest rates.

Although in this specific case the Forest Service did not issue its bills for collection until after the midpoint of the resale period had passed, and thus, the use of a variable rate was possible, "[t]he fundamental and cardinal rule is that the intention of the parties is to be ascertained *as of the time they executed the contract*." 11 RICHARD A. LORD, WILLISTON ON CONTRACTS § 30:2 (4th ed.) (emphasis added). The Court concludes that at the time of contracting, the parties would have understood that the Forest Service could immediately deliver and collect on a bill for collection after a successful resale following a default, and as a consequence would necessarily use a fixed rate of interest because it would not be possible for the Forest Service to predict what future CVF rates would be. Accordingly, the Court concludes that a fixed interest rate applies to interest under CT4.41 and to interest under CT9.4(d).

**E. Effective Purchaser Credit on Brookbank Account**

Both parties have moved for summary judgment regarding the issue whether the Forest Service was required to transfer credits earned on the Brookbank account to other debts owed on different contracts. Contractors earn Purchaser Credits by building permanent roads in the forest. Pl.'s Mot. at 20. The credits may be "used to pay for a variety of things on a timber sale." *Id.* CT9.4 requires the Forest Service to apply these unused purchaser credits to the amount owed on the same contract at the time of default. *Supra* page 9. At the time of the default on the Brookbank contract, Precision had accumulated $2,752.54 in purchaser credits. App. to Pl.'s Mot. at 131. Precision did not owe the Forest Service any damages after the Brookbank resale, however, and thus the Forest Service did not have a debt on that sale against which it could apply the purchaser credit. *Id.*

The contract provides, in section CT4.211, *see supra* page 9, that the Forest Service may transfer the credits to other contracts upon "Purchaser's written request." Precision contends that the Forest Service should transfer the effective purchaser credit to offset other debts it owes. Pl.'s Mot. at 19–22. The Government contends that 36 C.F.R. § 223.42 prohibits the transfer of purchaser credits to offset default damages. That regulation provides:

---

[11] The CVF rate generally changes only once a year, but under certain conditions can change as frequently as quarterly. *See supra* note 8.

assessed annually upon the balance due, excluding penalty charges, as of the final day of each annual period.

In accordance with this opinion, the Clerk is directed to enter judgment for the Government in the following amounts:

1. With respect to the Jersey Horse contract, Precision owes $ 17,056.01 plus 4.25% annual, simple, fixed interest accruing from April 28, 2005 until paid, and a 6% penalty charge accruing from April 28, 2005 until paid. The penalty charges shall be assessed annually upon the balance due, excluding previously assessed penalty charges, as of the final day of each annual period.

2. With respect to the Saginaw-Kennedy contract, Precision owes $ 83,157.15 plus 4.25% annual, simple, fixed interest accruing from April 28, 2005 until paid, and a 6% penalty charge accruing from April 28, 2005 until paid. The penalty charges shall be assessed annually upon the balance due, excluding previously assessed penalty charges, as of the final day of each annual period.

3. With respect to the Brann contract, Precision owes $ 25,994.78 plus 4.25% annual, simple, fixed interest accruing from April 28, 2005 until paid, and a 6% penalty charge accruing from April 28, 2005 until paid. The penalty charges shall be assessed annually upon the balance due, excluding previously assessed penalty charges, as of the final day of each annual period.

4. With respect to the U-Bar contract, Precision owes $ 124,367.14 plus 1.0% annual, simple, fixed interest accruing from April 28, 2005 until paid, and a 6% penalty charge accruing from the conclusion of this litigation, including the exhaustion of any appellate proceedings. The penalty charges shall be assessed annually upon the balance due, excluding previously assessed penalty charges, as of the final day of each annual period.

5. With respect to the Monument contract, Precision owes $ 70,845.50 plus 4.25% annual, simple, fixed interest accruing from April 28, 2005 until paid, and a 6% penalty charge accruing from April 28, 2005 until paid. The penalty charges shall be assessed annually upon the balance due, excluding previously assessed penalty charges, as of the final day of each annual period.

6. With respect to the Hutch-Boondock contract, Precision owes $2,278.72 plus 4.25% annual, simple, fixed interest accruing from April 28, 2005 until paid, and a 6% penalty charge accruing from April 28, 2005 until paid. The penalty charges shall be assessed annually upon the balance due, excluding previously assessed penalty charges, as of the final day of each annual period.