No. 02-131C
(Judge George W. Miller)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

PRECISION PINE & TIMBER, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR ATTORNEY FEES AND EXPENSES PURSUANT TO THE EQUAL ACCESS TO JUSTICE ACT

---

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

BRYANT G. SNEE
Deputy Director

DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 616-0465

Attorneys for Defendant

OF COUNSEL:

Lori Polin Jones
Office of General Counsel
Department of Agriculture
1400 Independence Ave., S.W.
Washington, D.C. 20250

May 12, 2008

# TABLE OF CONTENTS


INTRODUCTION . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . 2

I. Precision Pine Is Not The Prevailing Party . . . . . . . . . . 2

II. The Government's Position, Taken As A Whole, Was Substantially Justified . . . . . . . . . . 5

III. The Court Should In No Case Award Precision Pine All The Fees And Expenses That It Requests . . . . . . . . . . 9

A. Precision Pine Seeks Payment Of Attorney Fees That Are Unrecoverable . . . . . . . . . . 9

B. Any Award Of Attorney Fees Should Be Reduced Based Upon Precision Pine's Limited Success In This Matter . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . 12

# TABLE OF AUTHORITIES

**Cases:** Page

Ardestani v. Immigration & Naturalization Serv.,
502 U.S. 129 (1991) . . . . . . . . . . 2

Brickwood Contractors, Inc. v. United States,
288 F.3d 1371 (Fed. Cir. 2002) . . . . . . . . . . 3, 5

Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. Of Health & Human Res.,
532 U.S. 598 (2001) . . . . . . . . . . 3

Commissioner v. Jean,
496 U.S. 154 (1990) . . . . . . . . . . 5

Farrar v. Hobby,
506 U.S. 103 (1992) . . . . . . . . . . 3, 4, 10

Filtration Dev. Co. v. United States,
63 Fed. Cl. 612 (2005) . . . . . . . . . . 3

Community Heating & Plumbing Co. v. Garrett,
2 F.3d 1143 Fed. Cir. 1993) . . . . . . . . . . 4, 10

Hensley v. Eckersley,
461 U.S. 424 (1983) . . . . . . . . . . 3

KMS Fusion, Inc. v. United States,
39 Fed. Cl 593 (1997) . . . . . . . . . . 10

Levernier Constr. Co. v. United States,
947 F.2d 497 (Fed. Cir. 1991) . . . . . . . . . . 9

Lion Raisins, Inc. v. United States,
57 Fed. Cl. 505 (2003) . . . . . . . . . . 2

Luciano Pisoni Fabbrica Accessori Instrumenti Musicali v. United States,
837 F.2d 465 (Fed. Cir. 1988) . . . . . . . . . . 5

Neal & Co. v. United States,
121 F.3d 683 (Fed. Cir. 1997) . . . . . . . . . . 3, 4

Oliveira v. United States,
827 F.2d 735 (Fed. Cir.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Pierce v. Underwood,
487 U.S. 552 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

Precision Pine & Timber, Inc. v. United States,
62 Fed. Cl. 635 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Precision Pine & Timber, Inc. v. United States,
75 Fed. Cl. 80 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11, 12

Rice Services, Inc. v. United States,
405 F.3d 1017 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 5

Roanoke River Basin Ass'n v. Hudson,
991 F.2d 132 (4th Cir.),
cert. denied, 510 U.S. 864 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Scarborough v. Principi,
541 U.S. 401 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Statutes:**

28 U.S.C. § 2412 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 9, 11

31 U.S.C. § 3717 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRECISION PINE & TIMBER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-131C |
| v. | ) | Judge George W. Miller |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR ATTORNEY FEES AND EXPENSES PURSUANT TO THE EQUAL ACCESS TO JUSTICE ACT**

**INTRODUCTION**

On January 9, 2001, the United States Forest Service terminated for default various timber sale contracts that had been awarded to Precision Pine & Timber, Inc. ("Precision Pine"). Precision Pine subsequently filed this action challenging the termination of its contracts. Compl. ¶¶ 5-24 (filed Feb. 15, 2002) (docket no. 1). The United States asserted a counterclaim for default damages. Def's Answer & Counterclaim (filed April 19, 2002) (docket no. 7). This Court ultimately affirmed the default termination of Precision Pine's contracts and entered judgment on the United States' counterclaim. Precision Pine & Timber, Inc. v. United States, 62 Fed. Cl. 635 (2004); 2d Amended Judgment at 1 (filed Jan. 5, 2007) (docket no. 107).

Precision Pine has now filed a motion to obtain attorneys fees and expenses pursuant section 2412(d)(1)(A) of the Equal Access to Justice Act ("EAJA"). Pl.'s Br. at 1.[1] Precision Pine's application for attorney fees and expenses should be denied.

---

[1] Plaintiff's Brief in Support of Its Application for Attorneys' Fees and Expenses Pursuant to the Equal Access to Justice Act is cited as "Pl.'s Br. at __."

## ARGUMENT

Section 2412(d)(1)(A) of EAJA provides that a Court "shall award to a prevailing party other than the United States fees and other expenses . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. 28 U.S.C. § 2412(d)(1)(A); see also Lion Raisins, Inc. v. United States, 57 Fed. Cl. 505, 508 (2003). Precision Pine is not the prevailing party and, additionally, the United States' position in this action was substantially justified. Consequently, Precision Pine's application for fees and expenses under EAJA must be denied. See Ardestani v. Immigration & Naturalization Serv., 502 U.S. 129, 137 (1991) (EAJA is a partial waiver of sovereign immunity and "must be strictly construed in favor of the United States").

### I. Precision Pine Is Not The Prevailing Party

EAJA is a fee-shifting statute, which, under appropriate circumstances, allows the "prevailing party" in litigation against the Government to recover attorney fees and litigation costs. 28 U.S.C. § 2412. The Federal Circuit has established an unequivocal, threshold requirement that a plaintiff must meet to qualify as the prevailing party:

> [I]n order to demonstrate that it is a "prevailing party," an EAJA applicant must show that it obtained an enforceable judgment on the merits or a court-ordered consent decree that materially altered the legal relationship between the parties, or the equivalent of either of those.

Rice Services, Inc. v. United States, 405 F.3d 1017, 1025 (Fed. Cir. 2005). Here, Precision Pine failed to obtain a judgment on the merits. Rather, judgment was entered in favor of the United States. 2d Amended Judgment at 1-2 (awarding the United States default damages in excess of

$400,000). Thus, the United States – not Precision Pine – is the prevailing party and the Court cannot award Precision Pine attorney fees or expenses pursuant to EAJA.

Disregarding the threshold requirement for prevailing party status, Precision Pine argues that it qualifies as the prevailing party so long as it achieved some of the benefit that it sought in bringing suit. Pl's Br. at 4 (citing Hensley v. Eckersley, 461 U.S. 424 (1983)). The Supreme Court expressly rejected this "catalyst theory" of "prevailing party" status in Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dept. of Health & Human Res., 532 U.S. 598, 605, 610 (2001), and the Federal Circuit has confirmed that the Supreme Court's rejection of the catalyst theory applies to fee petitions under EAJA in the Court of Federal Claims. Brickwood Contractors, Inc. v. United States, 288 F.3d 1371, 1378 (Fed. Cir. 2002). Thus, a "'prevailing party' is one who has been awarded some relief by the court," Buckhannon, 532 U.S. at 603, such that it "becomes entitled to enforce a judgment, consent decree, or settlement against the defendant," Farrar v. Hobby, 506 U.S. 103, 113 (1992). Precision Pine has obtained no judgment or consent decree that it can enforce against the United States and, therefore, is not the prevailing party.

Precision Pine cites no case where a consent decree or enforceable judgment against the United States was not the predicate to an EAJA fee award. See Pl.'s Br. at 4 (citing Neal & Co. v. United States, 121 F.3d 683 (Fed. Cir. 1997) (judgment for $792,000 in construction dispute); Filtration Dev. Co. v. United States, 63 Fed. Cl. 612 (2005) (judgment for plaintiff in a bid protest); Rice, 405 F.3d at 1025 (reversing an EAJA fee award because no judgment by plaintiff had been secured)). Precision Pine points out that a plaintiff need not prevail on every claim asserted to be a prevailing party. The plaintiff must, however, secure a judgment on at least one claim in the complaint to qualify as the prevailing party. Rice, 405 F.2d at 1025 (confirming that

a party must obtain a judgment to be a prevailing party and qualify for the recovery of fees and expenses); see also Farrar, 506 U.S. at 112 (finding that nominal damages qualified plaintiff as a prevailing party, but did not warrant recovery of attorney fees); Neal, 121 F.3d at 684 (finding that plaintiff was a prevailing party by virtue of an $792,000 judgment, but ruling that trial court had not abused its discretion in declining to award costs); Community Heating & Plumbing Co. v. Garrett, 2 F.3d 1143 (Fed. Cir. 1993) (finding that a plaintiff who obtained a $137,000 judgment on one of several claims was a prevailing party, but that this limited success warranted a 70 percent reduction in claimed attorney fees).

Here, Precision Pine not only failed to obtain a judgment in its favor, it failed to obtain the relief requested in its complaint. Precision Pine's complaint sought a declaration that "the Forest Service had improperly terminated [its] contracts for default." Compl. at 20; see also id. ¶¶ 17, 21, 24. The complaint asserted that the Forest Service's default terminations were improper for three reasons: (1) Precision Pine's default was excused by a prior material breach, Compl. ¶¶ 5-17; (2) Precision Pine's default was excused by the Forest Service's selective and unequal enforcement of contract provisions, Compl. ¶¶ 18-21; and (3) the Forest Service had materially changed performance requirements in its resale contracts, Compl. ¶¶ 22-24. Precision Pine never pressed the third argument and the Court rejected Precision Pine's other arguments on the merits. Precision Pine, 62 Fed. Cl. at 647-53 (finding that Precision Pine had breached its contracts, and that Precision Pine's prior material breach and selective enforcement claims did not excuse the breach).[2]

---

[2] Precision Pine points out that it obtained a mixed result with respect to the calculation of damages on the Government's counterclaim. See Pl.'s Br. at 8-11. Precision Pine identifies (continued...)

Because Precision Pine failed to secure a judgment in this action, it is not the prevailing party and does not qualify to recover attorney fees and expenses under EAJA. Rice, 405 F.2d at 1025; Brickwood, 288 F.3d at 1378. Precision Pine's motion should, therefore, be denied.

## II. The Government's Position, Taken As A Whole, Was Substantially Justified

Even if Precision Pine were a prevailing party, its motion for fees and expenses should be denied because the Government's position was "substantially justified." 28 U.S.C. § 2412(d)(1)(A). The United States Supreme Court has construed the phrase "substantially justified" as:

> 'justified in substance or in the main' – that is, justified to a degree that could satisfy a reasonable person. That is no different from the "reasonable basis in law and fact" formulation adopted by the Ninth Circuit and the vast majority of other Courts of Appeals that have addressed this issue.

Pierce v. Underwood, 487 U.S. 552, 565 (1988) (citations omitted). In assessing substantial justification, courts have dispelled the notion "that the Government position was not substantially justified simply because it lost the case." Scarborough v. Principi, 541 U.S. 401, 415 (2004). "Conceivably, the government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified, yet lose." Pierce, 487 U.S. at 569. Simply put, "[t]he decision on an award of attorney fees is a

---

[2](...continued)
no authority establishing that, standing alone, partial success opposing a counterclaim can provide a basis for the recovery of attorney fees under EAJA. Section 2412(d)(1)(D) authorizes the recovery of fees in "a civil action brought by the United States" if the demand substantially exceeds the amount recovered. Precision Pine has not sought fees pursuant to 28 U.S.C. § 2412(d)(1)(D), and would not in any event be entitled to fees under that subsection because the United States has secured a judgment for more than three quarters of the sum sought in its counterclaim.

judgment independent of the result on the merits." Luciano Pisoni Fabbrica Accessori Instrumenti Musicali v. United States, 837 F.2d 465, 467 (Fed. Cir. 1988).

In assessing whether the Government's position was substantially justified, the Court considers whether the position, taken as a whole, had a "reasonable basis both in law and in fact." Pierce, 487 U.S. at 565; Commissioner v. Jean, 496 U.S. 154, 159 (1990); see also Roanoke River Basin Ass'n v. Hudson, 991 F.2d 132, 139 (4th Cir.), cert. denied, 510 U.S. 864 (1993) ("when determining whether the government's position is substantially justified, we look beyond the issue on which petitioner prevailed to determine, from the totality of the circumstances, whether the government acted reasonably in causing the litigation or in taking a stance during the litigation").

Here, when Precision Pine failed to maintain contractually required bonding, the Government notified Precision Pine that it was in breach of its contractual obligation and repeatedly urged Precision Pine to cure its breach. Precision Pine, 62 Fed. Cl. at 637-38. Only when Precision Pine failed to take corrective action over a period of six months, did the Forest Service terminate Precision Pine's contracts and assess default damages. Id. In reviewing this course of conduct, the Court found that Precision Pine had in fact breached its contracts, rejected Precision Pine's contention that the Forest Service's default terminations were invalid, entered judgment in favor of the United States, and awarded the United States over three-quarters of the damages sought in its counterclaim.[3] Id. at 641-53; 2d Amended Judgment at 1-2. When

[3] The Government's counterclaim sought approximately $767,000. Of that sum, Precision Pine paid $149,000 during the course of litigation and the Court entered judgment for an additional $428,000. Thus, the Forest Service recovered just over 75 percent of the sum sought in its counterclaim.

looking at the totality of the circumstances, Precision Pine's attempt to characterize the Government's position as without substantial justification is meritless.[4]

Rather than assessing the Government's position as a whole, Precision Pine would have the Court focus on three discreet arguments made in opposition to the Government's counterclaim. Pl.'s Br. at 8-11. Precision Pine ignores that it breached the contracts, that the Forest Service's termination of the contracts was appropriate, that default damages were owed to the Government under the contracts, that the Court entered judgment on the Government's default damages counterclaim, and the Forest Service recovered just over three-quarters of the amount sought in its counterclaim. Precision Pine, 62 Fed. Cl. at 646-53; 2d Amended Judgment at 1-2. Precision Pine's argument boils down to the fact that the Government did not recover the full amount of its counterclaim. This does not establish that the Government's position was not "justified in substance or in the main." See, e.g., Pierce, 487 U.S. at 565.

Yet, even if the Court's proper focus were on discrete arguments made as part of the Government's counterclaim, rather than the Government's position as a whole, the United States presented substantial arguments – many of which were accepted by the Court – that had a reasonable basis in law and fact. See Precision Pine & Timber, Inc. v. United States, 75 Fed. Cl. 80, 90-98 (2006) (adopting the Government's position on the use of a fixed interest rate, the transfer of purchaser credits, the mitigation of damages, the accrual of interest for the Jersey Horse and Wiggins contracts, and the calculation of penalty charges). With respect to interest

[4] Precision Pine does not contend that the Government actions that prompted this litigation were unreasonable and, in any event, such an allegation would be baseless. The Court confirmed that Precision Pine had failed to maintain contractually-required bonding, and, in so doing, breached its contracts. The Forest Service's termination of the contracts, which Precision Pine challenged in its complaint, was warranted and well-justified.

charges, the United States argued that interest should be computed from the date that the respective contracting officers' final decisions were provided to Precision Pine. This Court had previously ruled that these final decisions were valid Government claims from a jurisdictional standpoint. Precision Pine, 62 Fed. Cl. at 641-45. Using decisions that were valid for jurisdictional purposes as the starting point for the accrual of interest under the Debt Collection Act was not unreasonable under the circumstances. See 31 U.S.C. § 3717(c) (providing that interest "accrues from the date" that "notice of the amount due is first mailed to the debtor"). Indeed, Precision Pine still points to no authority – other than this Court's subsequent decision – establishing that the Government's position lacked a reasonable basis.

Precision Pine also points out that the Forest Service was directed to recalculate default damages. See Pl.'s Br. at 8-9. Precision Pine neglects to mention that the United States itself requested remand so that it could recompute the default damages owed for several contracts. See Def.'s Reply in Support of Its Mot. for Summ. J. at 14 & n. 11 (filed May 10, 2004) (docket no. 44). While the Government did not seek remand as to all contracts, the Government's affirmative request nevertheless demonstrates a reasonable, good faith approach to the default damages counterclaim.

Lastly, Precision Pine notes that the Court concluded that no penalty charges should accrue on the U-Bar contract due to unique contractual language. Pl.'s Br. at 10-11. However, again, Precision Pine offers no legal or other authority – other than the decision in this action – establishing that the Government's position was unreasonable. Indeed, no authority existed construing the language at issue and the United States presented a colorable interpretation that the Court ultimately declined to adopt.

In sum, under the totality of the circumstances, the United States position was substantially justified. Precision Pine breached its contracts, the United States terminated those contracts for default, assessed default damages, presented reasonable arguments concerning the calculation of damages, and recovered just over 75 percent of the damages sought. The Court should, therefore, deny petition for attorney fees pursuant to EAJA.

## III. The Court Should In No Case Award Precision Pine All The Fees And Expenses That It Requests

If the Court does award fees and expenses, the Court should not award all of the fees and expenses requested in Precision Pine's application.

### A. Precision Pine Seeks Payment Of Attorney Fees That Are Unrecoverable

The recovery under EAJA is limited to fees and expenses "incurred in any civil action . . . against the United States." 28 U.S.C. § 2412(d)(1)(A). Precision Pine seeks payment of attorney fees for time spent (i) working on administrative matters with Forest Service contracting officers, (ii) researching possible legal action against a defendant other than the United States, (iii) preparing letters to Precision Pine's Congressional representatives, and (iv) working on a dispute about a contract not referenced in the complaint in this action. These charges are not recoverable. Levernier Constr. Co. v. United States, 947 F.2d 497, 500 (Fed. Cir. 1991) ("EAJA does not entitle a prevailing party to recovery of fees and expenses incurred during prosecution of that claim before the contracting officer."); Oliveira v. United States, 827 F.2d 735, 744 (Fed. Cir.1987) ("expenses of an attorney that are not incurred or expended solely or exclusively in connection with the case before the court . . . cannot be awarded under the EAJA").

A table identifying $17,483.50 in unrecoverable charges sought in Precision Pine's fee petition is attached as Exhibit 1. If any fees and expenses are awarded, the sum claimed by Precision Pine should be reduced by this amount.

**B. Any Award Of Attorney Fees Should Be Reduced Based Upon Precision Pine's Limited Success In This Matter**

As explained above, Precision Pine is not a prevailing party because it failed to obtain an enforceable judgment in this action. However, even where a plaintiff "is deemed a prevailing party, that applicant is not necessarily entitled to all of its attorneys' fees." KMS Fusion, Inc. v. United States, 39 Fed. Cl 593, 600 (1997). Where a prevailing party achieves less than complete success, the trial court may properly award attorney fees on a pro rata basis. See id; Garrett, 2 F.3d at 1146. Here, under any metric, Precision Pine achieved less than complete success. Accordingly, any award of attorney fees and expenses should be reduced accordingly. See Farrar, 506 U.S. at 112 (ruling that no fees were recoverable where plaintiff received only nominal damages); Garrett, 2 F.3d at 1146 (authorizing a "pro rata" recovery of 30 percent of the plaintiff's total attorney fees).

"When calculating an award based on only limited success, there is no precise rule or formula for making such a determination. The court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." KMS Fusion, 39 Fed. Cl. at 602 (internal quotes and brackets omitted). Here, the Court rejected Precision Pine's argument that it lacked jurisdiction, held that Precision Pine had breached its timber sale contracts, found that Precision Pine had waived any prior material breach defense, and concluded that Precision Pine had failed to establish a disparate enforcement defense. Precision Pine, 62 Fed. Cl. at 651-53. The only arguments of Precision Pine that the Court

accepted concerned the calculation of default damages. See Pl.'s Br. at 8-11. The Court found that interest should run from the date that the Forest Service recalculated damages (i.e., April 28, 2005), and that no penalty surcharge would accrue on one of the 12 contracts at issue. Precision Pine, 75 Fed. Cl. at 97. The Court rejected, however, most of Precision Pine arguments including arguments regarding variable interest rates, the transfer of purchaser credits, the Forest Service's alleged failure to mitigate damages, the accrual of interest on the Jersey Horse and Wiggins contracts, and the calculation of penalty charges. Id. at 90-98. The Forest Service ultimately recovered over three-quarters of the damages sought by its counterclaim.

While Precision Pine's billing records are frequently vague, the vast majority of time for which Precision Pine seeks attorney fees concerns arguments that the Court rejected.[5] Precision Pine's failed in challenging its liability for default damages. The Court found that it possessed

---

[5] The billing records submitted with Precision Pine's fee petition do not show when work on particular arguments was underway or provide a detailed breakdown of services that were performed. See Pl.'s Br., Ex. 7. For instance, numerous entries state that a "conference" occurred without describing the subject matter addressed. Id. Such entries fail to establish that "conference" addressed any subject that reasonably pertains to this matter. Id. Ordinarily, the fact that the attorney's client paid a bill would lend assurance that billed entries were reasonable and actually related to the matter at hand. No such assurance exists here. Precision Pine has paid no bill since the original complaint was filed in February 2002. And, indeed, Precision Pine's counsel originally informed the Court that this matter was being handled in the same way as case number 98-720, i.e., on a contingency basis. While counsel later recanted, see Third Decl. Of Alan I Saltman ¶¶ 12-14, Precision Pine still has produced no fee agreement or paid bills that relate to this matter. See, e.g., 28 U.S.C. § 2412(d)(1)(A) (authorizing the recovery of fees "incurred . . . in any civil action").

Even if the summaries attached to Precision Pine's motion are accurate, they show that no services concerning the accrual of interest or the accrual of a penalty charge on U-Bar – issues where the Court accepted Precision Pine's arguments – were rendered before June 23, 2006. See Pl.'s Br., Ex. 7 at 26 ("begin legal research" concerning default damages). The Federal Circuit mandate issued in January 2008. Thus, during the first 52 months of the 71 month period that this action was pending (73 percent of the period), no work on damages calculation issues was being performed.

jurisdiction, that Precision Pine had breached the contracts, and that Precision Pine's prior material breach and disparate enforcement defenses were without merit. Precision Pine, 62 Fed. Cl. at 647-53. Even with respect to damages, fewer than half the arguments raised by Precision Pine were accepted by the Court. Precision Pine, 75 Fed. Cl. at 90-98 (rejecting Precision Pine's arguments with respect to five of seven issues). Having lost as to liability half of this action, and having failed with respect to most issues in the damages half of this action, if any payment is ordered on Precision Pine's EAJA application, the Court should reduce the fee award in this action by no less than 80 percent.[6]

## CONCLUSION

For these reasons, we respectfully request that Precision Pine's application for attorney fees and expenses pursuant to the Equal Access to Justice Act be denied.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Bryant G. Snee

BRYANT G. SNEE
Deputy Director

[6] As noted above, the United States recovered over 75 percent of the damages sought in its counterclaim. This provides further supports for a reduction on the order of 80 percent of any fee award.

s/ David A. Harrington

DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 616-0465
Fax: (202) 305-7644

May 12, 2008

Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of May 2008, a copy of "DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR ATTORNEY FEES AND EXPENSES PURSUANT TO THE EQUAL ACCESS TO JUSTICE ACT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ David A. Harrington

## SUMMARY OF UNRECOVERABLE CHARGES

| Date | Time | Subject | Amount | Reason Unrecoverable |
|---|---|---|---|---|
| May 4, 2001 | 2.5 | Draft letter to bonding company; legal research; review documents from client; conference with W. Kinner. | $750.00 | Services concern dispute with bonding company; do not involve preparing the complaint in this action. |
| May 4, 2001 | 0.3 | Conference with A. Saltman re: consent of surety; legal research re: same. | $40.50 | Services concern dispute with bonding company; do not involve preparing the complaint in this action. |
| May 7, 2001 | 8.8 | Continue legal research re: consent of surety; conference with A. Saltman re: same; prepare memorandum re: same. | $1,188.00 | Services concern dispute with bonding company; do not involve preparing the complaint in this action. |
| May 7, 2001 | 1.0 | Conference with W. Kinner; legal research; send letter to J. Caine; conference with R. Goeken. | $300.00 | Services concern dispute with bonding company; do not involve preparing the complaint in this action. |
| May 7, 2001 | 0.2 | Conference with W. Kinner. | $50.00 | Services concern dispute with bonding company; do not involve preparing the complaint in this action. |

| Date | Time | Subject | Amount | Reason Unrecoverable |
|---|---|---|---|---|
| May 7, 2001 | 1.2 | Conference with A. Saltman re: bonding company issues; draft letter to client re: same; review contract clause BT 9.1. | $216.00 | Services concern dispute with bonding company; do not involve preparing the complaint in this action. |
| May 8, 2001 | 3.2 | Continue legal research re: consent of surety; continue to work on memorandum re: same. | $432.00 | Services concern dispute with bonding company; do not involve preparing the complaint in this action. |
| May 8, 2001 | 0.1 | Review letter to client | $30.00 | Services concern dispute with bonding company; do not involve preparing the complaint in this action. |
| Oct. 1, 2001 | 0.9 | Work on talking points for Lewis; telephone conference with same; telephone conference with B. Imbergamo. | $270.00 | Services concern unspecified "talking points;" do not involve preparing the complaint in this action. |
| Oct. 3, 2001 | 0.5 | Telephone conference with D. Fitzgerald; telephone call to L. Tenney. | $150.00 | Services concern administrative interactions with Forest Service; do not involve preparing the complaint in this action. |
| Oct. 5, 2001 | 0.9 | Listen to voicemail message from L. Tenney; telephone conference with F. Gladics; draft letter to Congressman Udall and Congressman Moran. | $270.00 | Services concern communications with political representatives; do not involve preparing the complaint in this action. |

| Date | Time | Subject | Amount | Reason Unrecoverable |
|---|---|---|---|---|
| Oct. 10, 2001 | 0.5 | Telephone conference with L. Tenney; telephone call to F. Gladics; conference with W. Kinner | $150.00 | Services do not involve preparing the complaint in this action. |
| Oct. 16, 2001 | 2.0 | Research re: impleader/third-party practice; work on motion for notice to third parties; review file. | $270.00 | Services concern dispute with bonding company; do not involve preparing the complaint in this action. |
| Oct. 16, 2001 | 0.1 | Telephone conference with F. Gladics. | $30.00 | Services concern dispute with bonding company; do not involve preparing the complaint in this action. |
| Oct. 17, 2001 | 1.7 | Legal research re: third party practice; continue to work on motion for notice to third party. | $229.50 | Services concern dispute with bonding company; do not involve preparing the complaint in this action. |
| Oct. 17, 2001 | 0.3 | Telephone conference with F. Gladics; send e-mail to R. Goeken | $90.00 | Services concern dispute with bonding company; do not involve preparing the complaint in this action. |
| Oct. 18, 2001 | 0.8 | Legal research re: joinder of third parties. | $108.00 | Services concern dispute with bonding company; do not involve preparing the complaint in this action. |

| Date | Time | Subject | Amount | Reason Unrecoverable |
|---|---|---|---|---|
| Oct. 19, 2001 | 3.8 | Motion for notice to third party, and associated legal research re: joinder of third party; review file.* | $513.00 | Services concern dispute with bonding company; do not involve preparing the complaint in this action. |
| Oct. 25, 2001 | 2.5 | Telephone conference with client; conference with A. Saltman; review and revised draft letter to Regional Forester; fax letter and send e-mail to client.* | $450.00 | Services concern administrative interactions with Forest Service; do not involve preparing the complaint in this action. |
| Oct. 26, 2001 | 0.5 | Telephone conference with J. Caine and client re: letter of payment on O.D. Ridge. | $90.00 | Services concern administrative interactions with Forest Service; do not involve preparing the complaint in this action. |
| Dec. 4, 2001 | 0.3 | Telephone conference with M. Bowers re: response to Forest Service letter re: U-Bar. | $57.00 | Services do not involve preparing the complaint in this action. |
| Jan. 15, 2002 | 0.7 | Conference with R. Goeken | $217.00 | Services do not involve preparing the complaint in this action. |
| Jan 29, 2002 | 0.1 | Conference with W. Kinner | $31.00 | Services concern dispute with bonding company; do not involve preparing the complaint in this action. |

| Date | Time | Subject | Amount | Reason Unrecoverable |
|---|---|---|---|---|
| Jan 29, 2002 | 0.1 | Conference with A. Saltman re: complaints and motion for joinder of third party. | $14.00 | Services concern dispute with bonding company; do not involve preparing the complaint in this action. |
| Feb. 4, 2002 | 0.2 | Conference with R. Goeken. | $62.00 | Services concern dispute with bonding company; do not involve preparing the complaint in this civil action. |
| Feb. 4, 2002 | 0.4 | Legal research re: proposed new Court of Federal Claims rule concerning joinder of parties. | $56.00 | Services concern dispute with bonding company; do not involve preparing the complaint in this civil action. |
| May 23, 2002 | 0.7 | Conference with A. Saltman re: telephone call from Frontier Insurance; research re: SOL in NY, AZ and TN. | $133.00 | Services concern dispute with bonding company; do not involve this civil action. |
| May 23, 2002 | 2.5 | Conference with R. Goeken re: Frontier Insurance; Conference with E. Tamarkin.* | $775.00 | Services concern dispute with bonding company; do not involve this civil action. |
| July 24, 2003 | 0.1 | Docket control entry | $16.00 | Entry does not concern services rendered in this civil action. |

| Date | Time | Subject | Amount | Reason Unrecoverable |
|---|---|---|---|---|
| Dec. 18, 2003 | 4.5 | Research *Manufacturers' Casualty Ins. Co.* case; research *Shedd Bartish Foods* case; research implied duty not to hinder case. | $720.00 | Entry does not concern services rendered in this civil action – the "implied duty to hinder" was not at issue in this civil action. |
| Dec. 19, 2003 | 3.8 | Research BCA cases on implied duties; research law review articles on implied duties. | $608.00 | Entry does not concern services rendered in this civil action. |
| Dec. 22, 2003 | 4.1 | Research law revision articles on government increasing the cost of performance; research Board of Contract Appeals Cases on increasing the cost of performance. | $656.00 | Entry does not concern services rendered in this civil action. |
| Dec. 23, 2003 | 3.3 | Research 6th Circuit caselaw on increasing the cost of performance. | $528.00 | Entry does not concern services rendered in this civil action. |
| Dec. 30, 2003 | 3.1 | Research *Lesh*, *Stafford* and *Fort Sill* cases. | $496.00 | Entry does not concern services rendered in this civil action. |
| Dec. 31, 2003 | 6.8 | Research cases that have cited *York* positively or negatively; conference with A. Saltman regarding research. | $1,088.00 | Entry does not concern services rendered in this civil action. |
| Dec. 31, 2003 | 0.2 | Conference with C. Miller | $70.00 | Entry does not concern services rendered in this civil action. |

| Date | Time | Subject | Amount | Reason Unrecoverable |
|---|---|---|---|---|
| Jan. 2, 2004 | 4.5 | Research *Standard Accident Ins. Co.* and *Stafford* cases; research act of congress cases. | $720.00 | Entry does not concern services rendered in this civil action. |
| Jan. 5, 2004 | 2.3 | Research *Fort Sill* and *Appeal of Daniel Hamm Company* cases. | $368.00 | Entry does not concern services rendered in this civil action. |
| Jan. 8, 2004 | 7.1 | Complete research on government action increasing cost of performance indirectly. | $1,136.00 | Entry does not concern services rendered in this civil action. |
| Jan. 9, 2004 | 5.8 | Compile research on increased cost of performance; pull key quotes from cases and provide brief summaries; conference with A. Saltman re: research. | $928.00 | Entry does not concern services rendered in this civil action. |
| Jan. 9, 2004 | 0.2 | Conference with C. Miller. | $70.00 | Entry does not concern services rendered in this civil action. |
| Jan. 26, 2004 | 0.8 | Conference with D. Craig and C. Miller; draft e-mail to P. Dissert | $280.00 | Services concern services rendered in a Board appeal concerning the Salt contract; do not involve this action. |
| Feb. 27, 2004 | 7.9 | Conference with A. Saltman re: motion for consolidation on Salt contract.* | $1,303.50 | Services concern services rendered in a Board appeal concerning the Salt contract; do not involve this action. |

| Date | Time | Subject | Amount | Reason Unrecoverable |
|---|---|---|---|---|
| Feb. 27, 2004 | 0.8 | Telephone conference with P. Disert; draft email to same; conference with D. Craig. | $280.00 | Services concern services rendered in a Board appeal concerning the Salt contract; do not involve this action. |
| Apr. 15, 2004 | 3.2 | Telephone call to L. Porter re: letter to E. Townes; research re: Frontier Insurance; conference with R. Goeken re: same. | $528.00 | Services concern dispute with bonding company; do not involve this civil action. |
| Oct. 13, 2005 | 0.7 | Review order from Board; email A. Saltman re: same. | $210.00 | Services concern services rendered in a Board appeal; do not involve this action. |
| Oct. 25, 2005 | 0.5 | Draft letter for client to contracting officer; telephone call to L. Porter.* | $190.00 | Services concern services rendered in a Board appeal; do not involve this action. |
| Dec. 6, 2005 | 0.4 | Review fax from L. Porter re: Frontier seeking payment; leave voicemail message re: same | $128.00 | Services concern dispute with bonding company; do not involve this civil action. |
| Dec. 6, 2005 | 0.4 | Telephone call with L. Porter re: Frontier Ins. Co.* | $128.00 | Services concern dispute with bonding company; do not involve this civil action. |

| Date | Time | Subject | Amount | Reason Unrecoverable |
|---|---|---|---|---|
| May 23, 2002 | 0.6 | Conference with A. Saltman; performance bond arrangements.** | $60.00 | Services concern dispute with bonding company; do not involve this civil action. |
| **TOTAL** | | | $17,483.50 | |

* Description of services contains additional components. The United States has made no attempt to allocate the hours billed within an individual entry.

** From Exhibit 8 of plaintiff's fee application.