# In the United States Court of Federal Claims

No. 02-131 C
Filed September 9, 2008
TO BE PUBLISHED

|  |  |  |
|---|---|---|
| PRECISION PINE & TIMBER, INC., | ) ) ) | Motion for attorneys' fees and expenses under Equal Access to Justice Act, 28 U.S.C. |
| Plaintiff, | ) ) ) | § 2412(d); counterclaim by Government for damages due to plaintiff's breach of timber contracts; plaintiff as prevailing party where |
| v. | ) ) ) | judgment entered in favor of defendant for substantially less than amount sought on counterclaim; whether Government's position |
| THE UNITED STATES, | ) ) | lacked substantial justification; effect of plaintiff's partial success. |
| Defendant. | ) ) |  |

     Alan I. Saltman, Saltman & Stevens, P.C., Washington, D.C., for plaintiff. Richard W. Goeken, Saltman & Stevens, P.C., Washington, D.C., of counsel.

     David A. Harrington, Trial Attorney, Bryant G. Snee, Deputy Director, Jeanne E. Davidson, Director, Gregory G. Katsas, Acting Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant. Lori Polin Jones, Department of Agriculture, Washington, D.C., of counsel.

## OPINION AND ORDER

GEORGE W. MILLER, Judge.

     This matter is before the Court on plaintiff's motion for an award of attorneys' fees and expenses pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). On February 14, 2008, plaintiff filed a motion for attorneys' fees (Pl.'s EAJA Mot., docket entry 111), seeking a total of $220,108.64 in fees and expenses. Defendant filed a response on May 12, 2008 (Def.'s Response, docket entry 125). Plaintiff filed a reply on June 6, 2008 (Pl.'s

Reply, docket entry 130). In its reply, plaintiff revised the amount of fees and expenses sought from $220,108.64 to $245,923.07.[1]

## Background

This Opinion and Order assumes familiarity with the decisions in *Precision Pine & Timber, Inc. v. United States*, 62 Fed. Cl. 635 (2004), and *Precision Pine & Timber, Inc. v. United States*, 75 Fed. Cl. 80 (2006). A brief summary of pertinent facts follows.

Precision Pine & Timber, Incorporated ("Precision") is an Arizona company that purchases federal timber to supply its lumber manufacturing operations. This action arises out of ten timber contracts awarded to Precision between August 1992 and December 1998 by the United States Forest Service.[2] On January 9, 2001, the Forest Service, which is part of the Department of Agriculture, terminated these contracts for default for alleged failure to maintain bonding through an acceptable surety. *Precision Pine*, 75 Fed. Cl. at 80, 83.

At the time of the terminations, nine of the contracts were at issue in a companion case pending before Chief Judge Edward J. Damich. *See Precision Pine & Timber v. United States*, 50 Fed. Cl. 35, 38 n.1 (2001). Between February and April 2001, the Forest Service issued initial "Bills for Collection" for default damages it alleged were due, calculating the damages using "estimated" resale values. *Precision Pine*, 75 Fed. Cl. at 80, 84. On July 30, 2001, Chief Judge Damich issued his decision finding that the Forest Service had breached eight of the contracts. Precision subsequently filed this action on February 15, 2002, alleging that the Forest Service improperly terminated the timber sale contracts and Precision was therefore not liable for default damages. The Government filed a counterclaim seeking the default damages it asserted were due. *Precision Pine*, 62 Fed. Cl. at 639. Precision alleged that the Forest Service's default damage calculations, which were based on resale estimates, were inconsistent with the governing contractual provisions. *Id*. at 653-55. On March 25, 2004, defendant moved for summary judgment on its counterclaim. *Id*. at 636. The same day, plaintiff moved to dismiss defendant's counterclaim for lack of subject matter jurisdiction, or in the alternative for summary judgment with respect to the counterclaim, asserting that the Forest Service failed to comply with the terms of the parties' contracts in computing damages. *Id.* On October 29, 2004, this Court denied Precision's motion to dismiss. *Id.* The Court also granted the Government's motion for

---

[1] In its reply, Precision recalculated the fees and expenses it sought to account for errors in the original calculation and to update its claim to take into account additional fees and expenses incurred. Precision now seeks the recovery of $235,797.26 in fees and $10,125.81 in expenses. Pl.'s Reply at 32.

[2] Originally, there were twelve contracts at issue: O.D. Ridge, Brookbank, Jersey Horse, Saginaw-Kennedy, Brann, U-Bar, Monument, Manaco, Hutch-Boondock, Gentry, Wiggins, and Lily. However, the Government did not claim damages related to two of those contracts, Manaco and Brookbank. *Precision Pine*, 62 Fed. Cl. at 639.

summary judgment to the extent that the Court found that Precision breached the contracts at issue. *Id.* The Court denied the Government's motion, and granted Precision's motion, with respect to whether the Forest Service's damage calculations were proper. *Id.*

The Court held that the contracts provided "two alternative methods for determining damages in the event of breach: one where the timber has been resold; and the other where the timber has not been resold." *Id*. at 654. Under the first method, the Forest Service had to "wait until the resale [was] concluded to calculate damages." *Id*. at 655. Under the second method, the Forest Service could "decide . . . not to resell the contract and calculate the damages immediately." *Id*. The Court held that by attempting to collect its so-called "estimated damages," the Forest Service employed a "third method" that was not permitted under the contracts. *Id*. The Court ordered the Forest Service to recalculate its damages in accordance with the governing contract terms within six months of the date of the Court's opinion. *Id*. at 656.

On April 28, 2005, the Forest Service issued its initial damage calculations in accordance with the Court's order, and subsequently revised its damage calculations on two occasions. In its revised damage calculations, the Forest Service also asserted for the first time that it was entitled to interest and penalties accruing from early 2001, the exact date depending on when the Forest Service issued its initial bill for collection on each individual contract. *See Precision Pine*, 75 Fed. Cl. at 85.

Precision then filed a motion for summary judgment, arguing that: (1) interest and penalty charges should not have begun to accrue until September 16, 2005, the date on which the Government submitted its final revised damage calculations in accordance with the Court's 2004 opinion; (2) a variable, rather than fixed, rate of interest should have been used in the damage calculations; (3) the Forest Service improperly charged interest simultaneously under two provisions of the contracts —CT4.41 and CT9.4; (4) Precision was entitled to transfer certain earned purchaser credits from the Brookbank contract to offset amounts it owed the Forest Service on other contracts; (5) the Forest Service failed to mitigate its damages with respect to the Wiggins contract; (6) Precision was not liable for penalty charges on the U-Bar contract; and (7) penalty charges, where appropriate, should have been calculated annually as of the midpoint of each annual period. The Government, on the other hand, argued that: (1) interest and penalty charges should have begun to accrue as of the dates in 2001 on which the Forest Service issued its original bills for collection based upon its estimated damages calculations; (2) a fixed rate of interest was properly used in the damages calculations; (3) the Forest Service was entitled to collect interest simultaneously under both CT4.41 and CT9.4; (4) Precision was not entitled to transfer any remaining earned purchaser credits from the Brookbank contract to offset amounts it owed the Forest Service on other contracts; (5) the Forest Service did not fail to mitigate damages under the Wiggins contract; (6) Precision owed the Forest Service penalty charges on the U-Bar contract; and (7) penalty charges were properly calculated annually as of the last day of each annual period.

On December 22, 2006, the Court issued its decision on the cross-motions for summary judgment. Precision prevailed to the following extent. The Court granted Precision's motion with respect to the timing of the accrual of interest and penalties to the extent that it held that interest and penalties did not accrue until April 28, 2005, the date on which the Forest Service submitted its first set of bills for collection following the Court's remand with instructions to compute the amounts due in accordance with the Court's interpretation of the contracts. The Court also granted Precision's motion regarding penalty charges on the U-Bar contract, holding that the contract required the suspension of penalties during the pendency of the proceedings. *Precision Pine*, 75 Fed. Cl. at 83, 88-90, 97-98.[3]

The Government appealed the Court's rulings with respect to the time for commencement of accrual of interest and penalties. A unanimous panel of the Federal Circuit affirmed pursuant to Federal Circuit Rule 36, which allows for entry of a judgment of affirmance without an opinion. *Precision Pine & Timber, Inc. v. United States*, 257 F. App'x 268 (Fed. Cir. Nov. 9, 2007). The Government did not appeal the Court's ruling rejecting the Government's "estimated damages" approach as inconsistent with the contracts.

Following the affirmance by the Federal Circuit, Precision filed this motion to recover attorneys' fees and expenses under the EAJA.

**Analysis**

The EAJA provides that:

> a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in a civil action . . . including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

Precision asserts that it meets the threshold requirements of having filed its application in a timely manner and being an eligible corporate party. Pl.'s EAJA Mot. at 2-3. Defendant has not contested Precision's threshold eligibility. Rather, defendant opposes Precision's application on the basis that Precision is not entitled to attorneys' fees and expenses under the EAJA because it is not a prevailing party, and that, even if it were a prevailing party, the Government's position was substantially justified. Def.'s Response at 2. The Court addresses each of defendant's arguments in turn below.

---

[3] The parties' dispute regarding simultaneous accrual of interest under two contract provisions became moot. *Precision Pine*, 75 Fed. Cl. at 90.

4

I.      **Prevailing Party Status**

Under the EAJA, a prevailing party is one who "succeeded 'on any significant issue which achieves some of the benefits sought by the suit.'" *Loomis v. United States*, 74 Fed. Cl. 350, 353 (2006); *see also Davis v. Nicholson*, 475 F.3d 1360 (Fed. Cir. 2007) ("A party prevails in a civil action if he receives 'at least some relief on the merits of his claim.'") (citing *Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Res.*, 534 U.S. 598, 603-04 (2001)). As the Federal Circuit has stated, a plaintiff prevails "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Neal & Co., Inc. v. United States*, 121 F.3d 683, 685 (Fed. Cir. 1997). In rejecting the "catalyst theory"[4] that had been adopted by some courts, the Supreme Court made clear that the alteration in the legal relationship with respect to the particular issue on which the plaintiff alleges it prevailed must come about as the result of an enforceable judgment, court order, or their equivalent, in order to have the requisite judicial imprimatur. *Buckhannon*, 532 U.S. at 603-04; *see also Am. Disability Ass'n, Inc. v. Chmielarz*, 289 F.3d 1315, 1319 (11th Cir. 2002) ("[T]he essential test established by [*Buckhannon*] requires the plaintiff to achieve a 'judicially sanctioned change in the legal relationship of the parties.'").

Defendant makes the argument that Precision is not a prevailing party because it "failed to obtain a judgment on the merits. Rather, judgment was entered in favor of the United States." Def.'s Response at 2. But in *Buckhannon*, the Supreme Court noted that to receive fees a party need only "prevail[] on the merits of at least some of his claims." *Buckhannon*, 532 U.S. at 603 (quoting *Hanrahan v. Hampton*, 446 U.S. 754, 758 (1980) (per curiam)). It would be unduly restrictive to look only at whether the judgment is in one party's favor, and not whether that judgment may also reflect the other party's success on a significant issue in controversy. Under such a crabbed view, Precision here would fail to be a prevailing party not because it was unsuccessful on all significant issues in controversy—which clearly was not the case—but instead due to the posture of the case. For example, Precision could, in theory, have made payment to the Forest Service based on the bills of collection and then brought suit in this court claiming that the Forest Service had assessed unwarranted and excessive default damages.[5] *See generally Arcata Forest Prods. Co. v. United States*, 18 Cl. Ct. 93 (1989), *aff'd*, 915 F.2d 1584

---

[4] The "catalyst theory" posited that "a plaintiff [could be] a 'prevailing party' if it achieve[d] the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Buckhannon*, 532 U.S. at 601.

[5] As a practical matter, however, this course of action was not open to Precision. It did not have the resources to pay the bills of collection at the time of issuance and subsequently challenge their validity. Precision's poor financial health was itself due to what the Court found to be "the debilitating effect of the [Government's] suspensions on plaintiff's post-suspension [financial] performance in the real world." *See Precision Pine v. United States*, 81 Fed. Cl. 733, 738 (2008).

(1990) (unpublished table decision). The Forest Service would have argued that the terminations for default and the method of calculating damages were proper. In that event, the Court would presumably have reached the same result, *i.e.*, reducing the amount the Government could collect from $1,028,550.47 (that is, $767,625.72 in principal plus interest and penalties of $260,924.75) to $427,994.20, but by way of entering a judgment in favor of plaintiff in the amount of $600,556.27. *See infra* at 14.

Courts interpreting the term "prevailing party" do not focus only on the formalistic identification of the party in whose favor judgment was entered, but instead include within the category of "prevailing party" applicants that prevail on an *issue or issues* and achieve *some* of the benefits sought by the litigation. *See*, *e.g.*, *Loomis,* 74 Fed. Cl. at 353 (stating that a party must succeed "on any significant *issue* which achieves *some of the benefits* sought by the suit.") (emphasis added). Here, Precision brought suit with the goal of precluding the Government from collecting the "estimated" damages it had assessed under its contracts. *See, e.g.*, Compl. ¶¶ 3, 28, 36, 43, 51, 58, 65, 72, 86, 91, 96, 102. By obtaining a court order requiring the Government to recalculate, and thus significantly reducing, those damages, Precision clearly obtained a significant benefit that it sought in the litigation. Although defendant argues that Precision offered no case supporting an award of fees in the absence of a consent decree or enforceable judgment against the United States, Def.'s Response at 3, Precision has in fact supplied such authority. In *Application Under Equal Access to Justice Act of JR & Associates*, ASBCA No. 41377, 92-3 BCA ¶ 25,121 (1992), the Armed Services Board of Contract Appeals upheld the Government's default termination, but found that the defaulted contractor was entitled to recover attorneys' fees when it had significantly reduced the Government's claims for reprocurement costs as a result of the litigation.

Moreover, the EAJA is explicitly aimed at encouraging resistance to unreasonable government action by mitigating the expenses involved and thereby to some degree leveling the playing field; it should therefore include awards of fees to a plaintiff resisting an unreasonable Government counterclaim. H.R. Rep. No. 96-1418, at 5 (1980) (Congressional purpose in enacting EAJA was to prevent individuals and small businesses from failing to "defend[] against unreasonable governmental action because of the expense involved in securing the vindication of their rights").

The EAJA's legislative history repeatedly expresses a broad understanding of the term "prevailing party." *See* S. Rep. No. 96-253, at 7 (1979) ("[T]he phrase 'prevailing party' should not be limited to a victor only after entry of a final judgment following a full trial on the merits. A party may be deemed prevailing if he obtains a favorable settlement of his case, if the plaintiff has sought a voluntary dismissal of a groundless complaint, or even if he does not ultimately prevail on all issues. . . . A fee award may . . . be appropriate where the party has prevailed on an interim order which was central to the case, or where an interlocutory appeal is sufficiently significant and discrete to be treated as a separate unit.") (internal citations and quotations omitted); H.R. Rep. No. 96-1418, at 11 (1980) (same); H.R. Rep. No. 96-1005, pt. 1, at 6 (1980) ("[I]n addition to those private parties who prevail on all issues in litigation or by final

administrative order, a party also should be eligible for recovery if he obtains a favorable settlement, a voluntary dismissal, or where he may be deemed to have prevailed due to a decision in his favor or prevailed on less than all the issues or if the amount of the judgment against his [sic] was only a fraction of the amount the Government sought.").

The determining factor is not "the degree of success," but instead "whether there has been an alteration to the legal relationship between the parties." *Filtration Dev. Co., LLC v. United States*, 63 Fed. Cl. 612, 618 (2005). While judgments on the merits and court-ordered consent decrees are two means by which a court might alter the parties' legal relationship, they are not exclusive. *Rice Servs. v. United States*, 405 F.3d 1017, 1026 (Fed. Cir. 2005) (prevailing party status "requires a plaintiff to have obtained a court order carrying sufficient 'judicial imprimatur' to materially change the legal relationship of the parties. Enforceable judgments on the merits and court-ordered consent decrees clearly meet this threshold. The threshold can also be met by other court action 'equivalent' to a judgment on the merits or a court-ordered consent decree."). That is, the plaintiff must show "the settling of some dispute which affects the behavior of the defendant towards the plaintiff." *Hewitt v. Helms*, 482 U.S. 744, 761 (1987).

This Court compelled the Forest Service, against its preference, to recalculate the amount due in accordance with the contract language, and then required it to cease pursuing its preferred calculation of penalties and interest and again recalculate the bills per the Court's instruction. These orders possessed the requisite judicial imprimatur and altered the legal relationship between the parties. *Gautreaux v. Chicago Hous. Auth.*, 491 F.3d 649, 659 (7th Cir. 2007) ("The [plaintiffs] achieved substantial results, embodied in court orders, and that is enough."); *New England Reg'l Council of Carpenters v. Kinton*, 284 F.3d 9, 30 (1st Cir. 2002) ("Clearly, the district court is in the best position to determine whether its statements . . . should be considered as the functional equivalent of a judicial order within the meaning of *Buckhannon*."). Indeed, as a percentage of what it sought (ultimately, the reduction of the Government bills to $0), Precision, in obtaining a reduction of approximately 58%, was more successful than the plaintiff in *Neal*, which obtained only 11.5% of the relief it requested. 121 F.3d at 685.

In *Farrar v. Hobby*, 506 U.S. 103 (1992), the Court upheld prevailing party status for a plaintiff who received only nominal damages because "A judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay." This case, where the Government seeks to obtain money, is simply the inverse: the judgment has modified the Government's behavior by forcing it to demand less money than it otherwise would have.

To support its assertion that an applicant must secure a judgment in its favor on at least one claim in the complaint to qualify as a prevailing party, defendant cites *Rice Services v. United States*. Def.'s Response at 2. The Federal Circuit in *Rice Services* stated that in order to qualify as a prevailing party, an applicant "must show that it obtained an enforceable judgment on the merits or a court-ordered consent decree that materially altered the legal relationship between the parties, or the equivalent of either of those." 405 F.3d at 1025. In *Rice*, an offeror

brought a bid protest action against the Government, seeking a reevaluation of bids. Before the court could consider the merits of the protest, the Government took corrective action and the court dismissed the lawsuit as moot. The protester subsequently applied for attorneys' fees, arguing that it was a prevailing party because the court order dismissing the case as moot materially altered the legal relationship of the parties. The Federal Circuit rejected that argument, finding that the dismissal order "was not an enforceable judgment on the merits because the court did not reach the merits." *Id*. at 1026. That is, "the court entered its order because the government had voluntarily abandoned its position. The court did not state that it was entering the order as a merits adjudication in the face of a continuing controversy. Therefore, even if the order changed the legal relationship of the parties, the change was not material." *Id*. at 1027.

*Rice Services* is properly understood as standing for the proposition that a court must actually decide the merits of a claim in order to provide the requisite judicial imprimatur. *Id*. Here, in contrast to *Rice Services*, the Court *did* reach the merits in the face of continuing controversy, and its final judgment, although nominally in favor of defendant, embodied the Court's resolution of significant issues in plaintiff's favor.[6] The Court's rulings substantially reduced the damages ultimately obtained by defendant, and the judgment fixed plaintiff's obligation to defendant at the reduced amounts determined by the Court. As noted earlier, the Government appealed the Court's judgment to the Federal Circuit, an action that would have been unlikely if plaintiff had not prevailed at the trial level.

Defendant also argues that Precision is not a prevailing party because the significant issues on which it was successful were not expressed with sufficient specificity in the plaintiff's complaint and because plaintiff failed to obtain the relief requested in its complaint. Def.'s Response at 3-4 ("The plaintiff must, however, secure a judgment on at least *one claim in the complaint* to qualify as the prevailing party;" and "[Precision] failed to obtain the *relief requested* in its complaint.") (emphasis added). Defendant, however, reads plaintiff's complaint too narrowly. In its complaint, plaintiff challenged the contracting officers' final decisions seeking default damages on the contracts and requested that the Court overturn those decisions. Precision correctly argues that had it not brought suit challenging those decisions, its liability to pay the full amounts sought by the Forest Service would have become final and unappealable. Pl's EAJA Mot. at 4-6. While plaintiff did not detail in its complaint all of the specific issues it had with defendant's method of calculating damages, the timing of the accrual of interest and penalties, and the propriety of assessing penalties on the U-Bar contract, those issues were fully argued in the parties' briefs on cross-motions for summary judgment. Issues related to the

---

[6] *See Precision Pine*, 62 Fed. Cl. at 656 ("The Court GRANTS plaintiff's motion for summary judgment regarding the calculation of damages insofar as the Court holds that the contracting officers' computations of damages are inconsistent with the parties' contracts. . . ."); *see also Precision Pine*, 75 Fed. Cl. at 83, 88-90, 97-98 (ruling in favor of Precision Pine on the timing of accrual of interest and penalties and holding that the Forest Service could not collect a penalty charge on the U-Bar contract during the pendency of court proceedings).

calculation of damages were subsumed within Precision's challenge to the contracting officers' final decisions, which were the bases for Precision's complaint.

In sum, the Court concludes that Precision was a prevailing party with respect to three significant issues: the proper methodology for calculating damages under the contract, the date upon which interest and penalties began to accrue, and whether penalty charges were properly imposed on the U-Bar contract. Precision achieved substantial benefits from the litigation as a result of prevailing on those issues.

## II.     Whether the Government's Position Was "Substantially Justified"

The Government's position is "substantially justified" if it is "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The Court "examines the entirety of the Government's conduct and makes a single finding as to whether the Government's position was substantially justified." *Manno v. United States*, 48 Fed. Cl. 587, 590 (2001). The burden rests on the Government to establish that its position was substantially justified. *Scarborough v. Principi*, 541 U.S. 401, 414 (2004). The Government must demonstrate that "it was *clearly* reasonable in asserting its position, including its position at the agency level, in view of the law and the facts." *Doty v. United States*, 71 F.3d 384, 386 (Fed. Cir. 1995) (emphasis in original).

Defendant, in arguing that its position was substantially justified, focuses on the issues upon which the Government prevailed, rather than the issues upon which plaintiff prevailed, stating that "the Court found that Precision had in fact breached its contracts, rejected Precision Pine's contention that the Forest Service's default terminations were invalid, entered judgment in favor of the United States, and awarded the United States over three-quarters of the damages sought in its counterclaim." Def.'s Response at 6-7 ("Precision Pine would have the Court focus on three discreet [sic] arguments made in opposition to the Government's counterclaim."). Defendant asserts more generally that "the United States presented substantial arguments—many of which were accepted by the Court—that had a reasonable basis in law and fact." Def.'s Response at 7. The proper inquiry, however, is whether the "government's overall position" is substantially justified, "examin[ing] not only the government's success or failure, but also the reasonableness of its position in defending against the suit." *CEMS, Inc. v. United States*, 65 Fed. Cl. 473, 479 (2005). When the Government takes some positions without substantial justification, the question then becomes whether those positions were "sufficiently dramatic in impact" to allow an award of fees. *Loomis v. United States*, 74 Fed. Cl. 350, 355 (2006).

### A.     The Government's Position With Respect to the Methodology for Calculating Damages

In its cross-motion for summary judgment, Precision contended that "the Forest Service ignored the relevant contractual provision and created a new method of calculating damages." *Precision Pine*, 62 Fed. Cl. at 653. The Government defended the contracting officers'

9

calculation of "estimated" damages, arguing that "the damages were calculated in accordance with the relevant provision of the contract." *Id.*

In analyzing the issue, the Court first looked at the plain meaning of the relevant contract language and found that the contract clearly set forth the appropriate manner of calculating damages. "[S]ection CT9.4 provides two alternative methods for determining damages in the event of breach: one where timber has been resold; and the other where timber has not been resold." *Id*. Further, the Court stated that "[a] reasonable, intelligent person, acquainted with the contemporaneous circumstances, would likely understand CT9.4 to provide the Forest Service with *only* the two options described above for ascertaining the amount of damages due after a termination for breach," and therefore the contract did *not* allow for utilization of the contracting officers' method, *i.e.*, "estimat[ing] the proceeds and costs of possible future resale and utiliz[ing] those estimated proceeds and costs as the basis for calculating something called 'estimated damages.'" *Id*. at 655 (emphasis added).

The Court concludes that the Government's position with respect to the methodology for calculating damages was not substantially justified. The Government's reading of the contract language was contrary to its plain meaning, and therefore not "justified to a degree that could satisfy a reasonable person." *Pierce*, 487 U.S. at 565.

      **B.**      **The Government's Position With Respect to Timing of Accrual of Interest and Penalty Charges**

Defendant unsuccessfully argued that the Forest Service could collect interest and penalties accruing from the date of its estimated damage bills issued between February and April 2001, despite the fact that the Court concluded on summary judgment that the Government had improperly calculated damages and was therefore not entitled to collect the amounts demanded by the bills. *Precision Pine*, 75 Fed. Cl. at 88.

In its cross-motion for summary judgment, defendant "focuse[d] on the language in CT4.41 providing that interest and penalty charges accrue from the dates on the 'initial' bills for collection." *Id*. However, the Court noted that when read in full, CT4.41 provided that "[s]uch charges may be, but are not limited to . . . damages pursuant to CT9.4." Because the Court concluded that the Government, in issuing its bills of collection, failed to calculate damages in accordance with CT9.4, *see* Section II.A., *supra*, the Court stated that to accept the Government's position would be to "read the phrase 'pursuant to CT9.4' out of the contract." *Precision Pine*, 75 Fed. Cl. at 89. The Court thus found that the Government's interpretation failed to give "reasonable meaning to all parts" of the contract. *Id*. In addition to conflicting with the plain meaning of the contract language, the Court found that the Government's interpretation, if adopted, would have the strange and unintended consequence of giving the Forest Service an incentive to issue invalid, pre-sale bills in order to obtain pre-sale interest. *Id*.

In its response in opposition to plaintiff's application for attorneys' fees, defendant defended the reasonableness of its position by stating that this Court "had previously ruled that [the contracting officers'] final decisions were valid Government claims from a jurisdictional standpoint," and that because they were sufficient to establish jurisdiction, it was not unreasonable of the Government to use them "as the starting point for the accrual of interest under the Debt Collection Act." Def.'s Response at 8. However, the fact that the final decisions provided a jurisdictional basis for the Government's claims does not speak to their effect in terms of the timing of the accrual of interest and penalties. While defendant argues that "Precision Pine points to no authority—other than this Court's subsequent decision—establishing that the Government's position lacked a rational basis," Def.'s Response at 8, defendant itself has provided no authority for its position, a position that runs counter to the plain language of the contract. Because the Government's position is based on an unreasonable reading of the contract and is not supported by other authority, the Court concludes that defendant has not met its burden of demonstrating that its position with respect to the timing of accrual of interest and penalties was substantially justified.

        **C.**    **The Government's Position With Respect to Penalties Under the U-Bar Contract**

With respect to the U-Bar contract, the Government argued that it had statutory authority under the Debt Collection Act to collect a six-percent penalty charge, and also that contract provision CT4.4 permitted the Forest Service to collect a six-percent penalty charge. *Precision Pine*, 75 Fed. Cl. at 97. Contract provision CT4.4, however, provided that all remedies were to be suspended "except for accrual of interest" during pendency of a Contract Disputes Act claim. The Government therefore argued that the Court should treat the six-percent penalty charge as "penalty interest," not subject to the suspension-of-remedies provision.

While the Court concluded this position was based on an incorrect reading of the contract term at issue, defendant argues—along the same lines as its argument with respect to the timing of the accrual of interest and penalties—that "no authority existed construing the language at issue and the United States presented a colorable interpretation that the Court ultimately declined to adopt." Def.'s Response at 8. Plaintiff, on the other hand, argues that the Government "ignores this Court's ruling that the [G]overnment's proffered interpretation of the contract language was not just incorrect, but was so tortured in light of the contract language that it was, in fact, unreasonable." Pl.'s Reply at 22. Specifically, the Court found that "[a] contract should be read as a whole giving 'reasonable meaning to all parts' of a contract. Here, the contract specifically distinguishes between 'interest' and 'penalty charges' and only exempts 'interest' from the general suspension of remedies." *Precision Pine*, 75 Fed. Cl. at 97 (internal citations omitted).

Consistent with its analysis of the Government's position with respect to the other contract provisions discussed above, the Court concludes that the Government's position with respect to the propriety of the imposition of penalties under the U-Bar contract was not

11

substantially justified. The Government's position was based on an unreasonable reading of the contract, and the Government has offered no authority in support of its position.

Examining the arguments advanced by the Government, and "balancing the government's various positions against the entire civil litigation," *CEMS*, 65 Fed. Cl. at 478, the Court concludes that an award of fees is justified. Not only did defendant proffer unreasonable arguments that prolonged the litigation, it continued to make those arguments in the face of judicial incredulity. *See* Pl's Reply at 20 n.15 (quoting from the oral argument on the Government's appeal to the United States Court of Appeals for the Federal Circuit). The impact of the Government's unreasonable positions was "sufficiently dramatic" to allow an award of fees. *Loomis*, 74 Fed. Cl. at 355.

### III.     Attorneys' Fees and Expenses

#### A.     Amount of Fees and Expenses Sought

Plaintiff initially requested $220,108.64 in fees and expenses. That amount included a cost of living adjusted increase ("COLA") in the statutory cap on attorneys' fees. Defendant has not opposed the COLA, and the Court concludes that such an increase is appropriate. *See Carmichael v. United States*, 70 Fed. Cl. 81, 85 (2006). Between filing its initial application and its reply brief, plaintiff updated its itemized fees and expenses, as detailed below. Pl.'s Reply at 32.

First, in its response to the EAJA application, defendant opposed some of the itemized fees because it asserted that "Precision Pine [sought] payment of attorney fees for time spent (i) working on administrative matters with the Forest Service contracting officers, (ii) researching possible legal action against a defendant other than the United States, (iii) preparing letters to Precision Pine's Congressional representatives, and (iv) working on a dispute about a contract not referenced in the complaint in this action." Def.'s Response at 9. Defendant argued that elimination of time devoted to these tasks would result in a reduction of 97.9 hours and would reduce plaintiff's claim for fees by $15,157.86 at EAJA rates. *Id.* at 10 & exh. 1; Pl.'s Reply Ex. A at 11. In response, Precision reviewed its itemized statements of work performed and concluded that a reduction of 55.6 hours, totaling $8,608.55 at EAJA rates, would remove fees plaintiff conceded were not properly recoverable. Pl.'s Reply at 23 & exh. A. The Court has reviewed plaintiff's descriptions of the work done and the time devoted to the work in question and has concluded that plaintiff's reductions are reasonable and fairly address defendant's legitimate concerns.

Second, plaintiff's EAJA application and defendant's response were filed prior to the Supreme Court's ruling in *Richlin Security Service Co. v. Chertoff*, 128 S. Ct. 2007 (2008), which overruled the Federal Circuit's decision in *Richlin Security Service Co. v. Chertoff*, 472 F.3d 1370 (Fed. Cir. 2006), and held that under the EAJA Richlin was entitled to recover fees for paralegal services at the market rate it paid for such services. In accordance with that decision,

"Precision Pine has moved the 15.3 hours charged for its summer associates and paralegals, all of whom were billed out at rates well below the EAJA cap, from expenses and included them in Exhibit B containing attorneys' fees at the hourly rate of $94.15." Pl.'s Reply at 31. The Court concludes that plaintiff has properly treated fees attributable to the work of summer associates and paralegals as recoverable at the hourly rates at which those services were billed to Precision.

These and other adjustments resulted in plaintiff's revised request for $245,923.07 in fees and expenses. *Id.* at 32; *supra* n.1.

### B. Accounting for Precision Pine's Partial Success

In some situations, "the hours spent on [an] unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Hubbard v. United States*, 80 Fed. Cl. 282, 284 (2008). However, such an apportionment is not mandatory. *See, e.g.*, *Naekel v. DOT*, 884 F.2d 1378, 1379 (Fed. Cir. 1989) ("We do not consider this an appropriate case for fractional division of the attorney fee award."); *see also Loomis v. United States*, 74 Fed. Cl. 350, 359 (2006) ("We see no reason to reduce the fees merely because plaintiff did not prevail on all the issues he raised.").

Defendant argues that "[h]aving lost as to the liability half of this action, and having failed with respect to most issues in the damages half of this action, if any payment is ordered on Precision Pine's EAJA application, the Court should reduce the fee award in this action by no less than 80 percent." Def.'s Response at 12. Defendant asserts that its allegation that the Government "recovered over 75 percent of the damages sought in its counterclaim" provides "further supports [sic] for a reduction on the order of 80 percent of any fee award." *Id*. at 12, n.6.

Plaintiff, on the other hand, asserts that no reduction is appropriate, both because "many of the positions advanced by Precision were, of necessity, off-shoots of responding to the unreasonable positions of the defendant," and because "this case may have been avoided either entirely or at least in large measure absent the government's persistently unreasonable and obstinate behavior." Pl.'s Reply at 25. Plaintiff goes on to state:

> That is, the government twice issued and then vigorously defended contracting officers' final decisions including an appeal to the Federal Circuit based on contract interpretations which charitably could be called 'strained' and which resulted in hugely inflated damage claims. Regardless of Precision Pine's liability for default, the government claimed hundreds of thousands of dollars to which it had no entitlement whatsoever and which Precision Pine had precious little choice but to contest.

*Id.* at 25-26.

13

Precision proffers that if the Court were to conclude that some reduction were appropriate, a reduction of ten percent would be reasonable. *Id*. at 28. "When calculating an award based on only limited success, there is no precise rule or formula for making such a determination. The court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for limited success." *KMS Fusion, Inc. v. United States*, 39 Fed. Cl. 593, 602 (1997). The Government suggests a reduction of 80 percent based, in large part, on the Government's claimed 75 percent recovery. However, the Government's assertion that it recovered 75 percent of the amount it sought is not accurate.[7] Plaintiff's suggestion of a ten percent reduction (assuming the Court concludes that some reduction is warranted), is apparently based on what Precision characterizes as the Government's "strained" interpretation of the contracts and the Government's "persistently unreasonable and obstinate behavior." Pl.'s Reply at 25-26.

The Government sought to recover a total of $1,028,550.47 in this action: first, the $767,625.72 requested in its original counterclaim,[8] and second, the $260,924.75 in penalties and interest the Court concluded were improperly assessed.[9] Ultimately, the Government recovered

---

[7] Defendant states: "[t]he Government's counterclaim sought approximately $767,000. Of that sum, Precision Pine paid $149,000 during the course of litigation and the Court entered judgment for an additional $428,000." Def's Response at 6. The calculation of the amount "recovered" therefore adds the $149,000 to the judgment amount for a total of $577,000 and divides $577,000 by $767,000 as if $767,000 were the total amount the Government pursued, resulting in its claim to have received 75 percent of its requested relief. Def.'s Response at 6. There are two significant problems with this analysis. First, the $149,000 payment appears to relate to the Government's initial claim for $148,845.38 in damages relating to the O.D. Ridge contract. However, plaintiff had fully paid that amount prior to the filing of the complaint in this lawsuit. Plaintiff's Response to Defendant's Motion for Summary Judgment on Liability, Docket No. 39, at 15-16. Thus, defendant improperly included that amount in its initial counterclaim and, prompted by this litigation, eliminated it from the lawsuit only after the Court remanded the case to the Forest Service. Pl's Reply at 4-5. The Government's assertion that it "recovered" this amount in the litigation is therefore disingenuous. Second, the Government's method of calculating plaintiff's success also completely disregards the $260,924.75 in interest and penalties that it sought in addition to the $767,000 and that the Court ultimately found were improperly assessed.

[8] *See* Defendant's Answer, Affirmative Defenses, and Counterclaim (April 19, 2002, docket entry 8). This amount is based on the contracting officers' methodology for calculating damages, a methodology the Court determined was not consistent with the contract terms.

[9] *See* Defendant's Summary Regarding Final Damage Calculations (September 16, 2005, docket entry 63-3). The Government's reduced request for damages was calculated using the proper methodology, but also included $260,924.75 in interest and penalty charges (adding the total of the "accrued simple interest" column with the total of the "penalty" column) accruing

$427,994.20.[10]  Precision's efforts therefore, resulted in a reduction of the Government's claim of $600,556.27.  That is, Precision successfully obtained a reduction in the damages sought of 58 percent.[11]  In light of those results, the Court concludes that it would be fair and reasonable to award Precision 58 percent of the fees and expenses it incurred.  The resulting amount of recoverable attorneys' fees and expenses is therefore 58 percent of $245,923.07, or $142,635.38.

## Conclusion

Precision's application for attorneys' fees and expenses pursuant to the EAJA, 28 U.S.C. § 2412(d)(1)(A), is GRANTED in part and DENIED in part.  The Clerk of the Court is directed to enter judgment in favor of plaintiff in the amount of $142,635.38.

**IT IS SO ORDERED.**

   s/ George W. Miller
GEORGE W. MILLER
Judge

---

from early 2001, when the Government rendered its improper initial bills using an "estimated damages" methodology.

[10] *See* Second Amended Judgment (Jan. 1, 2007, docket entry 107).

[11]  The Court has noted that the Government's final damages calculations included penalties and interest through June 30, 2005, and that the Second Amended Judgment awards the Government penalties and interest accruing from April 28, 2005.  Thus, there is a "stub period" of approximately 63 days for which the Government is entitled to collect penalties and interest pursuant to the terms of the Second Amended Judgment.  However, when this amount is calculated and subtracted from the reduction achieved by plaintiff, the percentage reduction remains at 58 percent.